JOSEPH H. HUNT
*Assistant Attorney General*
WILLIAM C. PEACHEY
*Director*
Office of Immigration Litigation
District Court Section
EREZ REUVENI
*Assistant Director*
PATRICK GLEN
*Senior Litigation Counsel*
T. BENTON YORK
*Trial Attorney*
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel.: (202) 598-6073
thomas.b.york@usdoj.gov
ARCHITH RAMKUMAR
*Trial Attorney*

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| INNOVATION LAW LAB, *et al.* | ) | Civil Action No. 3:19-cv-00807-RS |
| | ) | |
| Plaintiffs, | ) | **DEFENDANTS' MOTION TO** |
| | ) | **TRANSFER VENUE; AND** |
| v. | ) | **MEMORANDUM AND POINTS OF** |
| | ) | **AUTHORITY IN SUPPORT OF THEIR** |
| Kirstjen NIELSEN, Secretary, U.S. | ) | **MOTION TO TRANSFER VENUE** |
| Department of Homeland Security, *et al.*, | ) | |
| | ) | Hearing respectfully requested for |
| Defendants. | ) | date to be set at the Court's convenience. |
| | ) | |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES…………………………………………………..…………..*i*

I.    INTRODUCTION .................................................................................................... 1

II.   ISSUE PRESENTED.............................................................................................. 3

III.  FACTUAL AND PROCEDURAL BACKGROUND............................................. 3

IV.   LEGAL STANDARD............................................................................................. 6

V.    ARGUMENT………………………………………………………………………7

    A.  The Convenience of the Parties and Purported Witnesses Favors the Southern District of California………………………………………………………………...8

    B.  Justice Requires this Case To Be Adjudicated in the Southern District of California…9

    C.  The Remaining Factors Weigh in Favor of Transferring This Case to the Southern District of California…………………………………………………………………12

VI.   CONCLUSION...................................................................................................... 12

VI.   CERTIFICATE OF SERVICE...……………………………………..…………14

## <u>TABLE OF AUTHORITIES</u>

### CASES

*Al Otro Lado, Inc. et al. v. Kelly*,
   Case No. 2:17-cv-05111-JFW-JPR, Doc. 113 (C.D. Cal. Nov. 21, 2017).................................. 8

*All. for Multilingual Multicultural Educ. v. Garcia*,
   Case No. 11-cv-215, 2011 WL 2532478 (N.D. Cal. June 24, 2011) .................................. 11-12

*CBD v. Kempthorne*,
   No. 07-0894, 2007 WL 2023515 (N.D. Cal. July 12, 2007).................................................... 11

*Chung v. Chrysler Corp.,*
   903 F.Supp. 160 (D.D.C. 1995) ..................................................................................... 12, 13

*City and Cnty. of San Francisco v. Sessions*,
   Case No. 3:17-cv-04642-WHO, Doc. 39 (N.D. Cal. Sept. 11, 2017)...................................... 10

*Earth Island Instit. v. Quinn*,
   56 F.Supp.3d 1110 (N.D. Cal. 2014) ........................................................................................ 6

*East Bay Santuary Covenant v. Trump*,
   Case No. 18-cv-6810 (N.D. Cal. Feb. 20 2019)................................................................. 2, 11

*Exact Identification Corp v. Feldman Sherb & Co., P.C.*,
   No. 05-2116, 2006 WL 236921 (E.D. Cal. Jan. 31, 2006)........................................................ 9

*Gulf Oil Co. v. Gilbert*,
   330 U.S. 501 (1947) ................................................................................................................ 7

*Jones v. GNC Franchising, Inc.*,
   211 F.3d 495 (9th Cir. 2000)..................................................................................................... 7

*Kafack v. Primerica Life Ins. Co.,*
   934 F. Supp. 3 (D.D.C. 1996) ................................................................................................ 11

*Kukje Hwajae Ins. Co. v. M/V Hyundai Liberty*,
   408 F.3d 1250 (9th Cir. 2005).................................................................................................. 7

*Lodestar Anstalt v. Bacardi & Co. Ltd., et al.*,
   2017 WL 1434265 (C.D. Cal. Apr. 21, 2017)..................................................... 6-7, 9

*Metz v. U.S. Life Ins. Co. in City of N.Y.*,
   674 F. Supp. 2d 1141 (C.D. Cal. 2009)................................................................... 9

*Multilingual Multicultural Educ. v. Garcia*,
   No. 11-cv-215, 2011 WL 2532478 (N.D. Cal. June 24, 2011)............................... 12

*Murphy v. Schneider Nat'l, Inc.*,
   362 F.3d 1133 (9th Cir. 2004)................................................................................. 7

*Stewart Organization, Inc. v. Ricoh Corp.*,
   487 U.S. 22 (1988)............................................................................................... 6, 7

*Szedgedy v. Keystone Food Prods., Inc.*, No. CV 08-5369,
   2009 WL 276783 (C.D. Cal. 2009)...................................................................... 2, 7

*United Tactical Sys. LLC v. Real Action Paintball, Inc.*,
   108 F. Supp. 3d 733 (N.D. Cal. 2015) ............................................................. 10-11

*Van Dusen v. Barrack*,
   376 U.S. 612 (1964)............................................................................................. 6, 7

**STATUTES**

8 U.S.C. § 1225(b)(2)(C) ....................................................................................... 2, 3

8 U.S.C. § 1225(b)(3)(B) ........................................................................................... 3

28 U.S.C. § 1391(e)(1)(B) .......................................................................................... 9

28 U.S.C. § 1404(a) ......................................................................................... *passim*

## DEFENDANTS' MOTION TO TRANSFER VENUE

Defendants move to transfer this case from the Northern District of California to the Southern District of California pursuant to 28 U.S.C. § 1404(a) and respectfully request that a hearing be set for this motion at the Court's convenience. The case involves a challenge to Department of Homeland Security directives implementing the Migrant Protection Protocols (MPP), which provide guidance to immigration officials on how to implement 8 U.S.C. § 1225(b)(2)(C). At the time Plaintiffs initiated this action, the MPP had only been implemented at the San Ysidro port of entry in the Southern District of California. The Court should transfer this case to the Southern District because the activities challenged in this lawsuit arose exclusively in that District, because it would be more convenient for the individual parties and the witnesses who are located there, and because it better serves the interests of justice, since substantially all of the events giving rise to Plaintiffs' claims arose there. Of the 17 Plaintiffs, 11 are individuals who sought entry to this country at the San Ysidro port of entry in the Southern District, and who allegedly had the MPP applied to them in the Southern District.

None of the events giving rise to Plaintiffs' claims occurred in the Northern District. Moreover, the organizational Plaintiffs through this lawsuit purport to represent the interests of aliens seeking entry in the Southern District and who may have the policy applied to them in that district. In other words, this is a Southern District case. The Southern District of California is thus a much more appropriate venue for this case, and transfer should therefore be granted.

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| INNOVATION LAW LAB, *et al.* | Civil Action No. 3:19-cv-00807-RS |
| Plaintiffs, | |
| v. | |
| Kirstjen NIELSEN, Secretary, U.S. Department of Homeland Security, *et al.*, | |
| Defendants. | |

**DEFENDANTS' MEMORANDUM AND POINTS OF AUTHORITY**
**IN SUPPORT OF THEIR MOTION TO TRANSFER VENUE**

## I.  INTRODUCTION

This action should be transferred to the District Court for the Southern District of California, where the activities challenged in this lawsuit are alleged to have taken place and all relevant witnesses are likely to be found.[1] 28 U.S.C. § 1404(a).

Plaintiffs are 11 "individual asylum seekers from Central America" who sought entry to the United States and were processed at the San Ysidro port of entry in the Southern District of California for return to Mexico pending their removal proceedings, and 6 non-profit legal-services organizations whose stated purpose is to assist asylum seekers. Compl. ¶ 2. Plaintiffs challenge the Migrant Protection Protocols (MPP), issued by Defendant Kirstjen Nielsen ("the Secretary"), Secretary of the Department of Homeland Security (DHS). The Secretary and the heads of three DHS components later issued memoranda providing guidance to immigration officers at the border regarding their prosecutorial discretion with respect to aliens arriving at the San Ysidro port of

---

[1] Defendants expressly reserve and do not waive any and all objections as to jurisdiction and service. In no way should the filing of this motion be construed as consenting to jurisdiction or service.

entry who may be subject to 8 U.S.C. § 1225(b)(2)(C).  That statutory provision delegates to the Secretary broad discretion over whether to require the "return" of certain aliens "arriving on land . . . from a foreign territory contiguous to the United States . . . to that territory pending a [removal] proceeding." 8 U.S.C. § 1225(b)(2)(C).

The Secretary announced the MPP on December 20, 2018, and DHS began implementing it exclusively at the San Ysidro port of entry near San Diego on January 28, 2019.[2] Compl. ¶ 6. At the time immigration officers in the Southern District exercised their prosecutorial discretion to allegedly return Plaintiffs to Mexico pending their removal proceedings, the MPP was being implemented solely at that port of entry and nowhere else.

Given that substantially all the events giving rise to this lawsuit allegedly occurred exclusively in the Southern District of California, this action presents a paradigmatic example of a case that should have been filed in the Southern District and where transfer is warranted to that district. Venue is appropriate in the Southern District, and litigation of this case in that district is far more convenient to the parties and witnesses and in the interests of justice. *See* 28 U.S.C. § 1404(a). The principal "ties" between this lawsuit and the Northern District are the Plaintiffs' failed efforts to relate this case to *East Bay Sanctuary Covenant v. Trump*, No. 18-cv-6810, *see* Order, Doc. 112, and Plaintiffs' allegations that "three of the Plaintiff organizations have their principal residence in this District; and another two Plaintiff organizations have offices in this District." Compl. ¶ 11. The Complaint does not allege *any* connection between the 11 individuals and the Northern District of California, none of the Defendants resides in this District, and nothing in the Complaint challenges any government action that occurred anywhere but the Southern District. Accordingly, venue is by far most appropriate in the Southern District of California.

---

[2] The Court may take judicial notice of the fact that San Diego is located in the Southern District of California.

## II. ISSUE PRESENTED

1. Whether venue is most properly sought in the Southern District of California where all relevant factual allegations purportedly arose, where most relevant witnesses are likely to be found, and where the challenged policy was exclusively being implemented.

## III. FACTUAL AND PROCEDURAL BACKGROUND

On December 20, 2018, the Secretary announced that DHS would begin implementing its authority under 8 U.S.C. § 1225(b)(2)(C) through the MPP "to address the migration crisis along our southern border." *See* January 25, 2019 MPP Memo at 1;[3] Compl. ¶ 6. Section 1225(b)(2)(C) provides that the Secretary may "return" any alien "arriving on land . . . from a foreign territory contiguous to the United States … to that territory pending a [removal] proceeding." On January 25, 2019, the Secretary issued policy guidance concerning implementation of MPP and the exercise of prosecutorial discretion in processing aliens seeking admission to the United States. MPP Memo at 1.  The Secretary also provided guidance to ensure that returns are executed consistently with treaty obligations. For example, the Secretary directed that "a third-country national should not be involuntarily returned to Mexico pursuant to Section 235(b)(2)(C) of the [Immigration and Nationality Act (INA)] if the alien would more likely than not be persecuted on account of race, religion, nationality, membership in a particular social group, or political opinion (unless such alien has engaged in criminal, persecutory, or terrorist activity described in Section 24l(b)(3)(B) of the INA), or would more likely than not be tortured, if so returned pending removal

---

[3] Memo *available at* <https://www.dhs.gov/sites/default/files/publications/19_0129_OPA_migrant-protection-protocols-policy-guidance.pdf > (last visited Feb. 25, 2018); *see also Secretary Kirstjen M. Nielsen Announces Historic Action to Confront Illegal Immigration* (Dec. 20, 2018), available at <https://www.dhs.gov/news/2018/12/20/secretary-nielsen-announces-historic-action-confront-illegal-immigration#> (last visited Feb. 25, 2019).

proceedings." *Id.* at 3–4. U.S. Customs and Border Protection commenced implementation of the policy on January 28, 2019 only at the San Ysidro port of entry.[4] Compl. ¶ 6.

On February 14, 2018, Plaintiffs—11 individuals who allege they were subjected to MPP and 6 organizational Plaintiffs that provide legal and social services to immigrants and refugees— filed this suit against the Secretary and certain components and officials of DHS. Plaintiffs allege that MPP was applied to them at the San Ysidro port of entry and that it will be applied to others seeking entry at the port in the future. *See, e.g.*, *id.* ¶¶ 149-50. The individual Plaintiffs allege that DHS officers operating at San Ysidro ignored their claims of fear of return to Mexico. *Id.* ¶¶ 12-22, ¶¶ 104-19. The organizational Plaintiffs allege that MPP frustrates their ability to assist migrants subjected to the MPP at San Ysidro, and "requires them to expend resources they otherwise would spend in other way." *Id.* ¶ 120. They allege that MPP frustrates their efforts to obtain asylum and other relief for asylum seekers at San Ysidro, has required some or all of them to divert their limited resources to respond to MPP at San Ysidro, to rework training resources, and to divert resources away from other core services. *Id.* ¶¶ 120-46. At the time immigration officers in the Southern District allegedly exercised their prosecutorial discretion to return Plaintiffs to Mexico pending their removal proceedings, DHS had only implemented the MPP in the Southern District and applied the protocol to persons seeking admission at the San Ysidro port of entry and nowhere else.

Individual Plaintiffs:  The 11 individual Plaintiffs each allege that they traveled from Guatemala, Honduras, or El Salvador to request asylum in the United States. *Id.* ¶¶ 12-22. Each of them allegedly sought admission to this country at the San Ysidro port of entry and "was returned

---

[4] *Memorandum: Implementation of the Migrant Protection Protocols* (Jan. 28, 2019), available at <https://www.cbp.gov/sites/default/files/assets/documents/2019-Jan/Implementation%20of%20the%20 Migrant%20Protection%20Protocols.pdf> (last visited Feb. 25, 2019).

to Mexico" pursuant to the MPP and "is currently in Tijuana where [he or she] fears for [his or her] life." *Id.* All claim to have been processed for return at San Ysidro, as they were allegedly transported during the time when the policy was being carried out only at that port of entry, and issued instructions to return to the San Ysidro port of entry for their removal proceedings at a future date. *Id.*

Organizational Plaintiffs:  The 6 nonprofit-entity Plaintiffs have operations in the State of California, but 5 of the 6 are not confined to the Northern District. Compl. ¶¶ 23-28.

Al Otro Lado (AOL) maintains an office in San Ysidro—in the Southern District—as well as in Tijuana.[5]

Central American Resource Center of Northern California (CARECEN) is part of a nationwide network headquartered in Washington, D.C., which also operates in Los Angeles—just north of the Southern District.[6]

Centro Legal de la Raza (Centro Legal) does not specify where all its offices are located, but the Complaint alleges that it operates "*throughout* California, including [service for] asylum seekers arriving through the U.S.-Mexico border."  Compl. ¶ 25 (emphasis added).

The Immigration and Deportation Defense Clinic at the University of San Francisco School of Law (USF) is headquartered in San Francisco. Compl. ¶ 26.

Innovation Law Lab (Law Lab) is based in Portland, Oregon and operates projects throughout the country, including California, Georgia, Kansas, Missouri, New Mexico, Oregon, Texas, and North Carolina."[7] Compl. ¶¶ 23, 121.

---

[5] *See* Plaintiff's website: AOL, *available at* <https://alotrolado.org/contact/>, (last visited Feb. 25, 2019)

[6] *See* websites: CARECEN headquarters, *available at* <carecendc.org/about/contact-us/> (last visited Feb. 25, 2019); CARECEN Los Angeles, *available at* <www.carecen-la.org/contact_us> (last visited Feb. 25, 2019).

[7] Law Lab website, *available at* <https://innovationlawlab.org/finding-the-innovation-law-lab/> (last visited Feb. 25, 2019).

Tahirih Justice Center (Tahirih) also operates offices throughout the country, including Baltimore, Houston, Atlanta, the San Francisco Bay Area, and its national office in Northern Virginia.[8] Compl. ¶ 28.

Accordingly, based on Plaintiffs' allegations in their Complaint and statements on their official websites, only one—the USF legal clinic—has an exclusive presence in the Northern District. Four have offices both in California and beyond. All raise claims that stem from the MPP's implementation at the San Ysidro point of entry in the Southern District of California.

## IV. LEGAL STANDARD

"Even when venue is permissible in a given district, '[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.'" *Earth Island Instit. v. Quinn*, 56 F.Supp.3d 1110, 1115 (N.D. Cal. 2014) (quoting 28 U.S.C. § 1404(a)). The statute "is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). In deciding whether transferring a case to another venue is in the interest of justice, the Court must weigh multiple factors, including (1) the plaintiff's choice of forum, (2) the parties' contacts with the forum, and (3) access to evidence. *See Lodestar Anstalt v. Bacardi & Co. Ltd., et al.*, 2017 WL 1434265, at *4–5 (C.D. Cal. Apr. 21, 2017). *See also Gulf Oil Co. v. Gilbert*, 330 U.S. 501, 508–09 (1947); *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000).[9] Here, each factor weighs in favor of transferring this case to the Southern District of California.

---

[8] Tahirih website, *available at* <https://www.tahirih.org/locations/> (last visited Feb. 25, 2019).
[9] Courts have identified numerous factors that could be considered, including: (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiffs choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts

In ruling on venue-related motions, the Court may consider facts outside the pleadings and need not accept the pleadings as true. *See Kukje Hwajae Ins. Co. v. M/V Hyundai Liberty*, 408 F.3d 1250, 1254 (9th Cir. 2005). If there are contested factual issues, the Court is obligated to draw all reasonable inferences and resolve the factual conflicts in favor of the non-moving party or hold a pre-trial evidentiary hearing on the disputed facts. *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1138–39 (9th Cir. 2004).

## V.  ARGUMENT

The Court should transfer this case to the Southern District of California because that is where substantially all of the factual allegations underlying Plaintiffs' Administrative Procedure Act (APA) challenge purportedly took place. Indeed, this claim specifically targets a policy carried out at the United States' southern border, which obviously is not located in the Northern District of California. Because this is a challenge brought subject to the APA, Defendants maintain no discovery is warranted, but to the extent any discovery were ordered, any alleged witnesses almost certainly reside in the Southern District making it far more convenient for them.  Further, litigating this case in the Southern District of California would better serve the interests of justice. Plaintiffs' choice of forum should not be accorded any deference for this cases because the facts are so attenuated from the Northern District, and the vast majority of Plaintiffs do not even have their primary residence here. Accordingly, this case should be transferred to the Southern District which clearly has the most immediate interest in this case.]

---

relating to the plaintiffs cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof. *Szedgedy v. Keystone Food Prods., Inc.*, No. CV 08-5369, 2009 WL 276783, at *2 (C.D. Cal. 2009) (citing *Stewart Org*., 487 U.S. at 29–30).

**A. The Convenience of the Parties and Purported Witnesses Favors the Southern District of California.**

It is more convenient for the parties and potential fact witnesses for this case to be litigated in the judicial district where the specific actions giving rise to this lawsuit allegedly occurred, rather than in a district where none of the alleged actions occurred. Defendants maintain no discovery will be appropriate for this APA challenge, but should there be discovery ordered, it is substantially more convenient to litigate this case where the events giving rise to the claim allegedly occurred and where any alleged fact witnesses likely reside. For example, any necessary interviews or testimony from agents or officers allegedly involved with processing the individual Plaintiffs or the organizational Plaintiffs' putative clients for return to Mexico under the MPP would be best conducted in the Southern District where those alleged individuals would likely reside.

Moreover, the individual Plaintiffs are all allegedly present in Tijuana, which is directly across the border from the Southern District. Further, the organizational Plaintiffs would not be inconvenienced by a transfer to the Southern District: Law Lab, Tahirih, and CARECEN are national organizations, and CARECEN even has an office just north of the Southern District in Los Angeles. Centro Legal provides services "throughout California," and AOL has offices in both San Ysidro and Tijuana. Indeed, the Central District of California ordered a transfer to the Southern District for an immigration case based on allegations at San Ysidro port of entry in which AOL was a plaintiff. *See* Ex. A, Order, *Al Otro Lado, Inc., et al. v. Kelly*, Case No. 2:17-cv-05111-JFW-JPR, Doc. 113 (Nov. 21, 2017). In short, convenience strongly favors the Southern District.

**B. Justice Requires this Case To Be Adjudicated in the Southern District of California.**

This case presents a prime example of one where justice requires that Plaintiffs' choice of venue not receive deference. *See Exact Identification Corp v. Feldman Sherb & Co., P.C.*, No. 05-2116, 2006 WL 236921, at *2 (E.D. Cal. Jan. 31, 2006) (explaining that "courts generally afford considerable weight to [a] plaintiff's choice of forums"). "[D]eference to the plaintiff's choice of venue [is] diminished if the moving party establishes one or more of the following factors: (1) the operative facts have not occurred within the forum; (2) the forum has no particular interest in the parties or subject matter; (3) the forum is not the primary residence of either the plaintiff or defendant; or (4) the subject matter of the litigation is not substantially connected to the forum." *Lodestar Anstalt*, 2017 WL 1434265, at *4 (citing *Metz v. U.S. Life Ins. Co. in City of N.Y.*, 674 F. Supp. 2d 1141, 1146 (C.D. Cal. 2009)). Here, these four sub-factors weigh against deferring to Plaintiffs' choice of forum.

First, Section 1391(e) allows a case to be brought in a district where "a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(e)(1)(B). This standard clearly permits transfer to the Southern District of California, as the majority of the Plaintiffs claim to have been injured at the San Ysidro port of entry and make numerous factual allegations regarding the conduct of government agents during interviews, detention, and removal proceedings. *See* Compl. ¶¶ 101-19.

Second, Plaintiffs have made no suggestion that the Northern District of California has any particular interest in the parties or the subject matter of this litigation. *See generally* Compl. They have simply pleaded that five of the organizations have offices in the district and that venue is therefore proper. *Id.* ¶ 11. But this district has no significant connection to the alleged events which gave rise to the parties' claims, no significant connection to the majority of the parties themselves,

9

and no significant connection to the subject matter of this litigation. In contrast, a district court that sits where the only port of entry that is the subject of Plaintiffs' allegations—specifically, a district court in the Southern District of California—has a much greater connection to the events alleged in the Complaint, has a much greater interest in the parties, and would have a much greater interest in the alleged activities occurring there, as the challenged policy is being carried out there. As a fellow judge on this Court recently reasoned, in rejecting as a matter of discretion an effort by the City of Los Angeles to litigate claims in this Court that were closely related to ongoing litigation here, it would "unpend[] established venue and forum rules," "it seems imprudent at best to allow all comers to bring their cases in one court, regardless of venue," and the Court "cannot conceive of a limiting principle" when there is little connection between the suit and the Northern District.   Ex. B, Order at 2, *City and Cnty. of San Francisco v. Sessions*, Case No. 3:17-cv-04642-WHO, Doc. 39 (N.D. Cal. Sept. 11, 2017) (Orrick, J.). That underlying rationale from the motion-to-intervene context informs the analysis here.

Third, the overwhelming majority of litigants in this case do not have their primary residence in the Northern District of California. Indeed, only 3 of the 17 Plaintiffs allegedly have their principal residence here, and all three are organizations. *Id.* ¶ 11. The Doe Plaintiffs, who resided outside of the United States at the time the Complaint was filed, do not have their primary residence in the Northern District of California, and all allege that they are in Tijuana, Mexico, just across the border from the Southern District. *See generally id*. Moreover, the named defendants are all government agencies and officers named in their official capacities, and none are residents of the Northern District. *Id.* ¶¶ 29-38.

Fourth, the subject matter of this litigation is not substantially connected to the Northern District of California. *See United Tactical Sys. LLC v. Real Action Paintball, Inc*., 108 F. Supp. 3d

10

733, 752 (N.D. Cal. 2015) ("To determine whether a substantial part of the events giving rise to the claim occurred in the forum, the court first considers what acts or omissions by the defendants give rise to the plaintiffs' claims."). Plaintiffs' Complaint targets policy guidance that as of the date of the Complaint was solely implemented at the San Ysidro port of entry, based on factual allegations pertaining solely to processes carried out there. Thus none, let alone "a substantial part of those acts took place[,] in [this] forum." *All. for Multilingual Multicultural Educ. v. Garcia*, No. 11-cv-215, 2011 WL 2532478, at *7 (N.D. Cal. June 24, 2011). Accordingly, "deference [to the plaintiff's choice of forum] is mitigated where [that forum] has 'no meaningful ties to the controversy and no particular interest in the parties or subject matter.'" *Kafack v. Primerica Life Ins. Co.,* 934 F. Supp. 3, 6 (D.D.C. 1996) (quoting *Chung v. Chrysler Corp.,* 903 F.Supp. 160, 165 (D.D.C. 1995)).[10] In contrast, the Southern District of California "possesses a significant interest in this suit because [the vast majority of] the material events that constitute the factual predicate for the plaintiff's claims occurred there." *Id.* (emphasis added).

Accordingly, these important factors weigh against conducting this litigation in the Northern District of California, and Plaintiffs' choice of forum is entitled to no deference. *See CBD v. Kempthorne*, No. 07-0894, 2007 WL 2023515, at *3 (N.D. Cal. July 12, 2007) (affording no deference to plaintiff's chosen forum where the connection between the plaintiffs, the controversy, and the chosen forum was attenuated). The Southern District of California is the much more appropriate venue for this case, and justice requires transfer.

---

[10] Given the complete absence of allegations as to any relevant events occurring in this District, it appears the only reason Plaintiffs filed here was to attempt to relate this case to *East Bay Sanctuary Covenant v. Trump*, a case currently before Judge Tigar. The Court rejected Plaintiffs' efforts to relate this case, by definition rejecting any contention that "the actions concern substantially the same parties, property, transaction or event," and that "it appears likely that there will be an unduly burdensome duplication of labor and expense or conflicting results if the cases are conducted before different Judges." Civil L.R. 3-12(a). *See* Order, *East Bay Sanctuary Covenant v. Trump*, Case No. 18-cv-6810, Doc. 112 (Feb. 20, 2019). In other words, this Court has already rejected one suggestion that this case is relevant to this district.

**C.  The Remaining Factors Weigh in Favor of Transferring This Case to the Southern District of California**.

The two remaining factors—the parties' contacts with the forum and the ability to access evidence—both weigh in favor of transferring this case to the Southern District of California. As discussed at length above, the overwhelming majority of Plaintiffs and Defendants in this case have stronger contacts with the Southern District of California than with the Northern District of California, since they are either located there or experienced their alleged injuries there. *See supra*, §§ III, V.A. Further, if discovery were to occur in this case, much of the purportedly relevant evidence would be located within the Southern District of California, where the alleged acts occurred, rather than the Northern District of California, where none of the alleged acts occurred. Depositions of fact witnesses and visits to the sites of Plaintiffs' alleged injury would most likely occur within the Southern District of California, as would the production of other relevant information. In short, almost all of the discovery costs, witnesses, and sources of proof will be found in the Southern District. None, however, will be found in this district. Thus, the two remaining factors likewise weigh in favor of transferring this case to the Southern District of California.

## VI. CONCLUSION

For the foregoing reasons, the Court should transfer venue of this action to the United States District Court for the Southern District of California.

Date:  February 25, 2019                    Respectfully submitted,

                                            JOSEPH H. HUNT
                                            *Assistant Attorney General*

                                            WILLIAM C. PEACHEY
                                            *Director*
                                            Office of Immigration Litigation
                                            District Court Section

                                            EREZ REUVENI
                                            *Assistant Director*

                                            PATRICK GLEN
                                            *Senior Litigation Counsel*

                                            ARCHITH RAMKUMAR
                                            *Trial Attorney*

                                            /s/ *T. Benton York*
                                            T. BENTON YORK
                                            *Trial Attorney*
                                            D.C.B. No. 230580
                                            U.S. Department of Justice
                                            Civil Division
                                            Office of Immigration Litigation
                                            District Court Section
                                            P.O. Box 868, Ben Franklin Station
                                            Washington, DC 20044
                                            Tel.: (202) 598-6073
                                            thomas.b.york@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on February 25, 2018, I electronically filed the foregoing document

with the Clerk of the Court for the United States Court of for the Northern District of California

by using the CM/ECF system. Counsel in the case are registered CM/ECF users and service will

be accomplished by the CM/ECF system.

By: */s/ T. Benton York*
T. Benton York
Trial Attorney
United States Department of Justice
Civil Division