JOSEPH H. HUNT
*Assistant Attorney General*
WILLIAM C. PEACHEY
*Director*
EREZ REUVENI
*Assistant Director*
Office of Immigration Litigation
U.S. Department of Justice, Civil Division
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel: (202) 307-4293
Email: Erez.R.Reuveni@usdoj.gov
PATRICK GLEN
*Senior Litigation Counsel*
ARCHITH RAMKUMAR
*Trial Attorney*

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| Innovation Law Lab, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| | ) |
| | ) |
| v. | ) |
| | ) |
| Kirstjen Nielsen, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING ORDER**

Civil Action No. 3:19-cv-0807-RS

# TABLE OF CONTENTS

**Introduction**.................................................................................................1

**Background** ..................................................................................................2

**Legal Standard** ...........................................................................................6

**Argument** ...................................................................................................7

**I.      Plaintiffs' claims are not justiciable** .............................................7

      A.      MPP involves matters that are committed to agency discretion by law .................7

      B.      The INA bars review of Plaintiffs' claims ..............................................8

**II.     Plaintiffs have not demonstrated a likelihood of success on the merits** .....................11

      A.      MPP is consistent with the INA (Count 1) ...........................................11

      B.      MPP is consistent with non-refoulement obligations (Counts 4-6) ......................15

      C.      MPP satisfies the APA's reasonableness requirement (Count 3) ..........................17

      D.      MPP satisfies the APA's procedural requirements (Count 2) .............................20

**III.    The other injunction factors foreclose injunctive relief** ..............................23

**IV.     Any Interim Relief Must Be Sharply Limited** .......................................25

**CONCLUSION** ...........................................................................................26

**CERTIFICATE OF SERVICE** ...................................................................27

1

## TABLE OF AUTHORITIES

*Adams v. Vance*,
   570 F.2d 950 (D.C. Cir. 1978) ................................................................................ 24

*Am. Ass'n for Homecare v. Leavitt*,
   No. 08-cv-0992, 2008 WL 2580217 (D.D.C. June 30, 2008) .................................. 25

*Am. Tort Reform Ass'n v. OSHA*,
   738 F.3d 387 (D.C. Cir.2013) ................................................................................ 11

*Amanullah v. Nelson*,
   811 F.2d 1 (1st Cir. 1987) ...................................................................................... 19

*Amoco Prod. Co. v. Vill. of Gambell*,
   480 U.S. 531 (1987) ............................................................................................... 25

*Associated Gen. Contractors of Cal., Inc. v. Coal. for Econ. Equity*,
   950 F.2d 1401 (9th Cir. 1991) ............................................................................... 24

*Bear Lake Watch, Inc. v. F.E.R.C.*,
   324 F.3d 1071 (9th Cir. 2003) ............................................................................... 20

*California v. Azar*,
   911 F.3d 558 (9th Cir. 2018) ................................................................................. 25

*Caribbean Marine Servs. Co. v. Baldrige*,
   844 F.2d 668 (9th Cir. 1988) ................................................................................. 24

*CDI Info. Servs., Inc. v. Reno*,
   278 F.3d 616 (6th Cir. 2002) ................................................................................... 9

*Chrysler Corp. v. Brown*,
   441 U.S. 281 (1979) ............................................................................................... 21

*City & Cty. of San Francisco v. Trump*,
   897 F.3d 1225 (9th Cir. 2018) ............................................................................... 26

*Clarke v. Sec. Indus. Ass'n*,
   479 U.S. 388 (1987) ............................................................................................... 11

*Cortez-Gastelum v. Holder*,
   526 F. App'x 747 (9th Cir. 2013) .......................................................................... 15

*East Bay Sanctuary Covenant v. Trump*,
   909 F.3d 1219 (9th Cir. 2018) .............................................................. 10, 24, 25

DEFENDANTS' OPPOSITION TO MOTION
FOR TEMPORARY RESTRAINING ORDER
*Innovation Law Lab v. Nielsen*,
Case No. 3:19-cv-0807-RS

ii

*Elk Assoc. Funding Corp. v. U.S. Small Bus. Admin.*,
   858 F. Supp. 2d 1 (D.D.C. 2012) ........................................................... 25

*Galo-Garcia v. I.N.S.*,
   86 F.3d 916 (9th Cir. 1996) .................................................................. 15

*Garcia v. Google, Inc.*,
   786 F.3d 733 (9th Cir. 2015) ................................................................ 25

*Garcia v. Thomas*,
   683 F.3d 952 (9th Cir. 2012) ................................................................ 17

*Gill v. Whitford*,
   138 S. Ct. 1916 (2018) ......................................................................... 25

*Gill v. United States Dep't of Justice*,
   913 F.3d 1187 (9th Cir. 2019) .............................................................. 18

*Hamama v. Adducci*,
   912 F.3d 869 (6th Cir. 2018) ................................................................ 26

*Heckler v. Chaney*,
   470 U.S. 821 (1985) .......................................................................... 7, 8

*Inland Empire Pub. Lands Council v. Schultz*,
   992 F.2d 977 (9th Cir. 1993) ................................................................ 18

*J.E.F.M. v. Lynch*,
   837 F.3d 1026 (9th Cir. 2016) .............................................................. 10

*Karingithi v. Whitaker*,
   913 F.3d 1158 (9th Cir. 2019) .............................................................. 15

*Knauff v. Shaughnessy*,
   338 U.S. 537 (1950) .............................................................................. 2

*Kucana v. Holder*,
   558 U.S. 233 (2010) .............................................................................. 9

*L.A. Haven Hospice, Inc. v. Sebelius*,
   638 F.3d 644 (9th Cir. 2011) ........................................................... 25, 26

*L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*,
   634 F.2d 1197 (9th Cir. 1980) .............................................................. 25

*Landon v. Plasencia*,
    459 U.S. 21 (1982)..................................................................................................... 23

*Lincoln v. Vigil*,
    508 U.S. 182 (1993)............................................................................................ 7, 8, 21

*Linda R.S. v. Richard D.*,
    410 U.S. 614 (1973)..................................................................................................... 10

*Mada-Luna v. Fitzpatrick*,
    813 F.2d 1006 (9th Cir. 1987) .............................................................................. 21, 22

*Madsen v. Women's Health Ctr., Inc.*,
    512 U.S. 753 (1994)..................................................................................................... 25

*Morales de Soto v. Lynch*,
    824 F.3d 822 (9th Cir. 2016) ............................................................................. 7, 8, 21

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 43 (1983)....................................................................................................... 18

*Munaf v. Geren*,
    553 U.S. 674 (2008).............................................................................................. 6, 20

*Municipality of Anchorage v. United States*,
    980 F.2d 1320 (9th Cir. 1992) .................................................................................... 21

*Nunez-Reyes v. Holder*,
    646 F.3d 684 (9th Cir. 2011) ...................................................................................... 14

*Pacific Gas & Elec. Co. v. FPC*,
    506 F.2d 33 (D.C. Cir. 1974) ...................................................................................... 21

*Regents of the Univ. of California v. U.S. Dep't of Homeland Sec.*,
    908 F.3d 514 (9th Cir. 2018) ...................................................................................... 21

*Reno v. Am.-Arab Anti-Discrimination Comm.*,
    525 U.S. 471 (1999)............................................................................................. 7, 9, 26

*Romeiro de Silva v. Smith*,
    773 F.2d 1021 (9th Cir. 1985) ................................................................................. 8, 23

*Sacora v. Thomas*,
    628 F.3d 1059 (9th Cir. 2010) ............................................................................... 18, 20

*Sosa v. Alvarez-Machain*,
    542 U.S. 692 (2004) ................................................................................ 15

*The Lands Council v. McNair*,
    537 F.3d 981 (9th Cir. 2008) .................................................................. 16

*United States v. Armstrong*,
    517 U.S. 456 (1996) .................................................................................. 7

*Van Dinh v. Reno*,
    197 F.3d 427 (10th Cir. 1999) .................................................................. 9

*Villa-Anguiano v. Holder*,
    727 F.3d 873 (9th Cir. 2013) .................................................................. 12

*Wayte v. United States*,
    470 U.S. 598 (1985) .................................................................................. 8

*Winter v. Nat'l Res. Def. Council, Inc.*,
    55 U.S. 7 (2008) ........................................................................................ 6

*Xiao v. Barr*,
    979 F.2d 151 (9th Cir. 1992) .................................................................. 10

*Zepeda v. INS*,
    753 F.2d 719 (9th Cir. 1983) .................................................................. 25

## ADMINISTRATIVE DECISIONS

*Matter of E-R-M- & L-R-M*,
    25 I. & N. Dec. 520 (BIA 2011) ........................................................ 2, 13

*Matter of I-S*,
    24 I. & N. Dec. 432 (BIA 2008) ............................................................ 16

*Matter of J-A-B*,
    27 I. & N. Dec. 168 (BIA 2017) ...................................................... 12, 13

*Matter of Sanchez-Avila*,
    21 I. & N. Dec. 444 (BIA 1996) ............................................................ 14

## FEDERAL STATUTES

5 U.S.C. § 553(b) .......................................................................................... 6

5 U.S.C. § 553(b)(A) .............................................................. 2, 21, 23

5 U.S.C. § 553(b)-(c) ...................................................................... 21

5 U.S.C. § 553(c) ............................................................................. 6

5 U.S.C. § 553(d) ............................................................................. 6

5 U.S.C. § 701(a)(1) ......................................................................... 8

5 U.S.C. § 702 ................................................................................. 7

5 U.S.C. § 704 ............................................................................. 7, 11

5 U.S.C. § 706(2)(A) ........................................................................ 6

8 U.S.C. § 1158 .......................................................................... 2, 11

8 U.S.C. § 1158(a)(1) ....................................................................... 6

8 U.S.C. § 1158(c)(1)(A) ................................................................. 16

8 U.S.C. § 1158(d)(4) ..................................................................... 11

8 U.S.C. § 1182(d)(5)(A) ................................................................ 19

8 U.S.C. § 1221-1232 .................................................................... 26

8 U.S.C. § 1225 .................................................................. 2, 12, 13, 16

8 U.S.C. § 1225(a)(2) ...................................................................... 13

8 U.S.C. § 1225(b)(1) ........................................................... 2, 11, 12

8 U.S.C. § 1225(b)(1)(A)(i) ............................................................... 2

8 U.S.C. § 1225(b)(2)(A) .............................................................. 3, 11

8 U.S.C. § 1225(b)(2)(B) ................................................................ 12

8 U.S.C. § 1225(b)(2)(C) ........................................................... *passim*

8 U.S.C. § 1226 .............................................................................. 16

8 U.S.C. § 1229a ........................................................................... 2, 3

8 U.S.C. § 1231 ....................................................................................................... 16

8 U.S.C. § 1231(b)(3) ............................................................................... 6, 15, 16, 22

8 U.S.C. § 1252 ......................................................................................................... 1

8 U.S.C. § 1252(a) .................................................................................................... 9

8 U.S.C. § 1252(a)(2)(B)(ii) ..................................................................................... 9

8 U.S.C. § 1252(a)(2)(A) ........................................................................................ 13

8 U.S.C. § 1252(a)(4) .............................................................................................. 15

8 U.S.C. § 1252(b)(9) ....................................................................................... 10, 15

8 U.S.C. § 1252(e) .................................................................................................... 9

8 U.S.C. § 1252(e)(3)(A) ..................................................................................... 9, 26

8 U.S.C. § 1252(f)(1) .............................................................................................. 26

8 U.S.C. § 1252(g) ................................................................................................. 8, 9

28 U.S.C. § 1350 ..................................................................................................... 15

## FEDERAL REGULATIONS

8 C.F.R. § 208.30 .................................................................................................... 16

8 C.F.R. § 208.31 .................................................................................................... 16

8 C.F.R. § 235.3 ...................................................................................................... 16

8 C.F.R. § 1003.14(a) .............................................................................................. 15

8 C.F.R. § 1208.16(a) .............................................................................................. 16

8 C.F.R. § 1208.30 .................................................................................................. 16

# Introduction

The Executive Branch has broad discretionary authority over whether to bring removal proceedings against inadmissible and unlawfully present aliens, and what type of proceeding to bring. In 8 U.S.C. § 1225(b)(2)(C)—a provision embracing all of those discretionary authorities—Congress expressly provided the Secretary of Homeland Security discretionary authority to "return" aliens "arriving on land . . . from a foreign territory contiguous to the United States . . . to that territory pending a [removal] proceeding." Here, the Secretary issued guidance on how to exercise these discretionary authorities over aliens arriving on land. That guidance responds to a crisis of aliens, many of whom may have unmeritorious asylum claims, overwhelming the Executive's immigration-detention capacity, being released into the U.S. to live for many years without establishing an entitlement to relief, and often never appearing for immigration proceedings. Despite the clear statutory authority of section 1225(b)(2)(C), Plaintiffs now seek immediate relief halting the guidance that the Secretary found appropriate to combat the serious problems at the southern border. This Court should deny Plaintiffs' request.

To start, Plaintiffs' claims are not justiciable. The guidance involves unreviewable matters committed to agency discretion, the Immigration and Nationality Act (INA) expressly bars challenges to discretionary decisions under the guidance, 8 U.S.C. § 1252, and the organizational Plaintiffs lack standing and fall outside the zone of interests of our nation's immigration laws.

Plaintiffs' request also fails on the merits. They argue that the guidance conflicts with the INA. But the INA expressly authorizes—in every case of an alien arriving by land—the actions that the guidance addresses. Under federal law, the Secretary may, at her discretion, return an alien "arriving on land (whether or not at a designated port of arrival) from a foreign territory contiguous to the United States . . . to that territory pending a [removal] proceeding." 8 U.S.C. § 1225(b)(2)(C). Nor is the exercise of discretion inconsistent with other provisions of the INA (governing asylum or withholding of removal). Those provisions by their terms *do not* apply to determinations under section 1225(b)(2)(C) or limit a return under that provision in any way. Plaintiffs' claim that the guidance violates *nonrefoulement* obligations under international law has no support in the controlling statute, and in any event such duties are satisfied here given that the

guidance provides that return will not occur if the United States determines there is a likelihood of harm in Mexico. And Plaintiffs' claim that the guidance violates the Administrative Procedure Act's (APA) notice-and-comment and effective-date requirements fails as those requirements do not apply to "general statements of policy," 5 U.S.C. § 553(b)(A), like the guidance.

Finally, the balance of harms does not warrant drastic and immediate injunctive relief. The Executive has a paramount sovereign interest in maintaining the integrity of our borders, in enforcing the immigration laws, and in ensuring that immigration cases can be adjudicated swiftly and that precious resources and border security personnel are deployed effectively. And no Plaintiff or any other alien who asserts a fear of return to Mexico can be returned there.

**Background**

Legal Background. The Executive Branch has broad constitutional power to exclude aliens and secure the border, *Knauff v. Shaughnessy*, 338 U.S. 537, 543 (1950), and has for decades exercised that authority through its prosecutorial discretion to prioritize which aliens to remove and what proceedings to initiate against them. *See Matter of E-R-M- & L-R-M*, 25 I. & N. Dec. 520, 523 (BIA 2011); ICE Policy No. 10075.1, Exercising Prosecutorial Discretion Consistent with the Civil Immigration Enforcement Priorities of the Agency for the Apprehension, Detention, and Removal of Aliens (2011) (collecting examples going back decades).

Through 8 U.S.C. § 1225, Congress has delegated to the Executive Branch authority to control the flow of aliens into the United States, and conferred discretion to address that flow through immigration proceedings in three primary ways.[1] *First*, Congress has authorized the Department of Homeland Security (DHS) to initiate expedited removal proceedings. *See* 8 U.S.C. § 1225(b)(1). That provision allows an "applicant for admission" to the United States who lacks valid entry documentation or misrepresents his identity to be placed in expedited removal proceedings, where he shall be "removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum under [8 U.S.C. § 1158] or a fear of persecution." *Id.* § 1225(b)(1)(A)(i). *Second*, Congress has authorized the Secretary to place an

---

[1] Section 1225(b) refers to the Attorney General, but those functions have been transferred to the Secretary. *See* 6 U.S.C. §§ 251, 552(d); *Clark v. Suarez Martinez*, 543 U.S. 371, 374 n.1 (2005).

applicant for admission directly into full removal proceedings (proceedings held before an IJ that involve more extensive procedures than expedited removal proceedings, *see id.* § 1229a) and to detain that alien pending such a proceeding. 8 U.S.C. § 1225(b)(2)(A). *Third*, when DHS elects to place an alien in a full removal proceeding under 8 U.S.C. § 1229a, Congress has provided that if such an alien is "arriving on land (whether or not at a designated port of arrival) from a foreign territory contiguous to the United States," the Secretary "may return the alien to that territory pending a proceeding under section 1229a." *Id.* § 1225(b)(2)(C). The statute provides no standard for selecting among these three options; it is up to the prosecutorial discretion of DHS.

Migrant Protection Protocol. This case arises from the Executive Branch's use of its discretionary authorities to address the growing problems at the southern border resulting from the number of aliens apprehended along the southern border who claim a fear of return to their home country far exceeding the Executive's ability to process such aliens and capacity to detain them consistent with Congress's statutory mandate. *See* 8 U.S.C. 1225(b)(1)(B)(ii) & (b)(2)(A); AR 7-18, 38, 48, 53, 575. Many aliens who would otherwise be detained have thus been released into the United States—to reside for years without establishing an entitlement to relief or admission, and many of whom never show up for their immigration proceedings and are ordered removed in absentia, or ultimately fail to obtain relief. AR 7-18, 49, 418, 562, 625. The problem has worsened in recent months, with attempted entries by families—who the Executive largely lacks resources to detain—reaching all-time highs that far exceed DHS detention capacity, resulting in their release and often their absconsion. AR 7-18, 44, 418, 571, 575, 620, 728, 730, 733, 742, 749-50, 759-65.

To combat this problem, on December 20, 2018, Secretary of Homeland Security announced that DHS would exercise its authority under section 1225(b)(2)(C) through the "Migrant Protection Protocol" (MPP),[2] guidance aimed at shaping efforts "to address the migration crisis along our southern border." AR 7. MPP would be implemented "consistent with applicable domestic and international legal obligations," AR 8, and that the Mexican government had represented that aliens returned to Mexico under MPP would be afforded "all legal and procedural protection[s] provided for under applicable domestic and international law," including "applicable

---

[2] MPP refers to a number of guidance documents issued by DHS. AR 1-19, 2271-79.

DEFENDANTS' OPPOSITION TO MOTION
FOR TEMPORARY RESTRAINING ORDER
*Innovation Law Lab v. Nielsen,*
Case No. 3:19-cv-0807-RS

3

international human rights law and obligations" under the 1951 Convention relating to the Status of Refugees (and its 1967 Protocol) and the Convention Against Torture [(CAT)]." *Id.*

On January 25, 2019, the Secretary further instructed that "in exercising their prosecutorial discretion regarding whether to place an alien arriving by land from Mexico in [full] removal proceedings" or to "return the alien to the contiguous country from which he or she is arriving pursuant to [§ 1225(b)(2)(C)]," officers should act consistent with the *non-refoulement* principles contained in the 1951 Convention, its 1967 Protocol, and the CAT, such that a third country national should not be involuntarily returned to Mexico pursuant to [§ 1225(b)(2)(C)] if the alien would more likely than not be persecuted on account of race, religion, nationality, membership in a particular social group, or political opinion . . . , or . . . be tortured, if so returned pending removal proceedings. AR 9-10. The Secretary instructed that while processing an alien for MPP, a officers should refer the alien to U.S. Citizenship and Immigration Services (USCIS), a component of DHS, if the alien expresses a fear of return to Mexico for a *non-refoulement* assessment. AR 10.

On January 28, U.S. Customs and Border Protection (CBP), another DHS component, issued a guidance document explaining how it would exercise its prosecutorial discretion with respect to MPP. AR 1-3. "[A]liens arriving from Mexico who are amenable to [MPP], and who in an exercise of discretion the officer determines should be subject to the MPP [], will be issued an Notice to Appear (NTA) and placed into [full] removal proceedings. AR 1. They will then be transferred to await proceedings in Mexico." *Id.* The guidance provides that MPP would not be applied to certain categories of people.[3] *Id.* And it states that "[o]fficers, with appropriate supervisory review, retain discretion to process aliens for MPP or under other procedures (e.g., expedited removal), on a case-by-case basis." *Id.*

DHS (through USCIS) also established a process for assessing whether an alien otherwise amenable to the exercise of discretion under MPP should not be returned to Mexico because of a fear of persecution or torture there. AR 2271-75. If an alien claims a fear of return to Mexico, CBP

---

[3] Those include: (1) unaccompanied alien children; (2) citizens or nationals of Mexico; (3) aliens processed for expedited removal; (4) certain aliens in special circumstances, including returning lawful permanent residents; (5) aliens who are more likely than not to face persecution or torture in Mexico; and (6) other aliens at the discretion of the Port Director.

will refer the alien to a USCIS asylum officer to "assess whether it is more likely than not that the alien will face persecution or torture if returned to Mexico." AR 2273 "If USCIS assesses that an alien who affirmatively states a fear of return to Mexico is more likely than not to face persecution or torture in Mexico, the alien may not be processed for MPP. Officers retain all existing discretion to process (or re-process) the alien for any other available disposition, including expedited removal, NTA, waivers, or parole." *Id.* The USCIS guidance explains how USCIS will facilitate CBP's exercise of discretion and that "[t]he purpose of the assessment is simply to assess whether the alien meets one of the eligibility criteria under the MPP, pursuant to [§ 1225(b)(2)(C)]." AR 2274. Upon receiving a referral from CBP, USCIS officers conduct an "MPP assessment interview in a non-adversarial manner, separate and apart from the general public." AR 2273. "The purpose of the interview is to elicit all relevant and useful information bearing on whether the alien would more likely than not face persecution on account of a protected ground, or torture, if the alien is returned to Mexico pending the conclusion of the alien's" full removal proceedings.

The guidance instructs that USCIS officers should take into account, among other things, the "credibility" of the alien's statements and "other facts known to the officer," commitments from the Mexican government "regarding the treatment and protection of aliens returned," and whether "the alien has engaged in criminal, persecutory, or terrorist activity." AR 2273-74. Once an officer concludes an assessment, it "shall be reviewed by a supervisory asylum officer, who may change or concur with the assessment's conclusion." AR 2274. USCIS then informs the alien of the final determination, and provides the assessment to CBP "for purposes of [CBP officers] exercising prosecutorial discretion in connection with one or more of the decisions as to whether to place the alien in expedited removal or to issue a Notice to Appear for the purpose of placement directly into [full] removal proceedings, and if the latter, whether to return the alien to Mexico pending the conclusion of [full] proceedings under [§ 1225(b)(2)(C)] pursuant to the MPP." *Id.*

On January 28, DHS began implementing MPP at the San Ysidro port of entry. Each individual plaintiff was processed consistent with the guidance. *See* Mot. to Seal, Ex. A. Each Plaintiff either did not assert a fear of return in Mexico, or if they did, was found to lack such a fear, after which CBP elected to return them to Mexico pending their removal proceedings. *Id.*

This Lawsuit. On February 14, 2019, eleven individuals subject to MPP and six organizational Plaintiffs that provide legal and social services to immigrants and refugees filed this suit. Plaintiffs bring two categories of claims, both under the APA. They claim that MPP violates 5 U.S.C. § 706(2)(A) because it is inconsistent with the authorizing provision, 8 U.S.C. § 1225(b)(2)(C) (Count I); is arbitrary and capricious (Count III); conflicts with the provisions for withholding of removal in 8 U.S.C. § 1231(b)(3) (Count IV); violates customary international law's prohibition on *refoulement* (Count V); and conflicts with the INA's asylum provision, 8 U.S.C. § 1158(a)(1), by "meaningfully depriv[ing]" returned aliens "their right to apply for asylum" in the United States" (Count VI). Compl. ¶¶ 148-81. They also argue that the *non-refoulement* assessment violates 5 U.S.C. § 553(b), (c), (d) because it was issued without notice and comment and published less than 30 days before its effective date (Count II). *Id.* ¶¶ 152, 156. The crux of Plaintiffs' claim is that DHS may not place aliens amenable to expedited removal proceedings in full section 1229a removal proceedings if it intends to also return them to Mexico because if Plaintiffs *could* be placed in expedited removal, they *must* be, and so they cannot be returned to Mexico under section 1225(b)(2)(C), as that provision applies to aliens who can be placed *only* in full removal proceedings. *See* TRO Br. 6-8, 9-11. On February 20, Plaintiffs moved for a TRO enjoining MPP. The individual plaintiffs argue that they are irreparably harmed by having to wait in Mexico for their removal hearing; the organizations claim harm from their inability to comment on MPP and the need to divert resources to respond to it. *Id.* at 20-24.

**Argument**

The motion should be denied, as Plaintiffs cannot show they are "likely to succeed on the merits" and "suffer irreparable harm [absent] relief," that "the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat'l Res. Def. Council, Inc.*, 55 U.S. 7, 20 (2008). Plaintiffs' claims are not justiciable, they lack merit, and the balance of equities and public interest factors cut against the relief that Plaintiffs seek.

## I.    Plaintiffs' claims are not justiciable.

Plaintiffs cannot prevail because the Court lacks jurisdiction over their complaint. The MPP involves matters that are committed to agency discretion by law and so is not subject to

1   review under the APA. The INA also strips federal district courts of jurisdiction over any decision

2   to place an alien in expedited or full section 1229a removal proceedings, or to return an alien to

3   Mexico pursuant to section 1225(b)(2)(C). And the individual Plaintiffs must raise any claims

4   concerning MPP's impact on their removal proceedings in those proceedings, if at all.

5       **A.  MPP involves matters that are committed to agency discretion by law**

6       This case arises exclusively under the APA, which permits judicial review of final agency

7   action if "there is no other adequate remedy in a court." 5 U.S.C. §§ 702, 704. The APA does not

8   permit judicial review of decisions that "traditionally [] regarded as 'committed to agency

9   discretion,'" *Lincoln v. Vigil*, 508 U.S. 182, 192 (1993) (quoting 5 U.S.C. § 701(a)(2)), like the

10  decision whether to institute enforcement actions, *Heckler v. Chaney*, 470 U.S. 821, 830-32

11  (1985). Such decisions are "presumed immune from judicial review under § 701(a)(2)" as they

12  involve "a complicated balancing of factors . . . peculiarly within [an agency's] expertise," so that

13  there is "no meaningful standard against which to judge the agency's exercise of discretion." *Id.*

14      Under these principles, which are "greatly magnified in the deportation context," *Morales*

15  *de Soto v. Lynch*, 824 F.3d 822, 828 (9th Cir. 2016), this Court cannot review MPP. "[T]he exercise

16  of prosecutorial discretion is a type of government action uniquely shielded from and unsuited to

17  judicial intervention." *Id.* The "initiation or prosecution of various stages in the deportation

18  process," including choosing what type of procedure to "commence," is a "regular" and

19  longstanding example of exercising that discretion. *Reno v. Am.-Arab Anti-Discrimination Comm.*,

20  525 U.S. 471, 483 (1999). Just as "the decision whether or not to prosecute" presumptively "rests

21  entirely in [the prosecutor's] discretion," *United States v. Armstrong*, 517 U.S. 456, 464 (1996),

22  an agency's decision to bring a specific type of civil enforcement action or to invoke a specific

23  enforcement provision—like section 1225(b)(2)(C)—is generally immune from judicial scrutiny.

24  *See Wayte v. United States*, 470 U.S. 598, 607-08 (1985) ("decision to prosecute is particularly ill-

25  suited to judicial review"). Under these principles, the MPP is not judicially reviewable. It

26  articulates guidance for how immigration officers should exercise their prosecutorial discretion

27  over whether to place an alien in expedited or full removal proceedings, and whether to return

28  aliens placed in full proceedings to Mexico pending resolution of those proceedings. It is "shielded

from and unsuited to judicial intervention." *Morales*, 824 F.3d at 828. Indeed, Plaintiffs concede that "it is well established that the government has discretion . . . to place individuals amenable to expedited removal in full removal proceedings instead." Compl. ¶ 73.

Nor does the fact that DHS has issued guidance involving the exercise of prosecutorial discretion make reviewable what is otherwise not. Even where prosecutorial discretion decisions are formalized through guidance, they are not subject to review if the ultimate decision is discretionary. *See, e.g.*, *Morales*, 824 F.3d at 828; *Romeiro de Silva v. Smith,* 773 F.2d 1021, 1025 (9th Cir. 1985). Plaintiffs have not identified anything in the INA or regulations that limit DHS's discretion to choose whether to initiate expedited or full removal proceedings, or to return an alien to Mexico to await full proceedings after choosing to initiate them. Regardless, the question under Section 701(a)(2) is whether the type of agency decision at issue is inherently discretionary in nature, and not whether the agency has articulated general criteria governing the ultimate exercise of discretion. *Romeiro*, 773 F.2d at 1025; *accord Heckler*, 470 U.S. at 824-25; *Lincoln*, 508 U.S. at 184, 188. That is the case here, so Plaintiffs cannot seek review of MPP under the APA.

**B.  The INA bars review of Plaintiffs' claims**

The INA bars the relief Plaintiffs seek, so their claims are unreviewable under the APA. 5 U.S.C. § 701(a)(1) (waiving sovereign immunity only if no "statutes preclude judicial review").

First, the INA provides in 8 U.S.C. § 1252(g) that "[e]xcept as provided in this section . . . no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the [Secretary] to commence proceedings." Section 1252(g) is "designed to give some measure of protection to . . . discretionary determinations" like "the initiation or prosecution of various stages in the deportation process," and so bars claims "attempt[ing] to impose judicial constraints upon prosecutorial discretion." *Reno*, 525 U.S. at 484, 485 & n.9. As Plaintiffs concede, Compl. ¶ 73, the decision to place an alien in expedited or full removal proceedings under MPP is such a "discretionary determination," *Reno*, 525 U.S. at 485, and is an initial "action" "arising from" in the agency's "commence[ment] [of] proceedings" against aliens unlawfully present in the county, 8 U.S.C. § 1252(g).

Second, the decision to return an alien to Mexico under section 1225(b)(2)(C) is precluded

DEFENDANTS' OPPOSITION TO MOTION
FOR TEMPORARY RESTRAINING ORDER
*Innovation Law Lab v. Nielsen*,
Case No. 3:19-cv-0807-RS

8

from judicial review under 8 U.S.C. § 1252(a)(2)(B)(ii). Under that provision, "[n]otwithstanding any other provision of law," "no court shall have jurisdiction to review . . . any other decision or action of the . . . Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the . . . Secretary." This provision applies when the relevant decision is "specified by statute to be in the discretion of the" the Secretary. *Kucana v. Holder*, 558 U.S. 233, 248 (2010). That is the case here. Section 1225(b)(2)(C) provides that the Secretary "*may* return the alien to [a contiguous territory from which they arrived] pending a proceeding under section 1229a of this title." (Emphasis added.) The word "may" denotes discretion and so establishes that section 1252(a)(2)(B)(ii) applies. *See id.*[4]

Third, Plaintiffs' claims are foreclosed by 8 U.S.C. § 1252(a) and (e). Section 1252(a)(2)(A) provides that no court shall have jurisdiction, except as permitted in section 1252(e), to review "a decision by the [Secretary] to invoke the provisions" of section 1225(b)(1)—that is, the provision authorizing expedited removal—or "procedures and policies adopted by the [Secretary] to implement the provisions of section 1225(b)(1)." Section 1252(e)(3) in turn provides that no court, other than the D.C. district court, has jurisdiction to review "determinations under section 1225(b) of this title and its implementation," including "whether such a . . . written policy directive, written policy guideline, or written procedure issued by or under the authority of the [Secretary] to implement such section, is not consistent with applicable provisions of this subchapter or is otherwise in violation of law." 8 U.S.C. § 1252(e)(3)(A). These provisions foreclose this suit. Plaintiffs assert they must be placed in expedited removal proceedings, and therefore section 1225(b)(2)(C) cannot be applied to them. So they challenge—improperly—a decision by the Secretary whether to "invoke the provisions" of section 1225(b)(1) and "procedures and policies . . . implement[ing]" whether that section applies.

Fourth, although the decision to apply section 1225(b)(2)(C) itself is not reviewable, *see supra*, Plaintiffs also challenge the impact of MPP on their removal proceedings, Compl. ¶¶ 115-19 (asserting MPP impacts Plaintiffs' ability to "exercise[e] their right to counsel and prepar[e]

---

[4] If Plaintiffs suggest that because they are not seeking judicial review of an order of removal, section 1252(a)(2)(B)(ii) does not apply, they are mistaken. *See, e.g.*, *Van Dinh v. Reno*, 197 F.3d 427, 431-32 (10th Cir. 1999); *CDI Info. Servs., Inc. v. Reno*, 278 F.3d 616, 620 (6th Cir. 2002).

their cases"). 8 U.S.C. § 1252(b)(9) requires them to raise such claims in those proceedings: "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States . . . shall be available only in judicial review of a final order under this section" and no district court "shall have jurisdiction . . . to review such an order or such questions of law or fact." This means that "any issue—whether legal or factual—arising from any removal-related activity can be reviewed only through the [administrative] process," first in immigration courts, and ultimately in a court of appeals. *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016). And that includes "policies-and-practices challenges," to the process available in the removal proceedings" *See id.* at 1032. Plaintiffs claim that MPP impacts process they are entitled in their removal proceedings is intertwined with the removal proceeding: return is permitted "*pending a proceeding* under section 1229a of this title" (emphasis added), so any impact on those proceedings is a "direct result of the removal proceedings" that is "bound up in and an inextricable part of the administrative process." *J.E.F.M.*, 837 F.3d at 1032-33. But Plaintiffs may not preemptively challenge MPP's impact on their alleged procedural rights in their proceedings before availing themselves "of all administrative remedies, one of which is the [removal] hearing itself." *Xiao v. Barr*, 979 F.2d 151, 153 (9th Cir. 1992).[5]

---

[5] The organizational Plaintiffs lack standing because they lack a "judicially cognizable interest in the prosecution or nonprosecution of another." *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973). The government preserves for appeal the argument that the organizational Plaintiffs lack organizational standing. In *East Bay Sanctuary Covenant v. Trump*, 909 F.3d 1219, 1240 (9th Cir. 2018), the Ninth Circuit held that similarly situated organizational plaintiffs have organizational standing premised on a diversion of resources caused by the challenged government actions. *See id.* at 1242. Defendants respectfully disagree with that ruling. Moreover, unlike in *East Bay*, *East Bay* also held that plaintiffs in that case—organizations whose missions were to assist asylum seekers—were within the zone of interests of the relevant provisions of the INA (8 U.S.C. § 1158). *Id.* at 1244. Defendants also respectfully disagree with that decision, but note that it is distinguishable. The statute at issue in *East Bay*, 8 U.S.C. § 1158, is not at issue here. Rather 8 U.S.C. § 1225(b)(2)(C) is. It is well-settled that to be "aggrieved" for purposes of zone of interests analysis under the APA, "the interest sought to be protected by the complainant [must] be arguably within the zone of interests to be protected or regulated by the statute . . . in question." *Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 396 (1987). The statute at issue here, section 1225(b)(2)(C), does not regulate the organizational plaintiffs' conduct in any way, and does not contain any provision similar to 8 U.S.C. § 1158(d)(4). Indeed, the INA forecloses judicial review of challenges to

## II.     Plaintiffs have not demonstrated a likelihood of success on the merits

Plaintiffs' claims also fail on the merits. The Secretary acted within her broad authority in adopting MPP, MPP is consistent with governing law, the Secretary adequately explained her decision to issue MPP, and MPP was issued consistent with the APA's procedural requirements.

At the outset, none of Plaintiffs' APA claims are cognizable because the MPP does not constitute final agency action. *See* 5 U.S.C. § 704. "[A]gency policy statements . . . are not subject to judicial review under the APA." *Am. Tort Reform Ass'n v. OSHA*, 738 F.3d 387, 395 (D.C. Cir.2013). "The APA only provides for judicial review of 'final agency action.' . . . [S]tatements of policy generally do not qualify because they are not finally determinative of the issues or rights to which [they are] addressed."[6] *Id.* In any event, Plaintiffs' claims also fail on their own merits.

### A.   MPP is consistent with the INA (Count 1)

The MPP is a lawful implementation of DHS's broad prosecutorial discretion over when and how to initiate removal proceedings, 8 U.S.C. § 1225(b)(1), (b)(2)(A), and whether to limit entry into the country during the pendency of those proceedings by "returning" aliens "arriving on land . . . from a foreign territory contiguous to the United States . . . to that territory pending a [removal] proceeding," *id.* § 1225(b)(2)(C). To start, and as Plaintiffs do not dispute, the government has discretion under 8 U.S.C. § 1225 to place applicants for admission who would otherwise be subject to expedited removal proceedings in full removal proceedings under section 1229a. TRO Br. 3; Compl. ¶ 73. And for good reason. It is a well-established principle rooted in prosecutorial discretion that "DHS has discretion to put aliens in section [1229a] removal proceedings even though they may also be subject to expedited removal [proceedings]" under section 1225. *Matter of E-R-M-*, 25 I. & N. Dec. at 523; *see Matter of J-A-B-*, 27 I. & N. Dec. 168, 171 (BIA 2017) (DHS may initiate section 1229a proceedings, where aliens "can pursue . . . asylum claim[s] . . . , in lieu of initiating expedited removal proceedings."). That discretion encompasses, among other things, "seeking expedited removal or other forms of removal by means other than a

---

section 1225(b)(2)(C) by *anyone*, let alone organizations, and so even under the Ninth Circuit's reasoning in *East Bay*, the organizational plaintiffs lack any cause of action.

[6] To the extent the individual Plaintiffs assert the application of MPP to them is final agency action, those claims would be foreclosed by section 1252, as described above, and could not in any event serve as the basis for any prospective relief other than as to individual Plaintiffs. *See infra*.

formal removal proceeding in immigration court" or "institut[ing] [normal] immigration removal proceedings." *Villa-Anguiano v. Holder*, 727 F.3d 873, 878 (9th Cir. 2013).

This concession is fatal to Plaintiffs' claim that MPP violates section 1225(b)(2)(C), as it is the authority in section 1225(b)(2) that is being exercised, as a matter of discretion, in making that determination. If DHS may choose between instituting expedited removal proceedings under section 1225(b)(1) or full removal proceedings under sections 1225(b)(2)(A) and 1229a when aliens are subject to both provisions, then Plaintiffs lack any basis to contend that MPP is not statutorily authorized. If Plaintiffs "arriv[ed] on land . . . from a foreign territory contiguous to the United States," then DHS may initiate removal proceedings under section 1229a, and "return [them] to that territory pending [their] proceeding." 8 U.S.C. § 1225(b)(2)(C).

Plaintiffs have no answer to this straightforward textual analysis. Instead, they argue that section 1225(b)(2)(C) is categorically inapplicable to aliens who *could* be processed for expedited removal under section 1225(b)(1) because section 1225(b)(2)(B) states that the provision should not apply to an alien "to whom paragraph [8 U.S.C. § 1225(b)(1)] applies." *See* TRO Br. 6-7 (citing 8 U.S.C. § 1225(b)(2)(B), (C)). But section 1225(b)(1) and 1225(b)(2) both provide that their provisions "shall" apply. Section 1225(b)(1) says that "[i]f an immigration officer determines that an alien . . . who is arriving in the United States . . . is inadmissible under section 1182(a)(6)(C) or 1182(a)(7) of this title, the officer shall order the alien removed from the United States without further hearing or review." Section 1225(b)(2)(A) says that "if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." Under the plain statutory text, then, Plaintiffs and all aliens similarly situated are potentially subject to *both* section 1225(b)(1) and 1225(b)(2)(A). Plaintiffs, however, would have this Court rewrite section 1225(b)(2)(A) to add language providing that if an alien *could* be subject to section 1225(b)(1), they cannot be subject to 1225(b)(2)(A). That is at odds with the statutory text, with Plaintiffs' correct concession that Section 1225(b)(2)(A) authorizes an alien potentially subject to expedited removal to be placed in normal removal proceedings, and with controlling law on DHS's discretion. *Matter of J-A-B-*, 27 I. & N. Dec. at 171; *Matter of E-R-M-*, 25 I&N Dec. at 523.

DEFENDANTS' OPPOSITION TO MOTION
FOR TEMPORARY RESTRAINING ORDER
*Innovation Law Lab v. Nielsen*,
Case No. 3:19-cv-0807-RS

12

Indeed, the agency's discretion to choose between expedited and full removal proceedings is embedded in the statutory scheme. Section 1225(a)(1) broadly provides that *any* "alien present in the United States who has not been admitted or who arrives in the United States . . . shall be deemed for purposes of this chapter an applicant for admission." Section 1225(b)(2)(A) in turn provides that such "applicants for admission . . . shall be detained for a proceeding under" section 1229a if not otherwise "entitled to be admitted." Section 1225(b)(2)(B), titled "Exception," provides that section 1225(b)(2)(A) "shall not apply" to crewmen, stowaways, or aliens "to whom paragraph (1) applies," namely, aliens placed in expedited removal proceedings. *See E-R-M-*, 25 I. & N. Dec. at 520. This exception means "that these three classes of aliens, including those subject to expedited removal under section [8 U.S.C. 1225](b)(1)(A)(i), are not entitled to a [section 1229a] proceeding, not that these classes of aliens may not be placed in such proceedings." *Id*. That reading is further confirmed by the fact that section 1225(a)(2) "prohibits stowaways, but not the other two classes of aliens excepted under section [1225(a)(2)(B)]," including aliens who could be subject to § 1225(b)(1), "from being placed in section [1229a] proceedings."[7] *Id*.

Plaintiffs nevertheless contend that Congress intended "to exempt noncitizens subject to expedited removal from the contiguous territory return provision." TRO Br. 7-8. That is true with respect to aliens who are actually placed in expedited removal proceedings (and thus *subject* to those proceeding). But as just explained, the statutory language and Board precedent defeat the contention that this extends to any alien who theoretically *could be* subject to such proceedings. And nothing in the history of section 1225(b)(2)(C)'s passage support the claim. Prior to 1996, DHS's predecessor would, in its discretion, "require [certain arriving aliens] to remain outside the United States pending his or her exclusion hearing," rather than either detain them or parole them

---

[7] The stowaway provision shows that when Congress wanted to preclude an alien from being placed in § 1229a proceedings, it knew how. Moreover, if Congress meant to adopt Plaintiffs' reading, it would not have specified that there is no judicial review over "a decision by the [Secretary] to invoke the provisions" of section 1225(b)(1) or "the application to such section to individual aliens." *Id*. § 1252(a)(2)(A). Plaintiffs' reading also imputes to Congress the implausible intent to confine section 1225(b)(2)(C)'s applicability to the inadmissible aliens arriving by land who are in possession of documents necessary for admission or who did not engage in fraud. Nothing in section 1225(b)(1) suggests Congress envisioned such an extremely limitation of section 1225(b)(2)(C) that advantages aliens arriving without valid documents over others.

into the United States, if they had arrived at a land port-of-entry. *Matter of Sanchez-Avila*, 21 I. & N. Dec. 444, 450 (BIA 1996). Like MPP, the pre-1996 policy did not distinguish between the reasons why an arriving alien was seeking admission—e.g., to seek asylum or for some other purpose. *See id.* at 449-50. Indeed, as the government explained at the time, a policy foreclosing the exercise of discretion to return aliens to Canada or Mexico, requiring the government to only detain or parole arriving aliens, "would result in a significant burden on tax payers as a result of increased detention, meaningful loss of control over the borders as a result of liberal granting of parole, and the virtual death of exclusion as a means of immigration control." *Id.* at 450. Moreover, if choosing between "custodial detention or parole[] is the only lawful course of conduct, the ability of this nation to deal with mass migrations" would be severely undermined. *Id.* at 451. In *Sanchez-Avila*, although the Board recognized these policy concerns, *see id.* at 450-51, it disallowed the return policy because it lacked statutory authorization. *See id.* at 464-66. Congress responded immediately –by enacting section 1225(b)(2)(C) in 1996, rejecting *Sanchez-Avila*, adopting in full the pre-1996 policy and providing the explicit authorization that the Board had held to be lacking. Thus it was Congress's intent to provide authority for DHS to detain, parole, or return aliens like plaintiffs. *See Nunez-Reyes v. Holder*, 646 F.3d 684, 711 (9th Cir. 2011) ("when Congress adopts an agency interpretation, [it] intends the agency construction to be incorporated into the statute").

Finally, although Plaintiffs cursorily assert that Section 1225(b)(2)(C) may not be applied to them because their "NTAs apparently have not yet been filed with the immigration court, and thus no proceedings are officially pending," TRO Br. 2, the NTAs for all Plaintiffs have been filed and thus removal proceedings are formally pending. *See* 8 C.F.R. § 1003.14(a); Mot. to Seal, Ex. A. *See Karingithi v. Whitaker*, 913 F.3d 1158, 1159-62 (9th Cir. 2019) (rejecting this argument).

### B. MPP is consistent with *non-refoulement* obligations (Counts 4-6)

Plaintiffs also claim that the MPP's criteria for assessing *non-refoulement* for purposes of exercising prosecutorial discretion violates the withholding of removal statute and international law, and is a departure from prior policy. TRO Br. 9-13. They are wrong.

To start, Plaintiffs have no cause of action or claim to bring these challenges. Plaintiffs invoke customary international law, but "where a controlling executive or legislative act does exist,

customary international law is inapplicable." *Galo-Garcia v. I.N.S.*, 86 F.3d 916, 918 (9th Cir. 1996). Section 1225(b)(2)(C) is such a controlling "legislative act," expressly authorizing the actions that Plaintiffs claim violate international law, so there can be no cause of action because "customary international law does not apply." *Cortez-Gastelum v. Holder,* 526 F. App'x 747, 749 (9th Cir. 2013).[8] Likewise, Plaintiffs' invocation of the 1951 Refugee Convention, its 1967 Protocol, and the Convention Against Torture (CAT) cannot, as a matter of law, provide the basis for any cause of action under the APA or otherwise. These non-self-executing treaties do not confer judicially enforceable rights. *Sosa v. Alvarez-Machain*, 542 U.S. 692, 735 (2004). And Plaintiffs may not assert a private cause of action where Congress has provided for judicial review of withholding-of-removal and CAT claims exclusively through specific administrative mechanisms, but provided no such review over a return decision. *See* 8 U.S.C. § 1252(a)(4), (b)(9).

Even if Plaintiffs had a cognizable cause of action, it would fail on the merits. Plaintiffs assert that MPP's *non-refoulement* criteria are inconsistent with 8 U.S.C. § 1231(b)(3) because it does not provide for IJ review of the question of "whether an individual is 'more likely than not' to be persecuted or tortured in Mexico." TRO Br. 9. But 8 U.S.C. § 1231(b)(3)—the withholding *of removal* provision—has no application to section 1225(b)(2)(C)—the contiguous territory *return* provision.[9] Rather, section 1231(b)(3) codifies a form of protection from *removal* available in *removal proceedings* and only *after* an alien is found removable. *See id.*; 8 C.F.R. § 1208.16(a). Consideration of such protection occurs only within the confines of—and *after* receiving, *see Matter of I-S-*, 24 I. & N. Dec. 432, 434 (BIA 2008)—an "exclusion, deportation, or removal proceeding." 8 C.F.R. § 1208.16(a). An alien subject to MPP is not issued a final order of

---

[8] Plaintiffs invoke the Alien Tort Statute, Compl. ¶ 10, but that is "strictly jurisdictional," and requires pleading a "tort . . . in violation of the law of nations," 28 U.S.C. § 1350, comparable to three international law wrongs from the 18th century: "violation of safe conducts, infringement of the rights of ambassadors, and piracy." *Sosa*, 542 U.S. at 721. Plaintiffs plead no such tort.

[9] The INA uses *return* and *removal* distinctly. *Compare, e.g.*, 8 U.S.C. §§ 1225, 1226, 1231 *passim* (using "remove"), *with id.* §§ 1225(b)(2)(C), 1231(c)(3)(A)(ii)(II), 1283 (using "return"), *and* 8 U.S.C. § 1158(c)(1)(A), (3) (directing the Executive not to "remove or return" certain aliens). The distinction is meaningful; the INA establishes consequences for removals that it does not establish for returns. *See, e.g.*, *id.* §§ 1182(a)(9) (making inadmissible certain aliens previously *removed* but not aliens *returned*), 1326 (making reentry of previously *removed* aliens a criminal offense).

exclusion, deportation, or removal. Rather, such an alien is subject to removal proceedings in which he may seek such relief before an IJ at the appropriate time. That section 1231(b)(3) provides for such protection *at the conclusion of* removal proceedings does not mean that that same relief is available when DHS implements section 1225(b)(2)(C)—to the contrary, that provision does not require that *non-refoulement* concerns be addressed in a manner that is subject to *judicial* review, just as the expedited removal statute does not provide for any such review of *non-refoulement* determinations made during those proceedings. *See* 8 U.S.C. § 1252(a)(2)(A)(iii).

For the same reason, Plaintiffs' appeal to the procedures Congress established for credible and reasonable fear screenings, and the regulations implementing those provisions, is unavailing. TRO Br. 10-11 (citing 8 C.F.R. §§ 208.30, 208.31, 235.3, 1208.30). Nothing in those statutes or regulations limits the government's authority under section 1225(b)(2)(C), and those screening procedures to not apply to a discretionary return determination. And Plaintiffs' reading is irreconcilable with Congress's decision to direct the agency's establish certain procedures for withholding-of-removal claims and both forms of screening, but not for section 1225(b)(2)(C). *See The Lands Council v. McNair*, 537 F.3d 981, 993 (9th Cir. 2008) (en banc) (court may not "impose 'procedural requirements [not] explicitly enumerated in the pertinent statutes'").

Plaintiffs' suggestion that MPP is an unexplained departure from prior policies, TRO Br. 11-13, is similarly unavailing. As Plaintiffs acknowledge, the government has previously exercised its discretionary authority under section 1225(b)(2)(C) as a matter of discretion, Compl. ¶¶ 92-94, so there can be no "departure" from or "inconsistency" with prior policy. The government has used this authority throughout the history of the INA as a matter of discretion, as *Sanchez-Avila* shows, and Congress ratified that practice and codified it as a matter of prosecutorial discretion. Plaintiffs' only response is to again invoke section 1231(b)(3), which they contend is not being complied with or departure from which has not been explained. TRO Br. 12-13. But as explained, those provisions—including those relating to withholding of removal and credible- and reasonable-fear screenings—do not apply to determinations under section 1225(b)(2)(C). Congress did not require such screening when the Executive returns individuals to countries on our borders, and the government cannot possibly have an obligation to import them here or explain why Congress chose

DEFENDANTS' OPPOSITION TO MOTION
FOR TEMPORARY RESTRAINING ORDER
*Innovation Law Lab v. Nielsen*,
Case No. 3:19-cv-0807-RS

16

not to provide under section 1225(b)(2)(C). The government's "failure" to do so in no way implicates an "unacknowledged departure from" or inconsistency with prior agency practice.

Finally, although the government is not bound by *non-refoulement* obligations in section 1225(b)(2)(C) determinations, the MPP establishes procedures to satisfy our international obligations. If an alien amenable to processing under section 1225(b)(2)(C) expresses any fear of persecution or torture if returned to Mexico pending removal proceedings, that alien will be referred to an asylum officer who will consider various factors in determining whether the alien is more likely than not to face persecution or torture in Mexico. That officer also will take into account Mexico's own commitments to ensure that no alien returned to Mexico pursuant to the MPP will face harm during their time in that country. AR 318. If USCIS does make a positive fear determination, then the alien will not be eligible for MPP. This approach accounts for any fears of a temporary return to Mexico pending completion of removal proceedings, and would meet any *non-refoulement* obligation that could apply to the "return" determination under section 1225(b)(2)(C). *Cf. Trinidad y Garcia v. Thomas*, 683 F.3d 952, 957 (9th Cir. 2012) (en banc).

### C.  MPP satisfies the APA's reasonableness requirement (Count 3)

Plaintiffs' also claim that MPP is "arbitrary and capricious because the policy's design is not rationally connected to its purported justifications." TRO Br. 15. That claim lacks merit.

Review under the arbitrary-and-capricious standard is limited and "highly deferential, presuming the agency action to be valid." *Sacora v. Thomas*, 628 F.3d 1059, 1068 (9th Cir. 2010). Courts may not substitute their "judgment for that of the agency" and "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Gill*, 913 F.3d at 1187-88. It is "reasonable for the [agency] to rely on its experience" to arrive at its conclusions, even if those conclusions are not supported with "empirical research." *Sacora*, 628 F.3d at 1068-69. The agency need only articulate "a rational connection between the facts found and the choice made," *Motor Vehicle*, 463 U.S. at 43, and Plaintiffs cannot show a likelihood of success through non-record materials. *See  Inland Empire Pub. Lands Council v. Schultz*, 992 F.2d 977, 981 (9th Cir. 1993).[10]

---

[10] Plaintiffs offer data purporting to undermine the rationales for MPP. TRO Br. 18-19. An APA claim, however, is confined to the administrative record. *See* Mot. to Strike.

Plaintiffs have failed to establish that MPP is arbitrary and capricious. Plaintiffs' criticisms of MPP amount to factual and policy disagreements that do not suffice to set aside agency action. The Secretary explained why she instructed immigration officers to begin using their section 1225(b)(2)(C) authority: the arrival of thousands of aliens per day at the southern border coupled with a large increase in the number of family units, has overwhelmed the immigration system and caused a shortage of available detention space, resulting in the release of many aliens into the interior, never to be seen again. AR 7-18, 418, 431 572-73, 575, 728, 730, 733, 742, 749, 759-65. As the Secretary explained, given these problems, immigration officers may elect to require aliens to await their removal proceeding in Mexico, as Congress intended and expressly authorized. *Id.* The Secretary explained that re-calibrating incentives for migrants in this way may decrease false asylum claims and allow immigration officers to better deploy scarce security and detention resources at the border where desperately needed. *Id.*; *see* AR 731 (smugglers "now tell potential customers the Americans do not jail parents who bring children"). The Secretary's explanation demonstrates "a rational connection between the facts found and the choice made," *Motor Vehicle*, 463 U.S. at 43, and that ends the inquiry.

Plaintiffs' arguments to the contrary lack merit and amount to mere policy disagreements. First, Plaintiffs assert that using section 1225(b)(2)(C) will not deter aliens from "not appear[ing] at their immigration court hearings" because MPP does not require officers to screen for flight risk. TRO Br. 16. But nothing in section 1225(b)(2)(C) requires DHS to consider flight risk; indeed, the very purpose of the provision was to adopt DHS's predecessor's prior policy of returning aliens when detention space was not available, rather, as noted, than release them into the country pending proceedings. Indeed, requiring aliens to await their court hearing outside of the country by definition reduces flight risk, because aliens cannot abscond into the interior if they are not allowed to enter the United States. Courts have upheld such an agency determination as rational.[11] *See, e.g.*, *Amanullah v. Nelson*, 811 F.2d 1, 17 (1st Cir. 1987) (policy designed to

---

[11] Plaintiffs suggest DHS could assess flight risk through the parole mechanism under 8 U.S.C. § 1182(d)(5)(A), which allows DHS to release aliens otherwise subject to mandatory detention during the pendency of proceedings on a "case-by-case basis for . . . significant public benefit." TRO Br. 16. But that authority exists under a separate statute and says nothing about whether DHS must assess flight risk when deciding to exercise its discretion under section 1225(b)(2)(C).

prevent release of aliens into the interior pending removal procedures "valid on their face and rationally related to the accomplishment of the Service's legitimate mission"). Plaintiffs' claim to the contrary is no more than a claim that the MPP could have been differently tailored, but that is no basis for disagreeing with the agency's policy judgment.

Plaintiffs next assert that the MPP is irrational because one of its stated goals, "confront[ing] the illegal immigration crisis facing the United States," conflicts with the right of asylum seekers to apply for asylum under section 1158(a). TRO Br. 17. But nothing about MPP prevents aliens from applying for asylum. Indeed, each individual Plaintiffs in this case may do so in their removal proceeding. Moreover, Plaintiffs ignore that another goal is to deter fraudulent asylum claims, and to ensure aliens making such claims will not disappear into the interior. AR 11-18, 38, 49. 620-27. Again, Courts routinely find such reasoning rational. *See supra*.

Plaintiffs also speculate that the MPP is "likely" to incentivize entry between ports of entry, TRO Br. 17, and so must be irrational because one stated goal of MPP is to "assist legitimate asylum-seekers." *Id.* But the Secretary concluded that requiring some subset of aliens in removal proceedings to wait in Mexico would discourage non-bona fide asylum seekers from making the lengthy journey to the U.S. border or absconding into the interior, because if aliens know that they will not be released into the interior pending their proceeding, they are less likely to assert fraudulent asylum claims. AR 11-17; *see also* AR 44, 49, 418, 562, 575, 625, 728,730, 733, 742, 749, 759-65. While Plaintiffs may have reached a different conclusion, that conclusion is committed to the political branches and entitled to deference. *See Munaf*, 553 U.S. at 701-02. Plaintiffs further assail the MPP's concern with "assist[ing] legitimate asylum-seekers" because they are "forced to return to Mexico" where they "face extreme danger," TRO Br. 17, overlooking the fact that the MPP assessment process covers such concerns. Indeed, DHS is entitled to rely on the Mexican government's representations that aliens subject to MPP will "receive appropriate humanitarian protections" in Mexico, AR 8-9, 11-15.

Finally, Plaintiffs assert that DHS's "justifications" are "based on false premises" because many asylum seekers are ultimately granted asylum. TRO Br. 18-19. But that some subset of aliens may ultimately be granted asylum does not undercut the extensive concerns raised by other aliens

who fail to appear or are not legitimately seeking asylum. Indeed, the Secretary had before her ample evidence of aliens failing to secure asylum or absconding into the interior, *see e.g.*, AR 38, 53 (17% grant rate); 575, 620 (absconsion).[12] Plaintiffs also attack the methodology used to identify "individuals with legitimate asylum claims," *id.*, but DHS explained the sources of its data, AR 37-57, 418, 620, and is entitled to use the methodology it chooses, which Plaintiffs may not second-guess through an APA challenge. *See Bear Lake Watch, Inc. v. F.E.R.C.*, 324 F.3d 1071, 1077 (9th Cir. 2003). It was reasonable for DHS to rely on its extensive "experience" to conclude that fraudulent asylum claims are a serious problem—which here, was grounded in empirical research. *Sacora*, 628 F.3d at 1068-69.

### D.  MPP satisfies the APA's procedural requirements (Count 2)

Plaintiffs' procedural APA arguments also lack merit. Although the APA generally requires that agencies give notice of proposed rules to the public and provide interested persons with an opportunity to comment on the proposal, 5 U.S.C. § 553(b)-(c), these requirements do not apply to "general statements of policy." *Id*. § 553(b)(A). That is especially so with guidance implementing prosecutorial discretion. *See, e.g.*, *Regents*, 908 F.3d at 514.

A general statement of policy "advise[s] the public prospectively of the manner in which the agency proposes to exercise a discretionary power." *Lincoln*, 508 U.S. at 197. "When officials or agencies have been delegated discretionary authority over a given area, such as the [Secretary] and [DHS] in the field of immigration, such policy statements . . . inform[] the public concerning the agency's future plans and priorities for exercising its discretionary power," and "'educate' and provide direction to the agency's personnel in the field, who are required to implement its policies and exercise its discretionary power in specific cases." *Mada-Luna v. Fitzpatrick*, 813 F.2d 1006, 1013 (9th Cir. 1987). Policy statements bind neither the public nor the agency, and "leave[] the agency, or its implementing official, free to exercise discretion to follow, or not to follow, the announced policy in an individual case." *Id*. By contrast, a "substantive rule" subject to notice-and-comment rulemaking is one that is "finally determinative of the issues or rights to which it is

---

[12] Even Plaintiffs' own (inappropriate) evidence shows many aliens seeking asylum never show up for court and only 25% percent of asylum-seekers ultimately are granted asylum. TRO Br. 19.

addressed," *Pacific Gas & Elec. Co. v. FPC*, 506 F.2d 33, 38 (D.C. Cir. 1974), and are "binding" and have the "force of law." *Chrysler Corp. v. Brown*, 441 U.S. 281, 302 (1979).

MPP's guidance is a statement of policy, not a substantive rule requiring notice-and-comment procedures. Each of the operative documents under MPP is forward-looking and emphasizes the prosecutorial discretion that immigration officers retain at each step in the process, and may exercise on a case-by-case basis. AR 1-2, 9. MPP does not categorically require DHS officers to return certain aliens. It simply provides criteria to apply in choosing between what form of immigration proceeding to initiate and whether, if that proceeding is a full removal proceeding, to return an alien under section 1225(b)(2)(C). And, by its terms, MPP "does not create any right or benefit, substantive or procedural, enforceable at law." AR 10. Nothing in the MPP guidance evidences an "inten[t] to be bound." *Municipality of Anchorage v. United States*, 980 F.2d 1320, 1325 (9th Cir. 1992), and line officers "preserv[e] their flexibility and their opportunity to make individualized determination[s]." *Mada*, 813 F.2d at 1014; *see Morales*, 824 F.3d at 827 (memoranda that "speak only to the exercise of prosecutorial discretion . . . do not create or modify the law to be applied by this or any other court"). MPP is therefore a paradigmatic example of a general statement of policy. *See Mada*, 813 F.2d at 1014.

Plaintiffs claim that the MPP's *non-refoulement* screening process is a substantive rule because it is a "mandatory" rule whereby any alien who expresses a fear of harm in Mexico "should" be referred to USCIS for an interview. TRO Br. 14. But that a policy instructs officials to take action on a case-by-case basis in no way requires that officers make a specific decision in *each* case. Indeed, as MPP makes clear, although an alien is eligible to be processed under MPP, it does not mean that he will be; officers, with appropriate supervisory review, retain discretion to process aliens for MPP or under other procedures (e.g., expedited removal), on a case-by-case basis." AR 1. And even though if the officer assesses that an alien is "more likely than not to face persecution or torture in Mexico, the alien may not be processed for MPP," AR 2, "[o]fficers retain all existing discretion to process (or re-process) the alien for any other available disposition, including expedited removal, NTA, waivers, or parole." *Id.* Thus, under MPP, officials retain discretion "to consider the individual facts in each case" when deciding whether to process

Plaintiff under MPP or another form of removal procedures. *Mada-Luna*, 813 F.2d at 1017.

Plaintiffs' remaining arguments lack merit. Plaintiffs assert that the MPP is a "marked departure from the procedures set forth in existing regulations . . . to implement its *nonrefoulement* obligations," TRO Br. 14, because under 8 U.S.C. § 1231(b)(3) "an asylum officer is tasked with making the ultimate withholding determination." *Id*. at 9. But as explained, section 1231(b)(3) has no application to section 1225(b)(2)(C). In any event, asylum officers do not make any "ultimate[]" determinations under the MPP. They simply conduct an assessment that is then reviewed by CBP officers, who exercise their discretion on how to proceed. The guidance is clear: a "positive MPP assessment" by an asylum officer does "not [mean that USCIS is] granting withholding of removal . . . . The purpose of the assessment is simply to assess whether the alien meets one of the eligibility criteria under the MPP, pursuant to Section 235(b)(2)(C)." AR 2274.[13]

Plaintiffs also cite DHS's publication in its "Unified Agenda of Federal Regulatory and Deregulatory Actions" an intention to issue a rule involving section 1225(b)(2)(C). TRO Br. 14. But the Agenda is a non-binding, information document, and the fact that an agency might have considered promulgating a formal rule says nothing about whether MPP is policy guidance. *See Romeiro*, 773 F.2d at 1025. Plaintiffs also assert that because they believe MPP involves issues "of public interest," notice and comment should be required. TRO Br. 15. But that is not how the APA works—statements of policy, like MPP, do not require notice and comment no matter how keen any member of the public's interest is in the subject matter. *See* 5 U.S.C. § 553(b)(A).

## III.   The other injunction factors foreclose injunctive relief

The other factors support denying relief. An injunction would irreparably harm the United

---

[13] Plaintiffs contend that the MPP does not provide any "minimal procedural safeguards," TRO Br. 10. But MPP provides safeguards and assessment procedures for aliens who assert at any point in the process that they will more likely than not suffer persecution or torture in Mexico. *See* AR 9 (Mexico "will ensure that the measures taken by each government are coordinated at a technical and operational level in order to put mechanisms in place that allow migrants ... access without interference to information and legal services, and to prevent fraud and abuse."); AR 15 ("Aliens subject to MPP will be afforded the same right [to counsel] and provided with a list of legal services providers in the area which offer services at little or no expense to the migrant."); AR 2 ("Subsequent Claims of Fear in Mexico: If an alien in the MPP process affirmatively states a fear of return to Mexico . . . the alien will be referred to USCIS to undergo an assessment").

DEFENDANTS' OPPOSITION TO MOTION
FOR TEMPORARY RESTRAINING ORDER
*Innovation Law Lab v. Nielsen*,
Case No. 3:19-cv-0807-RS

22

States and the public. It is in the public interest to protect the country's borders and enforce its immigration laws, including section 1225(b)(2)(C). *See Landon v. Plasencia*, 459 U.S. 21, 34 (1982). The Executive Branch has identified a crisis at the southern border. The number of aliens arriving in the United States seeking to apply for asylum exceeds the capacity of the Executive to detain consistent with Congress's statutory mandate and is continuing to rise sharply. As a result, many aliens who would otherwise be detained have been released into the United States and many thousands of such aliens fail to appear for their hearings. AR 7-18, 418, 575, 620. The problem has gotten worse, with family-unit applicants for admission at an all-time high, and border apprehensions generally increasing by the month. AR 430, 575; *see also* AR 269, 296, 324-27, 382-86. The public interest is served by discouraging this state of affairs, and section 1225(b)(2)(C) provides a lawful mechanism for serving that interest. And the public interest is undermined by enjoining the Executive from utilizing statutory authority to combat the growing crisis as it deems necessary. *See Adams v. Vance*, 570 F.2d 950, 954 (D.C. Cir. 1978).

Against this, Plaintiffs fail to show any "immediate threatened injury." *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988). MPP does not alter the statutory rights of aliens seeking asylum or otherwise limit the availability of relief from removal. Each individual Plaintiff was processed consistent with applicable law, had the opportunity to assert a fear of return to Mexico, Mot. to Seal, Ex. A, and has an ongoing opportunity to assert a fear of harm in Mexico. AR 2 ("Aliens who return to the POE for their scheduled hearing and affirmatively state a fear of return to Mexico will be referred to USCIS for screening prior to any return to Mexico"). The bare fact that Mexico might have a higher crime right cannot support a showing of harm. *See East Bay*, 909 F.3d at 1241, Plaintiffs' claim that Mexico could return them to their country of origin does not constitute an imminent harm traceable to Defendants, *see id.* at 1241, and so Plaintiffs cannot rely on those allegations to demonstrate irreparable harm. *See Associated Gen. Contractors of Cal., Inc. v. Coal. for Econ. Equity*, 950 F.2d 1401, 1410 (9th Cir. 1991). That is especially so where Mexico itself has provided assurances to the United States that it will protect aliens subject to MPP. AR 7-18. Regardless, as Plaintiffs concede, TRO Br. 22, many of the individual Plaintiffs have lawful status in Mexico through Mexico's program of providing temporary visas and work

authorization and therefore cannot be returned to their native lands by Mexico. *See, e.g.* TRO Br. 22; AR 319-21 (aliens subject to MPP will receive Mexican humanitarian visas). Plaintiffs' assertion that they cannot "meaningful[ly] participat[e] in the asylum process," TRO Br. 21, cannot justify an injunction where the INA authorizes the action challenged. *See East Bay*, 909 F.3d at 1241. And nothing in the MPP prevents Plaintiffs from accessing legal counsel or availing themselves of counsel at no expense to the government during their removal proceedings.[14]

The organizational Plaintiffs' alleged harms fare no better. TRO Br. 23-24. "Mere injuries, however substantial, in terms of money, time and energy . . . are not enough." *L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1202 (9th Cir. 1980). Moreover, the loss of an opportunity to comment, TRO Br. 23, on a policy document, and even a substantive rule, is not sufficient. *See Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 545 (1987). A putative procedural violation does not produce irreparable injury because the violation has already occurred and can "be remedied by a decision on the merits" (by requiring the agency to re-do the decision using the proper procedures). *See Elk Assoc. Funding Corp. v. U.S. Small Bus. Admin.*, 858 F. Supp. 2d 1, 31 (D.D.C. 2012). Thus, "irreparable injury cannot stand on procedural violation alone." *Am. Ass'n for Homecare v. Leavitt*, 2008 WL 2580217, *5 (D.D.C. June 30, 2008).[15]

## IV.   Any Interim Relief Must Be Sharply Limited.

Even if Plaintiffs were afforded relief, they should not be granted a nationwide injunction. First, any injunction at most must be limited MPP's application to plaintiffs. Under Article III, "[a] plaintiff's remedy must be tailored to redress the plaintiff's particular injury." *Gill v. Whitford*, 138 S. Ct. 1916, 1934 (2018). And the rule in equity is that injunctions "be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994). Here, any relief must be tailored to remedying the individual Plaintiffs' putative harms stemming from their return to Mexico from San Ysidro or the

---

[14] AR 15 ("Aliens subject to MPP will be afforded the same right [to counsel] and provided with a list of legal services providers in the area which offer services at little or no expense to the migrant."); AR 9 ("[Mexico] will ensure [coordination] . . . in order to . . . allow migrants . . . access without interference to information and legal services").

[15] Plaintiffs' one-month delay in seeking preliminary relief "undercut[s] [a] claim of irreparable harm." *See Garcia v. Google, Inc.*, 786 F.3d 733, 746 (9th Cir. 2015) (en banc).

organizational Plaintiffs' alleged harms, *see L.A. Haven Hospice, Inc. v. Sebelius*, 638 F.3d 644, 664 (9th Cir. 2011). As the Ninth Circuit explained in *East Bay*, the parties cannot invoke the rights of individual aliens not part of this lawsuit, 909 F.3d at 1240-41, and so an injunction premised on such injuries would be inappropriate. *See Zepeda v. INS*, 753 F.2d 719, 728 n.1 (9th Cir. 1983). Here, an injunction limited to the individual plaintiffs and any bona fide clients the organizational Plaintiffs identify who were processed in San Ysidro will be sufficient to "provide complete relief to them." *California v. Azar*, 911 F.3d 558, 584 (9th Cir. 2018) (reversing nationwide injunction on that basis); *City & Cty. of San Francisco v. Trump*, 897 F.3d 1225, 1244–45 (9th Cir. 2018) (vacating nationwide injunction barring enforcement of executive order beyond the parties before the court); *L.A. Haven Hospice*, 638 F.3d at 665 (similar, regulation).

Second, 8 U.S.C. § 1252(f)(1) provides that "no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of [8 U.S.C. §§ 1221-1231], other than with respect to the application of such provisions to an individual alien against whom proceedings . . . have been initiated." Section 1252(f)(1) bars "injunctive relief against the operation of §§ 1221-1231" with a narrow carve-out that applies to "individual cases." *Reno*, 525 U.S. at 481-82. Plaintiffs ask this Court to enjoin DHS guidance announcing DHS's utilization of section 1225(b)(2)(C) as written and to require DHS to comply with extra-statutory procedures section 1225(b)(2)(C) does not require. That is no different than seeking to enjoin the agency's use of section 1225(b)(2)(C) writ large. *See Hamama v. Adducci*, 912 F.3d 869, 879-80 (6th Cir. 2018) (order "creat[ing] out of thin air a requirement . . . that does not exist in the [challenged] statute" and "adopt[ing] new standards that the government must meet" violates section 1252(f)). To the extent relief is permitted at all, it is limited to individual aliens' cases or a petition for review.[16]

## CONCLUSION

For these reasons, the Court should deny the motion for preliminary relief.

---

[16] If Plaintiffs seek a declaration that aliens eligible for expedited removal may not be placed in full removal proceedings, that relief is not available in any court, *see* 8 U.S.C. § 1252(a)(2)(B)(ii), (g), but even were that not so, an order requiring an alien be placed in expedited removal proceedings would be foreclosed by 8 U.S.C. § 1252(e)(3)(A). *See supra*.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

WILLIAM C. PEACHEY
Director

By: /s/ *Erez Reuveni*
EREZ REUVENI
Assistant Director
Office of Immigration Litigation
U.S. Department of Justice, Civil Division
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel: (202) 307-4293
Email: Erez.R.Reuveni@usdoj.gov

PATRICK GLEN
Senior Litigation Counsel

ARCHITH RAMKUMAR
Trial Attorneys

Dated: March 1, 2019                    *Attorneys for Defendants*

1

## **CERTIFICATE OF SERVICE**

2     I hereby certify that on March 1, 2019, I electronically filed the foregoing document with

3   the Clerk of the Court for the United States Court of for the Northern District of California by

4   using the CM/ECF system. Counsel in the case are registered CM/ECF users and service will be

5   accomplished by the CM/ECF system.

6

7                         By: */s/ Erez Reuveni*
                              EREZ REUVENI
8                             Assistant Director
                              United States Department of Justice
9                             Civil Division

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28