JOSEPH H. HUNT
*Assistant Attorney General*
WILLIAM C. PEACHEY
*Director*
Office of Immigration Litigation
District Court Section
EREZ REUVENI
*Assistant Director*
PATRICK GLEN
*Senior Litigation Counsel*
T. BENTON YORK
*Trial Attorney*
ARCHITH RAMKUMAR
*Trial Attorney*
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel: (202) 598-8060
Archith.Ramkumar@usdoj.gov

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Innovation Law Lab, *et al.*,<br>Plaintiffs,<br><br>v.<br><br>Kirstjen Nielsen, *et al.*,<br><br>Defendants. | Civil Action No. 3:19-cv-00807-RS<br><br>**DEFENDANTS' MOTION TO STRIKE EXTRA-RECORD EVIDENCE; AND MEMORANDUM AND POINTS OF AUTHORITY IN SUPPPRT OF THEIR MOTION TO STRIKE**<br><br>Hearing respectfully requested for date to be set at the Court's convenience. |

## TABLE OF CONTENTS

**INTRODUCTION.......... 0**

**BACKGROUND.......... 3**

**STANDARDS GOVERNING APA REVIEW.......... 4**

**ARGUMENT.......... 6**

**I. Plaintiffs Have Not Established that the Record Is Incomplete or that Their Extra-Record Evidence Meets an Exception to the Record Rule.......... 7**

A. Plaintiffs May Not Submit Extra-Record Evidence.......... 7

B. All of Plaintiffs' Extra-Record Evidence Submitted in Support of Their Merits Arguments or Issues Not Properly Before the Court Should Be Struck.......... 12

**CONCLUSION.......... 13**

## TABLE OF AUTHORITIES

### CASES

*Am. Bioscience, Inc. v. Thompson*, 243 F.3d 579 (D.C. Cir. 2001) ........ 6

*Asarco, Inc. v. EPA*, 616 F.2d 1153 (9th Cir. 1980) ........ 5, 8

*Bar MK Ranches v. Yuetter*, 994 F.2d 735 (10th Cir. 1993) ........ 7

*Bellion Spirits, LLC v. United States*, 335 F. Supp. 3d 32 (D.D.C. 2018) ........ 2

*Cachil Dehe Band of Wintun Indians of Colusa Indian Cmty. v. Zinke*, 889 F.3d 584 (9th Cir. 2018) ........ 5, 7, 8

*Camp v. Pitts*, 411 U.S. 138 (1973) ........ 3, 5

*Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402 (1971) ........ 4

*Coalition of Concerned Citizens to MakeartSmart v. Fed. Transit Admin. of U.S. Dep't of Transportation*, No. 16-252, 2016 WL 9150616 (D. N.M. July 15, 2016) ........ 6

*Cook Inletkeeper v. EPA*, 400 F. App'x 239 (9th Cir. 2010) ........ 7

*East Bay Sanctuary Covenant v. Trump*, 909 F.3d 1219, 1240-41 (9th Cir. 2018) ........ 9, 10, 13

*East Bay Sanctuary Covenant v. Trump*, No. 18-cv-06810-JST, 2018 WL 6660080 (N.D. Cal. Dec. 19, 2018) ........ 6, 8, 11

*Fla. Power & Light Co. v. Lorion*, 470 U.S. 729 (1985) ........ 3, 5, 7

*Friends of the Earth v. Hintz*, 800 F.2d 822 (9th Cir. 1986) ........ 4

*Gill v. Dep't of Justice*, 246 F. Supp. 3d 1264 (N.D. Cal. 2017) (Seeborg, J.), *aff'd* 913 F.3d 1179 (9th Cir. 2019) ........ 5

*Jiahao Kuang v. U.S. Dep't of Def.*, 340 F. Supp. 3d 873, 914 (N.D. Cal. 2018) ........ 5, 7, 8

*Jiahao Kuang v. United States Dep't of Defense*, No. 18-cv-03698-JST, 2019 WL 293379 (N.D. Cal. Jan. 23, 2019) ........ 2

*Lands Council v. Powell*,
395 F.3d 1019 (9th Cir. 2005) .......... 5, 6, 11

*Marsh v. Ore. Nat. Res. Council*,
490 U.S. 360 (1989) .......... 5

*Motor Vehicle Mfrs. v. State Farm*,
463 U.S. 29 (1983) .......... 3

*Nw. Envtl. Def. Ctr. v. U.S. Army Corps of Eng'rs*,
817 F. Supp. 2d 1290 (D. Ore. 2011) .......... 6

*Occidental Eng'g Co. v. INS*,
753 F.2d 766 (9th Cir. 1985) .......... 4

*Perez v. Mortg. Bankers Ass'n*,
135 S. Ct. 1199 (2015) .......... 11

*Pineros y Campesinos Unidos del Noroeste v. Pruitt*,
293 F. Supp. 3d 1062 (N.D. Cal. 2018) .......... 11

*San Luis & Delta-Mendota Water Auth. v. Locke*,
776 F.3d 971 (9th Cir. 2014) .......... 5, 6

*Tri-Valley CAREs v. U.S. Dep't of Energy*,
671 F.3d 1113 (9th Cir. 2012) .......... 8

*Ursack, Inc. v. Sierra Interagency Black Bear Grp.*, 639 F.3d 949 (9th Cir. 2011) .......... 2

**STATUTES**

5 U.S.C. § 706 .......... 2, 3, 10

5 U.S.C. § 706(2) .......... 2

5 U.S.C. § 706(2)(D) .......... 10

## DEFENDANTS' MOTION TO STRIKE EXTRA-RECORD EVIDENCE

Defendants move to strike the declarations and other extra-record evidence Plaintiffs have submitted in connection with their motion for a Temporary Restraining Order to the extent such evidence is used for anything other than demonstrating organizational standing or irreparable harm. This case involves a challenge to Department of Homeland Security directives implementing the Migrant Protection Protocols, which provide guidance to immigration officials on how to implement 8 U.S.C. § 1225(b)(2)(C). Because this case arises under the Administrative Procedure Act, the well-settled record rule applies, and court review is limited to the administrative record. By submitting a plethora of declarations and other extra-record evidence, Plaintiffs have run afoul of the record rule, and have not demonstrated that the extra-record evidence at issue qualifies under any of the narrow exceptions to the record rule. Specifically, the declarations that attempt to directly second-guess the merits of the agency's decision transgress the mandate that courts are not to substitute their judgment for the judgment of the agency. Similarly, the declarations that describe general conditions of harm being suffered by non-parties should also be excluded, as such information is not relevant to either organizational standing or irreparable harm.

Accordingly, this Court should grant Defendants' motion and strike the extra-record evidence Plaintiffs have submitted to the extent it relates to anything other than organizational standing or irreparable harm.

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Innovation Law Lab, *et al.*,<br>Plaintiffs,<br><br>v.<br><br>Kirstjen Nielsen, *et al.*,<br><br>Defendants. | Civil Action No. 3:19-cv-00807-RS |

**DEFENDANTS' MEMORANDUM AND POINTS OF AUTHORITY IN SUPPORT OF THEIR MOTION TO STRIKE EXTRA-RECORD EVIDENCE**

## INTRODUCTION

Defendants hereby move to strike the following extra-record materials that Plaintiffs have submitted (or incorporated by reference) in support of their motion for a temporary restraining order ("TRO"), *see* Dkt. 20:

- The Declaration of Taslim Tavarez in its entirety, *see* Dkt. 20-2.
- Exhibits P, U, and V to the Declaration of Rubi Rodriguez, *see* Dkt. 20-3 at 115-118, 218-257.
- Paragraphs 27-44 of the Declaration of Nicole Ramos, *see* Dkt. 20-7 at 9-14.
- The Declaration of Adam Isacson in its entirety, *see* Dkt. 20-10.
- The Declaration of Kathryn Shepherd in its entirety, *see* Dkt. 20-11.
- The Declaration of Aaron Reichlin-Melnick in its entirety, *see* Dkt. 20-12.
- The Declaration of Daniella Burgi-Palomino in its entirety, *see* Dkt. 20-13.
- The Second Declaration of Stephen W. Manning in its entirety, *see* Dkt. 20-14.
- The Declaration of Steven H. Schulman in its entirety, *see* Dkt. 20-15.
- The Declaration of Cecilia Menjivar in its entirety, *see* Dkt. 20-16.

- The Declaration of Jeremy Slack in its entirety, *see* Dkt. 20-17.

Plaintiffs in this case challenge the implementation of the Migrant Protection Protocols ("MPP"), and have filed a six-count complaint for injunctive and declaratory relief. *See* Dkt. 1 at 31-36. Plaintiffs' claims arise under the Administrative Procedure Act (APA), 5 U.S.C. § 706. *See id.* ¶ 151 (Count 1); *id.*, ¶ 152 (Count 2); *id.*, ¶ 162 (Count 3); *id.*, ¶¶ 170, 181 (Counts 4 and 6). This conclusion is unchanged even though Plaintiffs assert a purported standalone claim based on a violation of customary international law. *See id.*, ¶¶ 171-78. First, as articulated in Part II.B of Defendants' concurrently-filed memorandum in opposition to Plaintiffs' Motion for a TRO, no cause of action or claim exists for Plaintiffs to assert such a claim. Second, parties are not permitted to evade the well-settled rule that APA claims are decided solely based on the administrative record by simply asserting different causes of action that still challenge agency action. *See Ursack, Inc. v. Sierra Interagency Black Bear Grp.*, 639 F.3d 949, 955 (9th Cir. 2011) ("Although Ursack separately argues that the decision also violated equal protection principles, the equal protection argument can be folded into the APA argument, since no suspect class was involved and the only question is whether the defendants' treatment of Ursack was rational."); *Bellion Spirits, LLC v. United States*, 335 F. Supp. 3d 32, 43 (D.D.C. 2018) ("[D]istrict courts have been hesitant to permit a plaintiff asserting a constitutional challenge to agency action to avoid the APA's bar on extra-record evidence …. when a … challenge to agency action requires evaluating the substance of an agency's decision made on the administrative record, that challenge must be judged on the record before the agency."); *see also Jiahao Kuang v. United States Dep't of Defense*, No. 18-cv-03698-JST, 2019 WL 293379, at *2 (N.D. Cal. Jan. 23, 2019) ("*Kuang II*") ("The Court finds the reasoning in *Bellion Spirits* … persuasive. As the Court observed in its prior order, Plaintiffs' equal protection and substantive due process claims allege that DoD's policy lacks a rational basis, requiring a fundamentally similar analysis as the question whether it was arbitrary and capricious in violation of § 706(2).").

Accordingly, review of the merits of Plaintiffs' claims in this Court, including at the preliminary injunction stage, is limited to the administrative record produced by the agency. *See* 5 U.S.C. § 706 ("[T]he court shall review the whole record or those parts of it cited by a party");

*Inland Empire Pub. Lands Council v. Schultz*, 992 F.2d 977, 981 (9th Cir. 1993) (in record-review case at preliminary injunction stage, court may not "resolve [] dispute" between "the views of [plaintiff's] experts" and "those of the [federal agency's] experts"); *see also Camp v. Pitts*, 411 U.S. 138, 142 (1973). Nevertheless, Plaintiffs have submitted and cited numerous extra-record materials—including declarations and news articles—without acknowledging that these documents are outside the record and thus not properly before the Court in this APA case, and without demonstrating any permissible basis for circumventing the record rule.

Defendants do not challenge the consideration of Plaintiffs' extra-record evidence to the extent that it relates to and is cited in support of their efforts solely to demonstrate organizational standing or cognizable irreparable harm. But this Court should strike this extra-record evidence—and citations to it—to the extent that it is offered for any other purpose.

**BACKGROUND**

Plaintiffs allege five claims under the APA: (1) that the MPP is "contrary to law" because it violates 8 U.S.C. § 1225(b)(2)(C), Dkt. 1, ¶¶ 147-151; (2) that the MPP is a "legislative rule that require[d] notice-and comment rulemaking," *id.* ¶ 153; (3) that the MPP is "arbitrary, capricious, and contrary to law" because Defendants allegedly "have not articulated a reasoned explanation for their decision to adopt this policy," *id.* ¶ 159; (4) that the MPP is "contrary to law" because it violates 8 U.S.C. § 1231(b)(3), *id.* ¶¶ 163-70; and (5) that the MPP is "contrary to law" because "individuals are returned to conditions that meaningfully deprive them of their right to apply for asylum," *id.* ¶ 181.

Under the APA, the district court's review of merits issues must be "based on the record the agency presents to the reviewing court." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985). The function of the district court is to assess the lawfulness of the agency's action based on the reasons offered by the agency. *Motor Vehicle Mfrs. v. State Farm*, 463 U.S. 29, 50 (1983). Thus, the Plaintiffs may not create a new record for purposes of review of the merits of the agency's decision to implement MPP. 5 U.S.C. § 706. Plaintiffs do not dispute the rule and have not moved to depart from it. Nevertheless, Plaintiffs have put forth (1) declarations directed

exclusively to showing organizational standing and irreparable harm;[1] (2) declarations directed exclusively to the merits of the case;[2] (3) declarations used for both purposes;[3] (4) declarations purporting to submit information regarding the individual Plaintiffs;[4] (5) declarations that, in addition to containing information relevant to the merits or irreparable harm, describe general conditions that non-parties are facing in Mexico and Central America;[5] and (6) one declaration containing, among other things, news articles and reports, as well as publicly available information about MPP.[6] The declarations were submitted in conjunction with Plaintiffs' Memorandum in Support of their Motion for a TRO. *See* Dkt. 20-1.

## STANDARDS GOVERNING APA REVIEW

Ordinarily, judicial review under the APA is confined to "the full administrative record that was before the [agency] at the time [it] made [its] decision." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971); *see also Friends of the Earth v. Hintz*, 800 F.2d 822, 829 (9th Cir. 1986). When a court reviews an agency determination, "there are no disputed facts that the district court must resolve." *Occidental Eng'g Co. v. INS*, 753 F.2d 766, 769 (9th Cir. 1985). "[T]he function of the district court is to determine whether or not as a matter of law

---

[1] Declaration of Rena Cutlip-Mason, Dkt. 20-4; Declaration of Eleni Wolfe-Roubatis, Dkt. 20-5; First Declaration of Stephen W. Manning, Dkt. 20-6; Declaration of Laura Sanchez, Dkt. 20-8; Declaration of Jacqueline Brown Scott, Dkt. 20-9.

[2] Declaration of Adam Isacson, Dkt. 20-10; Declaration of Aaron Reichlin-Melnick, Dkt. 20-12; Declaration of Cecilia Menjivar, Dkt. 20-16.

[3] Declaration of Nicole Ramos, Dkt. 20-7; Declaration of Kathryn Shepherd, Dkt. 20-11; Declaration of Daniella Burgi-Palomino, Dkt. 20-13; Declaration of Steven H. Schulman, Dkt. 20-15; Declaration of Jeremy Slack, Dkt. 20-17.

[4] Declaration of Taslim Tavarez, Dkt. 20-2; Second Declaration of Stephen W. Manning, Dkt. 20-14.

[5] Declaration of Nicole Ramos, Dkt. 20-7; Declaration of Adam Isacson, Dkt. 20-10; Declaration of Kathryn Shepherd, Dkt. 20-11; Declaration of Daniella Burgi-Palomino, Dkt. 20-13; Declaration of Steven H. Schulman, Dkt. 20-15; Declaration of Cecilia Menjivar, Dkt. 20-16; Declaration of Jeremy Slack, Dkt. 20-17.

[6] Declaration of Rubi Rodriguez, Dkt. 20-3.

the evidence in the administrative record permitted the agency to make the decision it did." *Id.* "[T]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp*, 411 U.S. at 142; *see also Fla. Power*, 470 U.S. at 743-44 ("The task of the reviewing court is to apply the appropriate APA standard of review to the agency decision based on the record the agency presents to the court."); *Lands Council v. Powell*, 395 F.3d 1019, 1029-30 (9th Cir. 2005) (similar). The administrative record rule "ensures that the reviewing court affords 'sufficient deference to the agency's action.'" *San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d 971, 992 (9th Cir. 2014) (quoting *Marsh v. Ore. Nat. Res. Council*, 490 U.S. 360, 378 (1989)); *see also Fla. Power*, 470 U.S. at 743-44 ("The task of the reviewing court is to apply the appropriate APA standard of review to the agency decision based on the record the agency presents to the reviewing court.") (internal citation omitted). This is important because the APA gives agencies "substantial discretion 'to rely on the reasonable opinions of its own qualified experts even if, as an original matter, a court might find contrary views more persuasive.'" *San Luis*, 776 F.3d at 992 (quoting *Marsh*, 490 U.S. at 378). "There is a danger when a reviewing court goes beyond the record before the agency. When a reviewing court considers evidence that was not before the agency, it inevitably leads the reviewing court to substitute its judgment for that of the agency." *San Luis & Delta-Mendota Water Authority v. Jewell*, 747 F.3d 581, 602 (9th Cir. 2014).

The Ninth Circuit has identified four "narrow circumstances" in which material outside the administrative record may be considered: (1) "where the extra-record evidence is 'necessary to determine whether the agency has considered all relevant factors and has explained its decision'"; (2) "where 'the agency has relied on documents not in the record'"; (3) "where 'supplementing the record is necessary to explain technical terms or complex subject matter'"; or (4) "where 'plaintiffs make a showing of agency bad faith.'" *Jiahao Kuang v. U.S. Dep't of Def.*, 340 F. Supp. 3d 873, 914 (N.D. Cal. 2018) ("*Kuang I*") (quoting *Cachil Dehe Band of Wintun Indians of Colusa Indian Cmty. v. Zinke*, 889 F.3d 584, 600 (9th Cir. 2018)); *see also Gill v. Dep't of Justice*, 246 F. Supp. 3d 1264, 1271 (N.D. Cal. 2017) (Seeborg, J.), *aff'd* 913 F.3d 1179 (9th Cir. 2019) ("[W]ith narrow exceptions, APA actions are decided on the administrative record and nothing more …. [The]

motion to strike these declarations is granted.”). These exceptions to record review are “narrowly construed and applied”:

> The scope of these exceptions permitted by our precedent is constrained, so that the exception does not undermine the general rule. Were the federal courts routinely or liberally to admit new evidence when reviewing agency decisions, it would be obvious that federal courts would be proceeding, in effect, de novo rather than with the proper deference to agency process, expertise, and decision-making.

*Lands Council*, 395 F.3d at 1030. The party challenging the record bears the burden of establishing that the record is incomplete or demonstrating that the extra-record evidence fits a recognized exception to the record rule. *San Luis*, 776 F.3d at 992-93. And even when such extra-record evidence is admitted, “‘consideration of the evidence to determine the correctness or wisdom of the agency’s decision is not permitted.’” *East Bay Sanctuary Covenant v. Trump*, No. 18-cv-06810-JST, 2018 WL 6660080, at *6 (N.D. Cal. Dec. 19, 2018) (quoting *Asarco*, 616 F.2d at 1160).

Although plaintiffs challenging agency action and seeking preliminary injunctive relief can introduce de novo evidence to support their allegations of Article III injury or irreparable harm, such evidence cannot be considered by the court in determining plaintiff’s “probability of success on the merits.” *Am. Bioscience, Inc. v. Thompson*, 243 F.3d 579, 582 (D.C. Cir. 2001); *see also East Bay*, 2018 WL 6660080, at *6 (“[M]uch of this evidence seems related to the merits of the Rule itself …. Accordingly, the Court does not consider this evidence.”); *Coalition of Concerned Citizens to MakeartSmart v. Fed. Transit Admin. of U.S. Dep’t of Transportation*, No. 16-252, 2016 WL 9150616, at *3 (D.N.M. July 15, 2016) (granting motion to strike “to the extent that the Court will not consider … Plaintiffs’ declarations in deciding whether [the] Plaintiffs will likely succeed on the merits of their NHPA/APA claim.”); *Nw. Envtl. Def. Ctr. v. U.S. Army Corps of Eng’rs*, 817 F. Supp. 2d 1290, 1300 (D. Or. 2011) (similar).

## ARGUMENT

The Court should strike Plaintiffs’ extra-record submissions introduced in support of their efforts to demonstrate a likelihood of success on the merits of their APA claims. First, Plaintiffs have neither asserted nor shown that the record is incomplete. Even if Plaintiffs made such a showing, the remedy is not the consideration of extra-record evidence, but rather remand to the

agency to submit a complete record. Second, Plaintiffs have made no attempt to assert that their extra-record evidence meets one of the four narrow exceptions to the record rule. Although Defendants do not challenge Plaintiffs' evidence submitted in support of their assertions of organizational standing, and irreparable harm to those organizations and the individual Plaintiffs, this Court should strike all evidence relied on for other issues. These issues include the likelihood of success of Plaintiffs' APA challenges to the MPP, and alleged harms suffered by non-parties to this suit for purposes of demonstrating irreparable harm or a balance of harms under the preliminary injunction standard, and all citations thereto.

## I. Plaintiffs Have Not Established that the Record Is Incomplete or that Their Extra-Record Evidence Meets an Exception to the Record Rule.

When the government certifies an administrative record, the government is entitled to a presumption that the record is the full, complete record, a presumption that can be rebutted only with "clear evidence to the contrary." *Cook Inletkeeper v. EPA*, 400 F. App'x 239, 240 (9th Cir. 2010) (quoting *Bar MK Ranches v. Yuetter*, 994 F.2d 735, 740 (10th Cir. 1993)). Plaintiffs have not alleged that the record is incomplete, and, even if they had, the usual remedy in such a case is remand to the agency for additional explanation, *Fla. Power*, 470 U.S. at 744, which Plaintiffs have not requested. Thus, it appears that Plaintiffs seek admission of extra-record evidence to attack the wisdom of MPP, which is impermissible and necessitates striking the declarations and other evidence that are the subject of this motion.

### A. Plaintiffs May Not Submit Extra-Record Evidence

As noted, extra-record evidence is the exception, not the rule, and is not permitted in the normal course, subject to the four "narrow circumstances" elucidated by the Ninth Circuit: (1) "where the extra-record evidence is 'necessary to determine whether the agency has considered all relevant factors and has explained its decision'"; (2) "where 'the agency has relied on documents not in the record'"; (3) "where 'supplementing the record is necessary to explain technical terms or complex subject matter'"; or (4) "where 'plaintiffs make a showing of agency bad faith.'" *Kuang I*, 340 F. Supp. 3d at 914 (quoting *Cachil*, 889 F.3d at 600). "Even where the Court allows such supplementary evidence, '[c]onsideration of the evidence to determine the

correctness or wisdom of the agency's decision is not permitted, even if the court has also examined the administrative record.'" *Kuang I*, 340 F. Supp. 3d at 915 (quoting *Asarco, Inc.*, 616 F.2d at 1160); *see also East Bay*, 2018 WL 6660080, at *6. Additionally, "'exceptions to the normal rule regarding consideration of extra-record materials only apply to information available at the time, not post-decisional information.'" *Cachil*, 889 F.3d at 600-01 (quoting *Tri-Valley CAREs v. U.S. Dep't of Energy*, 671 F.3d 1113, 1130 (9th Cir. 2012)). "[P]ost-decision information may not be advanced as a new rationalization either for sustaining or attacking an agency's decision because it inevitably leads the reviewing court to substitute its judgment for that of the agency." *Tri-Valley CAREs*, 671 F.3d at 1130-31 (internal quotation marks omitted)).

The Court should reject Plaintiffs' submission of and citation to documents that are clearly outside the record for merits purposes. That submission defies longstanding precedent. Plaintiffs bear the burden of proving the existence of an applicable limited exception permitting consideration of such extra-record materials. They have not even attempted to do that here, and have instead nakedly challenged the merits of MPP by attempting to introduce declarations that have the functional effect of stripping away the deference owed to the Department of Homeland Security ("DHS") under the APA as the agency responsible for implementing MPP. Examination of Plaintiffs' TRO briefing, and particularly Plaintiffs' contention that MPP is not rationally related to any of its justifications, confirms that Plaintiffs are attempting to use a number of these declarations to argue simply that the outcome DHS reached was wrong and to improperly second-guess DHS's judgment by avoiding focus on the actual record. *See, e.g.*, Dkt. 20-1 at 17 (citing paragraph 12 of the Isacson Declaration to assert that "[t]he policy therefore cannot plausibly be described as an effort to combat 'illegal immigration'"); *id.* at 16-17 n.9 ("[T]here is no evidence that a policy requiring asylum seekers to remain in Mexico while litigating their asylum claims will actually deter those fleeing violence from journeying to the United States. *See* Menjivar Decl. ¶¶ 12-20."); *id.* at 18 ("DHS's key justifications … are based on false premises …. Data from EOIR shows that between FY 2008 and FY 2018, asylum seekers who passed a credible fear interview showed up for their immigration court hearings approximately 87.5 percent of the time. *See* Reichlin-Melnick Decl. ¶ 9."); *id.* at 18-19 n.12 (citing paragraphs 14-15 of the Reichlin-

Melnick Declaration to argue that "the assertions marshaled in support of [MPP] are incorrect"); *id.* at 19 (citing paragraphs 19-24 of the Reichlin-Melnick Declaration to argue that "grant rates are an imperfect metric for determining the number of individuals with legitimate asylum claims").

In addition, this Court should strike declarations ostensibly describing issues related to the merits or irreparable harm that purport to describe general conditions in Mexico or harms non-parties are suffering, as neither suffices to establish either organizational standing or irreparable harm to the Plaintiffs in this lawsuit. *See East Bay Sanctuary Covenant v. Trump*, 909 F.3d 1219, 1240-41 (9th Cir. 2018) ("*East Bay II*") ("[A]lthough the Organizations describe significant hindrances their clients have experienced in applying for asylum at ports of entry, as well as significant risks their clients may face in towns lining the country's southern border, neither of those concerns is at issue in this lawsuit."); Ramos Decl., Dkt. 20-7, ¶ 32 ("Migrants and refugees in Mexico are at risk of kidnapping, disappearance, trafficking, and sexual assault, among other harms."); Isacson Decl., Dkt. 20-10, ¶ 16 ("The risk of harm is also extreme in the border towns across from south Texas, the area of heaviest flow of Central American child and family migrants."); Shepherd Decl., Dkt. 20-11, ¶ 7 ("The violence and instability that migrants face on the Mexican side of the U.S.-Mexico border are well-documented. Some regions of the U.S.-Mexico border are considered by the State Department to be among the most dangerous locations in the world."); Burgi-Palomino Decl., Dkt. 20-13, ¶ 7 (describing "a broader situation of violence, corruption, and impunity along some of Mexico's northern border states and cities"); Schulman Decl., Dkt. 20-15, ¶ 10 ("Within those firms that decide they are willing to send pro bono lawyers, individual volunteers may very well be hesitant to accept the security risks."); Menjivar Decl., Dkt. 20-16, ¶ 16 ("The overwhelming majority of women and children crossing the United States' southern border … have been fleeing violence both inside and outside the home in northern Central America—one of the most dangerous places on earth."); Slack Decl., Dkt. 20-17, ¶ 8 ("In 2016, violence in Mexico skyrocketed, placing the Mexican drug war as the second most violent conflict in the world (behind Syria)."). These generalized descriptions of conditions that non-parties are purportedly facing are immaterial to any "issue in this lawsuit," and must therefore be stricken.

*East Bay II*, 909 F.3d at 1241.[7] It is not Plaintiffs' view of the conditions in Mexico that is relevant for purposes of the APA, but rather the agency's treatment of that information, to the extent it is material to any merits determination.

Moreover, a number of the declarations at issue, though ostensibly directed to showing that Plaintiffs have suffered irreparable harm, also attack the merits of MPP. *See, e.g.*, Ramos Decl., Dkt. 20-7, ¶ 37 ("Mexico is not a safe place for asylum seekers to wait for their hearings."); Shepherd Decl., Dkt. 20-11, ¶ 22 ("[T]he MPP will put asylum seekers at grave risk of harm by forcing them to remain in Mexico pending their immigration court proceedings. It threatens to jeopardize meaningful access to asylum and other humanitarian protections under our immigration laws."); Burgi-Palomino Decl., Dkt. 20-13, ¶ 5 ("The MPP assumes that conditions in Mexico, and particularly along Mexico's northern border, are safe for asylum seekers while they wait for their immigration proceedings. However, there is substantial evidence … to refute this assumption."); Schulman Decl., Dkt. 20-15, ¶ 16 ("In short, to my law firm pro bono colleagues and me, the MPP appears to be little more than an effort to strip asylum-seekers of their right to representation."); Slack Decl., Dkt. 20-17, ¶ 1 ("[D]anger is exacerbated the longer those migrants remain on the Mexican side of [the] border."). These declarations should accordingly be given no weight in assessing whether Plaintiffs are likely to succeed on the merits of their claims.

This is true even for Plaintiffs' APA claim that MPP required notice and comment. *See* Dkt. 1, ¶¶ 152-156. If Plaintiffs are challenging the failure of the rule to undergo notice-and-comment, then they are claiming that the rule was issued "without observance of procedure required by law." 5 U.S.C. § 706(2)(D). But the APA itself makes clear that judicial review of such a claim should be limited to the administrative record: "In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error." *Id.* § 706. Given this plain statutory language, there is no basis for dispensing with the "record review" requirement even for procedural

[7] Buttressing this conclusion is the fact that the individual Plaintiffs have submitted declarations in this case that Plaintiffs rely upon to attempt to show irreparable harm, evincing that the information regarding general conditions in Mexico is not needed to show harm to the individual Plaintiffs. *See* Dkt. 20-1 at 20-24.

claims. *Cf. Perez v. Mortg. Bankers Ass'n*, 135 S. Ct. 1199, 1207 (2015) ("Time and again, we have reiterated that the APA sets forth the full extent of judicial authority to review executive agency action for procedural correctness. Beyond the APA's minimum requirements, courts lack authority to impose upon an agency its own notion of which procedures are best or most likely to further some vague, undefined public good." (citations and modifications omitted)). Consistent with the above, courts in the Ninth Circuit review procedural APA claims under the record review rule. *See, e.g.*, *Pineros y Campesinos Unidos del Noroeste v. Pruitt*, 293 F. Supp. 3d 1062, 1066-67 (N.D. Cal. 2018).

The problem in considering Plaintiffs' declarations in assessing the merits of their APA claims is acutely illustrated by the fact that a number of declarations base their content on surveys conducted by the declarant that were not before DHS. Without any meaningful way to examine the veracity of the methods and results generated by those surveys, giving credence to these survey results would amount to simply taking Plaintiffs' declarants at their word and would substitute their data and judgment for the data and judgment of the agency. *See, e.g.*, Shepherd Decl., Dkt. 20-11, ¶ 2 ("I was involved in a survey created for the purpose of collecting information on the extent to which asylum-seeking migrants had experienced or witnessed harm in Mexico before crossing our southern border."); Second Declaration of Stephen W. Manning, Dkt. 20-14, ¶ 3 ("[U]nder my direction, Law Lab staff and volunteers were in Tijuana, Mexico interviewing persons who had applied for asylum …."). But as explained, APA review is limited to the record that was before the decision-maker at the time she made her decision, and the APA does not permit Plaintiffs to create a new record after the fact in district court. *See, e.g.*, *Lands Council*, 395 F.3d at 1029-30.

Because Plaintiffs are seeking to question the "correctness or wisdom of" the merits of MPP using declarations, something that clearly contravenes the record rule, Defendants' motion to strike should be granted. *East Bay*, 2018 WL 6660080, at *6.

### B. All of Plaintiffs' Extra-Record Evidence Submitted in Support of Their Merits Arguments or Issues Not Properly Before the Court Should Be Struck

Plaintiffs' extra-record declarations fall into six categories: (1) those cited only in support of their arguments regarding organizational standing and the alleged irreparable harm to those organizations and to the individual plaintiffs (which are not being challenged in this motion); (2) those cited only in relation to the merits of the case; (3) those cited in support of both; (4) those that also describe general harms being suffered by non-parties in addition to discussing the merits and/or irreparable harm; (5) those that purport to submit information regarding the individual plaintiffs; and (6) one declaration containing news articles and reports. This Court should strike the declarations and citations to them in Plaintiffs' TRO motion to the extent that they relate to any purpose other than Plaintiffs' Article III standing or their assertions of cognizable irreparable harm for purposes of the TRO motion.

The declarations cited only for merits purposes should be struck in their entirety along with any and all citations to those declarations in Plaintiffs' TRO pleadings. The declarations cited only relating to merits issues are: (1) Declaration of Adam Isacson, Dkt. 20-10[8]; (2) Declaration of Aaron Reichlin-Melnick, Dkt. 20-12[9]; and (3) Declaration of Cecilia Menjivar, Dkt. 20-16.[10]

Paragraphs 27-44 of the Declaration of Nicole Ramos, Dkt. 20-7, Declaration of Adam Isacson, Dkt. 20-10, Declaration of Kathryn Shepherd, Dkt. 20-11, Declaration of Daniella Burgi-Palomino, Dkt. 20-13, Declaration of Steven H. Schulman, Dkt. 20-15, Declaration of Cecilia Menjivar, Dkt. 20-16, and Declaration of Jeremy Slack, Dkt. 20-17, should be stricken because

---

[8] *See ,e.g.*, ¶ 3 ("The number of migrants coming to the U.S.-Mexico border is far lower today than in recent years."), ¶ 17 ("In my opinion, given the serious risk of harm, no migrant can be safely returned to Tamaulipas pursuant to the Migrant Protection Protocols.").

[9] *See, e.g.*, ¶ 4 ("In my professional opinion, DHS makes several claims about asylum seekers in support of the MPP which are not supported by the government's own data."), ¶ 25 ("DHS offered a series of claims about asylum seekers who have recently arrived at the U.S.-Mexico border. However, these claims are largely incorrect.").

[10] *See, e.g.*, ¶ 9 ("[T]here is no evidence that a policy requiring Central American migrants to remain in Mexico while litigating their asylum claims will serve to deter migration from Latin America."), ¶ 12 ("[T]here is no evidence that requiring migrants to wait in Mexico while seeking asylum will have any effect on migration.").

these declarations purport to describe dangerous conditions in Mexico that non-parties are suffering which is not germane to either organizational standing or irreparable harm claimed by the Plaintiffs in this lawsuit. *See East Bay II*, 909 F.3d at 1240-41.

In addition, this Court should also strike citations to the following declarations (that Plaintiffs appear to be relying on to show irreparable harm) to the extent that they are used in support of merits arguments as well as the information in those declarations relating to the merits of the case: (1) Declaration of Nicole Ramos, Dkt. 20-7, specifically paragraphs 27-44; (2) Declaration of Kathryn Shepherd, Dkt. 20-11; (3) Declaration of Daniella Burgi-Palomino, Dkt. 20-13; (4) Declaration of Steven H. Schulman, Dkt. 20-15; and (5) Declaration of Jeremy Slack, Dkt. 20-17.

In the same vein, this Court should also strike Exhibits P, U, and V to the Declaration of Rubi Rodriguez, *see* Dkt. 20-3 at 115-118, 218-257. Exhibits P and V are two news articles attacking the merits of MPP. *See id.* at 116 ("Border Patrol union chief: New Trump administration policy is incentivizing illegal immigration."), 244 ("A Sordid Scheme: The Trump Administration's Illegal Return of Asylum Seekers to Mexico."). Exhibit U, meanwhile, is an Amnesty International Article titled: "Overlooked, Under-Protected: Mexico's Deadly *Refoulement* of Central Americans Seeking Asylum." *Id.* at 219. The citations to these articles are clearly an attempt to second-guess the correctness or wisdom of DHS's decision, and to the extent Plaintiffs are relying on these articles to show a likelihood of success on the merits, *see* Dkt. 20-1 at 17 (citing Exhibit P of Rodriguez Declaration to argue that "the agency likely is incentivizing migrants to enter *between* ports of entry"), they should be stricken.

Finally, the Declaration of Taslim Tavarez, *see* Dkt. 20-2, and the Second Declaration of Stephen W. Manning, *see* Dkt. 20-14, should similarly be stricken to the extent Plaintiffs attempt to rely on either declaration for anything other than establishing jurisdiction.

**<u>CONCLUSION</u>**

Plaintiffs neither acknowledge that they have submitted extra-record evidence nor attempt to explain how the evidence meets one of the established exceptions. Thus, the evidence they have submitted or cited for any purpose other than in support of their arguments regarding

organizational standing or irreparable harm is not properly before the Court. Accordingly, and for the foregoing reasons, Defendants' motion to strike should be granted.

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

WILLIAM C. PEACHEY
Director

EREZ REUVENI
Assistant Director

PATRICK GLEN
Senior Litigation Counsel

*/s/ Archith Ramkumar*
ARCHITH RAMKUMAR
Trial Attorney
N.Y.B. No. 5269949
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel: (202) 598-8060
Archith.Ramkumar@usdoj.gov

Dated: March 1, 2019

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 1, 2019, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of for the Northern District of California by using the CM/ECF system. Counsel in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

By: *<u>/s/ Archith Ramkumar</u>*
Archith Ramkumar
Trial Attorney
United States Department of Justice
Civil Division