Judy Rabinovitz*
Michael Tan*
Omar Jadwat*
Lee Gelernt*
Anand Balakrishnan*
Daniel Galindo (SBN 292854)
ACLU FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Floor
New York, NY 10004
T: (212) 549-2660
F: (212) 549-2654
jrabinovitz@aclu.org
mtan@aclu.org
ojadwat@aclu.org
lgelernt@aclu.org
abalakrishnan@aclu.org
dgalindo@aclu.org

Melissa Crow***
SOUTHERN POVERTY LAW CENTER
1101 17th Street NW, Suite 705
Washington, D.C. 20036
T: (202) 355-4471
F: (404) 221-5857
melissa.crow@splcenter.org

Jennifer Chang Newell (SBN 233033)
Katrina Eiland (SBN 275701)
Julie Veroff (SBN 310161)
ACLU FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
39 Drumm Street
San Francisco, CA 94111
T: (415) 343-0770
F: (415) 395-0950
jnewell@aclu.org
keiland@aclu.org
jveroff@aclu.org

*Attorneys for Plaintiffs* (*Additional counsel listed on following page*)

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Innovation Law Lab, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>Kirstjen Nielsen, *et al.*,<br><br>*Defendants*. | CASE NO.: 3:19-CV-00807-RS<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER VENUE**<br><br>**Date:** TBD<br>**Time:** TBD<br>**Courtroom:** 3, 17th Floor<br>**Judge:** Hon. Richard Seeborg |

1   Mary Bauer***
    SOUTHERN POVERTY LAW CENTER
2   1000 Preston Avenue
    Charlottesville, VA 22903
3   T: (470) 606-9307
    F: (404) 221-5857
4   mary.bauer@splcenter.org

5   Gracie Willis***
    SOUTHERN POVERTY LAW CENTER
    150 East Ponce de Leon Avenue, Suite 340
6   Decatur, GA 30030
    T: (404) 221-6700
7   F: (404) 221-5857
    gracie.willis@splcenter.org
8
    Michelle P. Gonzalez***
9   SOUTHERN POVERTY LAW CENTER
    P.O. Box 370037
10  Miami, FL 33137-0037
    T: 786-753-1383
11  F: 786-237-2949
    mich.gonzalez@splcenter.org
12
    Steven Watt***
13  ACLU FOUNDATION HUMAN RIGHTS
    PROGRAM
14  125 Broad Street, 18th Floor
    New York, NY 10004
15  T: (212) 519-7870
    F: (212) 549-2654
16  swatt@aclu.org

17
18  Attorneys for Plaintiffs

19  *Admitted pro hac vice
    **Application for pro hac vice pending
    ***Pro hac vice application forthcoming
20

Sean Riordan (SBN 255752)
Christine P. Sun (SBN 218701)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN
CALIFORNIA, INC.
39 Drumm Street
San Francisco, CA 94111
T: (415) 621-2493
F: (415) 255-8437
sriordan@aclunc.org
csun@aclunc.org

Blaine Bookey (SBN 267596)
Karen Musalo (SBN 106882)
Eunice Lee (SBN 316237)
Kathryn Jastram (SBN 127625)
Sayoni Maitra***
CENTER FOR GENDER & REFUGEE
STUDIES
200 McAllister St.
San Francisco, CA 94102
T: (415) 565-4877
F: (415) 581-8824
bookeybl@uchastings.edu
musalok@uchastings.edu
leeeunice@uchastings.edu
jastramkate@uchastings.edu
maitras@uchastings.edu

21
22
23
24
25
26
27
28

**TABLE OF CONTENTS**

I.   INTRODUCTION .................................................................................................... 1

II.  FACTUAL BACKGROUND ................................................................................... 3

    A.   Overview of Action ........................................................................................ 3

    B.   Nearly All the Organizational Plaintiffs Are Headquartered and/or Provide Critical Services in This District That Are Compromised by Defendants' Policy. ................... 5

    C.   No Parties or Relevant Witnesses Reside in the Southern District. ........................... 8

III. ARGUMENT ............................................................................................................ 9

    A.   Plaintiffs' Chosen Forum Must Be Accorded Substantial Weight. ............................ 9

    B.   Defendants Have Not Met Their Heavy Burden to Demonstrate That Transfer Is Appropriate. .................................................................................................... 11

       1.   Defendants Have Failed to Establish That Convenience of the Parties Strongly Favors Transfer. .......................................................................................... 11

       2.   Defendants Have Failed to Establish That the Convenience of the Witnesses Strongly Favors Transfer. ........................................................................... 13

       3.   The Interests of Justice Weigh Against Transfer. ................................................. 16

       4.   The Remaining Equitable Considerations Weigh Against Transfer. ...................... 16

IV.  CONCLUSION ....................................................................................................... 18

**Cases**

*ACLU of N. Cal. v. Burwell*,
No. 16-03539, 2017 WL 1540606 (N.D. Cal. Apr. 28, 2017) ..................................................10

*Al Otro Lado, Inc., et al. v. Kelly*,
No. 2:17-cv-05111 (C.D. Cal. Nov. 21, 2017) ....................................................................13

*Allstar Mktg. Grp., LLC v. Your Store Online, LLC*,
666 F. Supp. 2d 1109 (C.D. Cal. 2009) ...........................................................................17

*Cochran v. NYP Holdings, Inc.*,
58 F. Supp. 2d 1113 (C.D. Cal. 1998) .............................................................................14

*Consumer Fin. Prot. Bureau v. Nationwide Biweekly Admin., Inc.*,
No. 15-CV-02106-RS, 2015 WL 4463790 (N.D. Cal. July 21, 2015) ...............................11

*Costco Wholesale Corp. v. Liberty Mutual Ins. Co.*,
472 F. Supp. 2d 1183 (S.D. Cal. 2007) ...........................................................................17

*Ctr. for Biological Diversity & Pac. Env't v. Kempthorne*,
No. C 07 0894 EDL, 2007 WL 2023515 (N.D. Cal. July 12, 2007) ...................................15

*Ctr. for Food Safety v. Vilsack*,
No. C 11-00831 JSW, 2011 WL 996343 (N.D. Cal. Mar. 17, 2011) ..................................15

*Dale v. United States*,
846 F. Supp. 2d 1256 (M.D. Fla. 2012) ...........................................................................15

*Decker Coal Co. v. Commonwealth Edison Co.*,
805 F.2d 834 (9th Cir. 1986) ....................................................................................9, 12

*Desert Survivors v. US Dep't of the Interior*,
No. 16-CV-01165-JCS, 2016 WL 3844332 (N.D. Cal. July 15, 2016) ..............................10

*Do v. Hollins Law, P.C.*,
No. 13–1322, 2013 WL 3703405 (N.D. Cal. July 12, 2013) .............................................14

*E. Bay Sanctuary Covenant v. Trump*,
No. 18-CV-06810-JST, 2018 WL 6660080 (N.D. Cal. Dec. 19, 2018) ..............................17

*Florens Container v. Cho Yang Shipping*,
245 F. Supp. 2d 1086 (N.D. Cal. 2002) ....................................................................1, 9, 11, 13

*Flotsam of Cal., Inc. v. Huntington Beach Conference & Visitors Bureau*,
No. C 06-7028 MMC, 2007 WL 1152682 (N.D. Cal. Apr. 18, 2007) ................................15

*Getz v. Boeing Co.*,
547 F. Supp. 2d 1080 (N.D. Cal. 2008) ...........................................................................15

*Healthtrac Corp. v. Caterpillar Inc.*,
No. C 05-2727 MHP, 2005 WL 2811765 (N.D. Cal. Oct. 27, 2005) ...................................9

*Heartland Payment Sys., Inc. v. Mercury Payment Sys., LLC*,
No. 14–437, 2014 WL 5695051 (N.D. Cal. Nov. 4, 2014) ...............................................15

*Hendricks v. StarKist Co.*,
No. 13-CV-729 YGR, 2014 WL 1245880 (N.D. Cal. Mar. 25, 2014) ...........................13, 16

*Kabushiki Kaisha Stone Corp. v. Affliction, Inc.*,
No. C 09-2742 RS, 2009 WL 3429560 (N.D. Cal. Oct. 22, 2009) .................................9, 12

*Los Angeles Mem. Coliseum Comm. v. Nat'l Football League*,
89 F.R.D. 497 (C.D. Cal. 1981) ....................................................................................17

*McGaff v. Aetna*,
No. Civ. S-10-1467, 2010 WL 5394203 (E.D. Cal. Dec. 21, 2010) ...................................13

ii

*Nguyen v. Barnes & Noble Inc,*,
 No. 12-812, 2015 WL 12752442 (C.D. Cal. Feb. 17, 2015), .......................................11

*Railway Labor Execs.' Ass'n v. ICC*,
 958 F.2d 252 (9th Cir. 1991) ........................................................................................1

*Ramos v. Nielsen*,
 321 F. Supp. 3d 1083 (N.D. Cal. 2018) .......................................................................17

*Roling v. E*Trade Sec., LLC*,
 756 F. Supp. 2d 1179 (N.D. Cal. 2010) .......................................................................12

*Safarian v. Maserati N. Am., Inc.*,
 559 F. Supp. 2d 1068 (C.D. Cal. 2008) .........................................................................9

*United States v. Acad. Mortg. Corp.*,
 No. 16-CV-02120-EMC, 2018 WL 4053484 (N.D. Cal. Aug. 24, 2018) ....................16

*Shire LLC v. Impax Labs., Inc.*,
 No. C 10-5467 RS, 2011 WL 13152735 (N.D. Cal. Feb. 15, 2011)..............................9

*STX, Inc. v. Trik Stik, Inc.*,
 708 F. Supp. 1551 (N.D. Cal. 1988) .............................................................................12

*TiVo, Inc. v. Digital CBT LLC*,
 No. C 12-03866 RS, 2012 WL 12924981 (N.D. Cal. Oct. 29, 2012)...........................18

*Van Dusen v. Barrack*,
 376 U.S. 612 (1964)......................................................................................................11

**Statutes**

28 U.S.C. § 1391(c)(2)...................................................................................................8

28 U.S.C. § 1404(a) ...............................................................................................1, 9, 11

# I. INTRODUCTION

Defendants do not dispute that venue is proper in this district—nor could they. A single resident plaintiff establishes venue for suits against the government, *see Railway Labor Execs.' Ass'n v. ICC*, 958 F.2d 252, 256 (9th Cir. 1991), and as Defendants concede, multiple Plaintiffs reside in the Northern District of California. Instead, Defendants seek to transfer this action to the Southern District of California under 28 U.S.C. § 1404(a). But Defendants do not come close to demonstrating that the convenience of the parties and witnesses and the interests of justice strongly favor transfer. Such a showing is necessary to overcome the deference owed to Plaintiffs' forum choice. *See Florens Container v. Cho Yang Shipping*, 245 F. Supp. 2d 1086, 1092 (N.D. Cal. 2002) ("[U]nder Ninth Circuit law, a plaintiff's choice of forum is accorded substantial weight . . . . and courts generally will not transfer an action unless the 'convenience' and 'justice' factors strongly favor venue elsewhere.").

Plaintiffs are six U.S. nonprofit legal services organizations (the "Organizational Plaintiffs") whose core missions are to provide legal representation and other types of support to asylum seekers, as well as a group of Central American asylum seekers stranded in Mexico because of Defendants' actions (the "Individual Plaintiffs"). Their lawsuit challenges Defendants' policy of forcing asylum seekers arriving at the southern border to return to dangerous conditions in Mexico while their removal proceedings are pending. Defendants are Washington, D.C.-based federal agencies and heads of those agencies sued in their official capacities.

Plaintiffs' venue choice is entitled to substantial deference and should not be disturbed. Plaintiffs have chosen to litigate their claims for injunctive relief in the Northern District—where half of the U.S.-based plaintiffs reside for venue purposes and where nearly all of those plaintiffs serve asylum seekers and experience harm from Defendants' unlawful forcible return policy. This district has a significant interest in the damaging impact of Defendants' policy on local legal service providers and the local governments who fund their asylum work. This district is the home venue for organizations that have been forced to divert resources because of Defendants' frustration of their missions in order to serve asylum seekers who are now trapped in Mexico.

Notably, Defendants do not even assert that litigating in this district would be inconvenient

1

for the federal government defendants. And there is nothing about the Southern District that would make it a more convenient or fairer forum for either party: *no party* resides in the Southern District; the national policy Plaintiffs challenge was not considered, drafted, or adopted there; and the Southern District has no special connection to the policy, which Defendants concede applies to the entire southern border and will be implemented imminently at other ports of entry, including in Texas.

Instead, Defendants' party convenience arguments rest on incorrect and irrelevant information about Plaintiffs' operations. For example, Defendants suggest that two Organizational Plaintiffs who reside in this district have geographically expansive operations that would supposedly mitigate the inconvenience of transfer. Mot. at 5, 8. These Plaintiffs, however, maintain offices only in the Bay Area and primarily serve clients who reside and/or have their immigration proceedings here. Traveling to the Southern District to attend hearings and, if necessary, to provide testimony relevant to, e.g., injunctive relief factors, would compound the burdens that Defendants' policy imposes on these local organizations.

Even more critically, Defendants rely solely on conjecture about the location and testimony of potential witnesses, providing not a shred of evidence that discovery or trial would be inconvenient in the Northern District. Defendants vaguely point to officers and agents who have processed asylum seekers under the policy at the San Ysidro port of entry, but they do not establish that these speculative witnesses would even possess evidence central to Plaintiffs' claims. Indeed, Defendants ignore that Plaintiffs' claims do not arise from or depend on the details of the policy's initial implementation in the Southern District or any other border location. Rather, Plaintiffs challenge a national policy emanating from Washington, D.C. as unlawful on its face. Without concrete proof of specific witnesses and their relevant testimony, Defendants cannot carry their burden to demonstrate that the convenience of witnesses—the most important factor in the analysis—supports transfer.

Defendants further undercut their unsupported convenience arguments by simultaneously asserting that this action should be resolved without any discovery, based solely on the administrative record certified in Washington, D.C. Defendants do not explain how, if no discovery

or testimony is needed, the convenience factors could possibly weigh in favor of transfer.

Defendants have also failed to establish that the interests of justice would be furthered by transfer. Defendants' primary argument in support of convenience and the interests of justice is that the Individual Plaintiffs were subject to the policy in the Southern District, and so that district has a greater connection to the controversy. But this argument ignores that Plaintiffs' allegations regarding the San Ysidro port of entry merely reflect that the policy was first applied there, and Plaintiffs acted quickly to challenge the damaging policy before Defendants launched it in additional locations. Once again, this argument also overlooks the nature of Plaintiffs' claims, which challenge the adoption and design of an official policy, not the actions of individual government officers in San Ysidro or any other location. Finally, it discounts that the impact of the policy is felt all along the southern border and by service providers throughout the U.S., including the Organizational Plaintiffs in the Bay Area who have chosen to litigate their claims in their home forum.

Other equitable factors, including the relative means of the parties, also support denial of Defendants' motion. In particular, the Organizational Plaintiffs—who have significantly fewer resources than the federal government defendants—should not be forced to bear the burden of litigating in an inconvenient forum.

## II. FACTUAL BACKGROUND

### A. Overview of Action

Plaintiffs challenge Defendants' national policy of forcibly returning asylum seekers arriving at the southern border to dangerous conditions in Mexico while they await their asylum proceedings. The policy applies to asylum seekers arriving along the entire U.S.-Mexico border. *See* Dkt. No. 20-3 (Declaration of Rubi Rodriguez), Ex. A at 1. The Department of Homeland Security ("DHS") intends to implement the policy "on a large scale basis." Compl. ¶¶ 82, 84; *see also* Dkt. No. 20-3, Ex. A at 1. Defendants first began applying this forced return policy—formally known as the "Migrant Protection Protocols"—to asylum seekers arriving at the San Ysidro port of entry in late January 2019. Compl. ¶ 6. A February 12, 2019, DHS memorandum confirmed that the policy would be rolled out "across the southern border." Declaration of Emilia Garcia ("Garcia Decl."), Ex. A at 2. On February 11, 2019, a DHS official informed the media that the agency would

imminently expand the policy to the Eagle Pass port of entry and thereafter to other locations in Texas. Compl. ¶ 85; *see also* Dkt. No. 20-3, Exs. F at 2, E at 1 (confirming that expansion will be "in the near future"). Additional reports confirm that DHS will soon also apply the policy at the Eagle Pass and El Paso, Texas, ports of entry. *See* Garcia Decl., Exs. C-K.

Defendants are DHS, its immigration agencies, and high-level DHS officials, including DHS Secretary Kirstjen Nielsen, involved in formulating and adopting the forced return policy from their posts in Washington, D.C. Compl. ¶¶ 29-38; 78. These and other Washington, D.C.-based defendants oversee the implementation of the policy by officers who work for the DHS immigration agencies, Customs and Border Protection ("CBP"), Immigration and Customs Enforcement, and U.S. Citizenship and Immigration Services ("USCIS"). Compl. at 14-18. Evidence indicates that many of the USCIS asylum officers involved in executing the policy to date do not reside in the Southern District, but rather have been temporarily dispatched to the border from other locations around the country. *See* Garcia Decl., Exs. L-O (reporting that personnel from USCIS offices, including San Francisco, Los Angeles, and the Washington D.C. area, have been temporarily deployed to the border to implement the forced return policy); Ex. U (USCIS website indicating that there is no asylum office located in the Southern District).

Plaintiffs allege that Defendants' national policy of returning asylum seekers to Mexico where they face grave dangers violates the Immigration and Nationality Act and its implementing regulations, the Administrative Procedure Act ("APA"), and customary international law cognizable under the Alien Tort Statute ("ATS"). Compl. at 31-36. In particular, Plaintiffs seek a preliminary injunction against the policy because it was not promulgated through notice-and-comment rulemaking, it is arbitrary and capricious, and it contravenes the immigration laws. *See* Dkt. No. 20-1. Specifically, Plaintiffs request (1) a declaration that the policy is unlawful, (2) an order vacating the policy, (3) an order enjoining Defendants from continuing to apply the policy to people "at a port of entry or between ports of entry," and (4) an order requiring reprocessing of the Individual Plaintiffs under the pre-policy procedures. Compl. at 36-37.

**B. Nearly All the Organizational Plaintiffs Are Headquartered and/or Provide Critical Services in This District That Are Compromised by Defendants' Policy.**

The Organizational Plaintiffs are nonprofit organizations whose central mission to provide representation and other assistance to asylum seekers is thwarted by the physical return of those asylum seekers to Mexico to await their immigration proceedings. Compl. ¶ 120. Three of the Organizational Plaintiffs have their sole places of business within this district. Plaintiff Centro Legal de la Raza ("Centro Legal") has offices only in Oakland, Hayward, and San Francisco,[1] Dkt. No. 20-5 ¶ 5 (Declaration of Eleni Wolfe-Roubatis); Supplemental Declaration of Eleni Wolfe-Roubatis ("Suppl. Wolfe-Roubatis Decl.") ¶ 2, and the Central American Resources and Education Center of Northern California ("CARECEN") has offices only in San Francisco, Dkt. No. 20-8 ¶ 3 (Declaration of Laura Sanchez); Supplemental Declaration of Laura Sanchez ("Sanchez Suppl. Decl.") ¶ 5. Plaintiff CARECEN is an independent nonprofit entity with its own staff, board, and budget—it is wholly distinct from Los Angeles and Washington, D.C.-based organizations with similar names.[2] *See* Suppl. Sanchez Decl. ¶ 7; Garcia Decl., Ex. R. The Immigration and Deportation Defense Clinic at the University of San Francisco School of Law (the "USF Clinic") maintains its primary office in San Francisco and a satellite office in Sonoma County. Dkt. No. 20-9 ¶ 5 (Declaration of Jacqueline Brown Scott). Two other Organizational Plaintiffs, Innovation Law Lab ("Law Lab") and Tahirih Justice Center ("Tahirih"), have offices in Oakland and San Francisco, respectively, as well as offices in other locations. Dkt. Nos. 20-4 ¶ 8 (Declaration of Rena Cutlip-Mason); 20-6 ¶ 2 (First Declaration of Stephen W. Manning).

Five of the six Organizational Plaintiffs routinely represent or provide critical support to asylum seekers in this district, many of whom have recently arrived from the southern border. In 2018, Centro Legal represented 1,234 asylum seekers (67% of whom are from Central America), nearly all of whom applied for asylum in removal proceedings. Dkt. No. 20-5 ¶¶ 10-11. Most of Centro Legal's clients reside in the Bay Area and/or have their immigration proceedings in the San

---

[1] Defendants incorrectly assert that Centro Legal "does not specify where all its offices are located[.]" Defs.' Mot. at 5.
[2] Accordingly, Defendants' assertion that CARECEN "even has an office just north of the Southern District in Los Angeles," Mot. at 8, is wrong.

Francisco Immigration Court. *Id.* ¶ 9; *see also* Suppl. Wolfe-Roubatis Decl. ¶ 3. Since its founding in 2015, the USF Clinic has served more than 400 clients—primarily asylum seekers who entered the U.S. from the southern border and have their removal proceedings at the San Francisco Immigration Court. Dkt. No. 20-9 ¶¶ 9-10, 12, 14. In 2018, Tahirih's San Francisco office served 271 clients and 129 additional children and other family members, approximately 40% of whom have sought asylum. Dkt. No. 20-4 ¶¶ 9-10. In 2018, CARECEN served a total of 2,196 immigrants, and represented 146 individuals before USCIS or the San Francisco Immigration Court, including asylum seekers. Dkt. No. 20-8 ¶¶ 8-9, 13, 35. CARECEN attorneys also participate in the "attorney of the day" program at the San Francisco Immigration Court, through which the organization serves unrepresented children and families in removal proceedings. *Id.* ¶ 14. From its Oakland site, the Law Lab "collaborates with advocates throughout northern California to provide support for detained representation at the San Francisco Immigration Court." Dkt. No. 20-6 ¶ 6; *see also* Third Declaration of Stephen W. Manning ("Third Manning Decl.") ¶¶ 3-9 (further describing the Law Lab's local work to support asylum seekers).

Local governments within this district also have interests implicated by this lawsuit. They grant funds and participate in partnerships through which four of the Organizational Plaintiffs provide representation to asylum seekers. These local government grants require that the immigrants the Organizational Plaintiffs assist be physically present in or have some connection to the area. *See* Dkt. Nos. 20-4 ¶¶ 14, 20; 20-8 ¶ 22; 20-9 ¶¶ 21-22; Supplemental Decl. of Jacqueline Brown Scott ("Suppl. Brown Scott Decl.") ¶ 2; Supplemental Declaration of Rena Cutlip-Mason ("Suppl. Cutlip-Mason Decl.") ¶ 4. They provide this funding to asylum seekers and other immigrants in their areas because they recognize the importance of proper legal assistance and other support during immigration proceedings to the ultimate wellbeing of their potential long-term residents and the broader community. *See* Declaration of Miguel Marquez ("Marquez Decl.") ¶¶ 9, 11; Suppl. Cutlip-Mason Decl. ¶ 5. For example, Tahirih's San Francisco office received $120,000 in funding last year for immigration-related legal services from Santa Clara County, Dkt. No. 20-4 ¶ 20, and the USF Clinic's asylum representation funding comes primarily from grants, including from San Francisco, Sonoma, and San Mateo Counties. Dkt. No. 20-9 ¶¶ 21-22; *see also* Suppl. Brown Scott

Decl. ¶ 2. Similarly, CARECEN's work with asylum seekers within this district is funded in part by City and County of San Francisco grants. Dkt. No. 20-8 ¶ 22. CARECEN is also the fiscal and grant compliance lead for the San Francisco Immigration Legal Defense Collaborative, a local partnership funded by the San Francisco Mayor's Office of Housing and Community Development that has connected over 1,050 cases in the San Francisco Immigration Court to local pro bono attorneys. *Id*. ¶ 16. Centro Legal likewise has represented "hundreds of recently arrived asylum seekers throughout Northern California" through the Alameda County Immigration Legal and Education Partnership funded in part by Alameda County. Dkt. No. 20-5 ¶ 8. Harms to the Organizational Plaintiffs impact their funders and partner organizations whose priorities and funding decisions are affected as well. *See* Marquez Decl. ¶ 10.

Several of the local Organizational Plaintiffs currently represent asylum seekers forcibly returned to Mexico through the policy. Dkt. Nos. 20-5 ¶ 21; 20-8 ¶ 19; Suppl. Wolfe-Roubatis Decl. ¶ 4; Suppl. Brown Scott Decl. ¶ 5. Two Plaintiffs—CARECEN and Centro Legal—appear on a contact list of pro bono lawyers that Defendants distribute to asylum seekers returned under Defendants' policy, encouraging individuals to reach out to these and other local providers in Northern California for legal assistance. Dkt. Nos. 20-5 ¶ 8; 20-8 ¶ 18; AR 1095-96. At least one of the Individual Plaintiffs intended to make his way to the Bay Area, where he has relatives, but was instead forcibly returned to Mexico due to Defendants' policy. Dkt. No. 44-3, Ex. A at AF44.

As detailed in the Organizational Plaintiffs' declarations, Defendants' forcible return policy has caused and will continue to cause harm to their operations in this district. *See* Dkt. Nos. 20-4 at 4-11; 20-5 at 4-8; 20-8 at 4-11; 20-9 at 4-8; Third Manning Decl. ¶ 10; Suppl. Wolfe-Roubatis Decl. ¶ 4. Plaintiffs have been forced to divert resources to assist individuals who, as a result of Defendants' policy, are trapped in Mexico and would otherwise lack access to counsel or supportive and mental health resources. *See id*. These costs are significant, particularly considering the multiple, lengthy face-to-face client meetings typically required to prepare individuals—who are frequently traumatized—for their asylum hearings. *See* Dkt. Nos. 20-5 ¶¶ 25-26; 20-4 at 6-9; 20-6 ¶ 35; 20-8 ¶¶ 26, 36-37; 20-9 at 5-7; Suppl. Wolfe-Roubatis Decl. ¶ 4. Shifting the organizations' representation models to provide services to clients at a distance will be extremely difficult and, if

the policy is not enjoined, will further compromise their ability to fulfill their missions here in the Bay Area. *See* Dkt. Nos. 20-4 at 4-11; 20-5 at 4-8; 20-8 at 4-11; 20-9 at 4-8; Third Manning Decl. ¶ 10.

The Organizational Plaintiffs have documented the significant burdens that even short trips to serve asylum seekers in Mexico impose. *See* Dkt. Nos. 20-5 ¶ 27; 20-4 ¶¶ 16, 18(b); 20-8 ¶¶ 35-36; 20-9 ¶¶ 17, 20(b). These costs are difficult for the Organizational Plaintiffs to bear, as they are all nonprofits that provide pro bono services and do not have large discretionary budgets to cover unanticipated travel expenses. *See generally* Dkt. Nos. 20-4, 20-5, 20-6, 20-8, 20-9; *see also* Suppl. Wolfe-Roubatis Decl. ¶¶ 4, 7; Suppl. Sanchez Decl. ¶¶ 2-3; Suppl. Brown Scott Decl. ¶¶ 2-4.

If this case were transferred to the Southern District, it would require the Organizational Plaintiffs to make additional burdensome trips to San Diego to provide relevant testimony in this action, such as regarding the injuries they are suffering as a result of the policy and injunctive relief factors. *See* Suppl. Wolfe-Roubatis Decl. ¶¶ 4-5, 7; Suppl. Sanchez Decl. ¶¶ 2-3; Suppl. Brown Scott Decl. ¶¶ 3-4; Dkt. No. 20-4 ¶ 16, 18(b). In addition, potential third-party witnesses also reside in the Northern District. For example, psychologists and other social service experts who reside in the Northern District and regularly work with the Organizational Plaintiffs to support asylum seekers may have relevant testimony relating to the magnitude of the irreparable harm caused by the policy. *See* Suppl. Sanchez Decl. ¶ 4; Suppl. Wolfe-Roubatis Decl. ¶ 6.

**C. No Parties or Relevant Witnesses Reside in the Southern District.**

None of the parties resides in the Southern District. No plaintiff resides in the Southern District. Plaintiff Al Otro Lado ("AOL") is based in Los Angeles, *see* Dkt. No. 20-7 ¶ 3, and the San Ysidro mailing address that Defendants point to (for a mailbox store), Mot. at 5 n.5, does not change the fact that AOL's residence is elsewhere.[3] The Individual Plaintiffs are noncitizens who do not have a residence in the United States. Compl. ¶¶ 12-22. Defendants are U.S. government agencies headquartered in Washington, D.C., including DHS and its various component agencies, as well as officials sued in their official capacities as heads of those agencies. Compl. ¶¶ 29-38.

---

[3] *See* 28 U.S.C. § 1391(c)(2) (a plaintiff resides for venue only in its principal place of business); *see also* Garcia Decl., Ex. Q (AOL's website listing San Ysidro "mailing address").

## III.    ARGUMENT

Defendants have failed to meet their heavy burden to demonstrate that this case should be transferred away from Plaintiffs' home venue.  Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, [and] in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  "The party seeking transfer bears the burden of demonstrating that transfer is warranted."  *Shire LLC v. Impax Labs., Inc.*, No. C 10-5467 RS, 2011 WL 13152735, at *1 (N.D. Cal. Feb. 15, 2011) (citing *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979)).  This Court has cautioned that motions under § 1404(a) "should not be freely granted."  *Kabushiki Kaisha Stone Corp. v. Affliction, Inc.*, No. C 09-2742 RS, 2009 WL 3429560, at *2 (N.D. Cal. Oct. 22, 2009) (Seeborg, J.) (quoting *In re Nine Mile, Ltd.*, 692 F.2d 56, 61 (8th Cir. 1982) (internal quotation marks omitted)).

Defendants cannot meet their burden to show that transfer is warranted.  Moving this case would neither serve the convenience of the parties and witnesses nor promote the interests of justice.  Deference to Plaintiffs' choice of forum simply cannot be overcome by a motion that—as here—is unsupported by any relevant evidence.

### A.    Plaintiffs' Chosen Forum Must Be Accorded Substantial Weight.

Courts generally apply a "strong presumption in favor of plaintiff's choice of forum, in particular when the chosen forum is plaintiff's place of residence."  *Healthtrac Corp. v. Caterpillar Inc.*, No. C 05-2727 MHP, 2005 WL 2811765, at *3 (N.D. Cal. Oct. 27, 2005) (citing *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987)).  Deference to the plaintiff's venue may only be overcome by a "strong showing of inconvenience" to the parties and witnesses.  *See Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986); *see also Florens Container*, 245 F. Supp. 2d at 1092; *Safarian v. Maserati N. Am., Inc.*, 559 F. Supp. 2d 1068, 1071 (C.D. Cal. 2008) (movant must make a "strong showing that transfer will prevent the waste of time, energy, and money and protect litigants, witnesses and the public against unnecessary inconvenience and expense" (internal quotation marks omitted)).

Plaintiffs' choice of venue must be accorded substantial weight.  Three of the Organizational Plaintiffs—half of the U.S.-based Plaintiffs—reside in the district, *see* Dkt. Nos. 20-5; 20-8; 20-9,

and two others have offices here, *see* Dkt. Nos. 20-4; 20-6. In total, of the six Plaintiffs who reside in the United States, five have offices in this district that serve local asylum seekers. *See* Dkt. Nos. 20-4, 20-5, 20-6, 20-8, 20-9; Third Manning Decl. ¶¶ 5-9. Moreover, this is the only district where more than one Plaintiff resides.

Plaintiffs have demonstrated through competent evidence that they have and will continue to experience harm to their local operations as a result of the challenged policy. *See supra* at 7-8. Indeed, as explained in the Organizational Plaintiffs' declarations, the forced return policy has imposed substantial costs on their local operations and, if not enjoined, will compel the Organizational Plaintiffs to continue to divert resources, overhaul their legal services models, and ultimately seek out new sources of funding. *See* Dkt. Nos. 20-4 at 4-11; 20-5 at 4-8; 20-8 at 4-11; 20-9 at 4-8; Third Manning Decl. ¶ 10; Suppl. Wolfe-Roubatis Decl. ¶ 4. Several of the local Organizational Plaintiffs already represent or have provided support to individuals returned to Mexico under Defendants' policy. *See supra* at 7; Dkt. 20-6 ¶¶ 15-25; Third Manning Decl. ¶ 10.

Notably, several Bay Area counties provide significant grant funding to four of the local Plaintiff organizations for representation of local asylum seekers. *See supra* at 6-7. As Defendants' policy continues to impact more asylum seekers at the Southern border, this critical funding source may be at risk. *See supra* at 6.

Courts in this district have concluded that a plaintiff's forum choice is "entitled to substantial deference where," as here, "at least one of the plaintiffs, or its members . . . reside[s] in the district and the plaintiffs have alleged that the challenged [government action] would lead to harm" in the district. *See Desert Survivors v. US Dep't of the Interior*, No. 16-CV-01165-JCS, 2016 WL 3844332, at *9 (N.D. Cal. July 15, 2016) (quoting *Pac. Coast Fed'n of Fishermen's Ass'ns v. U.S. Dep't of Interior*, No. 12-2158 (JSC), 2012 WL 3236163, at *4 (N.D. Cal. Aug. 6, 2012) (internal quotation marks omitted)); *ACLU of N. Cal. v. Burwell*, No. 16-03539, 2017 WL 1540606, at *4 (N.D. Cal. Apr. 28, 2017) (holding that ACLU's choice of forum was entitled to deference because it had its principal place of business in San Francisco, its members were located there, and it alleged a local impact).

Despite this well-established case law requiring substantial deference to Plaintiffs' choice of

venue, Defendants urge the Court to accord it no weight. Mot. at 9. To support their argument, Defendants note that the Individual Plaintiffs were subject to the challenged policy at the San Ysidro port of entry in the Southern District. *Id.* They also stress that not *every* Plaintiff resides in the Northern District. Mot. at 5, 9-10. But if these two facts were enough to warrant disregarding a plaintiff's chosen forum, there would be nothing left of the presumption.

Instead, this Court has held that a plaintiff's choice of venue is accorded significantly diminished consideration only "if the operative facts have not occurred within the forum *and* the forum has no interest in the parties or subject matter." *Consumer Fin. Prot. Bureau v. Nationwide Biweekly Admin., Inc.*, No. 15-CV-02106-RS, 2015 WL 4463790, at *3 (N.D. Cal. July 21, 2015) (emphasis in original) (Seeborg, J.) (quoting *Lou*, 834 F.2d at 739 (internal quotation marks omitted)). Here, this district has an interest in the local parties, the local governments who fund their work, and the harm that the policy has caused them at home. In addition, although the operative facts relating to the design and adoption of the forced return policy did not occur in this district, this fact does not favor transfer, as these key events also did not occur in the Southern District.[4]

**B.    Defendants Have Not Met Their Heavy Burden to Demonstrate That Transfer Is Appropriate.**

To win transfer under § 1404(a), a defendant must overcome the substantial deference that courts give a plaintiff's chosen forum by establishing that "(1) the convenience of the parties; (2) the convenience of the witnesses; and (3) the interests of justice" strongly favor transfer. *Florens Container*, 245 F. Supp. 2d at 1089 (discussing factors considered); *see also id.* at 1092 (explaining that a strong showing of convenience *and* justice is required). Defendants have failed to do so.

**1.    Defendants Have Failed to Establish That Convenience of the Parties Strongly Favors Transfer.**

Section 1404(a) provides for transfer only to a *more* convenient forum for the parties overall, "not to a forum likely to prove equally convenient or inconvenient." *Van Dusen v. Barrack*, 376

---

[4]    Even if Defendants' were correct that some lesser deference were appropriate—which they are not—Plaintiffs' choice of venue would still be entitled to at least some weight. *See Nguyen v. Barnes & Noble Inc.*, No. 12-812, 2015 WL 12752442, at *4 (C.D. Cal. Feb. 17, 2015) ("'Less weight,' however, is not the same as 'no weight.'").

U.S. 612, 646 (1964). A "transfer should not be granted if the effect is simply to shift the inconvenience to the party resisting the transfer." *Kabushiki*, 2009 WL 3429560, at *2 (internal quotation marks omitted); *see also Decker Coal Co.*, 805 F.2d at 843; *STX, Inc. v. Trik Stik, Inc.*, 708 F. Supp. 1551, 1556 (N.D. Cal. 1988) ("If the gain to convenience to one party is offset by the added inconvenience to the other, the courts have denied transfer of the action.").

Here, Defendants have not even alleged that it would be inconvenient for the federal government defendants to litigate in the Northern District. Nor can they claim that the Southern District would be any more convenient for Defendants, as no defendant resides there either. Whether the case is venued in the Northern District or the Southern District, the Washington, D.C.-based Defendants would be required to travel across the country to participate in discovery or trial.

By contrast, the Organizational Plaintiffs located in the Bay Area would be burdened by traveling to the Southern District to participate in these proceedings.[5] *See* Suppl. Wolfe-Roubatis Decl. ¶¶ 4-5, 7; Suppl. Sanchez Decl. ¶¶ 2-3; Suppl. Scott Brown Decl. ¶¶ 3-4. Defendants attempt to undermine Plaintiffs' local connections and suggest that Plaintiffs will not be inconvenienced if the case is moved, by asserting that Plaintiffs CARECEN and Centro Legal have office locations close to the Southern District. Defendants are simply incorrect.[6] CARECEN's only offices are located in San Francisco, and until the adoption of Defendants' forced return policy, the organization had served clients predominantly in the Bay Area. Dkt. 20-8 ¶ 3; Suppl. Sanchez Decl. ¶ 6. Although Defendants have pointed to organizations with similar names in Los Angeles and

---

[5] Defendants suggest that the Individual Plaintiffs would not be burdened if forced to testify in the Southern District because they are currently located across the border in Mexico. Mot. at 8. However, Defendants' opinion as to the convenience of the Individual Plaintiffs is irrelevant. *See Roling v. E*Trade Sec.*, LLC, 756 F. Supp. 2d 1179, 1186 (N.D. Cal. 2010) (rejecting defendants' argument that transfer would be more convenient for plaintiff as irrelevant, where plaintiffs pursued the action in the Northern District and opposed the transfer). It is also quite presumptuous given that Defendants have imposed incredible burdens on the Individual Plaintiffs by forcing their return to Mexico, placing them in danger and significantly complicating preparation for their asylum hearings. Moreover, although the Individual Plaintiffs are currently in Mexico, it is unknown where they will be at a future date when any discovery or trial would take place.

[6] Notably, Defendants' attempts to undermine Plaintiffs' connection to this forum and speculate about their convenience rely exclusively on unfounded extrapolations from Plaintiffs' Complaint, Mot. at 5, and ignore the additional information in their extensive declarations filed along with Plaintiffs' motion for preliminary relief, which detail their office locations and the impact of the policy on their Bay Area operations. Plaintiffs have also filed supplemental declarations in support of their opposition to this motion.

Washington, D.C., Plaintiff CARECEN is a separate nonprofit organization with a distinct board, budget, and staff. Suppl. Sanchez Decl. ¶ 7; Garcia Decl., Ex. R. Similarly, all three of Centro Legal's offices are in this district, in Oakland, San Francisco, and Hayward. Dkt. 20-5 ¶ 5. Nearly all of Centro Legal's asylum clients are located in the Bay Area and/or have immigration proceedings in San Francisco Immigration Court. Suppl. Wolfe-Roubatis Decl. ¶ 3. Having to provide testimony in the Southern District regarding questions relevant to the Court's disposition of their claims would compound the burdens on these local Organizational Plaintiffs caused by Defendants' policy. *See* Suppl. Wolfe-Roubatis Decl. ¶¶ 4-5, 7; Suppl. Sanchez Decl. ¶¶ 2-3; Suppl. Brown Scott Decl. ¶¶ 3-4.[7]

In sum, transferring the case would merely burden Plaintiffs and do nothing to increase Defendants' convenience.

### 2. Defendants Have Failed to Establish That the Convenience of the Witnesses Strongly Favors Transfer.

The convenience of the witnesses is generally considered the most important factor in the Section 1404 analysis. *See Hendricks v. StarKist Co.*, No. 13-CV-729 YGR, 2014 WL 1245880, at *3 (N.D. Cal. Mar. 25, 2014). To establish that convenience of the witnesses favors transfer, a "party seeking a transfer cannot rely on vague generalizations." *Florens Container*, 245 F. Supp. 2d at 1093. Instead, "[t]he moving party is obligated to identify the key witnesses to be called and to present a generalized statement of what their testimony would include." *Id.* The moving party "should state the witnesses' identities, locations, and content and relevance of their testimony." *McGaff v. Aetna*, No. Civ. S-10-1467, 2010 WL 5394203, at *4 (E.D. Cal. Dec. 21, 2010).

Not only have Defendants failed to support their motion to transfer with *any* evidence, but

---

[7] Defendants cite to *Al Otro Lado, Inc., et al. v. Kelly*, Case No. 2:17-cv-05111 (C.D. Cal. Nov. 21, 2017) (Dkt. No. 113), in support of their convenience arguments. But that case is distinguishable for various reasons. First, in that case, Al Otro Lado was the sole U.S.-resident plaintiff and it is headquartered in the district adjacent to the transferee district. *Id.* at *3. Second, the court concluded that the nature of the challenged government action—preventing asylum seekers from accessing the asylum process "through misrepresentations, threats and intimidation, verbal and physical abuse, and coercion by border patrol agents"—would likely require the substantial participation of witnesses and access to evidence in the transferee district. *Id.* at *2, 4. Third, unlike this case, Defendants did not assert that some or all of the claims would be decided on an administrative record. Finally, the case was a putative class action, which led the court to accord reduced deference to the plaintiff's choice of forum. *Id.* at *3.

Defendants do not identify a single individual whose testimony bears on the resolution of Plaintiffs' claims. *See* Mot. at 8. Defendants suggest that possible witnesses could be "agents or officers allegedly involved in processing" individuals forced to return to Mexico, whom they speculate "would likely reside" in the Southern District. *Id.* However, Defendants fail to explain how the testimony of agents or officers involved in processing the Individual Plaintiffs and other asylum seekers are central to whether Defendants' national policy, which applies across the southern border, is unlawful on its face as violating the immigration statute, the APA, and Defendants' non-refoulement obligations recognized under the ATS. Defendants wholly ignore that Plaintiffs' claims do not depend on the application of the policy at the San Ysidro port of entry or on any particular individuals' experiences. That certain factual allegations in Plaintiffs' complaint describe events at the San Ysidro port of entry is merely the result of Defendants initially implementing the broadly applicable policy there. Evidence indicates that, by the time of any trial, the policy will be operational "across the southern border." Garcia Decl., Ex. A at 2.

Defendants' vague and unsupported assertions fall far short of meeting their burden to show that the convenience of the witnesses strongly favors transfer. *See, e.g.*, *Do v. Hollins Law, P.C.*, No. 13–1322, 2013 WL 3703405, at *3 (N.D. Cal. July 12, 2013) (denying transfer motion where defendant failed to "provide evidentiary support" demonstrating "who their key witnesses" were or provide "a generalized statement of what their testimony would be"); *Cochran v. NYP Holdings, Inc.*, 58 F. Supp. 2d 1113, 1119-20 (C.D. Cal. 1998) (denying transfer motion for "utterly fail[ing] the particularity requirement" where the defendant "broadly state[d] that 'most of the relevant witnesses that would be called upon to provide testimonial evidence and any documentary evidence . . . are located in New York'" and identified those witnesses only as employees of defendant).

Moreover, even if Defendants identified such witnesses with particularity and their testimony were relevant, there is reason to doubt Defendants' assumption that they "would likely" reside in the Southern District. Indeed, evidence suggests that many of the officers deployed at the San Ysidro port of entry to implement the forced return policy do not permanently reside in the area and may no longer be located there if called to testify at a later date. *See* Garcia Decl., Exs. L-O, U. Even if there were particular government witnesses located in the Southern District, their "occasional travel

by air from the [Southern California] area to San Francisco for trial or other proceedings does not constitute the type of inconvenience that would warrant disturbing the plaintiff's choice of forum." *Flotsam of Cal., Inc. v. Huntington Beach Conference & Visitors Bureau*, No. C 06-7028 MMC, 2007 WL 1152682, at *2 (N.D. Cal. Apr. 18, 2007).

Defendants' focus on the potential inconvenience of employee witnesses traveling to the Northern District also ignores that the witness convenience factor centers on third parties, not party witnesses. *See Ctr. for Food Safety v. Vilsack*, No. C 11-00831 JSW, 2011 WL 996343, at *7 (N.D. Cal. Mar. 17, 2011) ("Importantly, while the convenience of party witnesses is a factor to be considered, the convenience of non-party witnesses is the more important factor." (internal quotation marks omitted)). Because parties can secure the presence of their own employees at trial, the location of such party witnesses is generally given less weight. *See, e.g.*, *Getz v. Boeing Co.*, 547 F. Supp. 2d 1080, 1084 (N.D. Cal. 2008); *Heartland Payment Sys., Inc. v. Mercury Payment Sys.*, LLC, No. 14–437, 2014 WL 5695051, at *3 (N.D. Cal. Nov. 4, 2014) ("Given that the Court discounts the inconvenience to [Defendant's] employees, this factor weighs against transfer."). For instance, in *Dale v. United States*, which also involved potential DHS employee witnesses, the fact that "government employees" could "be compelled to testify at trial" weighed against granting the United States' motion to transfer. 846 F. Supp. 2d 1256, 1257-58 (M.D. Fla. 2012). Defendants have identified no third-party witnesses in their motion and, further, made no showing of inconvenience to even unidentified employee witnesses. *See id.*

While arguing that transfer is appropriate for the convenience of the parties and witnesses, Defendants simultaneously assert that "no discovery will be appropriate for this APA challenge," and suggest that at least some of Plaintiffs' claims can be decided without trial based on the administrative record certified by the agency in Washington, D.C. Mot. at 8. However, Defendants fail to explain how, if there were no discovery or trial in this case, the convenience factors could possibly favor transfer. *See Ctr. for Biological Diversity & Pac. Env't v. Kempthorne*, No. C 07 0894 EDL, 2007 WL 2023515, at *5 (N.D. Cal. July 12, 2007) (explaining that cases involving an administrative record are typically decided on "cross-motions for summary judgment" and,

accordingly, "the factors set forth in the transfer statute . . . are for the most part not implicated").[8]

In sum, the witness convenience factor also supports denial of Defendants' motion.[9]

### 3. The Interests of Justice Weigh Against Transfer.

Defendants' contention that the "interests of justice" favor transfer largely tracks its other arguments—that is, the case should be transferred because the Individual Plaintiffs were harmed by the policy in the Southern District, and therefore the Southern District has a stronger connection to the case. But this is simply incorrect. The *sole* connection to the Southern District is the fact that, when Plaintiffs filed their complaint, it was the only location where the policy was in operation. The government always intended to and is imminently expanding the implementation of the program more broadly, including to the Eagle Pass and El Paso ports of entry. Moreover, the operative facts underlying Plaintiffs' legal challenges center on the adoption of the policy in Washington, D.C. and do not involve the Southern District. Defendants' argument also improperly discounts that half of the U.S.-based Plaintiffs reside in this district and that the policy has caused the Organizational Plaintiffs significant harm in this district. Defendants' attempt to minimize the connection between their policy and this district is particularly unavailing considering that Defendants are affirmatively encouraging individuals subject to the policy to contact two of the Organizational Plaintiffs and other service providers in Northern California for legal assistance. *See supra* at 7.

In sum, the interests of justice favor maintaining this action in Plaintiffs' chosen forum.

### 4. The Remaining Equitable Considerations Weigh Against Transfer.

First, Defendants do not contend that the Southern District is more capable of applying the applicable law than the Northern District. *See United States v. Acad. Mortg. Corp.*, No. 16-CV-02120-EMC, 2018 WL 4053484, at *6 (N.D. Cal. Aug. 24, 2018) (different district courts are "presumptively equally capable of disposing of cases brought under federal law"). In fact, the

---

[8] Plaintiffs do not agree that all of their claims must be resolved based on the administrative record or that there are no applicable exceptions that would permit the court to consider extra-record evidence.
[9] For all of the same reasons, the ease of access to evidence factor also does not support transfer to the Southern District. In any event, as other courts have noted, "ease of access to documents does not weigh heavily in the transfer analysis, given that advances in technology have made it easy for documents to be transferred to different locations." *Hendricks*, 2014 WL 1245880, at *4 (internal quotation marks omitted).

Northern District has heard numerous cases that involve the DHS's policies relating to asylum seekers and other noncitizens. *See, e.g.*, *E. Bay Sanctuary Covenant v. Trump*, No. 18-CV-06810-JST, 2018 WL 6660080, at *1 (N.D. Cal. Dec. 19, 2018) (asylum seekers); *Ramos v. Nielsen*, 321 F. Supp. 3d 1083, 1091 (N.D. Cal. 2018) (Temporary Protected Status recipients). Thus, this factor does not assist Defendants in carrying their burden of establishing the propriety of transfer.

Second, the relative means of the parties also warrants denial of Defendants' motion. *See, e.g.*, *Allstar Mktg. Grp., LLC v. Your Store Online, LLC*, 666 F. Supp. 2d 1109, 1132 (C.D. Cal. 2009) ("[W]here a disparity between the parties exists, such as an individual plaintiff suing a large corporation, the court may also consider the relative means of the parties in determining whether to transfer." (internal quotation marks omitted)). Defendants are heads of some of the largest federal agencies in the United States. CBP alone employs over 60,000 people and manages a budget of more than $16 billion. Garcia Decl., Ex. T. In contrast, Plaintiffs are asylum seekers and nonprofit organizations providing pro bono legal representation to low-income immigrants and have limited travel budgets. *See generally* Dkt. Nos. 20-5, 20-8, 20-9; 20-4 at 6-9; *see also* Suppl. Wolfe-Roubatis Decl. ¶ 7; Suppl. Sanchez Decl. ¶ 2; Suppl. Scott Brown Decl. ¶ 3.

Third, the Court may also consider the relative congestion of the fora. To assess this factor, courts frequently look to statistics such as the two fora's median number of months from case filing to trial. *See Costco Wholesale Corp. v. Liberty Mutual Ins. Co.*, 472 F. Supp. 2d 1183, 1196 (S.D. Cal. 2007). During the 12-month period ending on September 30, 2018, the median time for disposition of matters through trial was 36.2 months in the Southern District compared to 30 months in the Northern District. Garcia Decl., Ex. P. "Transfer has been denied where, as here, a speedier trial could be had where suit was brought than in the proposed transferee court." *Los Angeles Mem. Coliseum Comm. v. Nat'l Football League*, 89 F.R.D. 497, 501 (C.D. Cal. 1981). Moreover, the Southern District experienced a 20.8% increase in total filings over the previous year, while the Northern District's total filings increased only 4.6%. Garcia Decl., Ex. P.

Finally, the Court should dismiss Defendants' unfounded suggestion of forum shopping. Mot. at 10 n.11. Defendants have failed to "identify any differences in the substantive law of the Northern and [Southern] Districts of California that would be material to this suit as both must

1  follow Federal or Ninth Circuit precedent as appropriate." *TiVo, Inc. v. Digital CBT LLC*, No. C 12-

2  03866 RS, 2012 WL 12924981, at *4 (N.D. Cal. Oct. 29, 2012) (internal quotation marks omitted)

3  (Seeborg, J.) (explaining that differences in substantive law between venues may motivate forum

4  shopping).  Nor have Plaintiffs chosen "a forum entirely unrelated to the parties"; rather, Plaintiffs

5  have filed suit in the district in which half of the U.S. plaintiffs reside and where two others have

6  significant operations. *Id.* (choice of venue unrelated to the parties may indicate forum shopping).

7  **IV. CONCLUSION**

8         For the foregoing reasons, the Court should deny Defendants' motion to transfer this case to

9  the Southern District.

10  Dated: March 4, 2019                              Respectfully submitted,

11  Judy Rabinovitz*                                 ____/s/ *Katrina Eiland*_ ____
12  Michael Tan*                                      Katrina Eiland (SBN 275701)
    Omar Jadwat*                                      Jennifer Chang Newell (SBN 233033)
13  Lee Gelernt*
14  Anand Balakrishnan*                               Julie Veroff (SBN 310161)
    Daniel Galindo (SBN 292854)                       AMERICAN CIVIL LIBERTIES UNION
15  AMERICAN CIVIL LIBERTIES UNION                    FOUNDATION
    FOUNDATION                                        IMMIGRANTS' RIGHTS PROJECT
16  IMMIGRANTS' RIGHTS PROJECT                        39 Drumm Street
    125 Broad St., 18th Floor                         San Francisco, CA 94111
17  New York, NY 10004                                T: (415) 343-1198
18  T: (212) 549-2660                                 F: (415) 395-0950
    F: (212) 549-2654                                 *jnewell@aclu.org*
19  *jrabinovitz@aclu.org*                            *keiland@aclu.org*
    *mtan@aclu.org*                                   *jveroff@aclu.org*
20  *ojadwat@aclu.org*
    *lgelernt@aclu.org*                               Sean Riordan (SBN 255752)
21  *abalakrishnan@aclu.org*                          Christine P. Sun (SBN 218701)
22  *dgalindo@aclu.org*                               AMERICAN CIVIL LIBERTIES UNION
                                                      FOUNDATION OF NORTHERN
23  Melissa Crow***                                   CALIFORNIA, INC.
    SOUTHERN POVERTY LAW CENTER                       39 Drumm Street
24  1101 17th Street NW, Suite 705                    San Francisco, CA 94111
    Washington, D.C. 20036                            T: (415) 621-2493
25  T: (202) 355-4471                                 F: (415) 255-8437
26  F: (404) 221-5857                                 *sriordan@aclunc.org*
    *melissa.crow@splcenter.org*                      *csun@aclunc.org*

27

28

Mary Bauer***
SOUTHERN POVERTY LAW CENTER
1000 Preston Avenue
Charlottesville, VA 22903
T: (470) 606-9307
F: (404) 221-5857
*mary.bauer@splcenter.org*

Gracie Willis***
SOUTHERN POVERTY LAW CENTER
150 East Ponce de Leon Avenue, Suite 340
Decatur, GA 30030
T: (404) 221-6700
F: (404) 221-5857
*gracie.willis@splcenter.org*

Michelle P. Gonzalez***
SOUTHERN POVERTY LAW CENTER
P.O. Box 370037
Miami, FL 33137-0037
T: 786-753-1383
F: 786-237-2949
*mich.gonzalez@splcenter.org*

Steven Watt***
ACLU FOUNDATION HUMAN RIGHTS
PROGRAM
125 Broad Street, 18th Floor
New York, NY 10004
T: (212) 519-7870
F: (212) 549-2654
*swatt@aclu.org*

Blaine Bookey (SBN 267596)
Karen Musalo (SBN 106882)
Eunice Lee (SBN 316237)
Kathryn Jastram (SBN 127625)
Sayoni Maitra***
CENTER FOR GENDER & REFUGEE
STUDIES
200 McAllister St.
San Francisco, CA 94102
T: (415) 565-4877
F: (415) 581-8824
*bookeybl@uchastings.edu*
*musalok@uchastings.edu*
*leeeunice@uchastings.edu*
*jastramkate@uchastings.edu*
*maitras@uchastings.edu*

*Attorneys for Plaintiffs*

*\*Admitted pro hac vice*
*\*\*Application for pro hac vice pending*
*\*\*\*Pro hac vice application forthcoming*