Lawrence J. Joseph (SBN 154908)
Law Office of Lawrence J. Joseph
1250 Connecticut Ave, NW, Suite 700-1A
Washington, DC 20036
Tel: 202-355-9452
Fax: 202-318-2254
Email: ljoseph@larryjoseph.com

Counsel for Movant Immigration Reform Law Institute

# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| Innovation Law Lab, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> Kirstjen Nielsen, *et al.*, <br><br> *Defendants*. | **Civil Action No. 3:19-cv-0807-RS** <br><br> ***AMICUS CURIAE* BRIEF OF IMMIGRATION REFORM LAW INSTITUTE IN SUPPORT OF FEDERAL DEFENDANTS IN OPPOSITION TO INTERIM RELIEF** <br><br> NO HEARING NOTICED <br><br> Complaint filed: February 14, 2019 <br> Honorable Richard Seeborg |

# TABLE OF CONTENTS

Table of Contents ............................................................................................................................. i
Table of Authorities ....................................................................................................................... ii
Memorandum of Points and Authorities ........................................................................................ 1
Statement of Issues ......................................................................................................................... 1
Identity and Interest of *Amicus Curiae* ......................................................................................... 1
Statement of Facts .......................................................................................................................... 1
Argument ........................................................................................................................................ 2
I.    This Court lacks jurisdiction over Plaintiffs' claims. ............................................................ 2
      A.    The Individual Plaintiffs lack standing for the relief they seek. ....................................... 3
      B.    The Institutional Plaintiffs cannot premise standing on diverted resources. ................... 3
      C.    The Institutional Plaintiffs' lost funding from California does not provide standing. ..... 5
      D.    The United States has not waived sovereign immunity for this action. .......................... 6
II.    Plaintiffs are unlikely to prevail on the merits. ..................................................................... 6
      A.    The MPP is consistent with the INA. ............................................................................... 6
      B.    The MPP is consistent with the non-refoulment obligations. ........................................... 7
      C.    The MPP satisfies the APA's requirement for reasoned decisionmaking. ...................... 8
      D.    The MPP satisfied the APA's procedural requirements. ................................................. 9
III.    The other stay factors counsel for denying interim relief. ................................................... 9
      A.    Plaintiffs will not suffer irreparable harm. ...................................................................... 9
      B.    The balance of equities favors the Government. .......................................................... 10
      C.    The public interest favors the Government. ................................................................. 10
Conclusion ................................................................................................................................... 11

# TABLE OF AUTHORITIES

## CASES

*Alfred L. Snapp & Son v. Puerto Rico ex rel. Barez,*
    458 U.S. 592 (1982) ................................................................................................ 5

*Babbitt v. United Farm Workers Nat'l Union,*
    442 U.S. 289 (1979) ................................................................................................ 8

*Board of Governors of the Federal Reserve System v. MCorp Financial,*
    502 U.S. 32 (1991) .................................................................................................. 6

*Burford v. Sun Oil Co.,*
    319 U.S. 315 (1943) .............................................................................................. 10

*City of Los Angeles v. Lyons,*
    461 U.S. 95 (1983) .................................................................................................. 2

*Clapper v. Amnesty Int'l USA,*
    568 U.S. 398 (2013) ................................................................................................ 3

*Cooper Indus., Inc. v. Aviall Serv., Inc.,*
    543 U.S. 157 (2004) ................................................................................................ 2

*Davis v. Mineta,*
    302 F.3d 1104 (10th Cir. 2002) ............................................................................ 10

*East Bay Sanctuary Covenant v. Trump,*
    909 F.3d 1219 (9th Cir. 2018) ............................................................................ 2-5

*FCC v. ITT World Commc'ns, Inc.,*
    466 U.S. 463 (1984) ................................................................................................ 6

*FERC v. Elec. Power Supply Ass'n,*
    136 S.Ct. 760 (2016) ............................................................................................... 8

*Gladstone, Realtors v. Bellwood,*
    441 U.S. 91 (1979) .................................................................................................. 3

*Havens Realty Corp. v. Coleman,*
    455 U.S. 363 (1982) ............................................................................................ 3-4

*Landon v. Plasencia,*
    459 U.S. 21 (1982) .................................................................................................. 3

*Leedom v. Kyne,*
    358 U.S. 184 (1958) ................................................................................................ 6

*Monsanto Co. v. Geertson Seed Farms,*
    561 U.S. 139 (2010) ................................................................................................ 9

*Montana v. United States,*
    440 U.S. 147 (1979) ................................................................................................ 2

*Mountain States Legal Found. v. Glickman,*
    92 F.3d 1228 (D.C. Cir. 1996) ............................................................................................ 4

*Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.,*
    290 F.3d 578 (3d Cir. 2002) ............................................................................................. 10

*Office of Personnel Mgmt. v. Richmond,*
    496 U.S. 414 (1990) ........................................................................................................... 9

*Pennsylvania v. New Jersey,*
    426 U.S. 660 (1976) ........................................................................................................... 3

*S. Cent. Bell Tel. Co. v. Alabama,*
    526 U.S. 160 (1999) ........................................................................................................... 2

*SEC v. McCarthy,*
    322 F.3d 650 (9th Cir. 2003) ............................................................................................. 7

*Second City Music, Inc. v. City of Chicago,*
    333 F.3d 846 (7th Cir. 2003) ........................................................................................ 9-10

*Shaughnessy v. United States ex rel. Mezei,*
    345 U.S. 206 (1953) ........................................................................................................... 3

*Sprint Communs. Co., L.P. v. APCC Servs.,*
    554 U.S. 269 (2008) ........................................................................................................... 5

*Steel Co. v. Citizens for a Better Env't.,*
    523 U.S. 83 (1998) ............................................................................................................. 2

*United States v. Mendoza,*
    464 U.S. 154 (1984) ........................................................................................................... 2

*Vt. Agency of Nat. Res. v. United States ex rel. Stevens,*
    529 U.S. 765 (2000) ........................................................................................................ 4-5

*Warth v. Seldin,*
    422 U.S. 490 (1975) ........................................................................................................... 4

*Washington v. Reno,*
    35 F.3d 1093 (6th Cir. 1994) ........................................................................................... 10

*Waters v. Churchill,*
    511 U.S. 661 (1994) ........................................................................................................... 2

*Winter v. Natural Resources Defense Council, Inc.,*
    555 U.S. 7 (2008) ........................................................................................................... 2, 9

*Yakus v. United States,*
    321 U.S. 414 (1944) ......................................................................................................... 10

### **STATUTES**

U.S. CONST. art. III ................................................................................................ 1, 3, 5, 9-10

Administrative Procedure Act,
	5 U.S.C. §§551-706 ................................................................................................ 1, 6, 8-9
5 U.S.C. §553(b)(A) ............................................................................................................... 9
5 U.S.C. §701(a)(1) ................................................................................................................ 6
5 U.S.C. §703 ......................................................................................................................... 6
Immigration and Naturalization Act,
	8 U.S.C. §§1101-1537 ........................................................................................ 1, 3-4, 6, 8
8 U.S.C. §1225(b)(1) .............................................................................................................. 6
8 U.S.C. §1225(b)(2)(A) ........................................................................................................ 7
8 U.S.C. §1225(b)(2)(B) ..................................................................................................... 6-7
8 U.S.C. §1225(b)(2)(B)(ii) ................................................................................................... 6
8 U.S.C. §1225(b)(2)(C) ..................................................................................................... 6-7
8 U.S.C. §1229a ..................................................................................................................... 7
8 U.S.C. §1252(g) .................................................................................................................. 6
Fair Housing Act,
	Pub. L. No. 90-284, Title VIII, 82 Stat. 83 (1968) ................................................................3

# MEMORANDUM OF POINTS AND AUTHORITIES

Several aliens seeking admission into the United States (the "Alien Plaintiffs") and entities concerned about immigration issues (the "Institutional Plaintiffs") have sued various federal officials and offices (the "Government") to enjoin the Government's policy entitled the Migrant Protection Protocol, AR 1-19, 2271-79 ("MPP"), under the Immigration and Naturalization Act, 8 U.S.C. §§1101-1537 ("INA") and Administrative Procedure Act, 5 U.S.C. §§551-706 ("APA").

# STATEMENT OF ISSUES

The issues presented are this Court's Article III and statutory jurisdiction to hear Plaintiffs' claims and Plaintiffs' entitlement to interim relief (*i.e.*, plaintiffs' likelihood of prevailing, irreparable harm, the balance of equities, and the public interest).

# IDENTITY AND INTEREST OF *AMICUS CURIAE*

*Amicus curiae* Immigration Law Reform Institute ("IRLI") is a nonprofit 501(c)(3) public-interest law firm incorporated in the District of Columbia. IRLI is dedicated to litigating immigration-related cases on behalf of, and in the interests of, United States citizens and legal permanent residents and to assisting courts in understanding and accurately applying federal immigration law. IRLI has litigated or filed *amicus* briefs in many important immigration cases. For more than twenty years, the Board of Immigration Appeals has solicited *amicus* briefs drafted by IRLI staff from IRLI's affiliate, the Federation for American Immigration Reform, because the Board considers IRLI an expert in immigration law. For these reasons, IRLI has direct interests in the issues here.

# STATEMENT OF FACTS

IRLI adopts the facts as stated by the Government. Gov't Memo. at 1-6 (ECF #42).

*AMICUS* BRIEF OF IMMIGRATION REFORM LAW INSTITUTE,
*Innovation Law Lab v. Nielsen*,
No. 3:19-cv-0807-RS                                                                                                                 1

# ARGUMENT

To establish an entitlement to interim relief, plaintiffs must show a likelihood of prevailing and irreparable harm, as well as that the balance of equities and the public interest favor the plaintiff. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). Before reaching that issue, however, a federal court first must establish its jurisdiction. *Steel Co. v. Citizens for a Better Env't.,* 523 U.S. 83, 95 (1998); *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983) (plaintiff must establish standing to obtain interim relief.). Alternatively, a court could view the jurisdictional issues as relating to a plaintiff's likelihood of prevailing.

## I.   THIS COURT LACKS JURISDICTION OVER PLAINTIFFS' CLAIMS.

Because Plaintiffs lack standing and the United States has not waived sovereign immunity for this type of action, the Court lacks jurisdiction to hear this case. Although the result that IRLI supports differs from the results reached in Ninth Circuit precedents, IRLI respectfully submits that IRLI offers rationales that those courts did not consider. Although *mutual* collateral estoppel is available against the government, *Montana v. United States,* 440 U.S. 147, 153 (1979), *non-mutual* estoppel is not. *United States v. Mendoza,* 464 U.S. 154, 162-63 (1984). Moreover, even *stare decisis* can be applied so conclusively as to violate due process. *S. Cent. Bell Tel. Co. v. Alabama,* 526 U.S. 160, 167-68 (1999). Thus, if a prior precedent did not *consider* an issue, that precedent also did not *decide* the issue:

> Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.

*Cooper Indus., Inc. v. Aviall Serv., Inc.,* 543 U.S. 157, 170 (2004) (interior quotations omitted); *Waters v. Churchill*, 511 U.S. 661, 678 (1994) ("cases cannot be read as foreclosing an argument that they never dealt with"). Notwithstanding the results in decisions like *East Bay Sanctuary*

*Covenant v. Trump*, 909 F.3d 1219, 1249 (9th Cir. 2018), therefore, this Court must evaluate standing afresh.

### A. The Individual Plaintiffs lack standing for the relief they seek.

The Supreme Court has made it clear that "an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application." *Landon v. Plasencia*, 459 U.S. 21, 32 (1982). Excluding an alien seeking admission is an act of sovereignty. *Id.* Accordingly, "[w]hatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned." *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953) (interior quotation marks omitted). Here, the INA (*i.e.*, the procedure authorized by Congress") provides for the very injury that the Individual Plaintiffs seek to avoid.

### B. The Institutional Plaintiffs cannot premise standing on diverted resources.

Notwithstanding the Ninth Circuit's decision in *East Bay Sanctuary Covenant*, the Institutional Plaintiffs cannot premise standing on their diverted resources, which are self-inflicted injuries and, thus, cannot support standing. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 418 (2013); *Pennsylvania v. New Jersey,* 426 U.S. 660, 664 (1976). Under the unique statutory and factual situation in *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), a housing-rights organization's diverted resources provided it standing, but that argument must fail in most other settings.

Relying on *Gladstone, Realtors v. Bellwood*, 441 U.S. 91, 102-09 (1979), *Havens Realty* held that the Fair Housing Act at issue there extends "standing under § 812 … to the full limits of Art. III," so that "courts accordingly lack the authority to create prudential barriers to standing in suits brought under that section," 455 U.S. at 372, thereby collapsing the standing inquiry into the question of whether the alleged injuries met the Article III minimum of injury in fact. *Id.* The

typical organizational plaintiff and typical statute lack several critical criteria from *Havens Realty*.

First, the *Havens Realty* organization had a statutory right (backed by a statutory cause of action) to truthful information that the defendants denied to it. Because "Congress may create a statutory right[,] … the alleged deprivation of [such rights] can confer standing." *Warth v. Seldin,* 422 U.S. 490, 514 (1975). Under a typical statute, by contrast, a typical organizational plaintiff has no claim to any rights related to its own voluntarily diverted resources.

Second, and related to the first issue, the injury that an organizational plaintiff claims must align with the other components of its standing, *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 772 (2000); *Mountain States Legal Found. v. Glickman,* 92 F.3d 1228, 1232 (D.C. Cir. 1996), including the allegedly cognizable right. In *Havens Realty,* the statutorily protected right to truthful housing information aligned with the alleged injury (costs to counteract false information given in violation of the statute). By contrast, under the INA (or any typical statute), there will be no rights even *remotely* related to – much less *aligned with* – a third-party organization's discretionary spending.

Third, and most critically, the *Havens Realty* statute eliminated prudential standing, so the zone-of-interest test did not apply. When a plaintiff — whether individual or organizational — sues under a statute that *does not eliminate prudential standing*, that plaintiff cannot bypass the zone-of-interest test or other prudential limits on standing. Typically, it would be fanciful to suggest that a statute has private, third-party spending in its zone of interests. Certainly, that is the case for the INA.[1]

---

[1] *East Bay Sanctuary Covenant* found the entities' diverted-funding injuries within the INA's and §1158's zone of interests because various INA provisions recognize the right to counsel, including *pro bono* counsel. 909 F.3d at 1244-45. But the challenged agency action here does not

### C. The Institutional Plaintiffs' lost funding from California does not provide standing.

The Ninth Circuit also considered it relevant that the institutional plaintiffs there received funding from the State of California that depended in part on the volume of refugees processed, which provided the institutional plaintiffs standing to challenge any threat to their funding stream. *East Bay Sanctuary Covenant*, 909 F.3d at 1243. The bounty or wager that third parties put on an entity's serving asylum-seeking aliens cannot establish standing to sue the federal government over federal immigration policy:

> There is no doubt, of course, that as to this portion of the recovery — the bounty he will receive if the suit is successful — a *qui tam* relator has a concrete private interest in the outcome of the suit. But the same might be said of someone who has placed a wager upon the outcome. An interest unrelated to injury in fact is insufficient to give a plaintiff standing.

*Stevens*, 529 U.S. at 772 (interior quotation marks, alterations, and citations omitted). Just like the bounty or hypothetical wager in *Stevens*, an interest in third-party funding here is insufficiently related the Institutional Plaintiffs' asserted injury from the Government's actions. California cannot create standing against the federal government merely by subsidy.[2]

---

impose any burden on the right of counsel, and the Institutional Plaintiffs' diverted-resource injuries do not relate in any legal way to aliens' right to counsel.

[2]   To be sure, *Stevens* found standing for *qui tam* relators, albeit not based on the bounty *per se*; instead, *Stevens* found the United States to have assigned a portion of *its* Article III claim to the private *qui tam* relator and premised the relator's standing on that assignment of rights. *See Sprint Communs. Co., L.P. v. APCC Servs.*, 554 U.S. 269, 285 (2008) (discussing assignee standing under *Stevens*). California has done nothing of the kind here, but even if California wanted to do so, California lacks an Article III claim against the federal government to assign here. *Alfred L. Snapp & Son v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 610 n.16 (1982). Consequently, California's payments to the Institutional Plaintiffs are no more consequential here than the hypothetical wager in *Stevens*.

### D. The United States has not waived sovereign immunity for this action.

APA review should be unavailable for these removal issues because the INA channels judicial review to the affected aliens' removal proceedings. *See* 8 U.S.C. §1252(g); Gov't Memo. at 8-9. The APA excludes review for "statutes [that] preclude judicial review" and ones with "special statutory review." 5 U.S.C. §§701(a)(1), 703. When a statute provides special statutory review, APA review is unavailable. *FCC v. ITT World Commc'ns, Inc.*, 466 U.S. 463, 469 (1984). Only when preclusion-of-review statutes provide *no opportunity whatsoever* for review does the Court rely on its equitable authority to provide review. *Leedom v. Kyne,* 358 U.S. 184, 188-90 (1958). That extraordinary relief is not available where — as here — review is available in enforcement proceedings. *Board of Governors of the Federal Reserve System v. MCorp Financial,* 502 U.S. 32, 43-44 (1991). The INA's special statutory review displaces APA review.

## II. PLAINTIFFS ARE UNLIKELY TO PREVAIL ON THE MERITS.

The most important factor for granting or denying interim relief is the movant's likelihood of prevailing on the merits. Here, Plaintiffs are unlikely to prevail on any of their claims.

### A. The MPP is consistent with the INA.

Plaintiffs argue that the MPP cannot apply to the Individual Plaintiffs because they are eligible for expedited removal under 8 U.S.C. §1225(b)(1), and the Government's authority to send aliens back to Mexico under 8 U.S.C. §1225(b)(2)(C) does not apply to "an alien … to whom [§1225(b)(1)] applies." *See* 8 U.S.C. §1225(b)(2)(B)(ii). The Government counters that it has prosecutorial discretion under §1225(b)(1) *not* to apply expedited removal against any particular alien, such that that alien would not be one to whom §1225(b)(1) is applied. While it accepts the Government's distinction, *amicus* IRLI respectfully submits that the dispute may be easier to resolve than the parties suggest.

As indicated, the Government's authority to return an alien to Mexico resides in §1225(b)(2)(C), and it applies to "an alien *described* in subparagraph [§1225(b)(2)(A)]." 8 U.S.C. §1225(b)(2)(C) (emphasis added). In turn, §1225(b)(2)(A) *describes* the following type of alien: "an alien seeking admission [who] is not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. §1225(b)(2)(A). The actionable part of §1225(b)(2)(A) provides that "the alien shall be detained for a proceeding under [§1229a]," *id.*, qualified as being "[s]ubject to subparagraphs [§1225(b)(2)(B)] and [§1225(b)(2)(C)]." *Id.* But the qualifier alters the aliens "detained for a proceeding under [§1229a]," *id.*, not the "alien[s] *described* in subparagraph [§1225(b)(2)(A)]." 8 U.S.C. §1225(b)(2)(C) (emphasis added). Significantly, Congress choose two different verbs – "applies" and "apply" in §1225(b)(2)(B) and "described" in §1225(b)(2)(C) – which suggests that the words have different meanings. *SEC v. McCarthy*, 322 F.3d 650, 656 (9th Cir. 2003) ("different words appearing in the same statute are presumed to have different meanings"). This is, Congress purposely choose *not to say* "an alien to whom subparagraph (A) applies," which would have incorporated the exceptions in §1225(b)(2)(B). Nothing in the way that Congress framed §1225(b)(2)(A) suggests that the two caveats – §1225(b)(2)(B) and §1225(b)(2)(C) – could not work independently, such that §1225(b)(2)(B)'s exceptions do not limit the independent authority provided in §1225(b)(2)(C) for the type of alien described in §1225(b)(2)(A). The Individual Plaintiffs are that type of alien – namely, ones "not clearly and beyond a doubt entitled to be admitted" – whether they are processed in expedited or normal removal proceedings.

### B.  The MPP is consistent with the non-refoulment obligations.

As the Government explains, Plaintiffs' arguments based on international-law obligations must fail: "'where a controlling executive or legislative act … exist[s], customary international

law is inapplicable.'" Gov't Memo. at 14-15 (quoting *Galo-Garcia v. I.N.S.*, 86 F.3d 916, 918 (9th Cir. 1996)). Moreover, whatever conditions prompted the non-Mexican Individual Plaintiffs to leave their country, those conditions do not necessarily apply throughout Mexico, especially in the areas where they would await processing of their applications for asylum.[3]

### C. The MPP satisfies the APA's requirement for reasoned decisionmaking.

Plaintiffs also argue that the MPP fails to qualify as reasoned decisionmaking under the APA arbitrary-and-capricious standard because the MPP is not rationally related to its proffered justifications and instead relies of false premises. Pls.' Memo. at 16-19. This mode of judicial review is quite narrow:

> The scope of review under the arbitrary and capricious standard is narrow. A court is not to ask whether a regulatory decision is the best one possible or even whether it is better than the alternatives.

*FERC v. Elec. Power Supply Ass'n*, 136 S.Ct. 760, 782 (2016) (internal quotations, alterations, and citations omitted). An agency action meets this narrow review if "the agency … examined the relevant considerations and articulated a satisfactory explanation for its action." *Id.* Here, the MPP will not only aid legitimate asylum seekers in the long run but also address the crisis at the southern border. Although Plaintiffs – individually and through their clients – may represent exclusively those with sterling asylum claims, the fact remains that even Plaintiffs admit that considerably fewer than half of asylum seekers have valid claims. Pls.' Memo. at 19 (25%); *cf.* Gov't Memo. at 20 (17%). Too many would-be asylum seekers crowd the border – creating delays for all asylum seekers – in the hope that they will be paroled into the interior, then skip an

---

[3] The need for a "credible threat" of harm *in Mexico after relocated* under the INA also provides a barrier to the Individual Plaintiffs' standing. *Babbitt v. United Farm Workers Nat'l Union,* 442 U.S. 289, 298 (1979).

immigration hearing. The MPP seeks to end that sort of opportunistic "gaming" of the asylum system, which ultimately will improve the asylum process for *bona fide* asylum seekers. While this might not be the choice that Plaintiffs or even this Court would make, that is not the test.

### D. The MPP satisfied the APA's procedural requirements.

The APA exempts general statements of policy and interpretive rules from notice-and-comment rulemaking. 5 U.S.C. §553(b)(A). Although Plaintiffs suggest otherwise, Pls.' Memo. at 15 (ECF #20-1), the question of whether a rule is "legislative" (*i.e.*, of the type that requires notice-and-comment rulemaking) does not depend on the number of interested parties. Plaintiffs also argue that the MPP amends existing legislative rules on non-refoulement, which is flawed for the same reasons as Plaintiffs' refoulement claims. *See* Section II.B, *supra*. In any event, as the Government argues the MPP does not amend existing regulations. See Gov't Memo. at 21.[4]

## III. THE OTHER STAY FACTORS COUNSEL FOR DENYING INTERIM RELIEF.

Although the unlikelihood that Plaintiffs will prevail is enough to deny interim relief, the other three Winter factors also counsel against interim relief.

### A. Plaintiffs will not suffer irreparable harm.

Injuries that qualify as sufficiently immediate under Article III can nonetheless fail to qualify under the higher bar for irreparable harm. *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149-50, 162 (2010). This is especially true for self-inflicted injuries like diverted resources. *Second City Music, Inc. v. City of Chicago*, 333 F.3d 846, 850 (7th Cir. 2003) ("self-

---

[4] Plaintiffs argue that the Government previously published plans to undergo notice-and-comment in this area, Pls.' Memo. at 14. Obviously, the Government decided to proceed by issuing a guidance document instead of undergoing a rulemaking. Plaintiffs cannot estop the Government to carry out its prior plans. *Office of Personnel Mgmt. v. Richmond*, 496 U.S. 414, 419-20 (1990) ("equitable estoppel will not lie against the Government").

inflicted wounds are not irreparable injury"); *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.*, 290 F.3d 578, 596 (3d Cir. 2002) ("injury … may be discounted by the fact that [a party] brought that injury upon itself"); *Davis v. Mineta*, 302 F.3d 1104, 1116 (10th Cir. 2002). As explained, Plaintiffs lack standing, *see* Sections I.A-I.C, *supra*, so they lack irreparable harm as well. But even if Plaintiffs have standing, irreparable harm requires more than Article III standing. It certainly does not allow less.

### B. The balance of equities favors the Government.

The balance of equities tips in the Government's favor for two reasons. First, the Government's advantage on the substantive merits tips the equities in its favor. *See* Section II, *supra*. Second, Plaintiffs' tenuous interest — if even cognizable, *see* Sections I, *supra* — undercuts their ability to assert a countervailing form of irreparable harm. *See* Section III.A, *supra*. Consequently, the balance of equities tips decidedly in the Government's favor.

### C. The public interest favors the Government.

The last stay criterion is the public interest. Where the parties dispute the lawfulness of government programs, this last criterion collapses into the merits. *Washington v. Reno*, 35 F.3d 1093, 1103 (6th Cir. 1994). If the Court agrees with the Government on the merits, the public interest will tilt decidedly toward the Government: "It is in the public interest that federal courts of equity should exercise their discretionary power with proper regard for the rightful independence of state governments in carrying out their domestic policy." *Burford v. Sun Oil Co.,* 319 U.S. 315, 318 (1943). In public-injury cases, equitable relief that affects competing public interests "has never been regarded as strictly a matter of right, even though irreparable injury may otherwise result to the plaintiff" because courts also consider adverse effects on the public interest. *Yakus v. United States*, 321 U.S. 414, 440 (1944). This Court should not attempt

to set immigration policy for the Nation.

**CONCLUSION**

This Court should deny the request for interim relief.

Dated: March 5, 2019						Respectfully submitted,

<u>  /s/ Lawrence J. Joseph					</u>
Lawrence J. Joseph (SBN 154908)

Law Office of Lawrence J. Joseph
1250 Connecticut Ave, NW, Suite 700-1A
Washington, DC 20036
Tel: 202-355-9452
Fax: 202-318-2254
Email: ljoseph@larryjoseph.com

*Counsel for Amicus Curiae*