Judy Rabinovitz*
Michael Tan*
Omar Jadwat*
Lee Gelernt*
Anand Balakrishnan*
Daniel Galindo (SBN 292854)
ACLU FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Floor
New York, NY 10004
T: (212) 549-2660
F: (212) 549-2654
*jrabinovitz@aclu.org*
*mtan@aclu.org*
*ojadwat@aclu.org*
*lgelernt@aclu.org*
*abalakrishnan@aclu.org*
*dgalindo@aclu.org*

Melissa Crow***
SOUTHERN POVERTY LAW CENTER
1101 17th Street NW, Suite 705
Washington, D.C. 20036
T: (202) 355-4471
F: (404) 221-5857
*melissa.crow@splcenter.org*

Jennifer Chang Newell (SBN 233033)
Katrina Eiland (SBN 275701)
Julie Veroff (SBN 310161)
ACLU FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
39 Drumm Street
San Francisco, CA 94111
T: (415) 343-0770
F: (415) 395-0950
*jnewell@aclu.org*
*keiland@aclu.org*
*jveroff@aclu.org*

*Attorneys for Plaintiffs* (*Additional counsel listed on following page*)

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Innovation Law Lab, *et al.*,<br><br>    *Plaintiffs*,<br><br>    v.<br><br>Kirstjen Nielsen, *et al.*,<br><br>    *Defendants*. | CASE NO.: 3:19-CV-00807-RS<br><br>**PLAINTIFFS' MOTION TO CONSIDER PLAINTIFFS' EVIDENCE AND REQUEST TO SET A BRIEFING SCHEDULE FOR A MOTION TO COMPLETE THE ADMINISTRATIVE RECORD; MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION AND OPPOSITION TO DEFENDANTS' MOTION TO STRIKE**<br><br>**Date:** TBD<br>**Time:** TBD<br>**Courtroom:** 3, 17th Floor<br>**Judge:** Hon. Richard Seeborg |

Mary Bauer***
SOUTHERN POVERTY LAW CENTER
1000 Preston Avenue
Charlottesville, VA  22903
T: (470) 606-9307
F: (404) 221-5857
mary.bauer@splcenter.org

Gracie Willis***
SOUTHERN POVERTY LAW CENTER
150 East Ponce de Leon Avenue, Suite 340
Decatur, GA  30030
T: (404) 221-6700
F: (404) 221-5857
gracie.willis@splcenter.org

Michelle P. Gonzalez***
SOUTHERN POVERTY LAW CENTER
P.O. Box 370037
Miami, FL 33137-0037
T: 786-753-1383
F: 786-237-2949
mich.gonzalez@splcenter.org

Steven Watt***
ACLU FOUNDATION HUMAN RIGHTS
PROGRAM
125 Broad Street, 18th Floor
New York, NY 10004
T: (212) 519-7870
F: (212) 549-2654
swatt@aclu.org


Attorneys for Plaintiffs

*Admitted pro hac vice
**Application for pro hac vice pending
***Pro hac vice application forthcoming

Sean Riordan (SBN 255752)
Christine P. Sun (SBN 218701)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN
CALIFORNIA, INC.
39 Drumm Street
San Francisco, CA 94111
T: (415) 621-2493
F: (415) 255-8437
sriordan@aclunc.org
csun@aclunc.org

Blaine Bookey (SBN 267596)
Karen Musalo (SBN 106882)
Eunice Lee (SBN 316237)
Kathryn Jastram (SBN 127625)
Sayoni Maitra***
CENTER FOR GENDER & REFUGEE
STUDIES
200 McAllister St.
San Francisco, CA 94102
T: (415) 565-4877
F: (415) 581-8824
bookeybl@uchastings.edu
musalok@uchastings.edu
leeeunice@uchastings.edu
jastramkate@uchastings.edu
maitras@uchastings.edu

# TABLE OF CONTENTS

INTRODUCTION ......................................................................................................... 2

I.     DEFENDANTS CONCEDE THE COURT CAN CONSIDER PLAINTIFFS' EVIDENCE IN SUPPORT OF STANDING .......................................................... 4

II.    THE COURT CAN CONSIDER PLAINTIFFS' EVIDENCE IN SUPPORT OF ALL THE NON-MERITS INJUNCTION FACTORS .......................................... 5

III.    THE COURT CAN CONSIDER PLAINTIFFS' EVIDENCE IN SUPPORT OF THEIR MERITS CLAIMS UNDER THE "RELEVANT FACTORS" AND "TECHNICAL EXPERTISE" EXCEPTIONS .................................................... 10

A. Declaration of Taslim Tavarez and Second Declaration of Stephen Manning ........................................................................................... 11

B. Declaration of Cecilia Menjivar ......................................................... 12

C. Exhibit P to the Declaration of Rubi Rodriguez ............................... 14

D. Declaration of Adam Isacson ............................................................. 14

E. Declaration of Aaron Reichlin-Melnick............................................. 15

CONCLUSION ............................................................................................................ 17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

## Cases

*Am. Bioscience, Inc. v. Thompson*,
243 F.3d 579 (D.C. Cir. 2001) ........................................................................... 9

*Batalla Vidal v. Nielsen*,
279 F. Supp. 3d 401 (E.D.N.Y. 2018) ............................................................... 8

*Border Power Plant Working Grp. v. Dep't of Energy*,
467 F. Supp. 2d 1040 (S.D. Cal. 2006) ............................................................. 16

*California v. Ross*,
No. 18-cv-01865-RS (N.D. Cal. Mar. 6, 2019) ................................................ 14

*Calloway v. Harvey*,
590 F. Supp. 2d 29 (D.D.C. 2008) ..................................................................... 10

*Chesapeake Climate Action Network v. Export-Import Bank of the U.S.*,
78 F. Supp. 3d 208 (D.D.C. 2015) ..................................................................... 5

*City of Las Vegas, Nev. v. F.A.A.*,
570 F.3d 1109 (9th Cir. 2009) ........................................................................... 11

*Defenders of Wildlife v. U.S. Fish*,
2016 WL 4382604 (N.D. Cal. Aug. 17, 2016) ............................................. 13, 16

*Earth Island Inst. v. Evans*,
256 F. Supp. 2d 1064 (N.D. Cal. 2003) ............................................................. 6

*Earth Island Inst. v. U.S. Forest Serv.*,
442 F.3d 1147 (9th Cir. 2006) ...................................................................... 13, 16

*E. Bay Sanctuary Covenant v. Trump*,
909 F.3d 1219 (9th Cir. 2018) ........................................................................... 8

*E. Bay Sanctuary Covenant v. Trump*,
2018 WL 6660080 (N.D. Cal. Dec. 19, 2018) ............................................ 6, 7, 9

*E. Bay Sanctuary Covenant v. Trump*,
349 F. Supp. 3d 838 (N.D. Cal. 2018) ...................................................... 4, 8, 15

*Eco Tour Adventures, Inc. v. Zinke*,
249 F. Supp. 3d 360 (D.D.C. 2017) ................................................................... 7

*Envtl. Prot. Info. Ctr. v. Blackwell*,
389 F. Supp. 2d 1174 (N.D. Cal. 2004) ............................................................. 5

PLS.' MOT TO CONSIDER EVIDENCE AND OPP'N TO DEFS.' MOT. TO STRIKE
CASE NO. 3:19-cv-00807-RS

*Hill Dermaceuticals, Inc. v. U.S. Food & Drug Admin.*,
2012 WL 5914516 (D.D.C. May 18, 2012) ........................................................... 6

*Inland Empire-Immigrant Youth Collective v. Duke*,
2017 WL 5900061 (C.D. Cal. Nov. 20, 2017) ..................................................... 4

*Inland Empire-Immigrant Youth Collective v. Nielsen*,
2018 WL 1061408 (C.D. Cal. Feb. 26, 2018) ...................................................... 4

*Jiahao Kuang v. U.S. Dep't of Def.*,
340 F. Supp. 3d 873 (N.D. Cal. 2018) ................................................................ 6

*Jiahao Kuang v. U.S. Dep't of Def.*,
2019 WL 293379 (N.D. Cal. Jan. 23, 2019) ...................................................... 3

*Lands Council v. Powell*,
395 F.3d 1019 (9th Cir. 2005) ............................................................... passim

*Nat'l Min. Ass'n v. Jackson*,
856 F. Supp. 2d 150 (D.D.C. 2012) .................................................................. 10

*Nat'l Res. Def. Council, Inc. v. Evans*,
2003 WL 22025005 (N.D. Cal. Aug. 26, 2003) .................................................. 6

*Nw. Envtl. Def. Ctr. v. Bonneville Power Admin.*,
117 F.3d 1520 (9th Cir. 1997) ......................................................................... 5

*Oceana, Inc. v. Pritzker*,
126 F. Supp. 3d 110 (D.D.C. 2015) .................................................................. 16

*San Luis & Delta-Mendota Water Auth. v. Locke*,
776 F.3d 971 (9th Cir. 2014) ..................................................................... 13, 14

*Saravia for A.H. v. Sessions*,
905 F.3d 1137 (9th Cir. 2018) ......................................................................... 5

*Save Our Cumberland Mountains v. Norton*,
297 F. Supp. 2d 1042 (E.D. Tenn. 2003) .......................................................... 4

*Save Our Sonoran, Inc. v. Flowers*,
408 F.3d 1113 (9th Cir. 2005) ......................................................................... 5

*Sierra Club v. EPA*,
292 F.3d 895 (D.C. Cir. 2002) ......................................................................... 5

*Sw. Ctr. for Biological Diversity v. U.S. Forest Serv.*,
100 F.3d 1443 (9th Cir. 1996) ............................................................... 1, 3, 10

*United States v. $2,164,341 in U.S. Currency*,

    2013 WL 2458757 (D. Ariz. June 6, 2013) ............................................................................ 11, 12

*United States v. Alisal Water Corp.*,

    431 F.3d 643 (9th Cir. 2005) ....................................................................................................... 7

*United States v. Cornejo-Reynoso*,

    621 Fed. Appx. 495 (9th Cir. 2015) ......................................................................................... 11

*Winter v. Nat'l Res. Def. Council, Inc.*,

    555 U.S. 7 (2008) ............................................................................................................. 5, 6, 14

**Statutes**

5 U.S.C. § 706 ..................................................................................................................................... 7

**Other Authorities**

Department of Homeland Security, Office of Inspector General, *Special Review – Initial*

    *Observations Regarding Family Separation Issues Under the Zero Tolerance Policy*,

    Sept. 27, 2018 ............................................................................................................................ 15

PLEASE TAKE NOTICE that Plaintiffs respectfully request that the Court consider the evidence submitted in support of their Motion for Temporary Restraining Order (now Preliminary Injunction).  A hearing has not yet been scheduled.

As set forth more fully in the accompanying Opposition to Defendants' Motion to Strike / Memorandum in Support of Plaintiffs' Motion to Consider Plaintiffs' Evidence, the vast majority of Plaintiffs' evidence supports their arguments on standing and the non-merits injunction factors— irreparable harm, balance of the equities, and public interest.  It is well established that courts may consider such evidence in administrative record cases.  In addition, the Court may consider Plaintiffs' evidence cited in support of their claim that Defendants' forced return policy is arbitrary and capricious in violation of the Administrative Procedure Act because such evidence "is necessary to determine 'whether the agency has considered all relevant factors and has explained its decision,'" as well as "'to explain technical terms or complex subject matter.'"  *Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005) (quoting *Sw. Ctr. for Biological Diversity v. U.S. Forest Serv.*, 100 F.3d 1443, 1450 (9th Cir. 1996)).

In opposing Defendants' Motion to Strike and filing the instant Motion to Consider Plaintiffs' Evidence, Plaintiffs do not concede that the administrative record is complete.  To the contrary, Plaintiffs believe that the administrative record was not properly compiled and is incomplete.  Because the contents of the administrative record are in dispute, Plaintiffs also do not concede that all of their evidence is extra-record.

Defendants' counsel did not inform Plaintiffs' counsel during negotiations over the stipulated briefing schedule that they intended to produce the administrative record prior to the completion of briefing on the preliminary injunction.  Accordingly, no deadlines for production of the administrative record or motions concerning the proper contents of the administrative record were built into the stipulated briefing schedule.  *See* ECF No. 30.  Defendants' counsel first

informed Plaintiffs' counsel that they would be filing an administrative record with the Court on March 1, 2019, the same day it was filed. *See* ECF No. 43. Because the stipulated proposed briefing schedule did not include any time for the parties to meet and confer concerning the contents of the administrative record, or any deadlines for Plaintiffs to file motions concerning the proper contents of the administrative record, Plaintiffs now request that the Court enter a schedule that would permit any disputes concerning the proper contents of the administrative record to be resolved on a separate track from Plaintiffs' Motion for Preliminary Injunction.

Plaintiffs propose that resolution of the disputes over the contents of the administrative record proceed on a separate schedule to avoid any delay in the Court's resolution of their Motion for Preliminary Injunction. Accordingly, the Court may assume for purposes of deciding Plaintiffs' Motion for Preliminary Injunction, as well as their Motion to Consider Plaintiffs' Evidence and Defendants' Motion to Strike Extra-Record Evidence, that the administrative record is complete at this time, without prejudice to Plaintiffs' ability to bring a motion to complete the record pursuant to a separate schedule entered by the Court.[1]

The parties have conferred. Defendants oppose Plaintiffs' Motion to Consider Plaintiffs' Evidence and Plaintiffs' proposed schedule for resolving disputes concerning the proper contents of the administrative record. Defendants have indicated that they intend to propose their own schedule.

## INTRODUCTION

Plaintiffs respectfully request that the Court consider the evidence submitted in support of their Motion for Temporary Restraining Order (now Preliminary Injunction). It is well established

---

[1] Plaintiffs have filed a single brief opposing Defendants' Motion to Strike Extra-Record Evidence and supporting Plaintiffs' Motion to Consider Plaintiffs' Evidence because the arguments as to each are identical. Plaintiffs therefore do not believe that filing a Motion to Consider Plaintiffs' Evidence—which was necessitated by Defendants' decision to file an administrative record— should affect the timing of Defendants' final brief regarding Plaintiffs' evidence supporting their Motion for Preliminary Injunction as set out in the stipulated briefing schedule. *See* ECF No. 31.

that the Court may consider evidence outside the administrative record in support of Plaintiffs'

standing arguments and request for injunctive relief.  And indeed, the vast majority of Plaintiffs'

declarations and exhibits support their arguments on standing, irreparable harm, balance of the

equities, and public interest.  In addition, the Court may consider Plaintiffs' evidence cited in

support of their claim that Defendants' forced return policy is arbitrary and capricious in violation

of the Administrative Procedure Act because such evidence "is necessary to determine 'whether the

agency has considered all relevant factors and has explained its decision,'" as well as "'to explain

technical terms or complex subject matter.'"  *Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th

Cir. 2005) (quoting *Sw. Ctr. for Biological Diversity v. U.S. Forest Serv.*, 100 F.3d 1443, 1450 (9th

Cir. 1996)).[2]

Defendants suggest that Plaintiffs should have acknowledged earlier that their evidence was

outside the administrative record and criticize Plaintiffs for not having moved earlier to challenge

the administrative record as incomplete or to ask the Court to consider extra-record evidence.  *See*

ECF No. 45 at 3, 6-7.  But doing so would have been premature, as Defendants had not yet

produced the administrative record when Plaintiffs filed their Motion for a Temporary Restraining

Order.  Indeed, Defendants' counsel never informed Plaintiffs' counsel during negotiations over the

stipulated briefing schedule that they intended to produce the administrative record prior to the

completion of that schedule.  Plaintiffs therefore had no way to know what evidence would be

---

[2] This case does not arise solely under the Administrative Procedure Act (APA).  Plaintiffs' Fifth Claim for Relief is a claim for violation of the customary international law prohibition on *refoulement*, cognizable under the Alien Tort Statute (ATS).  *See* ECF No. 1 (Compl.) ¶¶ 171-178. Plaintiffs have not yet moved for relief on that claim; rather, they have moved for preliminary relief only on their APA claims.  Because Plaintiffs have not yet sought relief on their ATS claim or supplied the Court with any briefing as to its contours beyond the Complaint, the Court should not decide now whether that ATS claim requires a "fundamentally similar" analysis to Plaintiffs' APA claims and so can be decided solely based on the administrative record or whether it requires the consideration of evidence outside the administrative record. *Jiahao Kuang v. U.S. Dep't of Def.*, 2019 WL 293379, at *2 (N.D. Cal. Jan. 23, 2019).

PLS.' MOT TO CONSIDER EVIDENCE AND OPP'N TO DEFS.' MOT. TO STRIKE
CASE NO. 3:19-cv-00807-RS

1   included in the administrative record.[3]

2      Because Plaintiffs had no opportunity to meet and confer with Defendants concerning the

3   contents of the administrative record or file a motion to complete the record, Plaintiffs do not agree

4   that the administrative record is complete at this time.  However, for the purposes of deciding

5   Defendants' Motion to Strike, Plaintiffs' Motion to Consider Plaintiffs' Evidence, and Plaintiffs

6   Motion for a Preliminary Injunction, the Court may assume that the administrative record is

7   complete, without prejudice to Plaintiffs' ability to bring a subsequent motion to complete the

8   record.

9      For the reasons that follow, even assuming arguendo the administrative record is complete,

10  the Court should grant Plaintiffs' Motion to Consider Plaintiffs' Evidence and deny Defendants'

11  Motion to Strike Extra-Record Evidence.

12  **I.   DEFENDANTS CONCEDE THE COURT CAN CONSIDER PLAINTIFFS'
       EVIDENCE IN SUPPORT OF STANDING**

13     Defendants concede, as they must given clear Ninth Circuit law, that the Court may consider

14  Plaintiffs' evidence submitted in support of standing.  *See* ECF No. 45 at 6 ("plaintiffs challenging

15  agency action and seeking preliminary injunctive relief can introduce de novo evidence to support

16  their allegations of Article III injury"); *id.* at 12.[4]  *See Nw. Envtl. Def. Ctr. v. Bonneville Power*

---

[3] Moreover, courts routinely decide requests for temporary restraining orders and preliminary injunctive relief in Administrative Procedure Act cases prior to the agency's production of the administrative record, and often rely on other evidence in doing so.  *See, e.g., E. Bay Sanctuary Covenant v. Trump*, 349 F. Supp. 3d 838 (N.D. Cal. 2018) (granting temporary restraining order prior to production of the administrative record); *Inland Empire-Immigrant Youth Collective v. Duke*, 2017 WL 5900061 (C.D. Cal. Nov. 20, 2017) (granting a preliminary injunction prior to production of the administrative record); *Inland Empire-Immigrant Youth Collective v. Nielsen*, 2018 WL 1061408 (C.D. Cal. Feb. 26, 2018) (same); *Save Our Cumberland Mountains v. Norton*, 297 F. Supp. 2d 1042, 1046 (E.D. Tenn. 2003) (considering whether plaintiffs were entitled to a preliminary injunction "without waiting for the administrative record to be filed").

[4] At certain points, Defendants limit their concession to Plaintiffs' evidence submitted in support of organizational standing.  *See* ECF No. 45 at 3, 7, 14.  But Defendants offer no reason to distinguish between evidence submitted in support of the Organizational Plaintiffs' standing and evidence submitted in support of the Individual Plaintiffs' standing.  Nor could they, in light of the authority discussed *infra*.  Defendants' asserted limitation is also odd given that they do not move to strike

*Admin.*, 117 F.3d 1520, 1528 (9th Cir. 1997) ("We therefore consider the affidavits not in order to supplement the administrative record on the merits, but rather to determine whether petitioners can satisfy a prerequisite to this court's jurisdiction."); *see also, e.g.*, *Save Our Sonoran, Inc. v. Flowers*, 408 F.3d 1113, 1120 (9th Cir. 2005) (considering affidavits and evidence in support of standing in APA case), *abrogated on other grounds by Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7 (2008); *Envtl. Prot. Info. Ctr. v. Blackwell*, 389 F. Supp. 2d 1174, 1220 (N.D. Cal. 2004) (permitting "evidence regarding standing"); *Chesapeake Climate Action Network v. Export-Import Bank of the U.S.*, 78 F. Supp. 3d 208, 217 (D.D.C. 2015) ("[P]laintiffs may submit extra-record evidence to establish standing. . . .  Indeed, if standing is not self-evident, a plaintiff '*must* supplement the record to the extent necessary to explain and substantiate its entitlement to judicial review.'") (quoting *Sierra Club v. EPA*, 292 F.3d 895, 900 (D.C. Cir. 2002)).  Thus, Plaintiffs' evidence in support of all the standing requirements is properly before the Court.[5]

## II. THE COURT CAN CONSIDER PLAINTIFFS' EVIDENCE IN SUPPORT OF ALL THE NON-MERITS INJUNCTION FACTORS

It is likewise well established that the Court can consider Plaintiffs' evidence in support of their request for injunctive relief.  In order to demonstrate entitlement to a preliminary injunction, Plaintiffs must establish, in addition to likelihood of success on the merits, that they are "likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [their] favor, and that an injunction is in the public interest."  *Saravia for A.H. v. Sessions*, 905 F.3d 1137, 1142 (9th Cir. 2018).

---

the Individual Plaintiffs' declarations.

[5] The evidence supporting Plaintiffs' standing includes: ECF No. 5-1 (Declaration of John Doe); ECF No. 5-2 (Gregory Doe Decl.); ECF No. 5-3 (Bianca Doe Decl.); ECF No. 5-4 (Dennis Doe Decl.); ECF No. 5-5 (Alex Doe Decl.); ECF No. 5-6 (Christopher Doe Decl.); ECF No. 5-7 (Evan Doe Decl.); ECF No. 5-8 (Frank Doe Decl.); ECF No 5-9 (Kevin Doe Decl.); ECF No. 5-10 (Howard Doe Decl.); ECF No. 5-11 (Ian Doe Decl.); ECF No. 20-4 (Cutlip-Mason Decl.) ; ECF No. 20-5 (Wolfe-Roubatis Decl.); ECF No. 20-6 (First Manning Decl.); ECF. No 20-7 (Ramos Decl.); ECF 20-8 (Sanchez Decl.); ECF No.20-9 (Brown Scott Decl.).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

The case law is clear that the Court may consider evidence outside the administrative record in support of each of the non-merits injunction factors—i.e., irreparable harm, balance of the equities, and public interest.  *See, e.g.*, *Winter v. Nat'l. Res. Def. Council, Inc.*, 555 U.S. 7, 24-26 (2008) (relying on "declarations from some of the Navy's most senior officers" and declarations from plaintiffs regarding harm to "ecological, scientific, and recreational interests" to assess, in the context of a preliminary injunction, the balance of the equities and the public interest); *E. Bay Sanctuary Covenant v. Trump*, 2018 WL 6660080, at *6 (N.D. Cal. Dec. 19, 2018) (denying motion to strike extra-record evidence regarding the balance of the equities and the public interest); *Jiahao Kuang v. U.S. Dep't of Def.*, 340 F. Supp. 3d 873, 917 (N.D. Cal. 2018) ("'[T]he Court is not limited to the administrative record' when 'assessing how the issuance of an injunction may harm the public interest.'") (quoting *Nat'l Res. Def. Council, Inc. v. Evans*, 2003 WL 22025005, at *1 (N.D. Cal. Aug. 26, 2003)); *Earth Island Inst. v. Evans*, 256 F. Supp. 2d 1064, 1078 n.16 (N.D. Cal. 2003) (considering plaintiffs' materials submitted "in connection with the equitable and public interest considerations that plaintiffs must address in order to obtain preliminary injunctive relief"); *Hill Dermaceuticals, Inc. v. U.S. Food & Drug Admin.*, 2012 WL 5914516, at *10 (D.D.C. May 18, 2012) ("[T]he Court may consider the extra-record declarations submitted by [plaintiff] to the extent that they are relevant to the non-merits factors of [plaintiff's] request for injunctive relief."), *aff'd* 709 F.3d 44 (D.C. Cir. 2013).

The reason that courts regularly admit and consider extra-record evidence regarding the non-merits injunction factors is obvious: these factors generally are not addressed by the administrative record.  That is especially so in cases like this one, where the agency did not accept public comments on the challenged policy.[6]  "Thus, it will often be necessary for a court to take

---

[6] Indeed, "Defendants' proposed evidentiary rule"—that a court is limited to the administrative record in assessing evidence of irreparable harm to third parties, the balance of the equities and the public interest—"would be particularly counter-productive where," as here, a "disputed agency

6

new evidence to fully evaluate claims of irreparable harm . . . and [claims] that the issuance of the injunction is in the public interest." *Eco Tour Adventures, Inc. v. Zinke*, 249 F. Supp. 3d 360, 369 n.7 (D.D.C. 2017) (internal quotation marks omitted).

Nonetheless, Defendants argue that the Court should strike all evidence relied on to show "a balance of harms under the preliminary injunction standard." ECF No. 45 at 7. But "Defendants have cited no authority suggesting that § 706 [of the APA] limits the scope of the evidence that may be considered for [assessing the balance of the equities and the public interest]." *E. Bay Sanctuary Covenant*, 2018 WL 6660080, at *6. In fact, Defendants' position "lacks any support in the text of the APA." *Id*. The APA "instructs a reviewing court to determine whether agency action has been 'unlawfully withheld or unreasonably delayed,' . . . or whether the agency's 'action, findings, and conclusions are,' for instance, 'arbitrary and capricious' or 'without observance of procedure required by law[.]'" *Id*. (quoting 5 U.S.C. § 706). "Immediately thereafter," the statute instructs: "'*In making the foregoing determinations*, the court shall review the whole record or those parts of it cited by a party . . . .'" *Id*. (emphasis in original) (quoting 5 U.S.C. § 706). The non-merits factors at issue on a motion for preliminary injunctive relief—irreparable harm, the balance of the equities, and the public interest—are not encompassed in the "determinations" listed in the APA, and so a court need not limit its assessment of them to the administrative record . *See United States v. Alisal Water Corp.*, 431 F.3d 643, 654 (9th Cir. 2005) ("[T]he court will not generally infer restrictions on inherent judicial authority from congressional silence[.]").

For the same reason, the Court should reject Defendants' argument that the Court should strike Plaintiffs' evidence to the extent it addresses "general conditions in Mexico or harms non-parties are suffering," even if such evidence was submitted in support of irreparable injury, balance

---

action is the foregoing of notice-and-comment procedures, as no entity would have been given the opportunity to put its views or interests before the agency and thus, into the record." *E. Bay Sanctuary Covenant*, 2018 WL 6660080, at *6 n.6.

of the equities, or the public interest, and not the merits.  ECF No. 45 at 9; *see also id.* at 7.

Moreover, courts regularly consider evidence of harms to third parties when assessing the non-merits injunction factors.  *See, e.g.*, *E. Bay Sanctuary Covenant v. Trump*, 349 F. Supp. 3d 838, 865 (N.D. Cal. 2018) (granting temporary restraining order after considering evidence that "potential asylum seekers are exposed to numerous harms while waiting [in Mexico] to present their claims"); *E. Bay Sanctuary Covenant*, 2018 WL 6660080, at *14-*15 (granting preliminary injunction after considering evidence that asylum seekers in Mexico face serious dangers and that noncitizens removed pursuant to the challenged rule would face dangers of persecution in their home countries); *Batalla Vidal v. Nielsen*, 279 F. Supp. 3d 401, 434-35 (E.D.N.Y. 2018) (considering, in irreparable harm analysis, the impact of rescinding the Deferred Action for Childhood Arrivals (DACA) program on "DACA recipients and their families," employers, and the economy writ large, and noting that the challenged decision "will profoundly disrupt the lives of hundreds of thousands of people" (internal quotation marks omitted)).

The only support Defendants offer for their misguided position is language taken out of context from the Ninth Circuit's decision in *E. Bay Sanctuary Covenant v. Trump*, 909 F.3d 1219 (9th Cir. 2018).  *See* ECF No. 45 at 9 (quoting *E. Bay Sanctuary Covenant*, 909 F.3d at 1240-41).  The language Defendants quote is from the part of the opinion discussing third-party standing, *see* 909 F.3d at 1240-41, which is not at issue in this case.  And in any event, the Ninth Circuit actually found relevant to its irreparable harm analysis the very kind of evidence regarding harms to third parties that Defendants here ask the Court to strike.  Specifically, in concluding that the government would not be irreparably harmed absent a stay of the district court's temporary restraining order enjoining a regulation rendering individuals categorically ineligible for asylum if they entered the United States between ports of entry, the Ninth Circuit noted: "[T]here is evidence in the record suggesting that the Government itself is undermining its own goal of channeling asylum-seekers to

lawful entry by turning them away upon their arrival at our ports of entry."  *Id.* at 1254.

Finally, Defendants suggest that Plaintiffs' evidence regarding conditions in Mexico "is not needed to show harm to the individual Plaintiffs" because "the individual Plaintiffs have submitted declarations in this case that Plaintiffs rely upon to attempt to show irreparable harm."  ECF No. 45 at 10 n.7.  But there is no rule that if plaintiffs submit declarations, they are foreclosed from submitting additional evidence of irreparable harm.  Nor is Defendants' argument germane to the administrative record rule, which is concerned only with whether extra-record evidence may be considered for *merits* purposes.  *See E. Bay Sanctuary Covenant*, 2018 WL 6660080, at *5 (citing *Am. Bioscience, Inc. v. Thompson*, 243 F.3d 579, 582 (D.C. Cir. 2001)).

The Court therefore may consider Plaintiffs' evidence submitted in support of irreparable harm, balance of the equities, and the public interest.  To meet their burden on irreparable harm, Plaintiffs have submitted evidence that the Individual Plaintiffs face extreme dangers in Mexico, live in fear for their survival and ability to meet basic needs, face obstacles to meaningfully participating in the asylum process, and are in danger of *refoulement* to their home countries by the Mexican government; that Defendants' decision to bypass notice-and-comment procedures and the 30-day grace period deprived the Organizational Plaintiffs of the opportunity to voice their serious concerns about the challenged policy; that the forced return policy frustrates the Organizational Plaintiffs' missions and will force them to divert resources away from core services; and that the policy puts the Organizational Plaintiffs' funding and programs at risk.[7]  *See* ECF No. 20-1 at 20-

---

[7] The evidence supporting Plaintiffs' irreparable harm argument includes: ECF No. 5-1 (Declaration of John Doe) ¶ 27; ECF No. 5-2 (Gregory Doe Decl.) ¶¶ 35-36; ECF No. 5-3 (Bianca Doe Decl.) ¶¶ 11, 42; ECF No. 5-4 (Dennis Doe Decl.) ¶¶ 11, 24, 26, 28; ECF No. 5-5 (Alex Doe Decl.) ¶ 28; ECF No. 5-6 (Christopher Doe Decl.) ¶¶ 12, 21, 28; ECF No. 5-7 (Evan Doe Decl.); ECF No. 5-8 (Frank Doe Decl.) ¶¶ 23, 24, 26; ECF No 5-9 (Kevin Doe Decl.) ¶¶ 2, 17; ECF No. 5-10 (Howard Doe Decl.) ¶ 20; ECF No. 5-11 (Ian Doe Decl.) ¶ 24; ECF No. 20-3 (Rodriguez Decl.) Ex. Q at 21; ECF No. 20-3 (Rodriguez Decl.) Ex. U at 5, 18-22; ECF No. 20-3 (Rodriguez Decl.) Ex. V at 5, 7-8; ECF No. 20-4 (Cutlip-Mason Decl.) ¶¶ 18(g), 19-20; ECF No. 20-5 (Wolfe-Roubatis Decl.) ¶¶ 21-23, 25-27, 33; ECF No. 20-6 (First Manning Decl.) ¶¶ 13, 26; ECF. No 20-7 (Ramos Decl.) ¶¶ 7, 32; ECF No. 20-8 (Sanchez Decl.) ¶¶ 22, 30, 34; ECF No.20-9  (Brown Scott

---

9

24.  To show that the public interest and balance of equities weigh in their favor, Plaintiffs have submitted evidence in support of their argument that the government will not be irreparably harmed by an injunction, and that the public interest will be served by an injunction.[8]  *See* ECF No. 20-1 at 24.

### III. THE COURT CAN CONSIDER PLAINTIFFS' EVIDENCE IN SUPPORT OF THEIR MERITS CLAIMS UNDER THE "RELEVANT FACTORS" AND "TECHNICAL EXPERTISE" EXCEPTIONS

When assessing the merits, the Court may consider extra-record evidence in the following circumstances: "(1) if admission is necessary to determine 'whether the agency has considered all relevant factors and has explained its decision,' (2) if 'the agency has relied on documents not in the record,' (3) 'when supplementing the record is necessary to explain technical terms or complex subject matter,' or (4) 'when plaintiffs make a showing of agency bad faith.'"  *Lands Council*, 395 F.3d at 1030 (quoting *Sw. Ctr. for Biological Diversity*, 100 F.3d at 1450).  "Underlying all of these exceptions is the assessment that 'resort to extra-record information [is necessary] to enable judicial review to become effective.'"  *Nat'l Min. Ass'n v. Jackson*, 856 F. Supp. 2d 150, 157 (D.D.C. 2012) (quoting *Calloway v. Harvey*, 590 F. Supp. 2d 29, 38 (D.D.C. 2008)).

Of the thirteen declarations and exhibits that Defendants have moved to strike in whole or in part, *see* ECF No. 45 at 1, Plaintiffs cited only six in support of their merits arguments in their preliminary injunction motion.[9]  *See* ECF No. 20-1 at 6 (citing Tavarez Decl.); *id.* at 11 n.5 (citing

---

Decl.) ¶¶ 23, 27; ECF No. 20-10 (Isacson Decl.) ¶¶ 13-19; ECF No. 20-11 (Shepherd Decl.) ¶¶ 8, 14-17, 23; ECF No. 20-13 (Burgi-Palomino Decl.) ¶¶ 9-10; ECF No. 20-15 (Schulman Decl.) ¶¶ 11-15; ECF No. 20-16 (Menjivar Decl.) ¶¶ 14-18; ECF No. 20-17 (Slack Decl.) ¶¶ 10-20.

[8] The evidence supporting Plaintiffs' argument that the government will not be irreparably harmed by an injunction and that an injunction is in the public interest includes: ECF 20-3 (Rodriguez Decl.) Ex. V at 5-7; ECF No. 20-7 (Ramos Decl.) ¶ 17; ECF No. 20-6 (First Manning Decl.) ¶ 22.

[9] Defendants erroneously assert that five of Plaintiffs' declarations were used to support standing and irreparable harm as well as the merits.  *See* ECF No. 45 at 4 & n. 3 (citing Ramos Decl., Shepherd Decl., Burgi-Palomino Decl., Schulman Decl., and Slack Decl.).  Plaintiffs never cited any of those five declarations in support of their merits arguments.  Rather, Plaintiffs rely on them

1   Second Manning Decl., Ex. A); *id.* at 17 (citing Isacson Decl.); *id.* at 17 n.9 (citing Menjivar

2   Decl.); *id.* at 17 n.10 (citing Rodriguez Decl., Ex. P); *id.* at 18-19 & n.12 (citing Reichlin-Melnick

3   Decl.).  The Court should deny Defendants' motion to strike as to each of these documents.

4   **A.  Declaration of Taslim Tavarez and Second Declaration of Stephen W. Manning**

5           Although Defendants move to strike the declaration of Taslim Tavarez (ECF No. 20-2),

6   they provide no reason why the Court should do so.  They state only that the declaration

7   "purport[s] to submit information regarding the individual Plaintiffs."  ECF No. 45 at 4.  That

8   much is true; the Tavarez declaration summarizes the Individual Plaintiffs' case information

9   available on the Executive Office for Immigration Review's (EOIR) automated immigration court

10  case information system and explains that the Individual Plaintiffs' Notices to Appear (NTAs) had

11  not been filed as of February 19, 2019.  But Defendants have also moved to submit information

12  regarding the Individual Plaintiffs, including their NTAs.  *See* ECF No. 44 (requesting leave to file

13  under seal excerpts of the Individual Plaintiffs' Alien Files).  By doing so, Defendants undermine

14  their own request to strike the Tavarez declaration, and concede that the Court may consider

15  information regarding the Individual Plaintiffs' immigration proceedings.  Moreover, government

16  records are subject to judicial notice pursuant to Federal Rule of Evidence 201(b)(2).  *See, e.g.*,

17  *City of Las Vegas, Nev. v. F.A.A.*, 570 F.3d 1109, 1118 (9th Cir. 2009) (taking judicial notice of

18  Federal Register Notices outside of an administrative record); *United States v. $2,164,341 in U.S.

19  Currency*, 2013 WL 2458757, at *4 (D. Ariz. June 6, 2013) (taking judicial notice of USCIS

20  documents), *aff'd sub nom. United States v. Cornejo-Reynoso*, 621 Fed. Appx. 495 (9th Cir. 2015).

21          Defendants' request that the Court strike the second declaration of Stephen W. Manning is

22  only to support their arguments on irreparable harm, balance of the equities, and public interest.
    *See* ECF No. 20-1 at 20-24.  Accordingly, there is no basis to strike them.  Likewise, Defendants
23  move to strike Exhibits U and V to the Declaration of Rubi Rodriguez.  Those exhibits are reports
    by human rights organizations and likewise were cited by Plaintiffs only in support of irreparable
24  harm, balance of the equities, and public interest.  *See* ECF No. 20-1 at 20-24.  Because Plaintiffs
    have not relied on these exhibits to show a likelihood of success on the merits, there is no basis to
    strike them.

similarly puzzling.  Defendants first state that the declaration "purport[s] to submit information regarding the individual Plaintiffs," ECF No. 45 at 4, and then suggest that the declaration contains survey results the veracity of which Defendants cannot examine, *id.* at 11.  But the second Manning declaration simply attaches as an exhibit the MPP Assessment Notices given to Individual Plaintiffs Ian Doe and Howard Doe and explains how the declarants came to be in possession of the Notices.  *See* ECF No. 20-14 & Ex. A.  And Defendants themselves have now moved to file under seal the exact same MPP Assessment Notices, *see* ECF No. 44-4 at AF132, AF156, thereby making plain that there is no reason for the Court to strike the second Manning declaration.  *See $2,164,341 in U.S. Currency*, 2013 WL 2458757, at *4 (denying the government's lack-of-foundation objection to USCIS documents submitted by the claimant "because the government relie[d] on a similar USCIS document").

### B.  Declaration of Cecilia Menjivar

Defendants move to strike the declaration of Professor Cecilia Menjivar (ECF No. 20-16) in its entirety, even though Plaintiffs cite it in support of their argument that the Individual Plaintiffs are suffering irreparable harm in light of the "extreme risks" they face in El Salvador, Guatemala, and Honduras if returned there by Mexican authorities.  *See* ECF No. 20-1 at 23.  For the reasons explained above, *see* Part II *supra*, the Court may consider the declaration for that purpose.

To the extent Plaintiffs rely on Professor Menjivar's declaration in support of the merits, it is to identify a "relevant factor" the agency has not considered, *see Lands Council*, 395 F.3d at 1030: whether policies imposing harsh conditions like forced return on asylum seekers have a deterrent effect on migration.  *See* ECF No. 20-1 at 17 n.9; ECF No. 20-16 (Menjivar Decl.) ¶¶ 12-20.  To be sure, the administrative record contains documents suggesting that so-called "lax" policies or legal "loopholes" incentivize migration to the United States.  *See, e.g.*, AR 545, 548, 571, 573-74, 701, 756.  But Plaintiffs have not identified anything in the administrative record that

addresses whether harsh policies like forced return *disincentivize* migration, even though deterring migration is one of the key justifications Defendants assert for the forced return policy.  *See* ECF No. 42 at 18 ("The Secretary explained that re-calibrating incentives for migrants in this way may decrease false asylum claims . . . ."); *id.* at 19 ("another goal is to deter fraudulent asylum claims"; "the Secretary concluded that requiring some subset of aliens in removal proceedings to wait in Mexico would discourage non-bona fide asylum seekers from making the lengthy journey to the U.S. border"); *id.* at 23 ("The number of aliens arriving in the United States seeking to apply for asylum . . . is continuing to rise sharply. . . .  The public interest is served by discouraging this state of affairs . . . .").

Because Defendants have ignored data addressing the relationship between the imposition of harsh conditions like forced return on asylum seekers and migration flows, Plaintiffs submit Professor Menjivar's declaration for the permissible purpose of assisting the Court in "develop[ing] a background against which it can evaluate the integrity of the agency's analysis," and not to counter any specific evidence on deterrence put forward by the agency.  *San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d 971, 993 (9th Cir. 2014); *see also id.* ("Reviewing courts may admit evidence under [the relevant factors] exception only to help the court understand whether the agency complied with the APA's requirement that the agency's decision be neither arbitrary nor capricious."); *Defenders of Wildlife v. U.S. Fish*, 2016 WL 4382604, at *9 (N.D. Cal. Aug. 17, 2016) (noting that "expert declarations may be permissible . . . to argue that [the agency] ignored the best available scientific data" and explaining that "in order for Plaintiffs to argue that [the agency] ignored the best available scientific data, Plaintiffs must be available to identify and describe the omitted data"); *Earth Island Inst. v. U.S. Forest Serv.*, 442 F.3d 1147, 1162 (9th Cir. 2006) (discussing an expert declaration explaining why the agency's estimates of tree mortality rates significantly underestimated the extent of the problem and holding that the expert declaration

---

13

offered in support of plaintiffs' argument that the agency had failed to consider relevant factors was properly considered by the district court), *abrogated on other grounds by Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008); *California v. Ross*, No. 18-cv-01865-RS (N.D. Cal. Mar. 6, 2019), ECF No. 205 at 116 ("Extra-record evidence also confirms that Defendants failed to consider several important factors when deciding whether to include the citizenship question on the census.").

### C.  Exhibit P to the Declaration of Rubi Rodriguez

Defendants also failed to consider a second relevant factor: the likelihood that instituting the forced return policy at ports of entry will incentivize migrants to enter between ports.  In light of Defendants' assertion that the forced return policy is intended to combat "illegal immigration," ECF No. 20-2 (Rodriguez Decl.), Ex. B at 1, Plaintiffs submitted a statement from the National Border Patrol Council president, made before implementation of the policy began, regarding this relevant factor.  *See* ECF No. 20-2 (Rodriguez Decl.), Ex. P (Geneva Sands & Catherine E. Shoichet, *Border patrol union chief: New Trump administration policy is 'incentivizing illegal immigration,'* CNN, Jan. 25, 2019)).  Like Professor Menjivar's declaration, this statement is intended to assist the Court in "develop[ing] a background against which it can evaluate the integrity of the agency's analysis" and "help the court understand whether the agency complied with the APA's requirement that the agency's decision be neither arbitrary nor capricious."  *San Luis & Delta-Mendota Water Auth.*, 776 F.3d at 993.

### D.  Declaration of Adam Isacson

Defendants move to strike the declaration of Adam Isacson (ECF No. 20-10) in its entirety, even though Plaintiffs cite it in support of their argument that the Individual Plaintiffs are suffering irreparable harm in light of their vulnerability to physical violence and mistreatment in Mexico and the lack of police protection for migrants in Mexico.  *See* ECF No. 20-1 at 20-21.  For the reasons

1   explained above, *see* Part II *supra*, the Court may consider the declaration for that purpose.

2       Plaintiffs otherwise cite the Isacson declaration for three points: first, to support the

3   proposition that "[a]pprehension rates at the southern border in FY 2017 were the lowest since

4   1972," ECF No. 20-1 at 1; second, to support the proposition that "U.S. Customs and Border

5   Protection's budget is at a record high," *id.*; and third, to support the proposition that there are long

6   backlogs of asylum seekers at ports of entry, *see id.* at 17.  For the first point, the Isacson

7   declaration relies on a public government record that Defendants included in the administrative

8   record.  *Compare* ECF No. 20-10 ¶ 4 *with* AR 408.  For the second point, it relies on a report citing

9   government data.  *See* ECF No. 20-10 ¶ 9 (citing a report of the American Immigration Council that

10  presents CBP budget data).  And the third proposition is one that has been documented by courts

11  and government reports.  *See, e.g.*, *E. Bay Sanctuary Covenant*, 349 F. Supp. 3d at 851, 853;

12  Department of Homeland Security, Office of Inspector General, *Special Review – Initial*

13  *Observations Regarding Family Separation Issues Under the Zero Tolerance Policy* at 4-6, Sept.

14  27, 2018, https://www.oig.dhs.gov/sites/default/files/assets/2018-10/OIG-18-84-Sep18.pdf.

15  **E.  Declaration of Aaron Reichlin-Melnick**

17      Finally, the Court may consider the declaration of Aaron Reichlin-Melnick (ECF No. 20-12)

18  in its assessment of the merits because the declaration "is necessary to explain technical terms or

19  complex subject matter" and "to determine whether the agency has considered all relevant factors

20  and explained its decision."  *Lands Council*, 395 F.3d at 1030 (internal quotation marks omitted).

22      Reichlin-Melnick is a policy analyst at the American Immigration Council who "track[s]

23  and analyze[s] immigration-related statistics produced by [DHS and EOIR], including trends in the

24  processing of asylum seekers at the border and their outcomes once placed in removal

25  proceedings."  ECF No 20-12 ¶ 2.  Plaintiffs rely on Reichlin-Melnick's declaration to explain

26  technical concepts—namely, the rates at which immigrants fail to appear in removal proceedings

and the rates at which cases originating with a positive credible fear determination result in a grant of asylum—and to elucidate how to accurately calculate those rates.  *See, e.g.*, *Defenders of Wildlife*, 2016 WL 4382604, at *9 (utilizing declarations to "explain technical material").

In particular, Reichlin-Melnick utilizes the government's own data[10] to show that the empirical claims Defendants made in conjunction with the announcement of the policy—that "nine out of ten asylum claims are not granted by a federal immigration judge" and that asylum seekers are highly likely to abscond once admitted into the United States, *see* AR 17—are unfounded.[11] Reichlin-Melnick's declaration is analogous to the extra-record declaration at issue in *Earth Island Institute*.  There, the Ninth Circuit admitted an extra-record declaration that discussed measurement errors in the Forest Service's analysis of tree mortality rates, helped establish that a table in the Forest Service's environmental impact statement was "misleading" because it did not accurately report the findings of the studies it purported to rely on, and indicated that the agency either "misunderstood the data" or had "understood but concealed and misrepresented the data."  *Earth Island Inst.*, 442 F.3d at 1162-67.  *See also, e.g.*, *Border Power Plant Working Grp. v. Dep't of Energy*, 467 F. Supp. 2d 1040, 1050 (S.D. Cal. 2006) (admitting an expert declaration "discuss[ing] problems in the agency's reasoning—including purportedly incorrect assumptions about the design of the dry-cooling system the power plants could feasibly accommodate"); *Oceana, Inc. v. Pritzker*, 126 F. Supp. 3d 110, 113 (D.D.C. 2015) (finding expert declaration "instructive with respect to the sufficiency of [the agency's] statistical explanation").  Because the Reichlin-Melnick declaration, like the declaration in *Earth Island Institute*, uses the government's own data to explain complex subject matter and illuminate measurement errors in Defendants' statistical analysis, it is properly

---

[10] Indeed, Defendants include several of the data sources upon which Reichlin-Melnick relies in the administrative record.  *Compare* ECF No. 20-12 ¶¶ 9, 12 n.13, 14 n.4, 14 n.5, 17 n.6 *with* AR 37, 638, 654, 661, 662, 678.

[11] Notably, Defendants do not defend the correctness of those claims in their opposition to Plaintiffs' motion for a preliminary injunction.

PLS.' MOT TO CONSIDER EVIDENCE AND OPP'N TO DEFS.' MOT. TO STRIKE
CASE NO. 3:19-cv-00807-RS

1  within the exceptions to the administrative record rule and the Court should reject Defendants'

2  motion to strike it.

3       Furthermore, Reichlin-Melnick's declaration may be considered because it identifies a

4  "relevant factor" the agency did not consider: the critical roles that access to counsel and detention

5  pending removal proceedings play in determining whether asylum seekers ultimately succeed on

6  their asylum claims.  *See* ECF No. 20-12 at ¶¶ 19-24 n.7.

7                              **CONCLUSION**

8       For the foregoing reasons, the Court should deny the Defendants' motion to strike extra-

9

10  record evidence and grant Plaintiffs' motion to consider Plaintiffs' evidence.

11

12  Dated: March 6, 2019                    Respectfully submitted,

13                                           /s/ *Julie Veroff*
                                           _____
14  Judy Rabinovitz*                        Julie Veroff (SBN 310161)
    Michael Tan*                            Jennifer Chang Newell (SBN 233033)
15  Omar Jadwat*                            Katrina Eiland (SBN 275701)
    Lee Gelernt*                            AMERICAN CIVIL LIBERTIES UNION
16  Anand Balakrishnan*                     FOUNDATION
    Daniel Galindo (SBN 292854)             IMMIGRANTS' RIGHTS PROJECT
17  AMERICAN CIVIL LIBERTIES UNION          39 Drumm Street
    FOUNDATION                              San Francisco, CA 94111
18  IMMIGRANTS' RIGHTS PROJECT              T: (415) 343-1198
19  125 Broad St., 18th Floor               F: (415) 395-0950
    New York, NY 10004                      *jnewell@aclu.org*
20  T: (212) 549-2660                       *keiland@aclu.org*
    F: (212) 549-2654                       *jveroff@aclu.org*
21  *jrabinovitz@aclu.org*
22  *mtan@aclu.org*                         Sean Riordan (SBN 255752)
    *ojadwat@aclu.org*                      Christine P. Sun (SBN 218701)
23  *lgelernt@aclu.org*                     AMERICAN CIVIL LIBERTIES UNION
    *abalakrishnan@aclu.org*                FOUNDATION OF NORTHERN
24  *dgalindo@aclu.org*                     CALIFORNIA, INC.
                                           39 Drumm Street
25  Melissa Crow***                         San Francisco, CA 94111
26  SOUTHERN POVERTY LAW CENTER             T: (415) 621-2493
    1101 17th Street NW, Suite 705          F: (415) 255-8437
27  Washington, D.C. 20036                  *sriordan@aclunc.org*
    T: (202) 355-4471                       *csun@aclunc.org*
28  F: (404) 221-5857

*melissa.crow@splcenter.org*

Mary Bauer***
SOUTHERN POVERTY LAW CENTER
1000 Preston Avenue
Charlottesville, VA 22903
T: (470) 606-9307
F: (404) 221-5857
*mary.bauer@splcenter.org*

Gracie Willis***
SOUTHERN POVERTY LAW CENTER
150 East Ponce de Leon Avenue, Suite 340
Decatur, GA  30030
T:  (404) 221-6700
F:  (404) 221-5857
*gracie.willis@splcenter.org*

Michelle P. Gonzalez***
SOUTHERN POVERTY LAW CENTER
P.O. Box 370037
Miami, FL 33137-0037
T: 786-753-1383
F: 786-237-2949
*mich.gonzalez@splcenter.org*

Steven Watt***
ACLU FOUNDATION HUMAN RIGHTS
PROGRAM
125 Broad Street, 18th Floor
New York, NY 10004
T: (212) 519-7870
F: (212) 549-2654
*swatt@aclu.org*

*Attorneys for Plaintiffs*

*Admitted pro hac vice
**Application for pro hac vice pending
***Pro hac vice application forthcoming*

Blaine Bookey (SBN 267596)
Karen Musalo (SBN 106882)
Eunice Lee (SBN 316237)
Kathryn Jastram (SBN 127625)
Sayoni Maitra***
CENTER FOR GENDER & REFUGEE
STUDIES
200 McAllister St.
San Francisco, CA 94102
T: (415) 565-4877
F: (415) 581-8824
*bookeybl@uchastings.edu*
*musalok@uchastings.edu*
*leeeunice@uchastings.edu*
*jastramkate@uchastings.edu*
*maitras@uchastings.edu*

PLS.' MOT TO CONSIDER EVIDENCE AND OPP'N TO DEFS.' MOT. TO STRIKE
CASE NO. 3:19-cv-00807-RS