Judy Rabinovitz*
Michael Tan*
Omar Jadwat*
Lee Gelernt*
Anand Balakrishnan*
Daniel Galindo (SBN 292854)
ACLU FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Floor
New York, NY 10004
T: (212) 549-2660
F: (212) 549-2654
*jrabinovitz@aclu.org*
*mtan@aclu.org*
*ojadwat@aclu.org*
*lgelernt@aclu.org*
*abalakrishnan@aclu.org*
*dgalindo@aclu.org*

Jennifer Chang Newell (SBN 233033)
Katrina Eiland (SBN 275701)
Julie Veroff (SBN 310161)
ACLU FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
39 Drumm Street
San Francisco, CA 94111
T: (415) 343-0770
F: (415) 395-0950
*jnewell@aclu.org*
*keiland@aclu.org*
*jveroff@aclu.org*

Melissa Crow***
SOUTHERN POVERTY LAW CENTER
1101 17th Street NW, Suite 705
Washington, D.C. 20036
T: (202) 355-4471
F: (404) 221-5857
*melissa.crow@splcenter.org*

*Attorneys for Plaintiffs* (*Additional counsel listed on following page*)

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Innovation Law Lab, *et al.*,<br><br>    *Plaintiffs*,<br><br>    v.<br><br>Kirstjen Nielsen, *et al.*,<br><br>    *Defendants*. | CASE NO.: 3:19-CV-00807-RS<br><br>**REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**<br><br>**Date:** TBD<br>**Time:** TBD<br>**Courtroom:** 3, 17th Floor<br>**Judge:** Hon. Richard Seeborg |

Mary Bauer***
SOUTHERN POVERTY LAW CENTER
1000 Preston Avenue
Charlottesville, VA 22903
T: (470) 606-9307
F: (404) 221-5857
*mary.bauer@splcenter.org*

Gracie Willis***
SOUTHERN POVERTY LAW CENTER
150 East Ponce de Leon Avenue, Suite 340
Decatur, GA 30030
T: (404) 221-6700
F: (404) 221-5857
*gracie.willis@splcenter.org*

Michelle P. Gonzalez***
SOUTHERN POVERTY LAW CENTER
P.O. Box 370037
Miami, FL 33137-0037
T: 786-753-1383
F: 786-237-2949
*mich.gonzalez@splcenter.org*

Steven Watt***
ACLU FOUNDATION HUMAN RIGHTS
PROGRAM
125 Broad Street, 18th Floor
New York, NY 10004
T: (212) 519-7870
F: (212) 549-2654
*swatt@aclu.org*

Sean Riordan (SBN 255752)
Christine P. Sun (SBN 218701)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN
CALIFORNIA, INC.
39 Drumm Street
San Francisco, CA 94111
T: (415) 621-2493
F: (415) 255-8437
*sriordan@aclunc.org*
*csun@aclunc.org*

Blaine Bookey (SBN 267596)
Karen Musalo (SBN 106882)
Eunice Lee (SBN 316237)
Kathryn Jastram (SBN 127625)
Sayoni Maitra***
CENTER FOR GENDER & REFUGEE
STUDIES
200 McAllister St.
San Francisco, CA 94102
T: (415) 565-4877
F: (415) 581-8824
*bookeybl@uchastings.edu*
*musalok@uchastings.edu*
*leeeunice@uchastings.edu*
*jastramkate@uchastings.edu*
*maitras@uchastings.edu*

*Attorneys for Plaintiffs*

*\*Admitted pro hac vice*
*\*\*Application for pro hac vice pending*
*\*\*\*Pro hac vice application forthcoming*

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

ARGUMENT ....................................................................................................................... 1

I.  PLAINTIFFS' CLAIMS ARE JUSTICIABLE. ............................................... 1

A.  The APA Does Not Preclude Review. .......................................................... 1

B.  The INA Does Not Preclude Jurisdiction Over Plaintiffs' Claims. ............. 2

II.  PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS. ................... 3

A.  The Forced Return Policy Violates the Express Language of § 1225(b)(2). ............... 3

B.  The Forced Return Policy Violates Withholding of Removal and Is Arbitrary and Capricious. ........................................................................ 6

1.  The Forced Return Policy Violates the Withholding of Removal Statute and Its Implementing Regulations. .......................... 6

2.  Defendants' Fear Determination Process Is Arbitrary and Capricious. ................................................................... 8

C.  Defendants Violated APA Rulemaking Requirements in Implementing a New Binding Procedure for Fear Determinations Without Notice and Comment. ............... 9

D.  The Forced Return Policy is Arbitrary and Capricious Because It Is Not Rationally Connected to Legitimate Justifications. ....................... 11

III.  ALL OTHER FACTORS FAVOR INJUNCTIVE RELIEF AND THERE IS NO BAR TO THE RELIEF PLAINTIFFS SEEK. ....................................... 13

CONCLUSION .................................................................................................................. 15

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION
CASE NO. 3:19-cv-00807-RS

# TABLE OF AUTHORITIES

**Cases**

*Am. Wild Horse Pres. Campaign v. Perdue,*
  873 F.3d 914 (D.C. Cir. 2017) ............................................................... 13

*Amanullah v. Nelson,*
  811 F.2d 1 (1st Cir. 1987) ..................................................................... 11

*Andriasian v. INS,*
  180 F.3d 1033 (9th Cir.1999) .................................................................. 9

*Bear Lake Watch Inc. v. FERC,*
  324 F.3d 1071 (9th Cir. 2003) ............................................................... 12

*Bennett v. Spear,*
  520 U.S. 154 (1997) ................................................................................ 2

*California v. Azar,*
  911 F.3d 558 (9th Cir. 2018) ................................................................. 14

*California v. Health & Human Servs.,*
  281 F. Supp. 3d 806 (N.D. Cal. 2017) .................................................. 14

*California v. Ross,*
  No. 18-cv-01865-RS (N.D. Cal. Mar. 6, 2019) ..................................... 15

*City of Kansas City, Mo. v. Dep't of Hous. & Urban Dev.,*
  923 F.2d 188 (D.C. Cir. 1991) ............................................................... 12

*Commc'ns Comm'n v. Fox Television Stations, Inc.,*
  556 U.S. 502 (2009) ................................................................................. 9

*E. Bay Sanctuary Covenant v. Trump,*
  No. 18-cv-06810-JST, 2018 WL 6660080 (N.D. Cal. Dec. 19, 2018) .... 14

*East Bay Sanctuary Covenant v. Trump,*
  909 F.3d 1219 (9th Cir. 2018) ........................................................... 3, 15

*Food & Drug Admin. v. Brown & Williamson Tobacco Corp.,*
  529 U.S. 120 (2000) ................................................................................. 8

*Garcia v. Johnson,*
  No. 14-CV-01775, 2014 WL 6657591 (N.D. Cal. Nov. 21, 2014) ......... 9

*Garcia v. Sessions,*
  856 F.3d 27 (1st Cir. 2017) ..................................................................... 8

*Grace v. Whitaker,*
  344 F. Supp. 3d 96 (D.D.C. 2018) ........................................................ 15

*Hemp Industries Ass'n v. Drug Enforcement Admin.,*
  333 F.3d 1082 (9th Cir. 2003) ............................................................... 10

*Hernandez v. Sessions,*
  872 F.3d 976 (9th Cir. 2017) ................................................................... 2

*Jennings v. Rodriguez,*
  138 S. Ct. 83 (2018) ................................................................................. 4

*Judulang v. Holder,*
  565 U.S. 42 (2011) ................................................................................. 11

*King v. Burwell,*
  135 S. Ct. 2480 (2015) ............................................................................. 7

*Kwai Fun Wong v. United States,*
  373 F.3d 952 (9th Cir. 2004) ................................................................... 2

*Mada-Luna v. Fitzpatrick,*
  813 F.2d 1006 (9th Cir. 1987) ............................................................... 10

*Madrigal v. Holder,*
  716 F.3d 499 (9th Cir. 2013) ................................................................. 13

*Mendez-Gutierrez v. Ashcroft,*
  340 F.3d 865 (9th Cir. 2003) ................................................................... 1

*Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.,*
  463 U.S. 29 (1983) ....................................................................... 11, 12, 13

ii

*Nadarajah v. Gonzales*,
  443 F.3d 1069 (9th Cir. 2006) ........................................................................ 3
*Nat'l Min. Ass'n v. U.S. Army Corps of Eng'rs*,
  145 F.3d 1399 (D.C. Cir. 1998) ..................................................................... 15
*Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*,
  886 F.3d 803 (9th Cir. 2018) ........................................................................ 14
*New England Coal. on Nuclear Pollution v. Nuclear Regulatory Comm'n*,
  727 F.2d 1127 (D.C. Cir. 1984) ..................................................................... 12
*New York v. United States Dep't of Commerce*,
  351 F. Supp. 3d 502 (S.D.N.Y. 2019) ........................................................... 12
*Pickus v. U.S. Board of Parole*,
  507 F.2d 1107 (D.C. Cir. 1974) ..................................................................... 10
*R.I.L-R v. Johnson*,
  80 F. Supp. 3d 164 (D.D.C. 2015) ................................................................. 12
*Rodriguez v. Hayes*,
  591 F.3d 1105 (9th Cir. 2010) ....................................................................... 15
*Rodriguez v. United States*,
  480 U.S. 522 (1987) ......................................................................................... 8
*S.A. v. Trump*,
  No. 18-cv-03539-LB, 2019 WL 990680 (N.D. Cal. Mar. 1, 2019) ............... 14
*Sacora v. Thomas*,
  628 F.3d 1059 (9th Cir. 2010) ....................................................................... 12
*Sale v. Haitian Centers Council, Inc*,
  509 U.S. 155 (1993) ......................................................................................... 7
*Trinidad y Garcia v. Thomas*,
  683 F.3d 952 (9th Cir. 2012) ........................................................................... 9
*United States v. Hovsepian*,
  359 F.3d 1144, 1155 (9th Cir. 2004) ............................................................... 2
*Valle del Sol v. Whiting*,
  732 F.3d 1006, 1018-19 (9th Cir. 2013) ....................................................... 14

**Administrative Decisions**

*Matter of E-R-M- & L-R-M-*,
  25 I. & N. Dec. 520 (BIA 2011) ...................................................................... 5
*Matter of I-S- & C-S-*,
  24 I. & N. Dec. 432 (BIA 2008) ...................................................................... 7

**Statutes**

5 U.S.C. § 701(a)(2) ............................................................................................ 1
5 U.S.C. § 706(2)(A) ........................................................................................... 6
8 U.S.C. § 1158 .................................................................................................. 3
8 U.S.C. § 1158(a)(2)(A) .................................................................................... 6
8 U.S.C. § 1182(d)(3)(B)(ii) ............................................................................... 4
8 U.S.C. § 1182(m)(2)(C) ................................................................................... 4
8 U.S.C. § 1225(b) .............................................................................................. 4
8 U.S.C. § 1225(b)(1) .............................................................................. 2, 3, 4, 5
8 U.S.C. § 1225(b)(2) .............................................................................. 2, 3, 4, 5
8 U.S.C. § 1225(b)(2)(A) ................................................................................ 4, 5
8 U.S.C. § 1225(b)(2)(B) .................................................................................... 3
8 U.S.C. § 1225(b)(2)(B)(ii) ........................................................................... 4, 5
8 U.S.C. § 1225(b)(2)(C) ..................................................................... 4, 7, 9, 11
8 U.S.C. § 1231(a)(5) .......................................................................................... 8
8 U.S.C. § 1231(b)(3) ...................................................................................... 6, 7
8 U.S.C. § 1252(a) .............................................................................................. 2
8 U.S.C. § 1252(a)(2)(A) .................................................................................... 2

iii

8 U.S.C. § 1252(a)(2)(B) ............................................................................................ 2
8 U.S.C. § 1252(a)(2)(B)(ii) ...................................................................................... 2
8 U.S.C. § 1252(b)(9) ................................................................................................ 3
8 U.S.C. § 1252(e)(3) ................................................................................................ 2
8 U.S.C. § 1252(f)(1) .............................................................................................. 15
8 U.S.C. § 1252(g) .................................................................................................... 2
Foreign Affairs Reform and Restructuring Act of 1998 ("FARRA"),
    Pub. L. No. 105-277, Div. G, Title XXII, § 2242, 112 Stat. 2681-822 (1998)
    (codified as note to 8 U.S.C.A. § 1231 (1999)) ................................................ 10

**Regulations**

8 C.F.R. § 208.16 .................................................................................................... 10
8 C.F.R. § 208.31 ...................................................................................................... 8
8 C.F.R. § 235.3(d) ................................................................................................. 10

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION
CASE NO. 3:19-cv-00807-RS

**INTRODUCTION**

As Plaintiffs have shown, Defendants' forced return policy puts the lives of returned asylum seekers, including the Individual Plaintiffs, in grave danger. Moreover, in implementing the policy Defendants have ignored the express statutory limitations Congress placed on the return of noncitizens to a contiguous territory; flouted the fundamental humanitarian protections reflected in our laws; and denied the public a chance to comment on a rule with significant legal consequences. And the policy is based on flawed and irrational premises.

In response, Defendants misread the applicable law and mischaracterize Plaintiffs' arguments. And despite the policy's acknowledgment that noncitizens with a likelihood of persecution in Mexico should not be returned, Defendants now make the astonishing assertion that there is no *legal* restraint on the government doing so.

Equally troubling is Defendants' repeated emphasis on their discretion. With respect to both justiciability and the merits, Defendants appear to view discretion as freeing them from the constraints of the law. Indeed, in announcing the forced return policy, Defendants described it as a response to a "crisis" created, at least in part, by "[m]isguided court decisions and outdated laws." AR 12. But that is not how our legal system works. Putting aside the accuracy of Defendants' characterization of a "crisis," Defendants cannot use the cloak of discretion to defend a policy that, at its core, is intended to circumvent laws and court decisions they simply do not like.

Plaintiffs have satisfied the standard for a preliminary injunction and it should be granted.

**ARGUMENT**

**I.   PLAINTIFFS' CLAIMS ARE JUSTICIABLE.**

**A.   The APA Does Not Preclude Review.**

Defendants argue that the APA precludes review because the challenged actions are "committed to agency discretion by law," 5 U.S.C. § 701(a)(2). ECF No. 42 at 7-8. But Plaintiffs are not challenging any exercise of discretion. Plaintiffs contend that Defendants' forced return policy violates various statutes and regulations. As the Ninth Circuit has held, there *is* law to apply whenever "statutes, regulations, established agency policies, or judicial decisions . . . provide a meaningful standard against which to assess" the agency action. *Mendez-Gutierrez v. Ashcroft*, 340

1

F.3d 865, 868 (9th Cir. 2003). Thus, the APA clearly permits review of Plaintiffs' legal claims.[1]

**B.      The INA Does Not Preclude Jurisdiction Over Plaintiffs' Claims.**

Defendants argue that various INA provisions preclude review. Defendants' position is foreclosed by binding precedent, and rests on a misapprehension of the nature of Plaintiffs' claims.

**8 U.S.C. § 1252(g)**: Section 1252(g) bars review of the decision to "commence" proceedings. Plaintiffs do not challenge the government's right to "commence" proceedings, but whether they can be involuntarily returned to Mexico during those proceedings. In any event, even if Plaintiffs were challenging the decision to commence proceedings, the en banc Ninth Circuit has held that § 1252(g) does not bar "consideration of a purely legal question, which does not challenge the Attorney General's discretionary authority." *United States v. Hovsepian*, 359 F.3d 1144, 1155 (9th Cir. 2004) (en banc).

**8 U.S.C. § 1252(a)(2)(B)(ii)**: As Defendants recognize, § 1252(a)(2)(B)(ii) bars review only over discretionary claims. *Kwai Fun Wong v. United States*, 373 F.3d 952, 963 (9th Cir. 2004) ("constitutional or purely legal" claims "are not barred by § 1252(a)(2)(B)"); *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017) (same). Thus, for the same reason that the government's other jurisdictional arguments fail, its reliance on § 1252(a)(2)(B)(ii) is equally misplaced.

**8 U.S.C. §§ 1252(a) and (e)(3)**: The government claims that these two provisions taken together preclude jurisdiction because "Plaintiffs assert they must be placed in expedited removal proceedings." ECF No. 42 at 9. But Plaintiffs do not assert that they cannot be placed into § 240 proceedings, only that if they are, they must remain in the United States. Notably, the jurisdiction-limiting provision in subsection (a) does not even apply here by its terms. It applies only to determinations under § 1225(b)(1). *See* 8 U.S.C. § 1252(a)(2)(A) (entitled "Review relating to section 1225(b)(1)"). But this case involves the contiguous country policy under § 1225(b)(2), and

---

[1] Defendants are also wrong to suggest that the forced return policy does not constitute reviewable final agency action. ECF No. 42 at 11. The policy marks the "consummation" of agency decisionmaking processes, provides authoritative guidance to immigration officers, and constitutes action from which "legal consequences will flow." *See Bennett v. Spear*, 520 U.S. 154, 178 (1997) (internal quotation marks omitted). Indeed, Defendants can hardly dispute that the policy has already been applied to the Individual Plaintiffs, with attendant legal consequences.

1   does not involve a challenge to any determination under § 1225(b)(1).

2   **8 U.S.C. § 1252(b)(9)**: Defendants argue that § 1252(b)(9) divests district courts of

3   jurisdiction over claims that could be brought in a petition for review at the conclusion of

4   administrative proceedings. Defendants thus argue that this Court lacks jurisdiction over a claim that

5   Plaintiffs' removal proceedings will be procedurally unlawful, because that claim can be raised by

6   petition for review at the end of the process. ECF No. 42 at 9-10. Defendants' reading of §

7   1252(b)(9) is overbroad. Plaintiffs are not raising a claim that their removal proceedings will be

8   unlawful, but only that their return to Mexico was illegal. Thus, § 1252(b)(9) does not apply.[2]

9   Defendants' jurisdictional arguments should accordingly be rejected.[3]

10  **II.     PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS.**

11      **A.     The Forced Return Policy Violates the Express Language of § 1225(b)(2).**

12  Defendants' forced return policy violates § 1225(b)(2) because its plain language precludes

13  its application to individuals who are subject to the expedited removal ("ER") statute. ECF No. 20-

14  1 at 6-9. Defendants argue that, just as the decision to place such individuals into regular removal

15  proceedings is ultimately discretionary, the decision to subject them to the forced return policy is

16  also discretionary. ECF No. 42 at 11-14. This ignores that in § 1225(b)(2)(B) Congress

17  categorically exempted certain groups from being returned: crewmembers, stowaways, and

18  individuals to whom ER "applies." Congress thus did not leave these exemptions up to Defendants'

19  discretion.

20  _____

[2] Section 1252(b)(9) does not divest jurisdiction over Plaintiffs' claim that they cannot be made to
21  wait in Mexico *during* their proceedings, because that claim could not be brought at the end of
proceedings, when it would necessarily be moot. Thus, for the same reason (b)(9) does not preclude
22  a challenge to whether detention *during* proceedings is lawful, Plaintiffs' claims do not fall within
(b)(9). *See Nadarajah v. Gonzales*, 443 F.3d 1069, 1075-76 (9th Cir. 2006).
[3] Defendants concede that their argument that the Organizational Plaintiffs lack standing is
23  foreclosed by *East Bay Sanctuary Covenant v. Trump*, 909 F.3d 1219, 1241-43 (9th Cir. 2018). ECF
No. 42 at 10 n.5. Their argument that the Organizational Plaintiffs are not within the zone of
24  interests, *id.*, is likewise foreclosed. Defendants assert that this case involves a different statute than
the one at issue in *East Bay*, which involved 8 U.S.C. § 1158. But Plaintiffs have alleged violations
25  of several different provisions of the INA, including § 1158. *See* ECF No. 1 ¶¶ 147-151, 163-170,
179-181. Moreover, the Ninth Circuit made clear that the zone of interests analysis goes to the INA
26  as a whole, not a single specific provision. *See E. Bay*, 909 F.3d at 1244 n.9. Here, as in *East Bay*,
"the Organizations' interest in aiding immigrants seeking asylum is consistent with the INA's
27  purpose to 'establish[ ] . . . [the] statutory procedure for granting asylum to refugees'" and is "more
than marginally related to the statute's purpose." *Id.* (quoting *Imm. and Nat. Serv. v. Cardozo-
28  Fonseca*, 480 U.S. 421, 427 (1987)).

Defendants fail to grapple with the statute's plain language and structure, both of which make clear that noncitizens subject to ER pursuant to § 1225(b)(1) may not be returned to a contiguous territory. First, § 1225(b)(2) exempts any noncitizen to whom the ER provision, § 1225(b)(1), "applies." *See* 8 U.S.C. §§ 1225(b)(2)(B)(ii); 1225(b)(2)(A), (C); ECF No. 20-1 at 6-9. Defendants assert that this exemption only refers to noncitizens whom they have "actually placed in expedited removal proceedings," and not to individuals who are subject to the ER statute but who Defendants have placed into regular removal proceedings. ECF No. 42 at 13. But Defendants' reading renders § 1225(b)(2)(B)(ii) entirely superfluous, given that both the contiguous territory return provision and § 1225(b)(2)(A) expressly involve only noncitizens who are put in regular removal proceedings in the first place. Moreover, Defendants' reading is inconsistent with what the statute says. Conspicuously absent from § 1225(b)(2)(B)(ii) is any reference to an action by the agency to apply the ER statute to the individual in question. In contrast, in other provisions in the immigration laws Congress used language such as "has applied" or "was applied" to refer to situations in which the agency actually applied a particular provision to an individual or group. *See, e.g.,* 8 U.S.C. § 1182(d)(3)(B)(ii) (directing Secretaries of State and Homeland Security to report to Congress on "the aliens to whom such Secretary *has applied*" a waiver authorized in the preceding clause) (emphasis added); 8 U.S.C. § 1182(m)(2)(C) (employer attestation in support of labor petition would be valid until "the end of the period of admission . . . of the last alien with respect to whose admission it *was applied*") (emphasis added). Here, the text makes clear that the exempted individuals are those to whom the ER *statute* ("paragraph 1") applies.

Second, Defendants' interpretation simply cannot be reconciled with the structure of § 1225(b). As the Supreme Court recently explained, paragraphs (1) and (2) of § 1225(b) set forth two, mutually exclusive categories of applicants for admission:

> [A]pplicants for admission fall into *one of two categories*, those covered by § 1225(b)(1) and those covered by § 1225(b)(2). Section 1225(b)(1) applies to aliens initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation. . . . Section 1225(b)(2) . . . . serves as a catchall provision that applies to all applicants for admission *not covered by 1225(b)(1)*. . .

*Jennings v. Rodriguez*, 138 S. Ct. 830, 837 (2018) (emphasis added). The titles of paragraphs (1) and (2) reinforce that they are two mutually exclusive categories. *Compare* § 1225(b)(1)

4

("Inspection of Aliens . . .") *with* § 1225(b)(2) ("Inspection of *Other* Aliens") (emphasis added). But under Defendants' interpretation, noncitizens subject to ER under § 1225(b)(1) are "potentially subject to *both* section 1225(b)(1) and 1225(b)(2)(A)." ECF No. 42 at 12. This contradicts *Jennings'* statement that §§ 1225(b)(1) and (b)(2) apply to distinct categories of noncitizens.

Third, Defendants' construction of the statute is incompatible with the principal BIA decision on which they rely. Defendants cite *Matter of E-R-M- & L-R-M-*, 25 I. & N. Dec. 520 (BIA 2011), to support their assertion that § 1225(b)(2)(B)(ii)'s exemption applies only to "aliens placed in ER proceedings." ECF No. 42 at 13. But *E-R-M-* says the opposite, describing the noncitizens "to whom paragraph (1) applies" as "arriving aliens, *such as the respondents in this case.*" 25 I. & N. Dec. at 523 (emphasis added). The respondents in *E-R-M-* were noncitizens who, while covered by the ER statute, were *not* placed in ER proceedings but into regular removal proceedings. *Id.* at 520. Thus, the BIA's decision refutes Defendants' contention that Plaintiffs' interpretation conflicts with DHS's discretion to place noncitizens subject to ER into regular removal proceedings. ECF No. 42 at 11-14.[4] Indeed, *E-R-M-* holds that the agency has discretion to place noncitizens subject to the ER statute into regular removal proceedings, while at the same time concluding that those individuals are noncitizens "to whom paragraph (1) applies" and therefore exempt from § 1225(b)(2)(A). 25 I. & N. Dec. at 523.

Finally, Defendants argue that it makes no sense that Congress would exempt individuals subject to the ER statute, § 1225(b)(1), from the contiguous territory return provision, since that would "advantage[] aliens arriving without valid documents over others." ECF No. 42 at 13. But there is no dispute that, in enacting the statute, Congress specifically exempted exactly this group: noncitizens to whom § 1225(b)(1) "applies." As Plaintiffs have previously explained, Congress recognized that asylum seekers are likely to flee their home countries with no documents or fraudulent documents, and so would be subject to § 1225(b)(1). ECF No. 20-1 at 7-8. Congress thus created a low-threshold credible fear screening as part of ER to ensure that these asylum seekers

---

[4] Defendants incorrectly attribute to Plaintiffs a "concession" that § 1225(b)(2)(A) is the source of DHS's discretion to place noncitizens subject to ER into regular removal proceedings. ECF No. 42 at 12. Plaintiffs agree that DHS has discretion to place such noncitizens into regular removal proceedings. But Plaintiffs have never suggested that the source of this discretion is § 1225(b)(2)(A), nor that individuals placed into regular removal proceedings thereby become subject to that statute.

would not be erroneously returned to danger. *Id.* For this same reason it makes sense that Congress chose to exempt these asylum seekers from contiguous territory return.[5] Defendants offer no explanation for why Congress would have been so careful to enact special minimum protections for asylum seekers, only to simultaneously authorize sending them to another country under a provision which Defendants insist requires no such protections. ECF No. 42 at 17.[6]

### B. The Forced Return Policy Violates Withholding of Removal and Is Arbitrary and Capricious.

Defendants' fear determination procedures violate both the withholding statute and its implementing regulations, and are arbitrary and capricious in violation of the APA. *See* ECF No. 20-1 at 9-13. Defendants' assertion that Plaintiffs are raising claims directly under international law, for which they lack a cause of action, ECF No. 42 at 14-15, completely mischaracterizes these claims. There is no serious dispute that the APA permits these claims. *See* 5 U.S.C. § 706(2)(A).[7]

#### 1. The Forced Return Policy Violates the Withholding of Removal Statute and Its Implementing Regulations.

Similarly without merit is Defendants' claim that the withholding statute, 8 U.S.C. § 1231(b)(3), does not apply to decisions under the forced return policy. ECF No. 42 at 15-16. Defendants acknowledge that the policy authorizes return only of individuals who are in § 240 removal proceedings, *id.* at 15, and that, once placed in such removal proceedings, asylum seekers are statutorily entitled to apply for withholding, *id.* at 16. Moreover, Defendants do not deny that this right to apply for withholding is protected by a host of procedural protections that the forced return

---

[5] That Congress intended to protect asylum seekers from being sent to other countries before their asylum claims were heard is reinforced by 8 U.S.C. § 1158(a)(2)(A). Enacted in 1996 at the same time as ER and the contiguous territory return statute, this provision prohibits asylum seekers from being sent to a third country absent specified protections. *See* 8 U.S.C. § 1158(a)(2)(A) ("Safe third country") (requiring a bilateral or multilateral agreement as well as "access to a full and fair procedure" for asylum or protection claims as a condition of sending a noncitizen to a third country in lieu of asylum proceedings in the U.S.).

[6] Defendants' attempt to find support for their position from history, ECF No. 42 at 13-14, is likewise without merit as the ER system was not even enacted until 1996. History therefore sheds no light on the interaction between ER and the contiguous territory return provision.

[7] Plaintiffs have pled a cause of action for violation of the customary international law norm of *nonrefoulement* under the Alien Tort Statute ("ATS"), *see* ECF No. 1 at ¶¶ 171-178 (Fifth Claim for Relief), but have not moved for preliminary relief on that claim. Defendants' (incorrect) argument that violation of the prohibition on *refoulement* is not cognizable under the ATS is therefore irrelevant to this motion. *See* ECF No. 42 at 15 n.8.

policy entirely lacks. Nonetheless, Defendants take the remarkable position that the withholding statute does not apply to forced returns to Mexico because a grant of withholding is only available "*at the conclusion of* removal proceedings," "*after* an alien is found removable." *Id.* at 15 (emphasis in original). Indeed, Defendants take the even broader position that "the withholding of removal provision [] has *no* application to [] the contiguous territory provision" because it concerns "returns" not "removals." *Id.* (emphasis added; original emphasis omitted). In Defendants' view, there is no legal obstacle to their returning an individual to Mexico even if there is a 100% certainty that she will be tortured or persecuted there.

This argument would gut the statute. Congress's unequivocal, mandatory directive that the "Attorney General may not remove" refugees to persecution, § 1231(b)(3), means nothing if Defendants can simply circumvent it by choosing to "return" a person to persecution before a decision is made to "remove" that person.[8] *See King v. Burwell*, 135 S. Ct. 2480, 2493 (2015) ("We cannot interpret federal statutes to negate their own stated purposes."). Moreover, Defendants ignore that the individuals being returned are already in removal proceedings and thus entitled to the protections that accompany such proceedings. *See* 8 U.S.C. § 1225(b)(2)(C) (authorizing return "pending a proceeding under section 1229a").

Defendants' sole support for their extreme position is that the current withholding statute uses the word "remove" rather than "return." ECF No. 42 at 14-15. But Congress enacted the withholding provision to comply with the United States' *nonrefoulement* obligation under Article 33.1 of the Refugee Convention, ECF No. 20-1 at 9, which expressly provides: "No Contracting State shall *expel or return* ('refouler') a refugee in any manner whatsoever to the frontiers of territories where his life or freedom would be threatened . . ." AR 1679 (emphasis added).

In *Sale v. Haitian Centers Council, Inc.*, the Supreme Court read Article's 33.1's use of *expel* to "refer[] to the deportation or expulsion of an alien who is already present in the host country"; and the use of *return* to "refer[] to the exclusion of aliens who are merely 'on the threshold of initial

---

[8] Defendants cite *Matter of I-S- & C-S-*, 24 I. & N. Dec. 432 (BIA 2008) in support of their position that the right to *apply* for withholding must await entry of a removal order. But that case held only that "a removal order must precede any *grant* of withholding." *Id.* at 433 (emphasis added). It did not consider the legality of "returning" a noncitizen to the likelihood of persecution *prior* to the entry of a removal order, or while applying for withholding protections.

entry.'" 509 U.S. 155, 180 (1993) (quoting *Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958)). To conform domestic law with the Convention, the 1980 Refugee Act provided that the "Attorney General shall not deport or *return* any alien," to the likelihood of persecution. INA § 243(h) (1980) (emphasis added). It was only when Congress consolidated deportation and exclusion proceedings into unitary "removal" proceedings in 1996 that the language in the withholding statute changed from "deport or return" to simply "remove." Pub. L. No. 104–208, 110 Stat. 3009 (1996). The replacement of both words with the single phrase indicates that Congress intended withholding's prohibition on "remov[al]" to cover both prior circumstances of "deportation" and "returns." Indeed, it is simply not credible to believe that Congress would upend, via a technical amendment, the 1980 Refugee Act's clearly established intent to track Article 33's *non-refoulement* requirement.[9]

Further, in enacting the contiguous-territory provision, Congress did not intend to supersede existing withholding protections. Congress did not state that those returned could not apply for withholding to Mexico. In contrast, in the provision authorizing reinstatement of a removal order against an individual who reenters the country illegally, 8 U.S.C. § 1231(a)(5), Congress specified that the individual "is not eligible and may not apply for any relief under this chapter." And even that explicit limitation was deemed insufficient to override statutory withholding protections. *See* 8 C.F.R. § 208.31 (providing for reasonable fear proceedings for noncitizens subject to § 1231(a)(5) to screen for withholding); *Garcia v. Sessions*, 856 F.3d 27, 32 (1st Cir. 2017) (reasonable fear proceedings created to "harmonize" the "sweeping statutory bar to relief" with the "directive to the Attorney General to withhold removal"). Court must "interpret a statute as a symmetrical and coherent regulatory scheme and fit, if possible, all parts into a harmonious whole." *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000).

### 2.    Defendants' Fear Determination Process Is Arbitrary and Capricious.

Regardless of whether the withholding statute and regulations apply, Defendants themselves have directed agency officials to adhere to the United States' *nonrefoulement* obligations in implementing the forced return policy. *See* AR 9, 2272. The fear determination process is arbitrary

---

[9] "[R]epeals by implication are not favored, and will not be found unless an intent to repeal is clear and manifest." *Rodriguez v. United States*, 480 U.S. 522, 524 (1987) (citations omitted).

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION
CASE NO. 3:19-cv-00807-RS

and capricious because it is wholly inadequate to achieve that stated objective. ECF No. 20-1 at 11-13.

Indeed, Defendants do not dispute that a fear determination is only conducted for those who affirmatively express a fear; yet there is no requirement for the immigration officer to even notify applicants in advance that they are facing return to Mexico. *See, e.g.*, ECF Nos. 5-1 (John Doe) at 7, 5-2 (Gregory Doe) at 7, 5-5 (Alex Doe) at 7, 5-6 (Christopher Doe) at 4-5.[10] And those lucky enough to be referred to an asylum officer face the prospect of proving—without the guarantee of an interpreter, counsel, or opportunity to gather evidence—that there is a more likely than not chance that they will be persecuted in Mexico, a burden of proof ordinarily reserved for withholding applications that are decided in the context of full immigration court hearings. ECF No. 20-1 at 9-12.

The inadequacy of Defendants' procedure is reinforced by its complete departure from the prior procedures the agency established, and recognized as necessary, to make determinations of this type. *See* ECF No. 20-1 at 9-12; *see also Garcia v. Johnson*, No. 14-CV-01775, 2014 WL 6657591, at *2 (N.D. Cal. Nov. 21, 2014) (describing reasonable fear process). Although Defendants argue that the credible and reasonable fear regulations do not apply to returns under § 1225(b)(2)(C), ECF No. 42 at 16, that misses the point. Defendants' departure from these established policies for satisfying the *nonrefoulement* obligation without acknowledgement or explanation is itself arbitrary and capricious. *See Fed. Commc'ns Comm'n v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009). Defendants vaguely cite their prior uses of § 1225(b)(2)(C), *see* ECF No. 42 at 16, but nowhere claim that they previously used the deficient fear determination process they have invented under the new policy. Thus, Defendants' policy is arbitrary and capricious under the APA.[11]

### C. Defendants Violated APA Rulemaking Requirements in Implementing a New Binding Procedure for Fear Determinations Without Notice and Comment.

The new fear determination process is plainly a legislative rule subject to notice and comment. Despite Defendants' attempt to characterize it as a mere "statement of policy," ECF No.

---

[10] *Andriasian v. INS*, 180 F.3d 1033 (9th Cir.1999) (finding due process violation where IJ changed country of removal without providing an opportunity to apply for withholding of removal from that country).

[11] Defendants cite *Trinidad y Garcia v. Thomas*, 683 F.3d 952, 957 (9th Cir. 2012) (en banc), but that case does not address the APA's prohibition on such arbitrary departures from agency policy.

42 at 20-22, they acknowledge three points. Individuals subject to the forced return policy who express a fear of return *must* receive an assessment of that fear by a USCIS officer. *Id.* at 4-5. At that screening, officers *must* consider certain factors. *See* AR 2273-74. And individuals who demonstrate that they are more likely than not to be persecuted in Mexico, "may not" be returned to Mexico. ECF No. 42 at 5, 21. This is a mandatory prohibition on return accompanied by mandatory procedures. It does not leave officers "free to exercise discretion to follow, or not to follow, the [announced] policy in an individual case," *Mada-Luna v. Fitzpatrick*, 813 F.2d 1006 (9th Cir. 1987).[12] That other aspects of the forced return policy might be discretionary, as Defendants argue, ECF No. 42 at 21, does not change the fact that those who express and prove a fear cannot be returned.

Moreover, the new fear assessment effectively amends the rules promulgated to implement the withholding statute and the Convention Against Torture, as well as 8 C.F.R. § 235.3(d). [13] ECF No. 20-1 at 14. *See also Hemp Industries Ass'n v. Drug Enforcement Admin.*, 333 F.3d 1082, 1088 (9th Cir. 2003) ("when an agency does not hold out a rule as having the force of law, it may still be legislative if it is inconsistent with a prior rule having the force of law"). Defendants' claim otherwise, ECF No. 42 at 22, is belied by the fact that Defendants themselves believed that a formal rule was required and explained the need for rulemaking to "take appropriate action, consistent with the requirements of section 1231 of Title 8, to ensure that aliens described in section 235(b)(2)(C) . . . are returned. . . . This rulemaking proposed to amend 8 C.F.R. § 235.3(d) so that it is consistent

---

[12] Defendants' reliance on *Mada-Luna* is misplaced. First, unlike the specific policy at issue in *Mada-Luna*, the fear determination is mandatory. Second, the guidance documents in *Mada-Luna* "emphasize[d] the broad and unfettered discretion" of officers, who were tasked with making subjective determinations of applicants' "sympathetic" appeal. *Mada-Luna*, 813 F.2d at 1017. The fear determination requires asylum officers to make an objective, more-likely-than-not determination of a risk of persecution, based on narrowly articulated factors. *See, e.g.*, *Pickus v. U.S. Board of Parole*, 507 F.2d 1107 (D.C. Cir. 1974) (guidelines that specify "many of the factors" to be considered in making a *discretionary* parole decision are binding because they "focus the decision-maker's attention on the Board-approved criteria").

[13] Defendants are wrong to assert that the withholding statute, and its implementing regulations do not apply to "returns." *See supra* at II.B.1. Moreover, 8 C.F.R. § 208.16 applies to both claims under the withholding statute and the Convention Against Torture. CAT prohibitions plainly apply to returns. *See* Foreign Affairs Reform and Restructuring Act of 1998 ("FARRA"), Pub. L. No. 105-277, Div. G, Title XXII, § 2242, 112 Stat. 2681-822 (1998) (codified as note to 8 U.S.C.A. § 1231 (1999) (prohibiting the "involuntary return of any person" to torture).

with this requirement." ECF No. 20-3, Exs. H, K, L, M ("Unified Agenda of Federal Regulatory and Deregulatory Actions, Return to Territory, 8 C.F.R. § 235.3" from Spring 2017, Fall 2017, Spring 2018 and Fall 2018). *See also* ECF No. 20 at 14.

For more than two decades, the agencies have consistently implemented Congress's statutory commands and their own *nonrefoulement* obligations through formal rules, thereby ensuring public notice, input, and oversight. Defendants' attempt to bypass these requirements should be rejected.

### D. The Forced Return Policy is Arbitrary and Capricious Because It Is Not Rationally Connected to Legitimate Justifications.

Defendants fail to show how the forced return policy rationally furthers its purported goals, many of which are impermissible and belied by the facts. The policy is arbitrary and capricious. *See Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

First, Defendants do not even attempt to argue that their effort to circumvent "[m]isguided court decisions and outdated laws," AR 12, is a factor that Congress intended them to consider in creating the forced return policy. Nor could they, as such considerations are plainly impermissible. *See* ECF No. 20-1 at 18.

Second, Defendants fail to explain how the forced return policy is rationally connected to its purported goals. Defendants reassert their interests in deterring fraudulent asylum seekers and absconders. *See* ECF No. 42 at 18-20. Plaintiffs do not contest the legitimacy of those rationales. Instead, Plaintiffs attack the forced return policy for making no attempt to actually identify asylum seekers who pose a flight risk or raise fraudulent asylum claims—despite the agency having the means to do so. *See* ECF No. 20-1 at 16. Defendants' response is that § 1225(b)(2)(C) does not require consideration of flight risk. *See* ECF No. 42 at 18. But that is beside the point. Plaintiffs have challenged Defendants' forced return policy, not § 1225(b)(2)(C), and Defendants' policy simply does not advance their stated goals. *See Judulang v. Holder*, 565 U.S. 42, 55 (2011) (requiring that agency action "be based on non-arbitrary, relevant factors").[14]

Third, Defendants' policy is based on false factual premises. For example, Defendants

---

[14] Defendants cite *Amanullah v. Nelson*, 811 F.2d 1 (1st Cir. 1987), but the asylum seekers in that case were all detained *inside* the United States pursuant to parole regulations that entailed a review of whether they actually posed a flight risk. *See id.* at 4, 7-8 (citing 8 C.F.R. § 212.5(a) (1986)).

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION
CASE NO. 3:19-cv-00807-RS

notably do not defend DHS's claim that "nine out of ten asylum claims are not granted by a federal immigration judge," AR 17—an assertion that is belied by Defendants' own data. *See* ECF No. 20-12 (Reichlin-Melnick Decl.) at ¶¶ 14 n.4, 16; *see also* AR 654.[15] Similarly, contrary to Defendants' assertions regarding flight risk, Defendants' own data show that, between FY2008 and FY2018, the overwhelming majority of asylum seekers who passed a credible fear screening—87.5%—appeared for their immigration court hearings. ECF No. 20-12 at ¶ 9. "Agency action based on a factual premise that is flatly contradicted by the agency's own record does not constitute reasoned administrative decision-making and cannot survive review under the arbitrary and capricious standard." *City of Kansas City, Mo. v. Dep't of Hous. & Urban Dev.*, 923 F.2d 188, 194 (D.C. Cir. 1991)). *See also New York v. United States Dep't of Commerce*, 351 F. Supp. 3d 502, 647 (S.D.N.Y. 2019) (finding agency action arbitrary and capricious where its "decisions were unsupported by, or even counter to, the evidence before the agency").[16]

Fourth, Defendants fail to explain how their choice to implement their forced return policy at ports of entry advances its purported goal of combatting "illegal immigration," as that choice targets individuals who lawfully seek entry and incentivizes individuals to cross the border between ports of entry. *See* ECF No. 20-1 at 17 & n.10. Agency action should be set aside as arbitrary when "the reason which the [agency] [gives] for its action . . . makes no sense." *New England Coal. on Nuclear Pollution v. Nuclear Regulatory Comm'n*, 727 F.2d 1127, 1130-31 (D.C. Cir. 1984) (Scalia, J.).

Finally, Defendants have failed to consider "important aspect[s] of the problem," *State Farm*, 463 U.S. at 43, among these, whether the forced return policy would actually deter asylum seekers fleeing danger from coming to the United States. *See* ECF No. 20-1 at 16 n.9 (citing ECF No. 20-16 (Menjivar Decl.) ¶¶ 12-20. *Cf. R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 189 (D.D.C. 2015) (citing

---

[15] Nor is this a situation where the Court should defer to agency "experience" in the absence of empirical data. *See Sacora v. Thomas*, 628 F.3d 1059, 1068-69 (9th Cir. 2010). Here the government's own data shows that the factual assertions upon which Defendants based their policy are incorrect.

[16] Defendants also ask that the Court defer to its methodology for identifying individuals with legitimate asylum claims. ECF No. 42 at 20. However, such deference is inappropriate where the agency "completely failed" to consider factors that are "essential to a truly informed decision." *Bear Lake Watch Inc. v. FERC*, 324 F.3d 1071, 1077 (9th Cir. 2003) (internal quotation marks and citation omitted). Here the agency completely failed to consider such critical factors—in particular, whether asylum seekers can access counsel and are detained pending their removal proceedings. *See* ECF No. 20-12 (Reichlin-Melnick Decl.) at ¶¶ 19-24 n.7.

lack of empirical evidence that the government's detention policy would actually further its purpose

of deterring asylum seekers from coming to the United States).  In addition, defendants failed to

consider the impact of forced return on the ability of bona fide asylum seekers to litigate their

asylum cases from Mexico, where they face ongoing threats to their safety and the risk of

*refoulement* by the Mexican authorities. *See* ECF No. 20-1 at 17-18, 20-23; *see also Am. Wild Horse*

*Pres. Campaign v. Perdue*, 873 F.3d 914, 932 (D.C. Cir. 2017) (agencies must "adequately analyze

… the consequences" of their actions). Although Defendants cite the Mexican government's

assurances that asylum seekers will receive humanitarian protection, ECF 42 at 19, those assurances

at most go to Mexico's willingness to try to protect asylum seekers, and not its ability to actually do

so. *See, e.g., Madrigal v. Holder*, 716 F.3d 499, 506 (9th Cir. 2013) (remanding where "the BIA

appear[ed] to focus only on the Mexican government's willingness to control Los Zetas, not its

ability to do so"). Indeed, if anything, Defendants' own administrative record confirms that Mexico

is incapable of offering asylum seekers adequate protection. *See, e.g*., AR 747, 774, 778-79, 785-91,

794-95, 820-21. Because Defendants failed to consider these "important aspect[s] of the problem,"

their policy is arbitrary and capricious in violation of the APA. *See State Farm*, 463 U.S. 29 at 43.

## III.   ALL OTHER FACTORS FAVOR INJUNCTIVE RELIEF AND THERE IS NO BAR TO THE RELIEF PLAINTIFFS SEEK.

The remaining factors strongly favor injunctive relief. Defendants fail to identify immediate

demonstrable harm to the public from pausing the forced return policy – a policy that was only

recently put into effect and that Defendants themselves describe as "unprecedented." AR 12. Nor do

they identify immediate demonstrable harm to the public from permitting asylum seekers to pursue

protection in the U.S. Instead, they assert that the policy is necessary to address a "crisis at the

southern border." ECF No. 42 at 23. However, Defendants' own data belies this assertion, *see supra*,

Point II.D; *see also* AR 408. To the extent there is a "crisis," it is a humanitarian crisis of

Defendants' own making. Moreover, while Defendants claim the public interest is served by

deterring fraudulent asylum seekers, ECF No. 42 at 23, there is no evidence that its policy will

actually further this goal. *See, e.g.* ECF No. 20-16 (Menjivar Decl.) ¶¶ 14-20.

In contrast, the ongoing harms the policy has caused to Plaintiffs are very real. The

Individual Plaintiffs have described in detail physical assaults and specific threats made against them, including by Mexican authorities. *See* ECF No. 20-1 at 20-21.[17] Defendants do not dispute these claims. Instead, their response is that Plaintiffs simply need to sit tight and wait to assert their fear of harm in Mexico when they return to the U.S. for their immigration court hearings, *see* ECF No. 42 at 23—at which time they can receive a fear assessment under the forced return policy's process, a process riddled with deficiencies. In the meantime, Plaintiffs live in fear for their lives on the brink of homelessness and with the threat of being unlawfully returned to the countries they fled. *See* ECF No. 20-1 at 20-22.

Defendants argue that the risk that Mexico will unlawfully *refoule* Plaintiffs is not "traceable" to their actions and therefore not relevant to the irreparable harm inquiry. ECF No. 42 at 23. But the action sought to be enjoined need not be the "exclusive cause of the injury," and a sufficient causal connection exists if "the requested injunction would forestall the irreparable harm." *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 886 F.3d 803, 819 (9th Cir. 2018) (internal quotation marks omitted). Such a connection undoubtedly exists here, especially where the risk of being unlawfully returned is hardly speculative.[18]

The Organizational Plaintiffs are experiencing serious impairment of their operations and financial survival. *See* ECF No. 20-1 at 23. Courts have found irreparable harm to nonprofit organizations in similar circumstances. *See S.A. v. Trump*, No. 18-cv-03539-LB, 2019 WL 990680, at *9 (N.D. Cal. Mar. 1, 2019); *E. Bay Sanctuary Covenant v. Trump*, No. 18-cv-06810-JST, 2018 WL 6660080, at *13 (N.D. Cal. Dec. 19, 2018); *Valle del Sol v. Whiting*, 732 F.3d 1006, 1018-19, 1029 (9th Cir. 2013). Defendants contend that the loss of an opportunity to comment—alone—is insufficient. ECF No. 42 at 24. But Plaintiffs' right to provide advance input "does not exist in a vacuum." *California v. Health & Human Servs.*, 281 F. Supp. 3d 806, 830 (N.D. Cal. 2017), *aff'd in part, vacated in part, remanded sub nom. California v. Azar*, 911 F.3d 558 (9th Cir. 2018). "Rather,

---

[17] Plaintiffs incorporate by reference the eleven Individual Plaintiffs' declarations, which were filed in support of Plaintiffs' administrative motion to proceed pseudonymously. *See* ECF Nos. 5-1-5-11.
[18] The government relies on the fact that Mexico has offered "lawful status" to returned migrants, ECF No. 42 at 23, but such status is only temporary, and the record shows that Mexican immigration officials regularly flout relevant laws, in violation of their *nonrefoulement* obligations. *See* ECF No. 20-1 at 22-23; ECF No. 20-3, Ex. U. at 14-21, Ex. V at 5; *see also* AR 779, 794-95, 820-21.

1   it is in large part defined by what is at stake: the [safety] of Plaintiffs' [clients] and Plaintiffs' fiscal

2   interests." *Id*. The ongoing irreparable harms stem directly from the procedural violation.

3        Finally, Defendants are wrong that 8 U.S.C. § 1252(f)(1) bars injunctive relief. *See* ECF No.

4   42 at 25. Ninth Circuit law is clear: where, as here, plaintiffs challenge not the *operation* of a statute,

5   but Defendants' *violation* of that statute, § 1252(f)(1) is no obstacle to injunctive relief. *Rodriguez v.*

6   *Hayes*, 591 F.3d 1105, 1120 (9th Cir. 2010). *See also Grace v. Whitaker*, 344 F. Supp. 3d 96, 143

7   (D.D.C. 2018) (1252(f) does not bar injunctive relief that "enjoins conduct that violates" a statutory

8   provision).

9        Defendants also propose narrowing any injunctive relief "to the individual plaintiffs" and

10  clients of the Organizational Plaintiffs "who were processed in San Ysidro." ECF No. 42 at 25. The

11  Ninth Circuit recently rejected an identical argument. *E. Bay Sanctuary Covenant*, 909 F.3d at 1255-

12  56. There, as here, "the Government fail[ed] to explain how the district court could have crafted a

13  narrower [remedy] that would have provided complete relief to the Organizations." *Id*. at 1256

14  (internal quotation marks omitted).  Here, Organizational Plaintiffs challenge *their own* ongoing

15  injuries (as well as harms inflicted on clients). *See* ECF No. 20-1 at 23. An order enjoining the

16  forced return policy as a whole is necessary to address these complex injuries. *See E. Bay Sanctuary*

17  *Covenant*, 2018 WL 6660080 at *17 ("the Organizations' harms are not limited to their ability to

18  provide services to their *current* clients, but extend to their ability to pursue their programs writ

19  large, including the loss of funding for future clients").

20       Moreover, when an agency-wide program is unlawful, "the ordinary result is that the rules

21  are vacated—not that their application to the individual petitioners is proscribed." *Nat'l Min. Ass'n*

22  *v. U.S. Army Corps of Eng'rs*, 145 F.3d 1399, 1409 (D.C. Cir. 1998) (internal quotation marks

23  omitted); *California v. Ross*, No. 18-cv-01865-RS (N.D. Cal. Mar. 6, 2019), ECF No. 205 at 124.

24  And "[i]n immigration matters," the Ninth Circuit has "consistently recognized the authority of

25  district courts to enjoin unlawful policies on a universal basis." *E. Bay Sanctuary Covenant*, 909

26  F.3d at 1255 (collecting cases).

**CONCLUSION**

28       For the foregoing reasons, Plaintiffs' motion for a preliminary injunction should be granted.

Dated: March 7, 2019

Jennifer Chang Newell (SBN 233033)
Katrina Eiland (SBN 275701)
Julie Veroff (SBN 310161)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
39 Drumm Street
San Francisco, CA 94111
T: (415) 343-1198
F: (415) 395-0950
*jnewell@aclu.org*
*keiland@aclu.org*
*jveroff@aclu.org*

Melissa Crow***
SOUTHERN POVERTY LAW CENTER
1101 17th Street NW, Suite 705
Washington, D.C. 20036
T: (202) 355-4471
F: (404) 221-5857
*melissa.crow@splcenter.org*

Mary Bauer***
SOUTHERN POVERTY LAW CENTER
1000 Preston Avenue
Charlottesville, VA 22903
T: (470) 606-9307
F: (404) 221-5857
*mary.bauer@splcenter.org*

Gracie Willis***
SOUTHERN POVERTY LAW CENTER
150 East Ponce de Leon Avenue, Suite 340
Decatur, GA  30030
T:  (404) 221-6700
F:  (404) 221-5857
*gracie.willis@splcenter.org*

Michelle P. Gonzalez***
SOUTHERN POVERTY LAW CENTER
P.O. Box 370037
Miami, FL 33137-0037
T: 786-753-1383
F: 786-237-2949
*mich.gonzalez@splcenter.org*

Respectfully submitted,

/s/ *Judy Rabinovitz*
Judy Rabinovitz*
Michael Tan*
Omar Jadwat*
Lee Gelernt*
Anand Balakrishnan*
Daniel Galindo (SBN 292854)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad St., 18th Floor
New York, NY 10004
T: (212) 549-2660
F: (212) 549-2654
*jrabinovitz@aclu.org*
*mtan@aclu.org*
*ojadwat@aclu.org*
*lgelernt@aclu.org*
*abalakrishnan@aclu.org*
*dgalindo@aclu.org*

Sean Riordan (SBN 255752)
Christine P. Sun (SBN 218701)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN
CALIFORNIA, INC.
39 Drumm Street
San Francisco, CA 94111
T: (415) 621-2493
F: (415) 255-8437
*sriordan@aclunc.org*
*csun@aclunc.org*

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION
CASE NO. 3:19-cv-00807-RS

Steven Watt***
ACLU FOUNDATION HUMAN RIGHTS
PROGRAM
125 Broad Street, 18th Floor
New York, NY 10004
T: (212) 519-7870
F: (212) 549-2654
*swatt@aclu.org*

*Attorneys for Plaintiffs*

*Admitted pro hac vice
**Application for pro hac vice pending
***Pro hac vice application forthcoming*

Blaine Bookey (SBN 267596)
Karen Musalo (SBN 106882)
Eunice Lee (SBN 316237)
Kathryn Jastram (SBN 127625)
Sayoni Maitra***
CENTER FOR GENDER & REFUGEE
STUDIES
200 McAllister St.
San Francisco, CA 94102
T: (415) 565-4877
F: (415) 581-8824
*bookeybl@uchastings.edu
musalok@uchastings.edu
leeeunice@uchastings.edu
jastramkate@uchastings.edu
maitras@uchastings.edu*

17