JOSEPH H. HUNT
*Assistant Attorney General*
WILLIAM C. PEACHEY
*Director*
Office of Immigration Litigation
District Court Section
EREZ REUVENI
*Assistant Director*
PATRICK GLEN
*Senior Litigation Counsel*
T. BENTON YORK
*Trial Attorney*
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel.: (202) 598-6073
thomas.b.york@usdoj.gov
ARCHITH RAMKUMAR
*Trial Attorney*

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| INNOVATION LAW LAB, *et al.* | ) | Civil Action No. 3:19-cv-00807-RS |
| | ) | |
| Plaintiffs, | ) | **DEFENDANTS' REPLY IN SUPPORT** |
| | ) | **OF THEIR MOTION TO TRANSFER** |
| v. | ) | **VENUE** |
| | ) | |
| Kirstjen NIELSEN, Secretary, U.S. | ) | |
| Department of Homeland Security, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' REPLY IN SUPPORT
## <u>OF THEIR MOTION TO TRANSFER VENUE</u>

This action should be transferred to the District Court for the Southern District of California. As Plaintiffs fail to contest, *none* of the events giving rise to Plaintiffs' claims or alleged injuries occurred in this district. Plaintiffs challenge guidance—the Migrant Protection Protocols (MPP)—issued by the Secretary of Homeland Security in Washington, D.C., that is being implemented only in the Southern District of California at this time. All of the alleged injuries Plaintiffs purport to suffer derive from actions taken against the individual Plaintiffs and third-party aliens not before this court exclusively in the Southern District. And each individual Plaintiff, as well as any other alien currently subject to MPP, is scheduled for removal proceedings occurring exclusively in the Southern District, and nowhere else. *See, e.g.*, Mot. to Seal, Ex. A.

The only purported connection to this District is the organizational Plaintiffs' speculation that because they "serve asylum seekers" in this District, they are harmed by the guidance in this district. But none of the named individual Plaintiffs—scarcely referenced in Plaintiffs' brief—is scheduled for removal proceeding within this District, or has sought entry to the United States in this District. Further, Plaintiffs have not identified a single individual subject to MPP who is present in this District or suffers any harm caused by MPP in this District. Plaintiffs' bare speculation should be accorded no weight in the analysis. Nor does Plaintiffs' speculation that MPP might be implemented in Texas at some future date suggest otherwise. That MPP might be implemented in Texas is irrelevant because all identified individual Plaintiffs have hearings in the Southern District, and the organizational Plaintiffs identify no alleged client affected by MPP with a hearing in the Northern District.  If MPP were expanded to Texas, individuals subject to MPP in that jurisdiction may sue there. But that is irrelevant to whether any alien is subject to MPP in *this* jurisdiction.

The only concrete factual allegations concerning events and actions that have already taken place—which is all the court can rely on when deciding this motion, *see Lujan v. Defenders of Wildlife*, 504 U.S. 555, 570 n.4 (1992)—are all based on the San Ysidro port of entry. Indeed, Plaintiffs' complaint specifically asks the Court to order Plaintiffs be returned "to the San Ysidro Port of Entry for reprocessing"—again, in the Southern District of California—and no other geographically specific relief is requested.

In short, this is a Southern District case, and Plaintiffs' opposition brief does not persuade otherwise. Instead, their brief—which, again, says almost nothing about the individual Plaintiffs— highlights the dubious nature of the organizational Plaintiffs' standing in this case. Plaintiffs' choice of venue is entitled to no deference, *see Metz v. U.S. Life Ins. Co.*, 674 F.Supp.2d 1141, 1146 (C.D. Cal. 2009), and the Southern District of California is the much more appropriate venue for this case. Accordingly, transfer should be granted.

## ARGUMENT

### I.      Plaintiff cannot point to any factual allegations of injury in the Northern District.

As Plaintiffs' complaint makes plain, they challenge guidance issued by the Secretary outside of this District, regarding the exercise of prosecutorial discretion by immigration officers on the southern border with respect to aliens seeking entry to this country and potentially subject to 8 U.S.C. § 1225(b)(2)(C). Mot. to Transfer 1-2. The Secretary announced the MPP in Washington, D.C., on December 20, 2018, and DHS began implementing it at the San Ysidro port of entry near San Diego in the Southern District of California on January 28, 2019. Compl. ¶ 6. It is undisputed that at the time Plaintiffs were allegedly returned to Mexico pending their removal proceedings, the MPP was being implemented solely at that port of entry and nowhere else.

*Compare* Mot. to Transfer 1-2, & 4 *with* Opp. As of this filing, all returns under MPP exclusively occurred at the San Ysidro port of entry in the Southern District of California.[1]

Eleven of the 17 Plaintiffs pursuing this action are individuals alleging they sought entry to this country at the San Ysidro port of entry, and were returned to Mexico pursuant to MPP from the San Ysidro port of entry. Mot. to Transfer 1, 4. Each of those Plaintiffs was issued a notice to appear, instructing them to return to the San Ysidro port of entry at a future date for removal proceedings at the San Diego Immigration Court, in the Southern District. *See* Mot. to Seal, Ex. A. The complaint alleges Plaintiffs experienced injuries as a result of processing by officers exclusively at the San Ysidro port of entry, including: the general circumstances of their detention and interviews, Compl. ¶¶ 104–05, 109; Kevin Doe's interview with CBP officers, *Id*. ¶ 106; Christopher Doe's interview with CBP officers, *Id*. ¶ 107; Ian Doe's interactions with CBP officers, *Id*. ¶ 108; Howard Doe and Frank Doe's interactions with an asylum officer, *Id*. ¶ 110; and the general practices by CBP officers in processing the Plaintiffs. *Id*. ¶¶ 111–14. These alleged actions by government officers are all claimed by Plaintiffs to have taken place at, and only at, the San Ysidro port of entry in the Southern District of California. Mot. to Transfer 3-4. To remedy these alleged injuries at the San Ysidro port of entry, Plaintiffs request that the Court "[e]nter an order providing relief for the Individual Plaintiffs by ordering that Defendants ***return them to the San Ysidro Port of Entry*** for reprocessing of their applications for admission without subjecting them to the unlawful forced return policy." *Id*. at 37 (emphasis added).

---

[1] Defendants note that counsel has been informed by DHS that as of 11 am PST, Wednesday, March 6, 2019, individuals apprehended between ports of entry in the San Diego area of operation have been processed and returned to Mexico. These aliens were returned at the San Ysidro port of entry to Mexico consistent with 8 U.S.C. 1225(b)(2)(C). These returns also occurred in the Southern District and, in no way affect the analysis, which depends on the facts as they existed when Plaintiffs initiated suit. See *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960) ("[W]e do not see how the conduct of a defendant after suit has been instituted can add to the forums where 'it might have been brought.' In the normal meaning of words this language of Section 1404(a) directs the attention of the judge who is considering a transfer to the situation which existed when suit was instituted.")

II.     **Plaintiffs' choice of forum is not entitled to deference**.

As Defendants explained in their motion, Plaintiffs' choice of forum is entitled to little to no weight, given that the operative facts have not occurred in this district, the forum has no particular interest in the parties or subject matter, the forum is not the primary residence of the majority of the plaintiffs or any of the defendants, and the subject matter of the litigation—a policy being implemented on the southern border, and currently limited to the Southern District of California—is not substantially connected to the forum." Mot. to Transfer 8-11; *see Lodestar Anstalt v. Bacardi & Co. Ltd., et al.*, 2017 WL 1434265, at *4 (C.D. Cal. Apr. 21, 2017).

Plaintiffs dismiss these concerns, and contend primarily that because the organizational Plaintiffs have chosen to sue in this district, that choice is entitled to deference notwithstanding all the countervailing equities raised by Defendants in their brief, and that "deference to the plaintiff's venue may only be overcome by a 'strong showing of inconvenience' to the parties and witnesses." Opp. 9 (citing *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986)). *See also* Opp. 9-12. Plaintiffs are incorrect. Indeed, "[c]onsideration of the interest of justice, which includes judicial economy, may be determinative to a particular transfer motion, even if the convenience of the parties and witnesses might call for a different result." *Regents of the Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1565 (Fed. Cir. 1997) (internal quotation marks omitted) (citing, *inter alia*, *Allen v. Scribner*, 812 F.2d 426, 436–37 (9th Cir. 1987). As Defendants have explained, the interest of justice strongly favors transfer. Mot. to Transfer 9-11.

In fact, many of the cases relied upon by Plaintiffs are inapposite. For example, Plaintiffs present the quote from *Decker Coal* as seemingly establishing a bright-line rule that *only* inconvenience negates a plaintiff's choice of forum. *See* Opp. 9. This presentation, however, misconstrues the language quoted from *Decker Coal*, which they pull from discussion of 28 U.S.C.

§ 1404(a)'s revisions to the common law doctrine of *forum non conveniens* that in no way announces the rule Plaintiffs suggest. *See Decker Coal*, 805 F.2d at 843. Plaintiffs also rely on this Court's decision in *Consumer Fin. Prot. Bureau v. Nationwide Biweekly Admin., Inc*., No. 15-CV-02106-RS, 2015 WL 4463790, at *3 (N.D. Cal. July 21, 2015) ("*CFPB*"), suggesting it holds that "plaintiff's choice of venue is accorded significantly diminished consideration *only* if the operative facts have not occurred within the forum and the forum has no interest in the parties or subject matter." Opp. 11 (emphasis added). But, in that false-advertising case it was uncontested that "that operative events have occurred in this forum, [and] that this District [therefore] has a clear interest in the parties or subject matter of this case," because "receipt of that content, reliance on that content, and the resulting harms occurred in the states in which the consumers reside," including in this district. *CFPB*, 2015 WL 4463790, at *4. But that is plainly not the case here, where the "operative events" did not occur "in this forum," and the alleged application of MPP has only occurred in the Southern District.

Indeed, the relevant considerations for the Court when assessing what weight to accord the Plaintiffs' chosen forum include: "(1) the operative facts have not occurred within the forum; (2) the forum has no particular interest in the parties or subject matter; (3) the forum is not the primary residence of either the plaintiff or defendant; *or* (4) the subject matter of the litigation is not substantially connected to the forum." *Lodestar Anstalt*, 2017 WL 1434265, at *4 (emphasis added). The presence of just *one* of these factors is sufficient to rebut any deference to the Plaintiffs' chosen forum, but in this case at least 3 of these factors weigh in favor of transfer: the operative facts do not arise here, the forum has no particular interest in the parties or subject matter, and the subject matter is not substantially connected to this district. Mot. to Transfer 9-11. Indeed, the contacts between the allegations in Plaintiffs' complaint and the Southern District are many,

6

as discussed above, and that three out of 17 Plaintiffs have a primary residence in the Northern District does not overcome the fact that the only place the 11 individuals can obtain relief they requested from the Court is at the San Ysidro port of entry in the Southern District. The simple fact is that none, let alone "a substantial part of those acts took place[,] in [this] forum." *All. for Multilingual Multicultural Educ. v. Garcia*, No. 11-cv-215, 2011 WL 2532478, at *7 (N.D. Cal. June 24, 2011). As all agree, none of the alleged "acts or omissions by the defendants giv[ing] rise to the plaintiffs' claims" occurred here. *United Tactical Sys. LLC v. Real Action Paintball, Inc.*, 108 F. Supp. 3d 733, 752 (N.D. Cal. 2015); *Sec. & Exch. Comm'n v. RPM Int'l, Inc.*, 223 F. Supp. 3d 110, 116 (D.D.C. 2016) ("Transfer is favored when the material events that form the factual predicate of the plaintiff's claim did not occur in the plaintiff's chosen forum."). And that is all the government must show to rebut any presumption of deference to Plaintiffs' chosen forum. *See id.*; *accord CBD v. Kempthorne*, No. 07-0894, 2007 WL 2023515, at *3 (N.D. Cal. July 12, 2007) (affording no deference to plaintiff's chosen forum where the connection between the plaintiffs, the controversy, and the chosen forum was attenuated); *Kafack v. Primerica Life Ins. Co.*, 934 F. Supp. 3, 6 (D.D.C. 1996) ("deference [to the plaintiff's choice of forum] is mitigated where [that forum] has no meaningful ties to the controversy and no particular interest in the parties or subject matter.")

The Central District's order transferring Plaintiff Al Otro Lado's (AOL) action to the Southern District is instructive for this case. *See* ECF 46-1, Order, *Al Otro Lado, Inc., et al. v. Kelly*, Case No. 2:17-cv-05111-JFW-JPR (Nov. 21, 2017). There, just as here, AOL challenged a national policy issued by U.S. Customs and Border Protection, involving allegations at the southern border—specifically the San Ysidro port of entry—as well as individual plaintiffs located in Tijuana. *Id.* at 2. AOL alleged similar theories of injury in that case, but the court nonetheless

determined that "Plaintiffs' choice of forum is entitled to minimal deference because this District has *no interest* in the parties or this action." *Id*. at 3 (emphasis added). It also found that "Plaintiffs have not alleged that any of the operative facts pertaining to this action occurred in this District. Instead, the systemic denial of access to the United States asylum process occurred primarily at the Otay Mesa or San Ysidro Ports of Entry, which are located in the Southern District." *Id*. The Court also found it noteworthy that "although [AOL] has an office in this District, it conducts a significant portion of its work in Tijuana, Mexico, which borders the Southern District." *Id*. The same analysis applies even more forcefully in this case, where there are even more individual Plaintiffs and the Northern District is even further removed from the alleged operative facts.

Plaintiffs also suggest the government cannot assert its own preferred forum, and their choice should be ignored, because government witnesses can "travel by air . . . to San Francisco." Opp. 15. Not only does this suggest a cavalier view of the public fisc, but it is wrong. *See CFPB*, 2015 WL 4463790, at *3 ("governmental agencies are entitled to just as much deference in its choice of forum as any other litigant"); *accord SEC v. Rose Fund, LLC*, 2004 U.S. Dist. LEXIS 22491, *6, 2004 WL 2445242 (N.D. Cal. Jan. 9, 2004) (rejecting defendant's argument that the SEC, as a federal agency, would "rarely, if ever, be seriously inconvenienced" by pointing out that the SEC "does not have personnel or facilities in every federal district").

### III.    The convenience of the witnesses favors the Southern District.

As discussed above, and in the government's initial motion, Plaintiffs' complaint contains numerous allegations regarding unnamed, unidentified government agents and their processing of the individual Plaintiffs for return to Mexico exclusively at the San Ysidro port of entry. Mot. to Transfer 3-4.  Accordingly, convenience of the witnesses favors the Southern District. *Id*. at 8. Plaintiffs' only response is to allege, without any evidence, that it must be the case that although these unidentified officers work at the San Ysidro port of entry, they likely reside outside of the

Southern District. *See* Opp. at 14-15. Plaintiffs cite no authority for the proposition that government employees working in a district should be presumed to not live in that district. In any event, given the voluminous allegations of conduct by government agents in the Southern District and Plaintiffs' request for an order that the individuals be returned "to the *San Ysidro Port of Entry*" (emphasis added), Plaintiffs' assertion that their claims "do not arise from or depend on the details of the policy's initial implementation in the Southern District" beggars belief and cannot be squared with their own complaint. Opp. 2. Assuming the truth of the allegations in the complaint, any relevant witnesses are likely to be found in the Southern District, and witness convenience strongly favors transfer. *See Al Otro Lado*, Order at 3-4 ("The overwhelming majority of witnesses, including the border patrol agents at the…San Ysidro Port[] of Entry who allegedly denied the Class Representatives the opportunity to apply for asylum in the United States…are located in the Southern District.").

Finally, Plaintiffs argue that because Defendants contend discovery would be inappropriate in this action, Defendant cannot raise the issue of witness convenience. Opp. 15-16. But even taking the government's position on discovery—that, putting aside justifiability arguments, if this case is heard, it must at most be based upon an APA record—the record relating to the decision to return named Plaintiffs would have been developed within the Southern District. Plaintiffs cannot have it both ways. Certainly, Defendants maintain their objections to discovery, but Plaintiffs clearly disagree, having raised numerous allegations about government agents, plaintiffs, and third parties not before the court all in their complaint and hundreds of pages of declarations arising in the Southern District; allegations about nonrefoulement review, again occurring in the Southern District; and allegations about whether Plaintiffs are even in removal proceedings at all, again occurring in the Southern District. *See discussion supra*. In fact, Plaintiffs already requested the

Court to "enter a schedule that would permit any disputes concerning the proper contents of the administrative record on a separate track." MTS Opp. 8, ECF Doc. 50. There can be no reasonable dispute that the Southern District would be the most convenient district for any of the alleged witnesses they would pursue.[2]

### IV.     The convenience of the parties favors the Southern District.

As the government explained in its opening brief, Plaintiffs will not be inconvenienced by transfer because most of them already operate throughout California and other parts of the United States. Mot. to Transfer at 8. In opposition, the only inconvenience Plaintiffs identify is that the organizational Plaintiffs "located in the Bay Area would be burdened by traveling to the Southern District to participate in these proceedings." Opp. 12. But, according to Plaintiffs, only three of these organizations reside exclusively in the Northern District, and these organizations are engaged in litigation across the country. Moreover, like the defendant organization addressed by this Court in *CFBP*, "any depositions of [Plaintiffs'] potential witnesses would still be conducted in the [district where the headquarters are located], which significantly minimizes any inconvenience defendants would experience." 2015 WL 4463790, at *5. Additionally, whether Plaintiff Al Otro Lado's address in San Ysidro is a mailbox as suggested in Plaintiffs' brief or not, the organization is clearly targeting service there and in Tijuana, making the Southern District objectively more convenient than the Northern District.[3] *See, e.g.*, Order, ECF Doc. 37-1, *Al Otro Lado, Inc., et al. v. Kelly*, Case No. 2:17-cv-05111-JFW-JPR (Nov. 21, 2017).

---

[2] Plaintiffs also claim that convenience of witnesses who are employed by parties is irrelevant. Opp. 14-15. This assertion is speculative and does not change the fact that they claim all of the factual allegations in their complaint occurred within the Southern District. *See also Al Otro Lado*, Order at 3-4.

[3] Plaintiffs incorrectly state that "Defendants suggest that the Individual Plaintiffs would not be burdened if forced to testify in the Southern District because they are currently located across the border in Mexico." Opp. at 12 n.5 (citing Mot. to Transfer at 8). Defendants' motion merely stated that the individual Plaintiffs are physically much closer to the Southern District than that Northern District. Mot. to Transfer 8.

In any event, Plaintiffs' claims about travel to the Southern District are beside the point. If plaintiffs in fact, as they claim to, represent the interests of asylum seekers affected by MPP, they will have to travel to the Southern District in any event because every single person they claim has been subject to MPP is scheduled for removal proceedings in the *Southern District*. *See, e.g.*, Mot. to Seal, Ex. A. That Plaintiffs, as they appear to assert, "primarily serve clients who reside and/or have their immigration proceedings" "in the Bay Area," Opp. 2, thus only highlights the mismatch between the organizational Plaintiffs' professed choice of forum and the individuals they purport to represent. Those individuals are all subject to removal proceeding in the Southern District and have been processed by immigration officers under MPP in that district. That the organizational Plaintiffs might represent *other* aliens in proceeding in San Francisco—aliens who are not part of this lawsuit and who are not subject to MPP—provides no basis for venue in this forum when those aliens lack any cognizable injury themselves tied to MPP, and where Plaintiffs cannot rely on those aliens to assert any Article III standing in this court. *See East Bay Sanctuary Covenant v. Trump*, 909 F.3d 1219, 1240 (9th Cir. 2018), (rejecting standing on this basis). Indeed, where, as here, the organizational Plaintiffs likely lack Article III standing or a cause of action under the Immigration and Nationality Act, *see* PI Opp. Br. 10 n.5, and it is only the individual Plaintiffs, if anyone, who may have cognizable injury, the convenience of the organizational plaintiffs should be accorded no weight at all.

## V.      The interests of justice strongly favor the Southern District.

As Defendants have explained, the interests of justice favor transfer because the operative facts are not alleged to have occurred in this District; this District has no particular interest in the parties or subject matter; and the subject matter is substantially connected only to the Southern District. Mot. to Transfer 9-11. Plaintiffs respond, incredibly, that "[t]he *sole* connection to the

Southern District is the fact that when Plaintiffs filed their complaint, it was the only location where the policy was in operation," and that "the operative facts…do not involve the Southern District." Opp. 16 (emphasis in original). As already discussed, the allegations giving rise to this action and the relief requested by Plaintiffs all center exclusively on the Southern District of California. To date, returns under MPP have occurred only within the Southern District of California, and the individual Plaintiffs were all processed there.  All individual Plaintiffs are scheduled for removal proceeding in that jurisdiction, and the relief Plaintiffs actually seek as to those Plaintiffs is their return to the Southern District.[4]

Plaintiffs speculate that MPP might be implemented in Texas at some future date. Opp. 16. But that MPP may be implemented in Texas is irrelevant, given Plaintiffs' assertion that they "primarily serve clients who reside and/or have their immigration proceedings" "in the Bay Area." Opp. 2. If MPP is expanded to Texas, then aliens subject to MPP in that jurisdiction may sue there. But that is irrelevant to whether any alien is subject to MPP in *this* jurisdiction. But Plaintiffs cannot assert venue is proper in *this* District based on speculative future actions that may occur anywhere but here.

The final "equitable considerations" discussed by Plaintiffs are ultimately no more than red herrings that cannot distract from the overwhelming import of the Southern District's contacts and interests with this case.[5] Opp. 16-17. First, Plaintiffs contend that both this District and the

---

[4] Plaintiffs also offer the non sequiturs that they challenge "adoption of the policy in Washington, D.C." and that "Defendants are affirmatively encouraging individuals subject to the policy to contact two of the Organizational Plaintiffs and other service providers in Northern California for legal assistance." Opp. 16. The fact that Washington, D.C., is the seat of the federal government does no work for Plaintiffs' argument because the policy at issue has been implemented only in the Southern District, and the complaint raises factual allegations only as to events purported taking place in the Southern District. Moreover, Plaintiffs citation to encouragement of individuals to seek legal representation actual cuts against Plaintiffs because it demonstrates that they are actively serving individuals as part of their mission within the Southern District.

[5] Plaintiffs asserts that there can be no forum shopping present because the same law governs in both courts. Opp. 17-18. Plaintiffs, however, have chosen a forum with dubious contacts to the claims they have raised, presumably, for

Southern District are equally "capable of applying the applicable law." *Id*. at 16 (citing *United States v. Acad. Mortg. Corp.*, 2018 WL 4053484, at \*6 (N.D. Cal. Aug. 24, 2018)). Defendants do not dispute this point, and the factor is neutral. Second, Plaintiffs argue that "the relative means of the parties also warrants denial" of transfer because of the DHS budget and workforce. Opp. 17. As stated above, however, government agencies operate under constraints with limited funds, and Plaintiffs recitation of those statistics is misleading in representing the government's available resources for civil litigation. *Accord SEC v. Rose Fund, LLC*, 2004 U.S. Dist. LEXIS 22491, \*6, 2004 WL 2445242 (N.D. Cal. Jan. 9, 2004) (rejecting defendant's argument that the SEC, as a federal agency, would "rarely, if ever, be seriously inconvenienced" by pointing out that the SEC "does not have personnel or facilities in every federal district"). Third, Plaintiffs cite statistics that the Southern District's median disposition of matters through trial was 36.2 months, compared with 30 months in the Northern District, as well as a 20.8% increase in case filings in the Southern District as compared to 4.6% in the Northern District. Opp. 17. These numbers do not demonstrate any context for the disparities in the types of cases being filed, how many of those case actually go to trial, or what court resource differences may be in terms of staffing and facilities between the two. In any event, these statistics certainly do not overcome the enormous disparity in contacts between the facts alleged and the Southern District's interest in adjudicating those claims.

In short, the interests of justice weigh heavily in favor of moving transfer to where the operative facts are alleged to have occurred, and Plaintiffs failed to present any other factor that outweighs that consideration. Based on allegations of conduct in the Southern District by persons in the Southern District brought by individuals who claim to have been processed in the Southern District subject to a policy implemented only in the Southern District, Plaintiffs request the Court

---

strategic reasons. That is exactly the type of forum-shopping the governing law exists to prevent, and it should be prevented here.

order the individuals be returned to the Southern District. In short, this is a Southern District case, and the interests of justice require that it be adjudicated there.

## CONCLUSION

For the foregoing reasons, the Court should transfer this action to the United States District Court for the Southern District of California.

Date:  March 7, 2019                              Respectfully submitted,

                                                 JOSEPH H. HUNT
                                                 *Assistant Attorney General*

                                                 WILLIAM C. PEACHEY
                                                 *Director*
                                                 Office of Immigration Litigation
                                                 District Court Section

                                                 EREZ REUVENI
                                                 *Assistant Director*

                                                 PATRICK GLEN
                                                 *Senior Litigation Counsel*

                                                 ARCHITH RAMKUMAR
                                                 *Trial Attorney*

                                                 /s/ *T. Benton York*
                                                 T. BENTON YORK
                                                 *Trial Attorney*
                                                 D.C.B. No. 230580
                                                 U.S. Department of Justice
                                                 Civil Division
                                                 Office of Immigration Litigation
                                                 District Court Section
                                                 P.O. Box 868, Ben Franklin Station
                                                 Washington, DC 20044
                                                 Tel.: (202) 598-6073
                                                 thomas.b.york@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on March 7, 2019, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of for the Northern District of California by using the CM/ECF system. Counsel in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

By: */s/ T. Benton York*
T. Benton York
Trial Attorney
United States Department of Justice
Civil Division