JOSEPH H. HUNT
*Assistant Attorney General*
WILLIAM C. PEACHEY
*Director*
Office of Immigration Litigation
District Court Section
EREZ REUVENI
*Assistant Director*
PATRICK GLEN
*Senior Litigation Counsel*
T. BENTON YORK
*Trial Attorney*
ARCHITH RAMKUMAR
*Trial Attorney*
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel: (202) 598-8060
Archith.Ramkumar@usdoj.gov

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Innovation Law Lab, *et al.*,<br>    Plaintiffs,<br><br>v.<br><br>Kirstjen Nielsen, *et al.*,<br><br>    Defendants. | Civil Action No. 3:19-cv-00807-RS<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO STRIKE EXTRA-RECORD EVIDENCE AND OPPOSITION TO PLAINTIFFS' MOTION TO CONSIDER PLAINTIFFS' EVIDENCE** |

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................1

ARGUMENT .........................................................................................................................3

I.    PLAINTIFFS' MOTION IS PROCEDURALLY IMPROPER. ......................................3

II.   PLAINTIFFS' DECLARATIONS CANNOT BE CONSIDERED FOR MERITS PURPOSES. .................................................................................................................4

    A.    The Extra-Record Evidence Plaintiffs Have Submitted is Not Necessary to Determine Whether the Agency Has Considered All Relevant Factors. ..............5

        1.    Menjivar Declaration ........................................................................5

        2.    Exhibit P to the Rodriguez Declaration ...........................................8

        3.    Isacson Declaration ...........................................................................9

    B.    The Extra-Record Evidence Plaintiffs Have Submitted is Not Necessary to Explain Technical Terms or Complex Subject Matter. ........................................9

III.  PLAINTIFFS' EXTRA-RECORD EVIDENCE DETAILING HARMS TO NON-PARTIES SHOULD NOT BE CONSIDERED. ...........................................................12

CONCLUSION .....................................................................................................................13

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO STRIKE
EXTRA-RECORD EVIDENCE
*Innovation Law Lab v. Nielsen*,
Case No. 3:19-cv-0807-RS

i

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

## CASES

*Associated Gen. Contractors of Cal., Inc. v. Coal. for Econ. Equity*, 950 F.2d 1401 (9th Cir. 1991) .................................................................................................................. 12

*Batalla Vidal v. Nielsen*, 279 F. Supp. 3d 401 (E.D.N.Y. 2018) ................................................... 13

*Border Power Plant Working Grp. v. Dep't of Energy*, 467 F. Supp. 2d 1040 (S.D. Cal. 2006) ............................................................................................................................ 11

*Cachil Dehe Band of Wintun Indians of Colusa Indian Cmty. v. Zinke*, 889 F.3d 584 (9th Cir. 2018) ................................................................................................................... 5, 7, 9

*California v. Ross*, No. 3:18-cv-1865-RS, Dkt. 205 (N.D. Cal. Mar. 6, 2019) ............................. 8

*Defenders of Wildlife v. U.S. Fish*, No. 16-CV-01993-LHK, 2016 WL 4382604 (N.D. Cal. Aug. 17, 2016) ....................................................................................................... 8, 10

*Earth Island Inst. v. U.S. Forest Serv.*, 442 F.3d 1147 (9th Cir. 2006), *abrogated on other grounds by Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7 (2008) .............................. 8, 11

*East Bay Sanctuary Covenant v. Trump*, 909 F.3d 1219 (9th Cir. 2018) ............................... 12, 13

*East Bay Sanctuary Covenant v. Trump*, No. 3:18-cv-06810-JST (N.D. Cal.) .............................. 4

*Galos v. Beers*, No. C-12-02902 DMR, 2014 WL 954751 (N.D. Cal. Mar. 6, 2014) ................ 5, 6

*Grace v. Whitaker*, 344 F. Supp. 3d 96 (D.D.C. 2018) .................................................................. 4

*Jihao Kuang v. U.S. Dep't of Def.*, 340 F. Supp. 3d 873 (N.D. Cal. 2018) ......................... 5, 9, 10

*Lands Council v. Powell*, 395 F.3d 1019 (9th Cir. 2005) .......................................................... 2, 5

*McCrary v. Gutierrez*, 495 F. Supp. 2d 1038 (N.D. Cal. 2007) (Seeborg, J.) ........................... 2, 5

*Oceana, Inc. v. Prtizker*, 126 F. Supp. 3d 110 (D.D.C. 2015) ...................................................... 11

*Organic Pastures Daily Co., LLC v. Sebelius*, No. 1:12-cv-02019-SAB, 2013 WL 4648548 (E.D. Cal. Aug. 29, 2013) ................................................................................ 6

*San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d 991 (9th Cir. 2014) ..................... 5, 7

*Wiechers v. Moore*, No. 1:13-CV-00223, 2014 WL 1400843 (E.D. Cal. Apr. 10, 2014) .............. 3

*Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7 (2008) ........................................................ 8, 13

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO STRIKE
EXTRA-RECORD EVIDENCE
*Innovation Law Lab v. Nielsen*,
Case No. 3:19-cv-0807-RS

ii

# INTRODUCTION

The parties agree that Plaintiffs are permitted to submit extra-record evidence to demonstrate organizational standing and irreparable harm. *See* Dkt. 45 at 3; Dkt. 50 at 4-6. And, in their response to Defendants' motion to strike, Plaintiffs have further disclaimed reliance on a number of declarations for purposes of "their merits arguments," even though these declarations unquestionably second-guess the rationales underpinning the implementation of the Migrant Protection Protocols (MPP). Dkt. 50 at 10-11 n.9. But Plaintiffs concede, as they must, that several of their declarations are meant to aid their effort to demonstrate a likelihood of success on the merits. *See id.* at 10. Because Plaintiffs have fallen far short of showing that these pieces of extra-record evidence fall into any of the narrow exceptions to the default rule that Administrative Procedure Act (APA) cases are decided based on the administrative record alone, this Court should strike these merits-related declarations.

As an initial matter, Plaintiffs' response, which purports to double as a motion, *see* Dkt. 50 at 2 n.1, is procedurally improper, as Plaintiffs belatedly seek consideration of extra-record evidence that they already submitted and cited in their motion for a temporary restraining order (TRO). Because Defendants are forced to confront the various theories and arguments Plaintiffs make attempting to justify the inclusion of this evidence for the first time in this reply—after Defendants pointed out that Plaintiffs introduced extra-record evidence without any accompanying reasoning or basis, *see* Dkt. 45 at 8—that, by itself, suffices to grant Defendants' motion. Although Plaintiffs make much of the timing of the production of the administrative record, *see* Dkt. 50 at 3, such concerns are misplaced. Plaintiffs made the conscious decision to move "for preliminary relief only on their APA claims," Dkt. 50 at 3 n.2, and were thus aware that the record rule applies and that the administrative record was unlikely to be fully completed by the time they filed their motion. Nothing prevented Plaintiffs from filing their motion to consider extra-record evidence before, or in conjunction with, their TRO motion. Having failed to do this, and having been confronted with the fact that the consideration of the extra-record evidence in question is impermissible (a fact that, of course, Plaintiffs' experienced attorneys were well aware of), Plaintiffs' tardy attempts to introduce this evidence should not be rewarded.

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO STRIKE
EXTRA-RECORD EVIDENCE
*Innovation Law Lab v. Nielsen*,
Case No. 3:19-cv-0807-RS

1

In any event, Plaintiffs' arguments for expanding the record fail. The Ninth Circuit has recognized only four circumstances in which the consideration of extra-record evidence is appropriate for merits purposes: "(1) if admission is necessary to determine whether the agency has considered all relevant factors and has explained its decision, (2) if the agency has relied on documents not in the record, (3) when supplementing the record is necessary to explain technical terms or complex subject matter, or (4) when plaintiffs make a showing of agency bad faith." *Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005) (internal quotation omitted); *see also* Dkt. 50 at 10; Dkt. 45 at 7. Plaintiffs invoke only the first and third exceptions. *See* Dkt. 50 at 1. But their after-the-fact attempt to shoehorn their declarations into either category is unavailing, and runs afoul of the admonition from the Ninth Circuit that "these exceptions are narrowly construed and applied." *Lands Council*, 395 F.3d at 1030; *see also id*. ("The scope of these exceptions permitted by our precedent is constrained, so that the exception does not undermine the general rule. Were the federal courts routinely or liberally to admit new evidence when reviewing agency decisions, it would be obvious that the federal courts would be proceeding, in effect, de novo rather than with the proper deference to agency processes, expertise, and decision-making."); *McCrary v. Gutierrez*, 495 F. Supp. 2d 1038, 1041 (N.D. Cal. 2007) (Seeborg, J.) (describing the four exceptions as "very limited circumstances"). Because Plaintiffs' capacious interpretation of the governing exceptions to consideration of extra-record evidence would vitiate the general rule, their arguments should be rejected.

Finally, this Court should strike the declarations describing general conditions in Mexico or harms that non-parties are suffering. *See* Dkt. 45 at 12-13. Although Plaintiffs contend that "courts regularly consider evidence of harms to third parties," Dkt. 50 at 8, the Ninth Circuit has recently held that such harms are irrelevant to the specific harms suffered by particular plaintiffs in a lawsuit, and thus have no nexus with Plaintiffs' attempts to show either organizational standing or irreparable harm.

Indeed, Plaintiffs own position belies their claim for expanding the record. They describe their claims as not "aris[ing] from or depend[ing] on the details of the policy's initial implementation …. Rather, Plaintiffs challenge a national policy emanating from Washington,

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO STRIKE
EXTRA-RECORD EVIDENCE
*Innovation Law Lab v. Nielsen*,
Case No. 3:19-cv-0807-RS
2

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO STRIKE
EXTRA-RECORD EVIDENCE
*Innovation Law Lab v. Nielsen*,
Case No. 3:19-cv-0807-RS

2

D.C. as unlawful on its face." Dkt. 46 at 2. It follows, *a fortiori*, that such claims, which, according to Plaintiffs, do not depend upon witness testimony, *see id.*, do not warrant departing from the record rule in evaluating the likelihood of Plaintiffs' success on the merits of their APA claims.

In sum, this Court should strike the Declaration of Cecilia Menjivar, Exhibit P to the Declaration of Rubi Rodriguez, the Declaration of Adam Isacson and the Declaration of Aaron Reichlin-Melnick, as Plaintiffs rely on each of these declarations for merits purposes. And this Court should further strike each of the declarations described in Defendants' motion to strike that describe general conditions in Mexico and harms to non-parties. *See* Dkt. 45 at 12-13.

## ARGUMENT

### I. PLAINTIFFS' MOTION IS PROCEDURALLY IMPROPER.

Plaintiffs have made two identical submissions to this Court: (1) an opposition to Defendants' motion to strike; and (2) a motion to consider Plaintiffs' evidence. *See* Dkt. 50 at 2 n.1. Because both were filed *after* Plaintiffs filed their TRO motion, however, and after Defendants filed their motion to strike, both filings are untimely and constitute a waiver of Plaintiffs' arguments. *See, e.g.*, *Wiechers v. Moore*, No. 1:13-CV-00223, 2014 WL 1400843, at *18 (E.D. Cal. Apr. 10, 2014) (declining to consider extra-record evidence because "Plaintiff failed to timely petition for its consideration").

Plaintiffs attempt to justify their late filings by pointing to "Defendants' decision to file an administrative record." Dkt. 50 at 2 n.1. This is a *non-sequitur*. The timing of the filing of the administrative record placed no restriction on Plaintiffs' ability to move for the admission of extra-record evidence prior to or in conjunction with filing their TRO motion when they were aware that: (1) the only claims at issue are APA claims;[1] (2) Plaintiffs sought to use some of their declarations for merits purposes; and (3) the administrative record was unlikely to be available one

---

[1] Plaintiffs argue that their claim for a "violation of the customary international law prohibition on *refoulement*" means that this case "does not arise solely under the" APA. Dkt. 50 at 3 n.2. But Plaintiffs elected not to seek preliminary injunctive relief on this claim, so for purposes of the present motion, it carries no weight. In any event, Defendants demonstrated why "no cause of action or claim exists for Plaintiffs to assert such a claim" and why this claim "still challenge[s] agency action" and is thus still subject to the record rule. Dkt. 45 at 2. As Plaintiffs do not rebut this reasoning, the record rule governs the merits of Plaintiffs' TRO motion.

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO STRIKE
EXTRA-RECORD EVIDENCE
*Innovation Law Lab v. Nielsen*,
Case No. 3:19-cv-0807-RS

3

week after the filing of their complaint. Plaintiffs' position is further undermined by their own assertion that: "courts routinely decide requests for temporary restraining orders and preliminary injunctive relief in Administrative Procedure Act cases prior to the agency's production of the administrative record." Dkt. 50 at 4 n.3. Indeed, Plaintiffs' claims of unfair surprise strain credulity given that Plaintiffs' counsel litigated this exact issue just three months ago in *East Bay Sanctuary Covenant v. Trump*, No. 3:18-cv-06810-JST (N.D. Cal.). There, the administrative record was filed nearly three weeks after the plaintiffs in that case filed their TRO motion. *See id.*, Dkt. 60. Yet the plaintiffs *still* subsequently attached extra-record evidence to their preliminary injunction motion without first moving for the court to consider it, leading the defendants to move to strike the extra-record evidence based on virtually identical arguments to those being made in this reply memorandum. *See id.*, Dkts. 88, 94; *see also Grace v. Whitaker*, 344 F. Supp. 3d 96, 146 (D.D.C. 2018).

Because Plaintiffs did not move in a timely manner for extra-record evidence to be considered, this suffices to deny Plaintiffs' motion and grant Defendants' motion to strike.

## II.   PLAINTIFFS' DECLARATIONS CANNOT BE CONSIDERED FOR MERITS PURPOSES.

Plaintiffs admit that they cited "six" declarations "in support of their merits arguments in their preliminary injunction motion." Dkt. 50 at 10. Four of these declarations should be stricken in their entirety: (1) the Declaration of Cecilia Menjivar, Dkt. 20-16; (2) Exhibit P to the Declaration of Rubi Rodriguez, Dkt. 20-3 at 115; (3) the Declaration of Adam Isacson, Dkt. 20-10; and (4) the Declaration of Aaron Reichlin-Melnick, Dkt. 20-12.[2] At the outset, the burden is

---

[2] With respect to the Declaration of Taslim Tavarez and the Second Declaration of Stephen W. Manning, *see* Dkt. 50 at 11-12, Plaintiffs argue that Defendants' submission of Individual Plaintiffs' Alien Files "undermine[s]" the request to strike these declarations. *Id.* But Plaintiffs overlook that Defendants' position was not that these declarations should be completely excluded, but rather "stricken *to the extent* Plaintiffs attempt to rely on either declaration for anything other than establishing jurisdiction." Dkt. 45 at 13 (emphasis added). Because the submission of the Alien Files also bears on jurisdiction, there is no inconsistency in Defendants' position. *See* Dkt. 44 at 1. In any event, to the extent Plaintiffs attempt to rely on either declaration for non-jurisdictional issues, they bear the burden of showing that either declaration falls into one of the

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO STRIKE
EXTRA-RECORD EVIDENCE
*Innovation Law Lab v. Nielsen*,
Case No. 3:19-cv-0807-RS

4

squarely on Plaintiffs to proffer "clear evidence" that the declarations they seek to use for merits purposes are covered by "any of the four recognized exceptions." *Galos v. Beers*, No. C-12-02902 DMR, 2014 WL 954751, at *2 (N.D. Cal. Mar. 6, 2014); *see also McCrary*, 495 F. Supp. 2d at 1041 ("An agency's designation and certification of the administrative record is … entitled to a presumption of administrative regularity."). Plaintiffs have failed to make the requisite showing.

### A. The Extra-Record Evidence Plaintiffs Have Submitted is Not Necessary to Determine Whether the Agency Has Considered All Relevant Factors.

#### 1. Menjivar Declaration

Plaintiffs tether the consideration of the Menjivar Declaration, Exhibit P to the Rodriguez Declaration, and the Isacson Declaration to the first exception, averring that all three pieces of evidence "identify a relevant factor the agency has not considered." Dkt. 50 at 12-15 (internal quotation omitted). But Plaintiffs have dramatically misconstrued the scope of this exception, which is "the most difficult to apply." *San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d 971, 993 (9th Cir. 2014). The "relevant factors exception permits a district court to consider extra-record evidence to develop a background against which it can evaluate the integrity of the agency's analysis" but it does "not permit district courts to use extra-record evidence to judge the wisdom of the agency's action. The distinction is a fine, but important one …. [R]eviewing courts may not look to this evidence as a basis for questioning the agency's scientific analyses or conclusions." *Id.*; *see also Jihao Kuang v. U.S. Dep't of Def.*, 340 F. Supp. 3d 873, 917 (N.D. Cal. 2018) ("[P]urportedly explanatory extra-record evidence cannot supply the basis for the Court to determine the correctness or wisdom of the agency's action.") (internal quotation omitted).

And it is not enough for Plaintiffs to simply point to evidence they believe is relevant; they must demonstrate that the extra-record evidence in question is "necessary" to determine whether the agency has considered all relevant factors. *See Cachil Dehe Band of Wintun Indians of Colusa Indian Cmty. v. Zinke*, 889 F.3d 584, 600 (9th Cir. 2018) ("The district court did not abuse its

---

four extra-record exceptions. *See Lands Council*, 395 F.3d at 1030. Because they have not even attempted to do so, this Court should strike both declarations to the extent Plaintiffs attempt to rely on either document to assert, for example, that the MPP Assessment Notice "is a virtually meaningless document." Dkt. 20-1 at 11 n.5.

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO STRIKE
EXTRA-RECORD EVIDENCE
*Innovation Law Lab v. Nielsen*,
Case No. 3:19-cv-0807-RS

5

discretion when it determined that the Meister Declaration was not 'necessary to determine whether the agency has considered all relevant factors' (exception 1). The Meister Declaration provides new analysis regarding the economic effects of the proposed gaming site on competing casinos. But [this] is a problem that the BIA considered, even if the specific data proffered in the Meister Declaration was not available to the BIA."); *Organic Pastures Daily Co., LLC v. Sebelius*, No. 1:12-cv-02019-SAB, 2013 WL 4648548, at *5 (E.D. Cal. Aug. 29, 2013) ("[A] plaintiff must establish more than just that the document is relevant …. Here, Organic Pastures fails to convincingly demonstrate that the extra-record evidence at issue concerns an entirely new general subject matter not previously considered by the FDA.") (internal quotation omitted).

Beginning with the Menjivar Declaration, Plaintiffs contend that it is being proffered "to identify a relevant factor the agency has not considered: whether policies imposing harsh conditions like forced return on asylum seekers have a deterrent effect on migration." Dkt. 50 at 12 (internal quotation and citation omitted). As noted, however, Plaintiffs fail to apply (let alone satisfy) the operative standard, which is not simply whether a piece of evidence identifies "relevant" evidence, but whether consideration of the Declaration is necessary—*i.e.*, "it must point out an entirely new general subject matter that the defendant agency failed to consider." *Organic Pastures*, 2013 WL 4648548, at *5. Nor have Plaintiffs shown, consistent with their burden, that the agency failed to consider whether MPP will deter migration. Instead of offering a single piece of evidence to support this proposition, Plaintiffs simply assert, without proof, that they have "not identified anything in the administrative record that addresses whether harsh policies like forced return *disincentivize* migration." Dkt. 50 at 12-13 (emphasis in original). The fact that Plaintiffs have not "identified" citations in the administrative record addressing this issue, however, is not enough; Plaintiffs have to show "that the record is inadequate," which they have not done. *Galos*, 2014 WL 954751, at *2.[3] In fact, as Defendants noted in their opposition to Plaintiffs' TRO motion, the administrative record is more than adequate on this point. For example, the agency examined data revealing that smugglers tell potential customers that "Americans do not jail parents

---

[3] Indeed, given that the administrative record was produced to Plaintiffs a week ago, it is unlikely that they can make the necessary showing with respect to the inadequacy of the record for purposes of their TRO motion.

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO STRIKE
EXTRA-RECORD EVIDENCE
*Innovation Law Lab v. Nielsen*,
Case No. 3:19-cv-0807-RS

6

who bring children" into the country, and thus concluded that "re-calibrating incentives for migrants" and disincentivizing migration was necessary. Dkt. 42 at 18; AR731. Finally, Plaintiffs argue that "Defendants have ignored data addressing the relationship between the imposition of harsh conditions like forced return on asylum seekers and migration flows," Dkt. 50 at 13. But even assuming for the moment that this is true (which Plaintiffs have not shown), Plaintiffs conflate consideration of data with consideration of a broader issue; the fact that "specific data … was not" considered does not, by itself, satisfy the first exception. *Cachil*, 889 F.3d at 600.

Straining to justify inclusion of the Menjivar Declaration, Plaintiffs attempt to portray the document as nothing more than developing "a background" against which this Court "can evaluate the integrity of the agency's analysis." Dkt. 50 at 13 (quoting *Locke*, 776 F.3d at 993). Even a cursory glance at the Menjivar Declaration and Plaintiffs' citation to it in the merits section of their TRO motion shows that this assertion is mistaken. Far from simply supplying neutral background information, the Menjivar Declaration explicitly attempts to rebut the reasoning the agency employed to justify MPP. *See* Dkt. 20-16, ¶ 9 ("First, the number of migrants entering the United States through the southern border is far lower today than it has been in recent years. The numbers indicate that there is no 'surge' of migration. Second, there is no evidence that a policy requiring Central American migrants to remain in Mexico while litigating their asylum claims will serve to deter migration from Latin America."). And Plaintiffs rely on the Menjivar Declaration to argue that the justifications for MPP are "not rationally connected" with its design and that "[t]o the extent Defendants' true goal is to deter asylum seekers generally from coming to the United States," (a claim that is baseless), "the policy is arbitrary and capricious." Dkt. 20-1 at 16-17 n.9. In other words, Plaintiffs are using the Menjivar Declaration to "judge the wisdom of the agency's action," something that is unambiguously forbidden. *Locke*, 776 F.3d at 993.

None of the cases Plaintiffs cite support considering the Menjivar Declaration. *See* Dkt. 50 at 13-14. In *Locke*, the Ninth Circuit found that the district court *improperly* "used several extra-record declarations to question [the agency's] … judgments" which "overstepped the bounds of *Lands Council*." 776 F.3d at 993. Plaintiffs are trying to use the Menjivar Declaration in precisely the same way. Similarly, in *Defenders of Wildlife v. U.S. Fish*, No. 16-CV-01993-LHK,

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO STRIKE
EXTRA-RECORD EVIDENCE
*Innovation Law Lab v. Nielsen*,
Case No. 3:19-cv-0807-RS

7

2016 WL 4382604, at *9 (N.D. Cal. Aug. 17, 2016), the court did not even resolve the extra-record evidence challenge based on the first, "all relevant factors" exception, instead relying on the third exception. *See id.* at *10 ("[T]he Court finds that it is able to resolve the likelihood of Plaintiffs' success on the merits without reliance on the contested declarations, except for explanations of technical terms or complex subject matter."). And although the court observed that the declarations in question "may be permissible" under the first exception, it made no definitive holding one way or another, and cautioned that in any event, it could not "look to this evidence as a basis for questioning the agency's scientific analyses or conclusions." *Id.* at *9 (internal quotation omitted). Nor have Plaintiffs demonstrated that submission of the Menjivar Declaration is necessary to contextualize "misleading" information in the record, as in *Earth Island Inst. v. U.S. Forest Serv.*, 442 F.3d 1147, 1164-65 (9th Cir. 2006), *abrogated on other grounds by Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7 (2008). And Plaintiffs' citation to the recent decision from this Court in *California v. Ross*, No. 3:18-cv-1865-RS, Dkt. 205 (N.D. Cal. Mar. 6, 2019), is a red herring, as the extra-record evidence in *Ross* was considered because the case involved "complex technical issues related to survey methodology and census-related practices" and thus "meaningfully evaluating whether Defendants considered all relevant factors … would be difficult on the Administrative Record alone." *Id.* at 60. Plaintiffs have not made a similar showing of complexity in this case.

In sum, because the Menjivar Declaration attempts to second-guess the rationales behind MPP, and Plaintiffs use it for that very purpose in their TRO motion, this Court should strike it.

### 2. Exhibit P to the Rodriguez Declaration

The same is true of Exhibit P to the Rodriguez Declaration. Plaintiffs halfheartedly attempt to argue that an article titled, "Border patrol union chief: New Trump administration policy is 'incentivizing illegal immigration,'" Dkt. 20-3 at 116, is somehow nothing more than "background." Dkt. 50 at 14. This Court should reject such a transparent attempt to admit extra-record evidence that clearly second-guesses the agency. The content of the article—describing the opinion of an individual not part of the decision-making process at the Department of Homeland Security (DHS)—only buttresses this conclusion: "'This is attacking the legal process, because it's

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO STRIKE
EXTRA-RECORD EVIDENCE
*Innovation Law Lab v. Nielsen*,
Case No. 3:19-cv-0807-RS

8

discouraging people from following the law …. We are incentivizing illegal immigration and punishing legal immigration.'" Dkt. 20-3 at 116.

### 3. Isacson Declaration

With respect to the Isacson Declaration, Plaintiffs argue that because the declaration relies upon "public" government data, Dkt. 50 at 15, it can be considered under the first exception. But the sources of information in the Declaration, and whether or not they are publicly available, has no bearing on whether the Declaration is necessary to determine whether the agency considered all relevant factors. Indeed, Plaintiffs themselves concede that the first piece of data is "included in the administrative record," *id.*, which only serves to highlight why the Isacson Declaration should not be considered as an exception to the general rule. Because Plaintiffs have not shown that the data used in the Isacson Declaration is probative of information the agency did not consider—quite the opposite, in fact—and because Plaintiffs have again failed to show that the record is inadequate, Plaintiffs cannot use this piece of evidence to assail MPP as not being "plausibly" related to "an effort to combat illegal immigration." Dkt. 20-1 at 17.

### B. The Extra-Record Evidence Plaintiffs Have Submitted is Not Necessary to Explain Technical Terms or Complex Subject Matter.

Plaintiffs rely on the third exception to contend that the Declaration of Aaron Reichlin-Melnick, Dkt. 20-12, "is necessary to explain technical terms or complex subject matter." Dkt. 50 at 15. Once again, Plaintiffs stretch the exception well past its limits. When extra-record evidence is submitted to rebut reasoning, courts should be skeptical that the extra-record evidence is being used solely for explanatory purposes. *See Cachil*, 889 F.3d at 600 ("The Meister Declaration does not explain technical terms or elucidate complex subject matter. It … criticizes [the] study as reliant on bad data. The Meister Declaration was provided to *rebut* Appendix M, not to explain it.") (emphasis in original); *Kuang*, 340 F. Supp. 3d at 916-17 ("[T]he Smith declaration is not necessary to explain technical terms or complex subject matter …. [P]urportedly explanatory extra-record evidence cannot supply the basis for the Court to determine the correctness or wisdom of the agency's decision.") (internal quotation omitted). Far from explaining any technical terms or complex subject matter, the Reichlin-Melnick Declaration, like the other declarations submitted

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO STRIKE
EXTRA-RECORD EVIDENCE
*Innovation Law Lab v. Nielsen*,
Case No. 3:19-cv-0807-RS

9

in connection with Plaintiffs' merits showing, is yet another attempt to impugn the agency's decision to implement MPP.

According to Plaintiffs, the Reichlin-Melnick Declaration explains "technical concepts": "the rates at which immigrants fail to appear in removal proceedings, and the rates at which cases originating with a positive credible fear determination result in a grant of asylum—and to elucidate how to accurately calculate those rates." Dkt. 50 at 15-16. Plaintiffs' brief is devoid of any explanation as to how or why any aspect of the referenced rates and calculations are so highly technical or complex that resort to extra-record evidence is necessary. Indeed, a glance at the Declaration itself bolsters this conclusion, as it merely discusses data that is neither technical nor highly specialized. *See* Dkt. 20-12, ¶ 9 ("Over the last decade, an order of removal for failure to appear was issued in an estimated 12.5 percent of cases originating with a credible fear claim …. Thus, over the past decade, evidence suggests that at least 87.5 percent of asylum seekers who went through the credible fear process appeared in immigration court for their scheduled removal proceedings."); *see also* Dkt. 20-1 at 18 (relying on same paragraph to argue that "DHS's key justifications … are based on false premises"). The Declaration's criticisms of "grant rates" as an "imperfect" metric are also understandable to a lay audience. Dkt. 20-12, ¶ 19. This Declaration is thus far afield from the declarations in *Defenders of Wildlife*, as there, both parties agreed that the declarations "define[d] scientific terms" and "explain[ed] … highly technical material." 2016 WL 4382604, at *9.

Plaintiffs readily concede why they are relying on the Reichlin-Melnick Declaration: "to show that the empirical claims Defendants made in conjunction with the announcement of the policy … are unfounded," Dkt. 50 at 16, *i.e.*, to show that the agency is wrong. *See also* Dkt. 52 at 12 & n.16 (relying on Reichlin-Melnick Declaration to argue that agency's claims are "belied" by its "own data"). But, again, that is not a permissible basis to consider extra-record evidence. *See Kuang*, 340 F. Supp. 3d at 917. Plaintiffs again anomalously point out that "several of the data sources upon which Reichlin-Melnick relies" are "in the administrative record," Dkt. 50 at 16 n.10,

but far from aiding Plaintiffs' cause, this only further shows why this Court should confine its focus to the administrative record.[4]

Plaintiffs devote a conclusory sentence to arguing that the Reichlin-Melnick Declaration "identifies a 'relevant factor' the agency did not consider: the critical roles that access to counsel and detention pending removal proceedings play in determining whether asylum seekers ultimately succeed on their asylum claims." Dkt. 50 at 17. This assertion has the same deficiencies as Plaintiffs' arguments regarding the Menjivar Declaration, Exhibit P to the Rodriguez Declaration, and the Isacson Declaration—namely that it does not explain why consideration of the Declaration is necessary and why the agency's treatment of this issue was inadequate.[5] Nor would such an assertion be credible; Defendants explicitly considered this issue in implementing MPP. *See, e.g.*, Dkt. 20-3 at 17 ("Aliens subject to MPP will be afforded the same right [to counsel].").

---

[4] Plaintiffs rely largely on *Earth Island Institute*, *see* Dkt. 50 at 16, but that reliance is misplaced. In *Earth Island Institute* the only exception being considered was the first exception relating to whether the agency has considered all relevant factors. 442 F.3d at 1162. Because *Earth Island Institute* did not examine extra-record evidence under the third exception, and because, as Defendants explained in Section II.A.1, *supra*, Plaintiffs have failed to show that the administrative record in this case has the same deficiencies as the record in *Earth Island Institute*, it is inapposite. The same is true of *Border Power Plant Working Grp. v. Dep't of Energy*, 467 F. Supp. 2d 1040, 1050 (S.D. Cal. 2006). *Oceana, Inc. v. Prtizker*, 126 F. Supp. 3d 110, 113 (D.D.C. 2015), is similarly inapplicable, as the court there found that extra-record evidence was admissible because the agency "failed to adequately explain the grounds for its conclusion," not because extra-record evidence was necessary to explain technical terms or complex subject matter.

[5] Plaintiffs say that "Defendants erroneously assert that five of Plaintiffs' declarations were used to support standing and irreparable harm as well as the merits." Dkt. 50 at 10 n.9. But Defendants' position on these declarations is actually the following: "[A] number of the declarations at issue, though ostensibly directed to showing that Plaintiffs have suffered irreparable harm, also attack the merits of MPP …. These declarations should accordingly be given no weight in assessing whether Plaintiffs are likely to succeed on the merits of their claims." Dkt. 45 at 10. Defendants took this position with good reason. Although Plaintiffs did not cite the five declarations in question in the merits section of their TRO motion, all five declarations, along with Exhibits U and V to the Declaration of Rubi Rodriguez, unabashedly attack the wisdom of MPP, a clear merits issue. *See id.* at 10, 13. In any event, the parties agree that these materials should not be considered for merits purposes although, as seen in Section III, *infra*, Defendants maintain that these declarations' generalized descriptions of conditions in Mexico and harm to non-parties is immaterial to both organizational standing and irreparable harm and should be stricken.

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO STRIKE
EXTRA-RECORD EVIDENCE
*Innovation Law Lab v. Nielsen*,
Case No. 3:19-cv-0807-RS

### III. PLAINTIFFS' EXTRA-RECORD EVIDENCE DETAILING HARMS TO NON-PARTIES SHOULD NOT BE CONSIDERED.

As Defendants demonstrated in their motion to strike, the Ninth Circuit has held that harms to non-parties play no role in assessing organizational standing and irreparable harm for the commonsense reason that they do not show, one way or another, whether the specific plaintiffs that are suing have standing or have suffered irreparable harm. *See East Bay Sanctuary Covenant v. Trump*, 909 F.3d 1219, 1240-41 (9th Cir. 2018) ("[A]lthough the Organizations describe significant hindrances their clients have experienced in applying for asylum at ports of entry, as well as significant risks their clients may face in towns lining the country's southern border, neither of those concerns is at issue in this lawsuit."); Dkt. 45 at 9. Faced with this straightforward language, Plaintiffs attempt to resist this conclusion for a number of reasons. None is persuasive.

First, Plaintiffs claim that the quote from *East Bay* is "taken out of context" and is "part of the opinion discussing third-party standing, which is not at issue in this case." Dkt. 50 at 8. But Plaintiffs gloss over the fact that the reason this issue arose in the context of third-party standing in *East Bay* is because there were no individual plaintiffs in that case. As a result, the organizations needed to demonstrate standing to proceed with the suit and subsequently asserted multiple standing theories. Critically, the Ninth Circuit rejected the third-party standing theory relying on harms to non-parties that the district court found meritorious. *See East Bay*, 909 F.3d at 1240-41. Thus, *East Bay* reinforces that harms to non-parties are not relevant to organizational standing and irreparable harm, because such a standing theory is not cognizable, a principle that is entirely applicable here. *See Associated Gen. Contractors of Cal., Inc. v. Coal. for Econ. Equity*, 950 F.2d 1401, 1410 (9th Cir. 1991) (noting that showing irreparable harm is more exacting than simply alleging "imminent harm sufficient to establish standing").[6]

Second, Plaintiffs contend that the Ninth Circuit "found relevant to its irreparable harm analysis … evidence regarding harms to third parties." Dkt. 50 at 8. The statement Plaintiffs cite, however, discusses irreparable harm to the *Government*, not the plaintiffs, and does not in any way

---

[6] Plaintiffs claim that Defendants' focus on "organizational standing" is odd. Dkt. 50 at 4 n.4. To the contrary, however, that focus is informed by the subject of the Motion to Strike. Because Defendants did not move to strike the Declarations submitted by the individual Plaintiffs, they had no need to address the individual Plaintiffs' standing.

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO STRIKE
EXTRA-RECORD EVIDENCE
*Innovation Law Lab v. Nielsen*,
Case No. 3:19-cv-0807-RS

12

embrace third-party harm as a basis for finding irreparable harm. *See East Bay*, 909 F.3d at 1254 ("We next consider whether the Government has shown that it will be irreparably injured absent a stay …. [T]here is evidence in the record suggesting that the Government itself is undermining its own goal of channeling asylum-seekers to lawful entry by turning them away upon their arrival at our ports of entry.") (internal quotation omitted).

Finally, Plaintiffs state that "courts regularly consider evidence of harms to third parties," Dkt. 50 at 8, and cite multiple district court decisions rendered in *East Bay*. But Plaintiffs ignore that the Ninth Circuit explicitly *disagreed* with the third-party standing theory the district court endorsed in *East Bay*. *See East Bay*, 909 F.3d at 1240 ("According to the district court, the Organizations have third-party standing to assert the legal rights of their clients who are seeking to enter the country to apply for asylum but are being blocked by the new asylum ban. We disagree."). And *Batalla Vidal v. Nielsen*, 279 F. Supp. 3d 401, 434-35 (E.D.N.Y. 2018), instead of embracing consideration of harms to non-parties, found that the plaintiffs "extensively documented the irreparable harms they will suffer."

Ultimately, in assessing a preliminary injunction, the question is whether or not "*plaintiff[s]*" are "likely to suffer irreparable harm in the absence of preliminary relief." *Winter*, 555 U.S. at 20 (emphasis added). Because Plaintiffs have not proven how general conditions in Mexico and harms to non-parties shows irreparable harm to any identified Plaintiff in this case, and because harms to non-parties are immaterial to both organizational standing and the individual Plaintiffs' standing, this Court should not consider any aspect of Plaintiffs' declarations that describe dangerous conditions in Mexico and Central America, as well as harms to non-parties.[7]

## CONCLUSION

For the foregoing reasons, Defendants' motion to strike should be granted and Plaintiffs' motion to consider Plaintiffs' evidence should be denied.

---

[7] Plaintiffs argue that "there is no rule that if plaintiffs submit declarations, they are foreclosed from submitting additional evidence of irreparable harm." Dkt. 50 at 9. But Defendants do not contend that any such rule exists, but rather that consideration of the individual Plaintiffs' declarations is permissible because it goes to concrete harm they have suffered, while consideration of harm to non-parties is impermissible because it does not.

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO STRIKE
EXTRA-RECORD EVIDENCE
*Innovation Law Lab v. Nielsen*,
Case No. 3:19-cv-0807-RS

13

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

WILLIAM C. PEACHEY
Director

EREZ REUVENI
Assistant Director

PATRICK GLEN
Senior Litigation Counsel

T. BENTON YORK
Trial Attorney

*/s/ Archith Ramkumar*
ARCHITH RAMKUMAR
Trial Attorney
N.Y.B. No. 5269949
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel: (202) 598-8060
Archith.Ramkumar@usdoj.gov

Dated: March 8, 2019                *Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 8, 2019, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of for the Northern District of California by using the CM/ECF system.  Counsel in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

By: <u>/s/ Archith Ramkumar</u><br>
Archith Ramkumar<br>
Trial Attorney<br>
United States Department of Justice<br>
Civil Division

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO STRIKE
EXTRA-RECORD EVIDENCE
*Innovation Law Lab v. Nielsen*,
Case No. 3:19-cv-0807-RS