JOSEPH H. HUNT
*Assistant Attorney General*
WILLIAM C. PEACHEY
*Director*
EREZ REUVENI
*Assistant Director*
Office of Immigration Litigation
U.S. Department of Justice, Civil Division
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel: (202) 307-4293
Email: Erez.R.Reuveni@usdoj.gov
ARCHITH RAMKUMAR
T. BENTON YORK
*Trial Attorneys*

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Innovation Law Lab, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> Kirstjen Nielsen, *et al.*, <br><br> Defendants. | **DEFENDANTS' SUPPLEMENTAL BRIEF** <br><br> Civil Action No. 3:19-cv-0807-RS |

**INTRODUCTION**

Defendants submit this supplemental brief in response to the Court's March 28, 2019 order, ECF No. 68.

The Court's order asks whether a decision to invoke 8 U.S.C. § 1225(b)(2)(C) after choosing to place an alien in full rather than expedited removal proceedings is a "determination[] under section 1225(b) of this title and its implementation" under 8 U.S.C. § 1252(e)(3)(A). Order at 2-3. That specific question is likely not one that Congress considered, given that section 1225(b)(2)(C) supplies no standards upon which a court may assess the decision whether to invoke that provision. Rather, the decision whether to invoke section 1225(b)(2)(C) after choosing to place an alien in full rather than expedited removal proceedings rests on prosecutorial discretion, and thus is a determination committed to agency discretion by law that is, under the Administrative Procedure Act (APA) and other principles governing prosecutorial discretion that Congress did consider, immune from review in any court. *See* Gov. Br. 7-11, ECF No. 42. As the government has explained (*see id.*), Congress does not normally provide a judicial-review mechanism for discretionary exercises of prosecutorial discretion, and in this context has precluded review by any court of such decisions. *See*, *e.g.*, 8 U.S.C. § 1252(a)(2)(B) (discretionary decisions not subject to judicial review); *id.* § 1252(g) (no jurisdiction to review "decision . . . to commence proceedings").

That being said, if this Court were to view the decision not to place an alien in expedited removal proceedings under section 1225(b)(1) and the exercise of the return authority under section 1225(b)(2)(C) (or guidance on exercising those discretionary authorities) to potentially be subject to review because they do not fall within the threshold judicial-review bars that Congress enacted, such an exercise of authority would be subject to review only under the terms of section 1252(e)(3) and only in the District Court for the District of Columbia. That provision imposes limitations on the scope of review to ensure that border operations can continue unimpeded during an expedited process of judicial review of new border policies.

Section 1252(e)(3)(A) provides exclusive jurisdiction in "the United States District Court for the District of Columbia" over any challenge to "determinations under section 1225(b) of this title and its implementation." Plaintiffs' effort to obtain review of the Migrant Protection Protocols

(MPP)—to the extent it is reviewable at all—would fall within section 1252(e)(3)(A) because Plaintiffs challenge policy guidance instructing immigration officers on how to exercise their discretionary authority not to place an alien into expedited removal proceedings under 8 U.S.C. § 1225(b)(1)—and thus how to "implement[]," *id.*—8 U.S.C. §§ 1225(b)(1), 1225(b)(2)(A), and 1225(b)(2)(C), together as a whole.  By section 1252(e)(3)'s terms, then—and as the government previously argued—"no court, other than the D.C. district court, has jurisdiction to review [these] 'determinations under section 1225(b) of this title and its implementation,'" Gov. Br. 9 (quoting 8 U.S.C. § 1252(e)(3)(A)), and "[t]hese provisions foreclose this suit" in this forum, *id.*  Because such an action, if appropriate at all, must be "instituted in the United States District Court for the District of Columbia," 8 U.S.C. § 1252(e)(3)(A), this Court should dismiss this case without prejudice to any re-filing in that venue.  Alternatively, the Court may transfer the case to the District of Columbia and allow the D.C. district court to address its jurisdiction in the first instance.

## ARGUMENT

**1.**  As the government has explained, Congress thought the discretionary invocation of section 1225(b)(2)—including the decision to invoke section 1225(b)(2)(A) and section 1225(b)(2)(C) instead of section 1225(b)(1)—was not subject to *any* court review.  *See* Gov. Br. 7-11.  But, to the extent that guidance regarding implementation of those sections or a particular decision to invoke those sections were subject to review, the statutory text of 8 U.S.C. §§ 1252(a)(2)(A) and 1252(e)(3) would foreclose jurisdiction in this forum.  Section 1252(a)(2)(A) states that, "except as provided in subsection (e)," no court has jurisdiction over any challenge to "decision[s] by the [Secretary of Homeland Security] to invoke" the expedited removal provisions or to "procedures and policies adopted by the [Secretary] to implement the provisions of section 1225(b)(1)." [1]  8 U.S.C. § 1252(a)(2)(A)(ii), (iv).  Section 1252(e) then imposes several limitations on "[j]udicial review of orders under section 1225(b)(1)," including a specific provision, section 1252(e)(3), which is titled "[c]hallenges on validity of the system."  Section 1252(e)(3) provides, in turn, that "[j]udicial review of determinations under section *1225(b)* of this title *and its*

---

[1] Sections 1225(b) and 1252(e) refer to the Attorney General, but those functions have been transferred to the Secretary.  *See* 6 U.S.C. §§ 251, 552(d); *Clark v. Suarez Martinez*, 543 U.S. 371, 374 n.1 (2005).

*implementation* is available in an action instituted in the United States District Court for the District of Columbia." (Emphasis added.) As relevant here, such review "shall be limited to determinations of . . . whether such a regulation, or a written policy directive, *written policy guideline*, or written procedure issued by or under the authority of the [Secretary] *to implement such section,* is not consistent with applicable provisions of this subchapter or is otherwise in violation of law." *Id.* § 1252(e)(3)(A)(ii) (emphasis added). In other words, any written policy guideline implementing section 1225(b) can be challenged, if at all, only in the District Court for the District of Columbia. *See Am. Immigration Lawyers Ass'n v. Reno ("AILA")*, 199 F.3d 1352, 1358 (D.C. Cir. 2000) ("The statute permits judicial review of the 'implementation' of 8 U.S.C. § 1225(b), the provision spelling out the procedures for inspecting applicants for admission to the United States . . . only in the United States District Court for the District of Columbia.").

Plaintiffs' challenge to the MPP is precisely such a challenge to "implementation" of "section 1225(b)" and a challenge to the "validity of [the] system" more broadly. 8 U.S.C. § 1252(e)(3). The MPP implements the Secretary's discretionary statutory authorities under section 1225(b) with respect to whether an alien should be placed in expedited or full removal proceedings and whether an alien in the latter proceeding may be returned to Mexico under section 1225(b)(2)(C). As explained in the government's brief, section 1225(b) authorizes the Department of Homeland Security (DHS) to determine whether to place applicants for admission in either expedited removal proceedings, *see* 8 U.S.C. § 1225(b)(1), or full removal proceedings (proceedings held before an immigration judge that often involve more extensive procedures than expedited removal proceedings, *see id.* § 1229a), *see id.* § 1225(b)(2)(A). *See* Gov. Br. 2-3; 7-8; *see also Matter of E-R-M- & L-R-M-*, 25 I. & N. Dec. 520, 523 (BIA 2011). Section 1225(b) also authorizes DHS to elect not to place an alien in expedited removal proceedings under 8 U.S.C. § 1225(b)(1), and, when the alien is "arriving on land (whether or not at a designated port of arrival) from a foreign territory contiguous to the United States," to "return the alien to that territory pending a proceeding under section 1229a." 8 U.S.C. § 1225(b)(2)(C); *see* Gov. Br. 2-3.

The MPP implements these discretionary statutory authorities concerning whether and when to place an applicant for admission who is arriving on land from a contiguous territory in

expedited or full removal proceedings and whether to return the alien to the contiguous territory. Through the MPP, the Secretary has issued written policy guidance addressing immigration officers' exercise of "their prosecutorial discretion regarding whether to place an alien arriving by land from Mexico in [full as opposed to expedited] removal proceedings" and to "return the alien to the contiguous country from which he or she is arriving pursuant to [§ 1225(b)(2)(C)]."  AR 9; *see also* AR 1 ("[o]fficers, with appropriate supervisory review, retain discretion to process aliens for MPP or under other procedures (e.g., expedited removal), on a case-by-case basis."); AR 2273-74 (establishing guidance for assessing whether an alien faces a fear of return to Mexico "for purposes of [CBP officers] exercising prosecutorial discretion in connection with one or more of the decisions as to whether to place the alien in expedited removal or to issue a Notice to Appear for the purpose of placement directly into [full] removal proceedings, and if the latter, whether to return the alien to Mexico pending the conclusion of [full] proceedings under [§ 1225(b)(2)(C)] pursuant to the MPP.").

Plaintiffs' complaint plainly seeks to challenge "determinations under section 1225(b) of this title and its implementation."  8 U.S.C. § 1252(e)(3)(A).  Plaintiffs challenge agency guidance primarily on the ground that it is inconsistent with sections 1225(b)(1), 1225(b)(2)(B), and 1225(b)(2)(C) (Count I).  Compl. ¶¶ 148-51; TRO Br. 6-9, ECF No. 20-1.  Plaintiffs also assert that, even if the named Plaintiffs could be subject to section 1225(b)(2)(C), the MPP's implementation of DHS's authorities under that provision are inconsistent with other statutory provisions of the Immigration and Nationality Act or customary international law (Counts IV, V, and VI), TRO Br. 9-11; Compl. ¶¶ 163-81, and that the guidance is procedurally flawed and arbitrary and capricious under the APA (Counts II and III), TRO Br. 11-19, Compl. ¶¶ 152-62. Again, these are plainly challenges to the procedures "implementing" the border-control system in section 1225(b).  Thus, if any district court were to have jurisdiction over Plaintiffs' complaint, it would be the federal district court in the District of Columbia.  8 U.S.C. § 1252(a)(2)(A), (e)(3)(A).

Plaintiffs' complaint also shows why Congress would have wanted this kind of a challenge to be considered, if at all, by a single forum and under the special procedures laid out in section 1252(e)(3).  Plaintiffs' complaint contends that because they *could* be placed in expedited removal

proceedings under section 1225(b)(1), they cannot be subject to section 1225(b)(2)(C), because of the exemption in section 1225(b)(2)(B) (Count I). TRO Br. 6-8, 9-11; Compl. ¶¶ 87-95, 148-51. Thus, their complaint demonstrates the close connection between those two statutory provisions that provide alternative avenues for addressing aliens arriving at the border who are not clearly entitled to admission. *See* Compl. ¶¶ 72-75 (conceding section 1225(b) embodies "well established" "discretion" to choose between expedited and full removal proceedings).

And Plaintiffs' complaint takes on discretionary judgments that are critical to controlling the border—the concerns at the heart of section 1225(b). *Id.* ¶¶ 87-95 (asserting that Congress intended to preclude the Secretary from returning to contiguous territory "individuals to whom the expedited removal statute applies"). Indeed, Congress substantially revised the "inspection process" in the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, *AILA*, 199 F.3d at 1355, codifying the current section 1225(b) with the goal of combating illegal entry and asylum fraud. H.R. Conf. Rep. No. 104–828, at 158, 209 (1996). Congress made clear that, given the importance of these new "procedures for inspecting applicants for admission to the United States," "lawsuits challenging [those procedures and their implementation] would be brought, if at all, by individual aliens who—during the sixty-day period [for filing suit]—were aggrieved by the statute's implementation." *AILA*, 199 F.3d at 1358; *see* 8 U.S.C. § 1252(e)(3)(B). As the D.C. Circuit explained in construing section 1252(e)(3), given the importance of the system in section 1225(b) to the inspection of aliens at or near the border, Congress clearly meant to "cabin judicial review and to have the validity of the new law [or its implementation] decided promptly" by precluding "class actions," *see AILA*, 199 F.3d at 1359, 1364, or declaratory and injunctive relief beyond that permitted specifically by section 1252(e). *See* 8 U.S.C. § 1252(e)(1)(A); *see also id.* § 1252(e)(3)(D) (providing that such cases should be "expedite[d] to the greatest possible extent"). And given the "crisis at the land border" and the sheer number of aliens potentially subject to the inspection process under section 1225(b)(1)—"hundreds of thousands of illegal aliens [attempting to] cross each year," *see* H.R. Rep. No. 104-469, pt. 1, at 107 (1996)—Congress intended for the new procedures or their implementation to be reviewed [in a single forum], and that those procedures would remain operative even as they were being challenged by individual aliens. *See*

*id.* at 161 ("[C]ourts may issue injunctive relief pertaining to the case of an individual alien, and thus protect against any immediate violation of [individual] rights.  However, single district courts or courts of appeals do not have authority to enjoin procedures established by Congress to reform the process of removing illegal aliens from the U.S.").

Plaintiffs' claims fall within the limited review of section 1252(e) and the purposes that animated Congress in enacting that provision.  Plaintiffs seek to challenge the Secretary's "written guidance" implementing inter-related aspects of section 1225(b) concerning factors that will be considered in exercising prosecutorial discretion over whether an alien should be placed in expedited or full removal proceedings and whether they will be returned to a contiguous territory in the meantime.  Plaintiffs themselves characterize their claim as involving application of "the expedited removal statute, 8 U.S.C. § 1225(b)(1)."  TRO Br. 2.  Their reliance on section 1225(b)(1) as providing the legal barrier for limiting section 1225(b)(2), though incorrect, shows that this case involves "determinations under section 1225(b) of this title and its implementation." 8 U.S.C. § 1252(e)(3)(A); *see also* Tr. 6:15-17 (recognizing that Plaintiffs' complaint "is going to the interaction between the expedited removal provision and the contiguous territory return provision").  It further shows that this case involves "a decision by the [Secretary] to invoke" section 1225(b)(1).  8 U.S.C. § 1252(a)(2)(A)(ii).  And it shows the close link between this challenge and the Secretary's "policies . . . to implement the provisions of section 1225(b)(1)." *Id.* § 1252(a)(2)(A)(iv).  Moreover, although Counts IV-VI require the Court to determine whether implementation of section 1225(b) is consistent with other statutory provisions, those claims still require addressing the legality of how the Secretary chose to "implement[]" "section 1225(b)," and her guidance on when to "invoke" section 1225(b)(1) rather than section 1225(b)(2)(A) and (C).  And although Counts II-III challenge the implementation of MPP through the guise of the APA, that makes no difference under the statute, which both precludes *any* claim, "[n]otwithstanding any other provision of law (statutory or nonstatutory)," other than as permitted by section 1252(e), 8 U.S.C. § 1252(a)(2)(A), and vests exclusive jurisdiction over challenges to "implementat[ion]" of "section 1225(b)" in the District of Columbia, *id.* § 1252(e)(3)(A).  So

Plaintiffs' claims can only be raised, if at all, "as provided in subsection (e)," in the District Court for the District of Columbia. *Id.* § 1252(a)(2)(A)(ii), (iv), (e)(3).

**2.** Plaintiffs might raise two counterarguments. First, they might contend that section 1252(e)(3) must be read to apply only to judicial review of orders of expedited removal under section 1225(b)(1) and implementation of section 1225(b)(1), because section 1252, of which section 1252(e)(3) is a subsection, is titled "Judicial review of orders of removal," and subparagraph (e) is titled "Judicial review of orders under section 1225(b)(1)." That is, Plaintiffs might argue that because section 1252(e)'s title refers to judicial review of orders issued under section 1225(b)(1), the more specific provision of section 1252(e)(3)'s reference to "1225(b)" must be read consistent with its subsection's title. This argument would be unavailing. Because Plaintiffs' arguments rely so extensively on the interaction between sections 1225(b)(1) and (b)(2), they *do* seek judicial review of determinations issued under section 1225(b)(1)—*i.e.*, determinations *not* to place an alien in expedited removal proceedings and to instead place them in full removal proceedings and to potentially return them to contiguous territory as a result—or implementation of that section. In any event, section 1252(e)(3) is entitled "challenges on [the] validity of the system" established in "section 1225(b)," and the challenge here is such a challenge, given the interrelation of the various provisions of section 1225(b).[2] *See* 8 U.S.C. § 1252(e)(3)(A).

Second, Plaintiffs may argue that, although section 1252(e)(3) would permit this challenge to be brought in the District of Columbia, no provision of section 1252 prohibits it from being brought here, since section 1252(a)(2)(A) bars only challenges to expedited removal orders, which are not at issue here. This argument is incorrect, and Congress did not in section 1252 create two duplicative avenues of judicial review in these circumstances. Regardless of section 1252(a)(2)(A), section 1252(e)(3) is an exclusive jurisdiction provision. Section 1252(e)(3)

---

[2] Even if the specific title of section 1252(e)(3) did not refer to "challenges on [the] validity of the system" implementing "section 1225(b)" and DHS's discretionary authority to pick between section 1225(b)(1) and 1225(b)(2), section 1252(e)'s general title would not control, *See, e.g.*, *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 212 (1998) ("The title of a statute cannot limit the plain meaning of the text."); *Trainmen v. Baltimore & Ohio R. Co.*, 331 U.S. 519, 528-29 (1947) (similar); *see also* Order on Supp. Briefing at 3, n.1 (ECF No. 68). Nor, given section 1252(e)(3)'s reference to "challenges on [the] validity of the system," can the reference to section "1225(b)" in section 1252(e)(3) be dismissed as a drafting error.

"permits judicial review of the 'implementation' of 8 U.S.C. § 1225(b), the provision spelling out the procedures for inspecting applicants for admission to the United States," but also provides "that such lawsuits may be brought only in the United States District Court for the District of Columbia." *AILA*, 199 F.3d at 1358.  Moreover, even were that not so, it is not apparent why Congress would have wanted to create multiple overlapping review mechanisms for this one subset of border authorities, when Congress otherwise endeavored to limit and channel review over such mechanisms and "to have the validity of the new law [and its implementation] decided promptly." *Id.* at 1364.  And Congress would have had no reason to write section 1252(a)(2)(A) more broadly to preclude review of full removal proceedings or orders, since 8 U.S.C. § 1252(a)(5) and (b)(9) already address such challenges and preclude judicial review of issues arising in full removal proceedings—"including policies-and-practices challenges"—until after the issuance of a final order of removal, and channel all such review exclusively to the courts of appeals.[3]  *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016) ("Taken together, § 1252(a)(5) and § 1252(b)(9) mean that any issue—whether legal or factual—arising from any removal-related activity [under 8 U.S.C. 1229a] can be reviewed only through the [petition for review] process.").  Indeed, section 1252(a)(5) explicitly references section 1252(e), noting that section 1252(a)(5) applies "except as provided in subsection (e)."  8 U.S.C. § 1252(a)(5).  This cross reference would serve no purpose unless section 1252(e)(3) challenges encompassed more than just challenges to expedited removal orders, and also included efforts to litigate other aspects of section 1225(b) where full removal proceedings are utilized instead of expedited removal proceedings, like in these circumstances.  Thus, sections 1252(a)(2)(A), 1252(a)(5), 1252(b)(9), and 1252(e)(3) work together to make plain that a challenge to policy guidance instructing immigration officers on how to exercise their discretionary authority under sections 1225(b)(1), 1225(b)(2)(A), and 1225(b)(2)(C) can only be

---

[3] Title 8 U.S.C. § 1252(a)(5) prescribes the vehicle for judicial review of issues arising in full removal proceedings: "[A] petition for review . . . shall be the sole and exclusive means for judicial review of an order of removal . . . ."  And 8 U.S.C. § 1252(b)(9) mandates that "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States . . . shall be available only in judicial review of a final order . . . ."

reviewed, if at all, under the scheme for challenges to new border policies created in section 1252(e)(3).

Finally, nothing about reading section 1252(e)(3) to apply here would lead to "absurd results." *Matter of Walldesign, Inc.*, 872 F.3d 954, 962 (9th Cir. 2017) ("If the statute's text is plain, we must enforce it according to its terms, so long as the result is not absurd."), *cert. denied sub nom. Henry v. Weiss*, 138 S. Ct. 2575 (2018). Indeed, it is the very result the D.C. Circuit held should occur in a case like this that challenges "'implementation' of 8 U.S.C. § 1225(b), the provision spelling out the procedures for inspecting applicants for admission." *AILA*, 199 F.3d at 1358. Accordingly, the Court should apply section 1252(e)(3)'s clear text and hold that, because Plaintiffs challenge implementation of several inter-related subsections of section 1225(b), section 1252(e)(3) requires Plaintiffs to file suit in the District of Columbia.

**3.** Because section 1252(e)(3) applies, the Court should dismiss this case for lack of jurisdiction on its own motion. Under Rule 12(h)(3) the court may, on its own motion, dismiss a case at any time, if it "determines . . . that it lacks subject-matter jurisdiction." And the Court may do so without further notice or briefing, given that it has provided the parties an opportunity to brief the issue. *See Harmon v. Superior Court*, 307 F.2d 796, 797 (9th Cir. 1962). Regardless, Plaintiffs' complaint on its face challenges implementation of section 1225(b), and so no amendment of the complaint in this forum will cure the jurisdictional deficiencies it suffers from.

This Court can alternatively transfer this matter to the District of Columbia in the interest of justice, *see* 28 U.S.C. §§ 1404(a), 1406(a), in order to allow that Court to determine in the first instance whether it has jurisdiction under 8 U.S.C. § 1252(e)(3) and whether such a suit may proceed. *See* 8 U.S.C. § 1252(e)(3)(B). In agreeing to such a transfer, however, the government does not concede that the District Court in the District of Columbia has jurisdiction over this action, given the other review bars we cited in our briefing. *See* Gov. Br. 7-11.

## CONCLUSION

For these reasons, the Court should conclude that section 1252(e)(3) forecloses jurisdiction in this Court and dismiss this case without prejudice or transfer the matter to the District Court for the District of Columbia.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

WILLIAM C. PEACHEY
Director

By: */s/ Erez Reuveni*
    EREZ REUVENI
    Assistant Director
    Office of Immigration Litigation
    U.S. Department of Justice, Civil Division
    P.O. Box 868, Ben Franklin Station
    Washington, DC 20044
    Tel: (202) 307-4293
    Email: Erez.R.Reuveni@usdoj.gov

    ARCHITH RAMKUMAR
    T. BENTON YORK
    Trial Attorneys

Dated: April 3, 2019                    *Attorneys for Defendants*

1

**CERTIFICATE OF SERVICE**

2       I hereby certify that on April 3, 2019, I electronically filed the foregoing document with

3 the Clerk of the Court for the United States Court of for the Northern District of California by

4 using the CM/ECF system. Counsel in the case are registered CM/ECF users and service will be

5 accomplished by the CM/ECF system.

6

7                                 By: */s/ Erez Reuveni*
                                      EREZ REUVENI
8                                     Assistant Director
                                      United States Department of Justice
9                                     Civil Division

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28