FILED

MAR 4 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

**FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| INNOVATION LAW LAB; CENTRAL AMERICAN RESOURCE CENTER OF NORTHERN CALIFORNIA; CENTRO LEGAL DE LA RAZA; UNIVERSITY OF SAN FRANCISCO SCHOOL OF LAW IMMIGRATION AND DEPORTATION DEFENSE CLINIC; AL OTRO LADO; TAHIRIH JUSTICE CENTER,<br><br>        Plaintiffs-Appellees,<br><br>v.<br><br>CHAD F. WOLF, Acting Secretary of Homeland Security, in his official capacity; U.S. DEPARTMENT OF HOMELAND SECURITY; KENNETH T. CUCCINELLI, Director, U.S. Citizenship and Immigration Services, in his official capacity; ANDREW DAVIDSON, Chief of Asylum Division, U.S. Citizenship and Immigration Services, in his official capacity; UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES; TODD C. OWEN, Executive Assistant Commissioner, Office of Field Operations, U.S. Customs and Border Protection, in his official capacity; U.S. CUSTOMS AND BORDER PROTECTION; MATTHEW ALBENCE, Acting Director, U.S. Immigration and | No. 19-15716<br><br>D.C. No. 3:19-cv-00807-RS<br>Northern District of California,<br>San Francisco<br><br><br>ORDER |

Customs Enforcement, in his official capacity; US IMMIGRATION AND CUSTOMS ENFORCEMENT,

        Defendants-Appellants.

Before: FERNANDEZ, W. FLETCHER, and PAEZ, Circuit Judges.

This court issued its opinion in *Innovation Law Lab v. Wolf*, No. 19-15716, on Friday, February 28, 2020, affirming the district court's injunction against implementation and expansion of the Migrant Protection Protocols ("MPP"). That same day, the Government filed an emergency motion requesting either a stay pending disposition of a petition for certiorari to the Supreme Court or an immediate administrative stay. That evening, we granted an administrative stay, along with an accelerated schedule for briefs addressing the request for a longer-lasting stay. We received a brief from Plaintiffs-Appellants on Monday, March 2; we received a reply brief from the Government on Tuesday, March 3. For the reasons that follow, we grant in part and deny in part the requested stay.

With respect to the merits of our holding that the MPP violates federal law, we deny the requested stay. With respect to the scope of injunctive relief, we grant in part and deny in part the requested stay.

2

I. Merits

The MPP requires that all asylum seekers arriving at our southern border wait in Mexico while their asylum applications are adjudicated.  The MPP clearly violates 8 U.S.C. §§ 1225(b) and 1231(b).

A.  8 U.S.C. § 1225(b)

Section 1225(b) divides aliens applying for asylum into two categories: "[A]pplicants for admission fall into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2)."  *Jennings v. Rodriguez*, 138 S. Ct. 830, 837 (2018).

Section (b)(1) applicants are those who have no documents or fraudulent documents.  In fleeing persecution in their home countries, typical bona fide asylum seekers have either fraudulent documents or no documents at all.

Section (b)(2) applicants are "all other" applicants.  Section (b)(2) applicants include spies, terrorists, alien smugglers, and drug traffickers.

Section 1225 specifies different procedures for the two categories of applicants.  Section (b)(1) applicants who have expressed a "credible fear" of persecution have a right to remain in the United States while their applications are adjudicated.  Section (b)(2) applicants do not have that right.  Subsection (b)(2)(C) specifically authorizes the Attorney General to require § (b)(2) applicants to wait in

Mexico while their asylum applications are adjudicated.  There is no subsection in § (b)(1) comparable to subsection (b)(2)(C).

It is easy to understand why § (b)(1) and § (b)(2) applicants are treated differently.  Section (b)(1) applicants pose little threat to the security of the United States.  By contrast, § (b)(2) applicants potentially pose a severe threat.

The MPP applies subsection (b)(2)(C) to § (b)(1) applicants.  There is no legal basis for doing so.

## B.  8 U.S.C. § 1231(b)

Section 1231(b), previously codified as § 1253(h), was enacted in 1980 to implement our treaty-based obligation to avoid "refoulement" of refugees. Refoulement is the act of sending refugees back to the dangerous countries from which they have come.  Section 1231(b) provides, "[T]he Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion."

Under the MPP, an asylum officer screening asylum seekers is not allowed to ask whether they fear that their "life or freedom would be threatened" upon being returned to Mexico.  The MPP requires asylum seekers—untutored in asylum law—to volunteer that they fear being returned to Mexico, even though

they are not told that the existence of such fear could protect them from being returned.

Uncontradicted evidence in the record shows not only that asylum officers implementing the MPP do not ask whether asylum seekers fear returning to Mexico. It also shows that officers actively prevent or discourage applicants from expressing such a fear, and that they ignore applicants who succeed in doing so. For example, Alex Doe, a plaintiff in this case, wrote in a sworn declaration, "When I tried to respond and explain [why I had left Honduras] the officer told me something like, 'you are only going to respond to the questions I ask you, nothing more.'" Frank Doe, another plaintiff, wrote in a sworn declaration, "He never asked me if I was afraid of returning to Mexico. At one point, I had to interrupt him to explain that I didn't feel safe in Mexico. He told me that it was too bad. He said that Honduras wasn't safe, Mexico wasn't safe, and the U.S. isn't safe either."

Uncontradicted evidence also shows that there is extreme danger to asylum seekers who are returned to Mexico. For example, Howard Doe, a plaintiff, wrote in a sworn declaration: "While I was in Tijuana, two young Honduran men were abducted, tortured and killed. . . . On Wednesday, January 30, 2019, I was attacked and robbed by two young Mexican men. . . . They . . . told me that they knew I was Honduran and that if they saw me again, they would kill me." Ian Doe,

another plaintiff, wrote in a sworn declaration, "I am not safe in Mexico. I am afraid that the people who want to harm me in Honduras will find me here." Dennis Doe, another plaintiff, had fled the gang "MS-13" in Honduras. He wrote in a sworn declaration, "In Tijuana, I have seen people who I believe are MS-13 gang members on the street and on the beach. . . . I know that MS-13 were searching for people who tried to escape them . . . . This makes me afraid that the people who were trying to kill me in Honduras will find me here." Kevin Doe, another plaintiff, had fled MS-13 in Honduras because of his work as an Evangelical Christian minister. He wrote in a sworn declaration, "[When I was returned to Mexico from the United States], I was met by a large group of reporters with cameras. . . . I was afraid that the MS-13 might see my face in the news. . . . They are a powerful, ruthless gang and have members in Tijuana too."

It is clear from the text of the MPP, as well as from extensive and uncontradicted evidence in the record, that the MPP violates the anti-refoulement obligation embodied in § 1231(b).

### C.  Stay with Respect to the Merits

Two of the three judges on our panel, Judges W. Fletcher and Paez, held that the MPP clearly violates both §§ 1225(b) and 1231(b). The third judge, Judge Fernandez, did not independently reach the question whether the MPP violates

those sections.  Judge Fernandez dissented from the panel's decision based on a point of appellate procedure.

Because the MPP so clearly violates §§ 1225(b) and 1231(b), and because the harm the MPP causes to plaintiffs is so severe, we decline to stay our opinion pending certiorari proceedings in the Supreme Court, except as noted below with respect to the scope of the injunction.

## II.  Scope of the Injunction

The district court enjoined the Government from continuing to implement or expand the MPP, and required the Government to allow the named individual plaintiffs to enter the United States to pursue their applications for asylum.  The injunction provides as follows:

> Defendants are hereby enjoined and restrained from continuing to implement or expand the "Migrant Protection Protocols" as announced in the January 25, 2018 DHS policy memorandum and as explicated in further agency memoranda.  Within 2 days of the effective date of this order, defendants shall permit the named individual plaintiffs to enter the United States.  At defendants' option, any named plaintiff appearing at the border for admission pursuant to this order may be detained or paroled, pending adjudication of his or her admission application.

*Innovation Law Lab v. Nielsen*, 366 F. Supp. 3d 1110, 1130–31 (N.D. Cal. 2019).  When suit was filed in the district court, the MPP had been applied only at the designated port of entry at San Ysidro, California.  There are eleven named individual plaintiffs.

Because the district court's order was stayed pending appeal, the Government expanded the scope of the MPP. The MPP is now in effect in the four states along our southern border with Mexico. Two of those states, California and Arizona, are in the Ninth Circuit. New Mexico is in the Tenth Circuit. Texas is in the Fifth Circuit.

For the reasons explained in our opinion, Ninth Circuit case law requires that we affirm the scope of the district court's injunction. Plaintiffs challenge the MPP as inconsistent with § 706(2) of the Administrative Procedure Act, which directs a reviewing court that has found an agency action "unlawful" to "set aside" that action. 5 U.S.C. § 706(2). Section 706(2) does not tell a reviewing circuit court to "set aside" the unlawful agency action only within the geographic boundaries of that circuit. Further, there is a special need for uniformity in immigration cases, as recognized both by our court and by the Fifth Circuit. *See Regents of the Univ. of Cal. v. U.S. Dep't of Homeland Sec.*, 908 F. 3d 476, 511 (9th Cir. 2018); *Texas v. United States*, 809 F.3d 134, 187–88 (5th Cir. 2015), *aff'd by an equally divided Court*, 136 S. Ct. 2271 (2016)

However, we recognize that the proper scope of injunctions against agency action is a matter of intense and active controversy. *Dep't of Homeland Sec. v. New York*, 140 S. Ct. 599, 600–01 (2020) (Gorsuch, J., concurring); *Trump v.*

*Hawaii*, 138 S. Ct. 2392, 2424–29 (2018) (Thomas, J., concurring); *see also Wolf v. Cook Cty., Ill.*, 140 S. Ct. 681, 681–82 (2020) (Sotomayor, J., dissenting). While we regard the merits of our decision under §§ 1225(b) and 1231(b) as clearly correct, we do not have the same level of confidence with respect to the scope of the injunction entered by the district court. We therefore stay the injunction insofar as it operates outside the geographical boundaries of the Ninth Circuit.

### III.  Declarations Filed in Connection with the Government's Motion to Stay Pending Disposition of a Petition for Certiorari

The Government's motion for stay and reply brief include several sworn declarations. The United States Ambassador to Mexico writes, "The panel's decision, unless stayed, will have an immediate and severely prejudicial impact on the bilateral relationship between the United States and Mexico." The Assistant Secretary for International Affairs for the U.S. Department of Homeland Security writes, "MPP was a carefully negotiated solution with the Government of Mexico." She writes further, "The suspension of MPP undermines almost two years' worth of diplomatic engagement with the Government of Mexico through which a coordinated and cohesive immigration control program has been developed." The Deputy Commissioner of U.S. Customs and Border Protection writes that enforcement of the district court's injunction will cause substantial disruption at

9

our ports of entry and will cost substantial amounts of money.  He writes further that on Friday, the day our decision was announced, large groups of aliens sought admission to the United States at various points along the border.  The Executive Associate Director of Enforcement and Removal Operations for U.S. Immigration and Customs Enforcement writes, "[I]f MPP is discontinued, approximately 25,000 individuals enrolled in MPP who remain in Mexico may soon arrive in the United States seeking admission. . . .  [I]f [Customs and Border Protection] is required to process approximately 25,000 inadmissible aliens in an extremely short timeframe and then transfer those aliens to [Immigration and Customs Enforcement] custody, it would overload [Enforcement and Removal Operations'] already burdened resources and create significant adverse implications for public safety and the integrity of the United States immigration system."

The Plaintiffs-Appellants' brief responding to the Government's motion includes two sworn declarations.  Mexico's Ambassador to the United States from 2007 to 2013 writes, "The government of Mexico has consistently stated that MPP is a policy unilaterally imposed by the U.S. government.  To the extent Mexico agreed to the policy, it was upon threat of heavy and unprecedented tariffs."  He writes, further, "I reject the notion that this Court's determination that MPP is likely unlawful will harm our two nations' relationship.  Rather, it is MPP

itself—and the way the current administration is conducting policy towards Mexico—that is particularly detrimental to the bilateral relationship between the United States and Mexico." An expert on border and immigration issues writes that it is the MPP that has created chaos at our southern border, and that the MPP has not had a significant effect in reducing the flow of immigrants into the United States.

We are not in a position to assess the accuracy of these statements.

Conclusion

If the law were less clear—that is, if there were any serious possibility that the MPP is consistent with §§ 1225(b) and 1231(b)—we would stay the district court's injunction in its entirety pending disposition of the Government's petition for certiorari. However, it is very clear that the MPP violates §§ 1225(b) and 1231(b), and it is equally clear that the MPP is causing extreme and irreversible harm to plaintiffs.

We stay, pending disposition of the Government's petition for certiorari, the district court's injunction insofar as it operates outside the Ninth Circuit. We decline to stay, pending disposition of the Government's petition for certiorari, the district court's injunction against the MPP insofar as it operates within the Ninth Circuit.

The Government has requested in its March 3 reply brief, in the event we deny any part of their request for a stay, that we "extend the [administrative] stay by at least seven days, to March 10, to afford the Supreme Court an orderly opportunity for review." We grant the Government's request and extend our administrative stay entered on Friday, February 28, until Wednesday, March 11. If the Supreme Court has not in the meantime acted to reverse or otherwise modify our decision, our partial grant and partial denial of the Government's request for a stay of the district court's injunction, as described above, will take effect on Thursday, March 12.

**So ordered on March 4, 2020.**

FILED

MAR 4 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

*Innovation Law Lab v. Wolf*, No. 19-15716

FERNANDEZ, Circuit Judge, concurring in part and dissenting in part:

      I would grant in full the government's emergency motion for a stay of the district court's injunction pending disposition of a petition for certiorari to the Supreme Court. Thus, I concur in the order to the extent that it grants the requested stay. I also concur in the order's extension of our administrative stay until Wednesday, March 11. I respectfully dissent from the order to the extent that it denies the stay.